# Exhibit A

Bid Procedures

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UNIVERSAL BUILDING PRODUCTS, INC., *et al.*,[1] | ) ) ) | Case No. 10-12453 (___) |
| | ) | Joint Administration Requested |
| Debtors. | ) ) | |

# BID PROCEDURES

Universal Building Products, Inc., and its affiliated debtors and debtors in possession (collectively, the "Debtors") have filed chapter 11 cases pending in the Bankruptcy Court and jointly administered under Case No. 10-12453 . By motion dated August 4, 2010 (the "Motion"), the Debtors sought, among other things, approval of the process and procedures set forth below (the "Bid Procedures"), through which they will determine the highest, best and otherwise financially superior offer for the assets identified as Acquired Assets in the Agreement (as defined below) (the "Acquired Assets"). On August [__], 2010, the Bankruptcy Court entered its order (the "Bidding Procedures Order") which, among other things, approved the Bid Procedures.

On [_____], 2010, as further described in these Bid Procedures, in the Motion and in the Bid Procedures Order, the Bankruptcy Court shall conduct the Sale Hearing at which the Debtors shall seek entry of the Sale Order authorizing and approving the sale of the Acquired Assets (the "Proposed Sale") to Purchaser (defined below) or to one or more other Qualified Bidders (defined below) that the Debtors determine to have made the highest, best and otherwise financially superior offer.

*Agreement*

On August 3, 2010, the Debtors entered into an asset purchase agreement (the "Agreement") with UBP Acquisition Corp. ("Purchaser"), pursuant to which Purchaser proposes to acquire the Acquired Assets. Pursuant to the Agreement, Purchaser would provide consideration for the Acquired Assets equal to the following (the "Purchase Price"): $25,000,000.00. Such Purchase Price will be in the form of a credit bid, under Bankruptcy Code § 363(k), on account of the obligations owed to Purchaser under the Credit Agreement dated as of April 28, 2006 and/or the Senior Secured Super-Priority Debtor-in-Possession Promissory

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Universal Building Products, Inc. (7884); (ii) Accubrace, Inc. (3418); (iii) Don De Cristo Concrete Accessories, Inc. (7547); (iv) Form-Co, Inc. (0079); and (v) Universal Form Clamp, Inc. (3003). The address of the Debtors' corporate headquarters is 15172 Goldenwest Circle, Westminster, California 92683.

Note dated August 3, 2010 (the "DIP Note"). The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to Bankruptcy Code § 363.

*Assets for Sale*

The Debtors are offering the Acquired Assets for sale in one or more transactions.

*Participation Requirements*

In order to participate in the bidding process and to otherwise be considered for any purpose hereunder, a person interested in all or portions of the Acquired Assets other than Purchaser (a "Potential Bidder") must:

a. execute a confidentiality agreement in form and substance acceptable to the Debtors and their counsel (such form attached as **Exhibit 1** hereto); and

b. No later than August 23, 2010, submit a non-binding letter of intent ("LOI") satisfactory to the Debtors, which includes (i) an explanation of the contemplated transaction, including the assets proposed to be acquired, the proposed purchase price, contingencies and conditions precedent to closing; (ii) the appropriate corporate approvals for the contemplated transaction; and (iii) written evidence that the Debtors reasonably conclude demonstrates the Potential Bidder has the necessary financial ability to close the contemplated transaction and provide adequate assurance of future performance under all contracts to be assumed (if any) in such contemplated transaction.

*Access to Diligence*

After delivery of a confidentiality agreement in form and substance acceptable to the Debtors and their counsel, a Potential Bidder is eligible to receive due diligence access or additional non-public information. If the Debtors determine that a Potential Bidder does not constitute a Qualified Bidder (as defined below), then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate. The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined). The Debtors are not responsible for, and will bear no liability with respect to, any information obtained by Qualified Bidders in connection with the sale of the Acquired Assets.

If the Debtors furnish or make available to any Qualified Bidder any information related to the Debtors not theretofore given to Purchaser, then the Debtors shall concurrently furnish or make available all such information to Purchaser and each other Qualified Bidder.

*Due Diligence from Bidders*

Each Potential Bidder and Qualified Bidder (collectively, a "Bidder") shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that the Potential Bidder is not a Qualified Bidder. Failure by

2

a Qualified Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

*Designation as Qualified Bidder*

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose bids for assets do not overlap and who agree to have their bids combined for purposes of the determination of whether such Potential Bidders together constitute a Qualified Bidder, and who shall also be referred to herein as a single Qualified Bidder) that delivers the Participant Requirements described in subparagraphs (a) and (b) above, and that the Debtors in their discretion and with assistance from their advisors determine is reasonably likely to submit a *bona fide* offer that would result in greater net value to the estate than under the Agreement and to be able to consummate a sale if selected as a Successful Bidder (defined below).

Upon the receipt from a Potential Bidder of the information required under subparagraphs (a) and (b) above, the Debtors, as soon as is practicable, shall determine and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

Purchaser is a Qualified Bidder.

**Bidding Process**

The Debtors and their advisors shall: (a) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions above; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Acquired Assets (collectively, the "Bidding Process"). The Debtors shall have the right to adopt such other rules for the Bidding Process (including rules that may depart from those set forth herein) that will better promote the goals of the Bidding Process and that are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

*Bid Deadline*

**The deadline for submitting bids by a Qualified Bidder shall be [August 30], 2010 at 12:00 p.m. (Eastern time) (the "Bid Deadline").**

Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written copies of its cash bid to (a) Universal Building Products, 15172 Goldenwest Circle, Westminster, California 92683, Attn: Jeffrey Church; (b) counsel for the Debtors, K&L Gates LLP, 70 W. Madison St., Suite 3100, Chicago, Illinois 60602-4207, Attn: Sven T. Nylen; (c) UBP Acquisition Corp., 333 S. Grand Avenue, 28th Floor, Los Angeles, California 90071, Attn: Jordon L. Kruse and David Quick, with a copy to Kirkland and Ellis LLP, 300 N. LaSalle Street, Chicago, Illinois 60654, Attn: Christopher J. Greeno, P.C. and David A. Agay; and (d) counsel for any official committee of unsecured creditors appointed in this case.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

*Bid Requirements*

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid (other than Purchaser and its Bid) must be determined by the Debtors to satisfy each of the following conditions:

a. Good Faith Deposit. Each Bid must be accompanied by a deposit (the "Good Faith Deposit") in the form of a certified check or cash payable to the order of the Debtors in an amount equal to $2,500,000.00.

b. Minimum Overbid. The consideration proposed by the Bid can include only cash. The aggregate consideration must equal or exceed the sum of (i) the Purchase Price; (ii) $250,000.00; (iii) the Breakup Fee; and (iv) the Expense Reimbursement. The contemplated transaction must provide for the immediate payment of the Breakup Fee and Expense Reimbursement to Purchaser in cash from the proceeds of the purchase price of such Bid.

c. Irrevocable. A bid must be irrevocable until two (2) business days after the Acquired Assets have been sold pursuant to the Closing of the sale or sales approved by the Bankruptcy Court (the "Termination Date").

d. The Same or Better Terms: The Bid must be on terms that, in the Debtors' business judgment, are substantially the same or more favorable to the Debtors than the terms of the Agreement.[2] A Bid must include executed transaction documents pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "Contemplated Transaction Documents"). A Bid shall include a copy of the Agreement marked to show all changes requested by the Bidder (including those related to the Purchase Price). The Contemplated Transaction Documents must include a commitment to close by the Termination Date. A Bid should propose a contemplated transaction involving at least 90%, by value, of the Acquired Assets.

e. Contingencies: A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the Agreement.

f. Financing Sources: A Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Debtors with appropriate contact information for such financing sources.

g. No Fees payable to Qualified Bidder: No Bid, other than a Bid submitted by Purchaser, may request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment.

---

[2] For purposes of these Bid Procedures, a Bid is more favorable than the Agreement if it results in a higher net value to the Debtors' estate.

4

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, and that satisfies the Bid Deadline requirement above, shall constitute a "Qualified Bid," if the Debtors believe, in their reasonable discretion, that such bid would be consummated if selected as the Successful Bid. For purposes hereof, the Agreement shall constitute a Qualified Bid.

In the event that any Potential Bidder is determined by the Debtors not to be a Qualified Bidder, the Potential Bidder shall be refunded its deposit and all accumulated interest thereon within three (3) business days after that determination.

### Auction

Only if a Qualified Bid (other than Purchaser's) is received by the Bid Deadline, shall the Debtors conduct an auction (the "Auction") to determine the highest and best bid with respect to the Acquired Assets. The Debtors shall provide Purchaser and all Qualified Bidders with copies of all Qualified Bids at least 24 hours prior to the Auction. The Auction shall commence on [September 2], 2010 at 9:00 a.m. (prevailing Central Time) at the offices of K&L Gates LLP, 70 W. Madison St., Suite 3100, Chicago, Illinois 60602.

No later than [August 31], 2010, the Debtors will notify all Qualified Bidders of (i) the highest, best and otherwise financially superior Qualified Bid, as determined in the Debtors' discretion (the "Baseline Bid") and (ii) the time and place of the Auction, and provide copies of all submitted bids to all Qualified Bidders. If Purchaser's Qualified Bid constitutes the Baseline Bid, then the Expense Reimbursement and Breakup Fee shall be added to the Qualified Bid for purposes of the Auction.

If, however, no such Qualified Bid is received by the Bid Deadline, then the Auction will not be held, Purchaser will be the Successful Bidder, the Agreement will be the Successful Bid, and, at the Sale Hearing, the Debtors will seek approval of and authority to consummate the Proposed Sale contemplated by the Agreement.

The Auction shall be conducted according to the following procedures:

a. Participation at the Auction

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction. Only the authorized representatives of each of the Qualified Bidders and the Debtors shall be permitted to attend.

During the Auction, bidding shall begin initially with the highest Baseline Bid and subsequently continue in minimum increments of at least $250,000.00. Other than otherwise set forth herein, the Debtors may conduct the Auction in the manner they determine will result in the highest, best and otherwise financially superior offer for the Acquired Assets.

b. The Debtors Shall Conduct the Auction

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction the Debtors shall describe the terms of the Baseline Bid. The determination of

5

which Qualified Bid constitutes the Baseline Bid shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the estate, including, *inter alia*, the following: (i) the amount and nature of the consideration; (ii) the proposed assumption of any liabilities if any; (iii) the ability of the Qualified Bidder to close the proposed transaction; (iv) the proposed Closing Date and the likelihood, extent and impact of any potential delays in Closing; (v) any purchase price adjustments; (vi) the impact of the contemplated transaction on any actual or potential litigation; (vii) the net economic effect of any changes from the Agreement, if any, contemplated by the contemplated transaction documents; and (viii) the net after-tax consideration to be received by the Debtors' estates, taking into account Purchaser's rights to the Breakup Fee and Expense Reimbursement and repayment of the DIP Note (collectively, the "Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid.

   c. Terms of Overbids

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Baseline Bid. To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

   1. Minimum Overbid Increment

Any Overbid after the Baseline Bid shall be made in increments of at least $250,000.00. Additional consideration in excess of the amount set forth in the Baseline Bid may include only cash; provided, however, notwithstanding the foregoing, any Overbid by Purchaser may be a credit bid under Bankruptcy Code § 363(k), either in full or in part; provided further, however, that any Overbid by Purchaser will reflect the fact that the Break-Up Fee and Expense Reimbursement are not payable in each round of bidding with respect to Purchaser's bids.

   2. Remaining Terms are the Same as for Qualified Bids

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline and the Initial Minimum Overbid Increment shall not apply. Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (a) the Debtors accept a higher Qualified Bid as an Overbid and (b) such Overbid is not selected as the Back-up Bid (as defined below).

To the extent not previously provided (which shall be determined by the Debtors), a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Qualified Bidder's ability to close the transaction proposed by such Overbid.

3. Announcing Overbids

The Debtors shall announce at the Auction the material terms of such Overbid, the basis for calculating the total consideration offered in each such Overbid, and the resulting benefit to the Debtors' estate based on *inter alia*, the Bid Assessment Criteria.

4. Consideration of Overbids

The Debtors reserve the right, in their reasonable business judgment, to make one or more adjournments in the Auction to, among other things: (a) facilitate discussion between the Debtors and the individual Qualified Bidders; (b) allow individual Qualified Bidders to consider how they wish to proceed; and (c) give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors in their reasonable business judgment may require, that the Qualified Bidder (other than Purchaser) has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

d. Additional Procedures

The Debtors, in their reasonable discretion, may adopt rules for the Auction at or prior to the Auction that, in their reasonable discretion, will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bidding Procedures Order. All such rules will provide that all bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (i.e., the Principals of any Qualified Bidder specifically formed for the purpose of effectuating the contemplated transaction) shall be fully disclosed to all other Qualified Bidders, and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

e. Consent to Jurisdiction as Condition to Bidding.

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Bidder's contemplated transaction documents, as applicable.

f. Closing the Auction

Upon conclusion of the bidding, the Auction shall be closed, and the Debtors shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Proposed Sale, and (ii) immediately identify the highest, best and otherwise financially superior offer for the Acquired Assets (the "Successful Bid" and the entity submitting such Successful Bid, the "Successful Bidder"), which highest, best and otherwise financially superior offer will provide the greatest amount of net value to the Debtors, and the next highest and otherwise best offer after the Successful Bid (the "Back-up Bid"), and advise the Qualified Bidder of such determination. If Purchaser's final bid is deemed to be the highest and best at the

conclusion of the Auction, Purchaser will be the Successful Bidder and such bid, the Successful Bid.

### Acceptance of Successful Bid

The Debtors shall sell the Acquired Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the bid. The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by the Bankruptcy Court at the Sale Hearing. All interested parties reserve their right to object to the Debtors' selection of the Successful Bidder.

### Credit Bidding

Only Purchaser may credit bid some or all of its claims, and may do so to the full extent permitted by Bankruptcy Code § 363(k).

### Bid Protections

Purchaser is entitled to: (i) the Breakup Fee in the amount of $400,000.00; and (ii) the Expense Reimbursement up to $850,000.00, in each case, pursuant to the terms of the Asset Purchase Agreement.

### "As Is, Where Is"

The sale of the Acquired Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or their estates except to the extent set forth in the Agreement or the purchase agreement of another Successful Bidder. Purchaser and each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Acquired Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bid Procedures or, (a) as to Purchaser, the terms of the sale of the Acquired Assets shall be set forth in the Agreement, or (b) as to another Successful Bidder, the terms of the sale of the Acquired Assets shall be set forth in the applicable purchase agreement.

### Free of Any and All Interests

Except as otherwise provided in the Agreement or another Successful Bidder's purchase agreement, all of Debtors' right, title and interest in and to the Acquired Assets subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests"), in

8

accordance with Bankruptcy Code § 363, with such Interests to attach to the net proceeds of the sale of the Acquired Assets.

### Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on a day that is one (1) business day following the Auction or on such date as may be established by the Bankruptcy Court. Following the approval of the sale of the Acquired Assets to the Successful Bidder at the Sale Hearing, if such Successful Bidder fails to consummate an approved sale within fourteen (14) days after entry of an Order approving the Sale, the Debtors shall be authorized, but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtors shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such Bid without further order of the Bankruptcy Court.

### Return of Good Faith Deposit

Good Faith Deposits of the Successful Bidder shall be applied to the purchase price of such transaction at Closing. Good Faith Deposits of all other Qualified Bidders shall be held in an interest-bearing escrow account until five (5) days after Closing of the transactions contemplated by the Successful Bid, and thereafter returned to the respective bidders. If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain the Good Faith Deposit as part of its damages resulting from the breach or failure to perform by the Successful Bidder.

### Modifications

These Bid Procedures may not be modified except with the express written consent of the Debtors and Purchaser.

The Debtors may (a) determine which Qualified Bid, if any, is the highest, best and otherwise financially superior offer; and (b) reject at any time any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures or the terms and conditions of sale; or (iii) contrary to the best interests of the Debtors, their estates and creditors.

At or before the Sale Hearing, the Debtors may impose such other terms and conditions as the Debtors may determine to be in the best interests of the Debtors' estate, their creditors and other parties in interest.

# Exhibit 1

Form Confidentiality Agreement

**Confidentiality Agreement**

June ___, 2010

_____
_____
_____
_____

Attention: _____

Ladies and Gentlemen:

   In connection with your evaluation of possible business transactions ("<u>Possible Transactions</u>") with Universal Building Products, Inc. and/or its subsidiaries, affiliates or divisions (collectively, with such subsidiaries, affiliates and divisions, the "<u>Company</u>"), the Company is prepared to make available to you certain information concerning the business, financial condition, operations, assets and liabilities of the Company. Before providing any such information, the Company is requesting that you agree to the provisions below.

   You agree to treat any information concerning the Company (whether prepared by the Company, its Representatives, or otherwise and irrespective of the form of communication) that is furnished to you by on behalf of the Company or that is created or derived by the Company on the basis of such information (collectively, the "<u>Evaluation Material</u>") in accordance with the provisions of this letter agreement. As used in this letter agreement, a party's "<u>Representatives</u>" means the directors, officers, employees, agents, affiliates (as such term is defined under the Securities Exchange Act of 1934, as amended), partners or advisors of such party and those of its subsidiaries, affiliates and/or divisions (including, without limitation, attorneys, accountants, consultants, bankers and financial advisors).

   The term "Evaluation Material" also shall be deemed to include any notes, analyses, compilations, studies, interpretations or other documents prepared by the you to the extent that they contain, reflect or are based upon, in whole or in part, the information furnished pursuant hereto. The term Evaluation Material does not include information which: (i) is or becomes generally available to the public other than as a result of a disclosure of such information by you or your Representatives; (ii) was within your possession prior to its being furnished pursuant hereto, provided that the source of such information was not known by you to be bound by an obligation of confidentiality with respect to such information; or (iii) becomes available to you on a non-confidential basis from a source other than the the Company or its Representatives, provided that such source is not bound by a confidentiality agreement with, or other obligation of secrecy with respect to such information.

   You hereby agree that the Evaluation Material provided to you will be used solely for the purpose of evaluating Possible Transactions and not for your (or your subsidiaries, affiliates or divisions) own business purposes or any other purpose, that the Evaluation Material will be kept strictly confidential and that neither you nor your Representatives will disclose any of the Evaluation Material to any other person in any manner whatsoever, except as provided in the following sentence. Notwithstanding the foregoing sentence: (i) you may make any disclosure of the Evaluation Material to which the Company gives its prior written consent; (ii) any of the Evaluation Material may be disclosed by you to your Representatives who need to know such information for the sole purpose of evaluating Possible Transactions; and (iii) you may disclose any of the Evaluation Material to the extent required by law or any applicable rules and regulations or any stock exchange or governmental or regulatory authority, provided that you shall promptly inform the Company upon becoming aware of such disclosure

requirement and provide assistance as required in the following paragraphs of this letter agreement. You shall be responsible for any disclosure of Evaluation Material by any of your Representatives that would constitute a breach of this letter agreement if made you. Without limiting the generality of the foregoing, you agree that you and your Representatives shall not disclose any Evaluation Material to any potential source of debt or equity financing for any transaction, or contact any individuals of whom you become aware solely as a result of reviewing the Evaluation Material, in each case without the prior written consent of the Company.

You hereby agree that your communications with the Company concerning the Evaluation Material or Possible Transactions will be solely with me or with the Company's Board of Directors, Chief Financial Officer or such other persons as I may designate in writing. Under no circumstances will you contact any other Representative of the Company in connection with your evaluation of the Possible Transaction, except with the Company's prior written consent.

In addition, subject to applicable law or the rules and regulations or any stock exchange or governmental or regulatory authority, you agree that, without the prior written consent of the Company, you will not disclose to any other person other than to your Representatives the fact that the Evaluation Material has been made available to you, that discussions or negotiations are taking place concerning the Possible Transaction or any of the terms, conditions or other facts with respect thereto, including the status thereof and the identity of the parties thereto (collectively, the "Discussion Information"). The term "person" as used in this letter agreement shall be broadly interpreted to include the media and any corporation, partnership, group, individual or other entity.

In the event that you are required by law or regulation (including, by way of example only, by oral questioning under oath, interrogatories, requests for information or documents in legal proceedings, subpoena, civil investigative demand or other similar process) to disclose any of the Discussion Information or the Evaluation Material, you (the "Disclosing Party") shall, to the extent permitted by law, provide the Company with prompt written notice of any such request or requirement so that the Company may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this letter agreement. If, in the absence of a protective order or other remedy or the receipt of a waiver by the Company, you are nonetheless, after consultation with outside legal counsel, required to disclose Evaluation Material or Discussion Information, you may, without liability hereunder, disclose only that portion of the Evaluation Material or Discussion Information that is legally required to be disclosed, provided that you use your reasonable best efforts at the Company's request and expense to preserve the confidentiality of the Evaluation Material and the Discussion Information, including, without limitation, by cooperating with the Company at the Company's request and expense to obtain an appropriate protective order or other reliable assurance that confidential treatment will be accorded the Evaluation Material and the Discussion Information.

In consideration of the Evaluation Material being furnished hereunder, you hereby agree that, for a period of three years from the date hereof, neither you nor any of your Representatives will solicit the services, either as an employee, partner, consultant, investor or member of any entity, of any of the officers or employees of the Company or its subsidiaries with whom you or any of your Representatives had contact during the period of the investigation of the Possible Transaction, without obtaining the prior written consent of the Company. This paragraph shall not be construed to prohibit you from placing general advertisements for employees not directed at the Company in newspapers, periodicals or other media of general circulation or hiring any such employee as a result thereof.

For a period of two years from the date of this letter agreement, you agree that neither you nor any of your Representatives will propose to the Company or any other person any transaction involving the Company and/or its security holders, including holders of any debt instrument or loan

2

obligation of the Company, unless the Company shall have requested in writing that you make such a proposal, and that neither you nor any of your Representatives will acquire, or assist, advise or encourage any other persons in acquiring, directly or indirectly, control of the Company or any of the Company's securities, including any debt instrument or loan obligation of the Company, businesses or assets unless the Company shall have consented in advance in writing to such acquisition.

You further acknowledge that, in your examination of the Evaluation Material, you and your Representatives may have access to material non-public information concerning the Company. Accordingly, you and your Representatives may be subject to applicable securities laws, including the securities laws in the United States, restricting your ability to trade in any of securities of the Company and its affiliates, including any debt instrument or loan obligation of the Company or its affiliates. You acknowledge and agree that you are aware, and you will assure that your Representatives are aware, of such laws and agree to comply with such laws.

At any time upon the request of the Company for any reason, you will promptly either deliver to the Company or, at the election of the Company, destroy all Evaluation Material (and any copies, summaries or abstracts thereof) furnished pursuant hereto or prepared by you or on your behalf, and no copy thereof shall be retained (provided, that you shall only be required to use commercially reasonable efforts to return or destroy any Evaluation Material stored electronically, and neither you nor your Representatives shall be required to return or destroy any electronic copy of Evaluation Material created pursuant to your or your Representatives' standard electronic backup and archival procedures). Notwithstanding the foregoing, you and your Representatives may retain one copy of any Evaluation Material to the extent required to comply with legal or regulatory requirements or established document retention policies, or to demonstrate your compliance with such requirements, and such retained Evaluation Material shall remain subject to the confidentiality obligations hereunder.

You understand and acknowledge that neither the Company nor any of its Representatives, makes any representation or warranty, express or implied, as to the accuracy or completeness of the Evaluation Material. You agree that neither the Company nor any of its Representatives, shall be liable to you or to any of your Representatives for any damages relating to or resulting from your use of the Evaluation Material in evaluating the Possible Transaction or any errors therein or omissions therefrom, except as provided in any Definitive Agreement (as defined below). Only those representations or warranties which are made in a Definitive Agreement regarding any transactions contemplated hereby, when, as and if executed by the parties, and subject to such limitations and restrictions as may be specified therein, will have any legal effect.

You agree that unless and until a final binding written definitive agreement regarding the Possible Transaction between the Company and you (a "Definitive Agreement") has been mutually executed and delivered, the Company will not be under any legal obligation of any kind whatsoever with respect to any Possible Transaction by virtue of this letter agreement or any other written or oral expression with respect to such a transaction by the Company or any of its Representatives, except for the matters specifically agreed to herein, and you hereby waive in advance any claims in connection with Possible Transactions unless and until you and the Company have entered into a Definitive Agreement. The Company reserves the right, in its sole discretion, to (i) reject any and all proposals made by you or any of your Representatives with regard to any Possible Transaction, (ii) terminate discussions and negotiations with you or your Representatives or any third party at any time or (iii) pursue opportunities with any third party with respect to Potential Transactions without you. You further agree that no contract or agreement (or agreement to agree) providing for any Possible Transaction shall be deemed to exist between you and the Company unless and until a Definitive Agreement has been mutually executed and delivered.

It is understood and agreed that no failure or delay by the Company in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or future exercise thereof or the exercise of any other right, power or privilege hereunder. This letter agreement may be modified or waived only by a separate writing by the Company and you expressly so modifying or waiving such provision as is being amended.

It is further understood and agreed that money damages would not be a sufficient remedy for any breach of this letter agreement and that the non-breaching party shall be entitled to seek equitable relief, including, without limitation, injunction and specific performance, as a remedy for any such breach, or any threatened breach. Such equitable relief is not the exclusive remedy for a breach of this letter agreement, but rather is available in addition to all other remedies available at law or equity to the non-breaching party.

This letter agreement shall be governed by and construed in accordance with the laws of the State of Delaware applicable to agreements made and to be performed entirely within the State of Delaware. You hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the courts of the State of Delaware and of the United States of America located in the State of Delaware for any actions, suits or proceedings arising out of or relating to this agreement and the transactions contemplated hereby (and you agree not to commence any action, suit or proceeding relating thereto except in such courts). You also hereby irrevocably and unconditionally waive any objection to the laying of venue of any action, suit or proceeding arising out of this agreement or the transactions contemplated hereby in the courts of the State of Delaware or the United States of America located in the State of Delaware and hereby further irrevocably and unconditionally waive and agree not to plead or claim that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum, or that venue is improper in such court, or that such court does not have jurisdiction over its person or the subject matter.

This letter agreement contains the entire agreement between the Company and you regarding its subject matter and supersedes all prior agreements, understandings, arrangements and discussions, whether written or oral, between the Company and you regarding such subject matters. In furtherance and not in limitation of the preceding sentence, no subsequent acceptance of any license agreement, terms of use or other similar provisions required for access to any electronic data room shall be deemed to modify any of the provisions of this letter agreement.

This letter agreement may be signed by facsimile and in one or more counterparts, each of which shall be deemed an original but all of which shall be deemed to constitute a single instrument.

This letter agreement, and all obligations hereunder, shall terminate three years from the date hereof.

Please confirm your agreement with the foregoing by having a duly authorized officer of your organization sign and return one copy of this letter to the undersigned, whereupon this letter agreement shall become a binding agreement between you and the Company.

Very truly yours,

UNIVERSAL BUILDING PRODUCTS, INC.

By: _____
    Name:  Jeff Church
    Title:   Chief Executive Officer

CONFIRMED AND AGREED
as of the date written above:

_____

By: _____
    Name: _____
    Title: _____