# Exhibit 1

DIP Note

## SENIOR SECURED SUPER-PRIORITY
## DEBTOR-IN-POSSESSION PROMISSORY NOTE

**August 3, 2010**                                                                 6,002,673

FOR VALUE RECEIVED, **UNIVERSAL BUILDING PRODUCTS, INC.**, a Delaware corporation (the "Maker"), currently the subject of voluntary Chapter 11 proceedings in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in jointly administered Chapter 11 Case No. _____ (the "Chapter 11 Case") hereby covenants and promises to pay to **UBP ACQUISITION CORP.**, a Delaware corporation (together with successors and assigns, the "Payee"), the principal amount of SIX MILLION TWO THOUSAND SIX HUNDRED SEVENTY-THREE DOLLARS ($6,002,673), or such lesser amount as may be disbursed pursuant to Section 1(a) below, along with interest (including PIK Interest), fees, expenses and indemnification and other obligations as set forth in this note ("Note"). Capitalized terms used but not defined in Section 9 hereof shall have the meanings ascribed to such terms in the Credit Agreement, dated as of April 28, 2006, as amended by (i) that certain First Amendment to Credit Agreement dated as of March 26, 2009, (ii) that certain Second Amendment to Credit Agreement dated as of April 13, 2009 and (ii) that certain Third Amendment to Credit Agreement and Waiver dated as of January 29, 2010 (such agreement, as amended, without giving effect to any other amendments, restatements, supplements or modifications thereto, the "Prepetition Credit Agreement"), by and among Maker, Don De Cristo Concrete Accessories, Inc., Universal Form Clamp, Inc., Form-Co. Inc., Accubrace, Inc. ("Subsidiary Borrowers", together with the Maker, each a "Borrower" and collectively, the "Borrowers"), Payee as the sole lender thereunder (together with any successors and assigns, "Lenders") and OCM FIE, L.P., a Delaware limited partnership, as administrative agent on behalf of the Lenders (in such capacity, the "Prepetition Administrative Agent"). Each Subsidiary Borrower is a debtor in possession in the Chapter 11 Case pending before the Bankruptcy Court and is a party hereto for the purposes of making the representations and warranties and covenants contained herein (including, without limitation, granting a lien on its Collateral) and concurrently herewith is delivering the DIP Guaranty in favor of Payee, and all of such Subsidiary Borrower's obligations hereunder are made jointly and severally with each other and the Maker and are subject to the waivers and other terms and conditions of the DIP Guaranty.

1.     Loans.

(a)     The Maker hereby covenants and promises to pay to the Payee on or before the Termination Date the aggregate unpaid principal amount of all loan advances made to or for the account of the Maker from time to time under this Note, together with interest thereon (including, without limitation, PIK Interest) calculated in accordance with the provisions of this Note.

(b)     Subject to the terms and conditions of this Note:

(i)      prior to the earlier of the Termination Date and October 1, 2010, the Payee agrees to make loans from time to time in amounts requested by the Maker, provided that (v) such disbursements are not in excess of the amounts necessary to fund the Approved Budget in the immediately succeeding five (5) Business Days; provided, that with respect to the advance made with respect to the ninth week of the Approved Budget, such advance shall be made for all purposes set forth in the Approved Budget other than the line item for "liquidating trust seed money" which shall be funded per Section 1(b)(iii), (w) Maker shall not request loans more frequently than one time per week, (x) the Maker shall have given the Payee notice of such requested loan at least one (1) Business Day in advance of the requested disbursement date (prior to 3 p.m. (New York city time), (y) after giving effect to any such loans, the principal amount of all loans outstanding under this Note shall not exceed $6,002,673, and (z) loans disbursed under this Note shall be in a minimum amount of $100,000;

(ii)      payments with respect to the loans made hereunder may be reborrowed in accordance with Section 1(b)(i) until the earlier of October 1, 2010 and the Termination Date; and

(iii)      so long as the Termination Date has not occurred, subject to the terms and conditions herein, on October 1, 2010 Payee shall disburse the least of (A) $200,000, (B) the amount by which maximum amount permitted to be advanced pursuant to Section 1(b)(i) above exceeds the outstanding aggregate principal amount of loans outstanding pursuant to this Note, and (C) the amount that Maker notifies Payee is required to fund the Plan, which notice shall be given at least one (1) Business Day (by 3 p.m. New York city time) prior to such disbursement.

(c)      Any such loan advance made by the Payee pursuant to this Section 1, shall be sent by wire transfer of immediately available funds to the Maker's account as set forth on Schedule 1(c) hereto or such other place as the Maker may from time to time designate in writing.

(d)      Debtor Entities shall utilize the proceeds of the loans made under this Note and their cash collateral to (i) pay all fees payable to Payee hereunder, (ii) pay any interest obligations with respect to loans made under this Note, (iii) reimburse any fees and expenses and pay any indemnities owed to Payee under this Note and (iv) fund working capital and other lawful general corporate purposes of the Debtor Entities, in each case the payments and fundings shall be in accordance with the Approved Budget; provided, that if Debtor Entities have any proceeds in their possession on the Termination Date, Debtor Entities shall use all such amounts to pay all DIP Obligations without regard to the Approved Budget. No Debtor Entity shall be permitted to use the proceeds of the loans or any cash collateral for any other purpose, including: (a) to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation (including, without limitation, any related or prepatory discovery or depositions under Bankruptcy Rule 2004 or any other applicable law or rules) of any type adverse to the interests of the Payee or their rights and remedies under this Note, the other DIP Loan Documents, the Applicable Order, or the Prepetition Credit Agreement or Credit Documents, (b) to make any distribution under a plan of reorganization or plan of liquidation in any Chapter 11 Case unless and until the effective date of the Plan and then only in accordance with the Plan, or (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of Payee.

(e) Conditions to each Loan Made Under This Note After Entry of the Interim Order and Prior to Entry of the Final Order. Each loan made under this Note prior to the entry of the Final Order, shall be subject to the satisfaction, or waiver in writing by Payee of, the following conditions precedent:

(i) the loan requested shall not cause the aggregate outstanding principal amount under the Note to exceed the lesser of $965,099 and the amount then authorized by the Interim Order, the Interim Order shall be in full force and effect, and such Interim Order shall not have been modified, reversed, stayed or vacated or amended, nor shall any Material Problematic Appeal have been timely filed and not stayed, and such Interim Order is not in any respect the subject of a stay pending appeal;

(ii) each representation or warranty by any Debtor Entity contained herein or in any other DIP Loan Document shall be true and correct in all material respects as of such date as determined by the Payee, except to the extent that such representation or warranty expressly relates to an earlier date and except for changes therein expressly permitted or expressly contemplated by this Note and except if a representation or warranty is qualified by materiality, then such representation and warranty shall be true and correct in all respects;

(iii) no Default or Event of Default shall have occurred and be continuing or would result after giving effect to such loan;

(iv) all orders directly affecting the transactions contemplated by this Note entered by the Bankruptcy Court shall be satisfactory in form and substance to Payee and its counsel in their sole reasonable discretion;

(v) neither any Debtor Entity nor any other party-in-interest, including the United States Trustee or the committee, shall have filed a motion or other pleading seeking the dismissal or conversion of any Chapter 11 Case under Section 1112 of the Bankruptcy Code or otherwise, which such motion is a Material Problematic Appeal;

(vi) the Maker shall have filed motions with the Bankruptcy Court, reasonably acceptable to counsel to Payee, on shortened notice, seeking authority to conduct the 363 Sale pursuant to the APA and approval of bid procedures in connection therewith (the "Bid Procedures Motion"); and

(vii) (A) no Debtor Entity shall have commenced any suit or action against Payee, and (B) no judgment shall have been rendered in connection with any suit or action brought against Payee by any person, which judgment includes any legal or equitable remedy that would have the effect of subordinating any or all of the DIP Obligations, Credit Party Obligations, Liens of the Payee under the DIP Loan Documents or Liens securing the Credit Party Obligations to any other claim or interest, or would otherwise have a Material Adverse Effect.

The request and acceptance by Maker of the proceeds of any loans under this Note shall be deemed to constitute, as of the date thereof, (i) a representation and warranty by Maker that the

conditions in this Section have been satisfied and (ii) a reaffirmation by each Debtor Entity of the granting and continuance of the Payee's Liens.

(f)     Conditions to Each Loan Made Under This Note Following Entry of the Final Order.  Each loan made under this Note, following entry of the Final Order, shall be subject to the satisfaction, or waiver in writing by Payee of, the following conditions precedent:

(i)     each DIP Loan Document reasonably requested by Payee shall have been fully executed by the applicable Debtor Entity and delivered to Payee in such form and substance as Payee shall reasonably request in connection with the transactions contemplated by this Note and shall be in full force and effect;

(ii)     the loan requested shall not cause the aggregate outstanding principal amount under the Note to exceed the amount then authorized by the Final Order, the Final Order shall be in full force and effect, and such Final Order shall not have been modified, reversed, stayed or vacated or amended, nor shall any Material Problematic Appeal have been timely filed and not stayed, and such Final Order is not in any respect the subject of a stay pending appeal;

(iii)     each representation or warranty by any Debtor Entity contained herein or in any other DIP Loan Document shall be true and correct in all material respects as of such date as determined by the Payee, except to the extent that such representation or warranty expressly relates to an earlier date and except for changes therein expressly permitted or expressly contemplated by this Note and except if a representation or warranty is qualified by materiality, then such representation and warranty shall be true and correct in all respects;

(iv)     no Default or Event of Default shall have occurred and be continuing or would result after giving effect to such loan;

(v)     all orders directly affecting the transactions contemplated by this Note entered by the Bankruptcy Court on or prior to the entry of the Final Order shall be satisfactory in form and substance to Payee and its counsel in their sole reasonable discretion;

(vi)     neither any Debtor Entity nor any other party-in-interest, including the United States Trustee or the committee, shall have filed a motion or other pleading seeking the dismissal or conversion of any Chapter 11 Case under Section 1112 of the Bankruptcy Code or otherwise, which such motion is a Material Problematic Appeal;

(vii)     the Maker shall have filed the Bid Procedures Motion; and

(viii)     (A) no Debtor Entity shall have commenced any suit or action against Payee, and (B) no judgment shall have been rendered in connection with any suit or action brought against Payee by any person other than any Debtor Entity, which judgment includes any legal or equitable remedy that would have the effect of subordinating any or all of the DIP Obligations, Credit Party Obligations, Liens of the Payee under the DIP Loan Documents or Liens securing the Credit Party Obligations to any other claim or interest, or would otherwise have a Material Adverse Effect.

The request and acceptance by Maker of the proceeds of any loans under this Note shall be deemed to constitute, as of the date thereof, (i) a representation and warranty by Maker that the conditions in this Section have been satisfied and (ii) a reaffirmation by each Debtor Entity of the granting and continuance of the Payee's Liens.

2.    Interest.

(a)    Interest Accrual. Interest shall accrue on a daily basis at a rate of seven percent (7%) per annum (calculated on the basis of a 360-day year) on the unpaid principal balance (including any accrued PIK Interest) of this Note then outstanding; provided, however, that, if any Event of Default shall have occurred and be continuing or any interest due shall not be paid on the Interest Payment Date or the principal amount of this Note shall not be paid on the Termination Date, interest shall accrue on a daily basis during the period commencing on the date on which the Event of Default occurred, the Interest Payment Date or Termination Date, as applicable, and ending on the date this Note is paid in full in cash at a rate of nine percent (9%) per annum (calculated on the basis of the number of days in the applicable Fiscal Year) on the unpaid principal balance of this Note then outstanding and on all accrued and unpaid overdue interest payable on demand.

(b)    Interest Payments. Interest shall be due and payable, in arrears, on the Interest Payment Date; provided, that prior to the earlier of a Termination Date and the occurrence of any Event of Default hereunder, Maker may pay such interest in kind by accreting such amount to the principal obligations outstanding hereunder (the "PIK Interest").

(c)    Grid Note. The Payee is hereby authorized to endorse Annex A to this Note with an appropriate notation evidencing each loan of principal on this Note; provided, that the failure to make any such notation will not limit, expand or otherwise affect the rights of the Payee of this Note or the obligations of the Maker under this Note.

3.    Principal; Payments.

(a)    Maturity Date. On October 29, 2010 or such later date pursuant to the procedures set forth in this Section 3(a) (the "Maturity Date"), the Maker shall pay in cash the entire unpaid principal amount of this Note then outstanding to the Payee, together with all accrued and unpaid interest thereon, including any PIK Interest. The initial Maturity Date may be extended on a week-to-week basis (or, in the sole discretion of Payee, on such longer basis) provided that (i) Maker has provided Payee at least one Business Day's written notice of such requested extension, (ii) Maker has provided Payee with an updated budget through such extended date which Payee has approved in its sole discretion, (iii) no Default or Event of Default shall have occurred, and (iv) Maker and its Subsidiaries continue to actively pursue the confirmation of the Plan prior to the extended Maturity Date.

(b)    Prepayment at the Maker's Election. At any time, the Maker may without premium or penalty prepay all or any portion of the unpaid principal amount of this Note. To the extent Maker wants any prepayment to permanently reduce the amount available under this Note, Maker shall so designate to Payee in writing on or prior to the making of such payment.

(c)    <u>Mandatory Prepayment</u>.  Immediately upon receipt by Maker of cash or cash equivalent proceeds of any Disposition, insurance or condemnation proceeds, tax refunds, or other amounts not constituting collections of accounts receivable and proceeds of this Note (net of any payment with respect to Prior Permitted Liens that require such payment),Maker shall either prepay the unpaid principal amount of this Note in an amount equal to such proceeds and amounts or use such amounts as cash flow to reduce the budgeted amount for advances under the DIP Note in the next 5 Business Days, with any excess proceeds and amounts remaining thereafter applied to repay the Note.  Following the effectiveness of the Plan, Maker or any applicable liquidating trust shall disburse all funds from time to time, whether from collections of accounts receivable, or otherwise, in accordance with the Plan.

(d)    <u>Application of Principal Payments and Reductions</u>.  All payments made by Maker hereunder shall be applied to the obligations under this Note as follows: (a) <u>first</u>, to all unreimbursed expenses and indemnification obligations hereunder, (b) <u>second</u>, to all unpaid overdue interest obligations hereunder and all accrued interest with respect to principal obligations to be repaid with the proceeds of such payment, and (c) <u>third</u>, all outstanding unpaid principal obligations under this Note.

(e)    <u>Payment Mechanics</u>.  All payments to be made by the Maker hereunder shall be made in lawful money of the United States of America in immediately available funds by wire transfer to the Payee's account, as provided by Payee to Maker from time to time, not later than 3 p.m. (New York City time) on the Business Day that payment is so required. The Maker shall give the Payee prior written notice of each payment to be made hereunder.

4.    <u>Representations, Warranties and Covenants</u>.  On each date of disbursement of a loan hereunder, each Debtor Entity hereby represents and warrants that each representation and warranty set forth herein is true and correct as of such date.  The representations and warranties shall survive the execution and delivery of this Note.

(a)    <u>Organizational Existence; Compliance with Law</u>.  Each Debtor Entity (a) is a corporation duly organized, validly existing and in good standing under the laws of its state of incorporation; (b) is duly qualified to conduct business and is in good standing in each other jurisdiction where its ownership or lease of property or the conduct of its business requires such qualification, except where the failure to be so qualified would not result in exposure to losses or liabilities that could reasonably be expected to have a Material Adverse Effect; (c) subject to the entry of the Applicable Order by the Bankruptcy Court, has the requisite organizational power and authority and the legal right to own, pledge, mortgage or otherwise encumber and operate its properties, to lease the property it operates under lease and to conduct its business as now conducted or proposed to be conducted; (d) has all licenses, permits, consents or approvals from or by, and has made all material filings with, and has given all notices to, all Governmental Authorities having jurisdiction, to the extent required for such ownership, operation and conduct except where the failure to do so could not reasonably be expected to have a Material Adverse Effect; (e) is in compliance with its charter and bylaws, as applicable; and (f) is in compliance with all applicable provisions of law, except where the failure to comply, individually or in the aggregate, could not reasonably be expected to have a Material Adverse Effect or where such compliance is excused or suspended as a result of the pendency of the Chapter 11 Case. As of

August 3, 2010, each Debtor Entity discontinued all business operations (other than the Continuing Business) and since such date has not resumed any business operations other than the Continuing Business.

(b)  Organizational Power, Authorization, Enforceable Obligations.  Upon the entry by the Bankruptcy Court of the Applicable Order, the execution, delivery and performance by each Debtor Entity of the DIP Loan Documents to which it is a party and the creation of all Liens provided for therein: (a) are within such Person's corporate power; (b) have been duly authorized by all necessary corporate action; (c) do not contravene any provision of such Person's charter or bylaws; (d) do not violate any law or regulation, or any order or decree of any court or Governmental Authority; and (e) do not require the consent or approval of any Governmental Authority or any other Person other than those which have been duly obtained, made or complied with prior to the date hereof.  Each of the DIP Loan Documents shall be duly executed and delivered by the Debtor Entity party thereto and, subject to the entry of the Applicable Order, each such DIP Loan Document shall constitute a legal, valid and binding obligation of the applicable Debtor Entity party thereto enforceable against it in accordance with its terms.

(c) Reorganization Matters.

(i)  The Chapter 11 Case was commenced on the Petition Date in accordance with applicable law and proper notice thereof was given. The Debtor Entities shall give, on a timely basis as specified in the Applicable Order, the Bid Procedures Order and the Sale Order, all notices required to be given to all parties specified therein.

(ii)  Pursuant to and to the extent permitted in the Applicable Order, the DIP Obligations will constitute allowed administrative expense claims in the Chapter 11 Case having priority over all administrative expense claims and unsecured claims against the Debtor Entities now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expense claims of the kind specified in any provision of the Bankruptcy Code or otherwise, as provided under Section 364(c)(I) of the Bankruptcy Code, subject, as to priority only, to the Carve-Out Expenses up to the Carve-Out Amount and Prior Permitted Liens.

(iii)  To the extent provided in the Applicable Order, the DIP Obligations will be secured by a valid and perfected first priority Lien on all of the Collateral (which includes Prepetition Collateral (as defined in the Final Order) and unencumbered collateral as of and after the Petition Date, including, but not limited to, avoidance actions), subject, as to priority only, to the Carve-Out Expenses up to the Carve-Out Amount and Prior Permitted Liens. To the extent provided in the Final Order, the DIP Obligations will be secured by a valid and perfected second priority lien on any Collateral subject to Prior Permitted Liens.

5.  Covenants.

(a)  Reporting.  The Debtor Entities shall provide Payee such reports and information as to the Collateral or the financial condition of the Debtor Entities as Payee may reasonably request, in form and substance reasonably acceptable to the Payee including, but not limited to,

budget variance reports. Each Debtor Entity shall make its accountants available to Payee upon request.

(b) <u>Maintenance of Existence and Conduct of Business</u>. Each Debtor Entity shall: (a) do or cause to be done all things necessary to preserve and keep in full force and effect its organizational existence; and (b) at all times maintain, preserve and protect all of its material assets and properties (including taking all appropriate security measures in connection therewith) and ensure no decline in the condition of such assets and properties (taking into consideration ordinary wear and tear) and make, or cause to be made, all repairs, replacements and improvements thereto provided for in the Approved Budget. No Debtor Entity shall conduct any business or other activities other than the Continuing Business, in all cases in accordance with the Approved Budget.

(c) <u>Further Assurances</u>. Each Debtor Entity agrees that it shall, at its expense and upon the reasonable request of Payee, duly execute and deliver, or cause to be duly executed and delivered, to Payee such further instruments and do and cause to be done such further acts as may be necessary or proper in the reasonable opinion of Payee to carry out more effectively the provisions and purposes of this Note and each DIP Loan Document. Without limiting the foregoing, each Debtor Entity shall execute any and all further documents, financing statements, agreements and instruments, and take all further action (including filing UCC and other financing statements) that may be required under applicable law, or that Payee may reasonably request, in order to grant, confirm, preserve, protect and perfect the validity and applicable priority nature of the security interests created or intended to be created in favor of Payee by the DIP Loan Documents, and each Debtor Entity will take all actions and do all things necessary or advisable to maintain the perfection and such priority of such security interests. Each Debtor Entity shall deliver, or cause to delivered, such security agreement, mortgages and other collateral documents as are necessary to provide the Payee with security interests in the same type of assets as the collateral documents delivered pursuant to the Prepetition Credit Agreement, together with such opinions, title insurance policies, endorsements, financing statements, control agreements and other agreements, documents and instruments in furtherance of such guaranties and collateral arrangements, in each case, as the Payee may from time to time reasonably request.

(d) <u>Mergers, Subsidiaries, Etc</u>. No Debtor Entity shall directly or indirectly, by operation of law or otherwise, (a) form any Subsidiary or acquire any Subsidiary, or (b) merge with, consolidate with, acquire all or substantially all of the assets or Capital Stock of, or otherwise combine with or acquire, any Person.

(e) <u>Investments</u>. No Debtor Entity shall make or permit to exist any investment in, or make, accrue or permit to exist loans or advances of money to, any Person, through the direct or indirect lending of money, holding of securities or otherwise.

(f) <u>Indebtedness</u>. No Debtor Entity shall create, incur, assume or permit to exist any Indebtedness, except Indebtedness existing as of the date hereof and any other Indebtedness as may be agreed to by Payee. Except pursuant to "first day orders" entered prior to the date hereof or the Plan and except as specifically permitted hereunder, no Debtor Entity shall, without the

express prior written consent of Payee, make any payment or transfer with respect to any Lien or Indebtedness incurred or arising prior to the filing of the Chapter 11 Case that is subject to the automatic stay provisions of the Bankruptcy Code whether by way of "adequate protection" under the Bankruptcy Code or otherwise.

(g) <u>Liens</u>. No Debtor Entity shall create, incur, assume or permit to exist any Lien on or with respect to its property except for Liens in existence on the date hereof, the Administrative Claims and Adequate Protection Liens (each as defined in, and in accordance with, the Applicable Order) and Liens with respect to the Carve-Out Expenses up to the Carve-Out Amount under and in accordance with the Final Order. The prohibition provided for in this Section specifically includes, without limitation, any effort by any Debtor Entity, any committee, or any other party-in-interest in the Chapter 11 Case to prime or create pari passu to any claims, Liens or interests of Payee any Lien (other than for the Carve-Out Expenses up to the Carve-Out Amount) irrespective of whether such claims, Liens or interests may be "adequately protected".

(h) <u>Sale of Assets</u>. No Debtor Entity shall sell, transfer, convey, assign or otherwise dispose of any of its properties or other assets, other than such other dispositions as are agreed to by the Payee, other than the 363 Sale pursuant to the APA, or other than pursuant to the Plan after the effective date thereof.

(i) <u>Cancellation of Indebtedness</u>. No Debtor Entity shall cancel or otherwise forgive any claim or debt owing to it.

(j) <u>Reclamation Claims</u>. No Debtor Entity shall enter into any agreement to return any of its inventory to any of its creditors for application against any prepetition Indebtedness, prepetition trade payables or other prepetition claims under Section 546(h) of the Bankruptcy Code or allow any creditor to take any setoff or recoupment against any of its prepetition Indebtedness, prepetition trade payables or other prepetition claims based upon any such return pursuant to Section 553(b)(l) of the Bankruptcy Code or otherwise.

(k) <u>Chapter 11 Claims</u>. No Debtor Entity shall incur, create, assume, suffer to exist or permit any other superpriority administrative claim which is pari passu with or senior to the claims of Payee against any Debtor Entity, except as specifically permitted herein.

(l) <u>Budget Compliance</u>. No Debtor Entity shall request any loan hereunder and make any cash disbursement if, after giving effect thereto: (A) the aggregate cash disbursements by the Debtor Entities during any weekly period would exceed the product of: (x) the cumulative aggregate of the weekly disbursements budgeted for such weekly period including the date of such disbursement <u>times</u> ( y) one hundred and five percent (105%); or (B) the aggregate cash disbursements by the Debtor Entities in respect of any one line item contained in the Approved Budget (for disbursements) during any weekly period would exceed the product of: (x) the aggregate of the disbursements for such line item for such weekly period <u>times</u> (y) one hundred and ten percent (110%); <u>provided</u>, that, the cumulative aggregate of the weekly disbursements for such line item from the Petition Date through such week period shall not exceed the cumulative aggregate of the weekly budgeted disbursements for such line item from the Petition Date through such weekly period times one hundred and five percent (105%).

(m)  Contractual Obligations. No Debtor Entity shall, without Payee's prior written consent, (x) incur, create, or assume any contractual obligation (including any real property lease) or (y) reject any existing contractual obligation (including any real property lease).

6.  Collateral.

(a)  Grant of Security Interest. Each Debtor Entity hereby pledges, assigns and grants to Payee a security interest in all of such Debtor Entities' right, title and interest, whether now owned or hereafter acquired, in and to the Collateral to secure the prompt and complete payment and performance of the Maker's obligations under this Note and under the DIP Loan Documents and each Guarantor's obligation under the DIP Guaranty and the DIP Loan Documents, including, but not limited to, all obligations to pay interest, fees, expenses, indemnities and principal hereunder (collectively, the "DIP Obligations").

(b)  Super Priority Nature of Obligations and Payee's Liens.

(i)  The priority of the Payee's Liens on the Collateral shall be set forth in the Interim Order and the Final Order.

(ii)  All DIP Obligations shall constitute administrative expenses of the Debtor Entities in the Chapter 11 Case, with administrative priority and senior secured status under Sections 364(c) and 364(d) of the Bankruptcy Code. Subject to the Carve-Out Amount and any other amounts expressly provided for in the Interim Order and the Final Order, such administrative claim shall have priority over all other costs and expenses of the kinds specified in, or ordered pursuant to, any other provision of the Bankruptcy Code or otherwise, and shall at all times be senior to the rights of each of the Debtor Entities' estate, and any successor trustee or estate representative in the Chapter 11 Cases or any subsequent proceeding or case under the Bankruptcy Code. The Liens granted to the Payee on the Collateral owned by the Debtor Entities, and the priorities accorded to the DIP Obligations shall have the priority and senior secured status afforded by Sections 364(c) and 364(d)(l) of the Bankruptcy Code (all as more fully set forth in the Interim Order and the Final Order) senior to all claims and interests other than the Carve-Out Expenses up to the Carve-Out Amount.

(iii)  The Payee's Liens on the Collateral and the Payee's administrative claims under Sections 364(c)(l) and 364(d) of the Bankruptcy Code afforded the DIP Obligations shall be subject and subordinate to the Carve-Out Expenses not to exceed the Carve-Out Amount; provided, that the Carve-Out Expenses shall not include any other claims that are or may be senior to or pari passu with any of the Carve-Out Expenses or any professional fees and expenses of a Chapter 7 trustee and, provided, further, that Carve-Out Expenses shall not include any fees or disbursements (A) arising after the conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code or (B) of the type for which proceeds of loans made hereunder may not be applied or otherwise related to the investigation of, preparation for, or commencement or prosecution of, any claims or proceedings against the Payee or its claims or security interests in or Liens on, the Collateral whether under this Note or any other DIP Loan Document or the Prepetition Credit Agreement or otherwise, except to the extent permitted in the Interim Order and the Final Order with respect to investigations of the validity, perfection,

priority and enforceability of the liens securing the Prepetition Obligations (as defined therein). Except as set forth herein or in the Interim Order and the Final Order, no other claim having a priority superior or pari passu to that granted to the Payee by the Interim Order and the Final Order shall be granted or approved while any DIP Obligations remain outstanding. Except as set forth in the Interim Order and the Final Order and except for the Carve-Out Expenses up to the Carve-Out Amount, no costs or expenses of administration shall be imposed against the Payee or any of the collateral under Sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise, and each Debtor Entity hereby waives for itself and on behalf of its estate in bankruptcy, any and all rights under sections 105, 506 or 552, or otherwise, to assert or impose or seek to assert or impose, any such costs or expenses of administration against the Payee.

7. <u>Events of Default; Remedies.</u>

(a) <u>Events of Default</u>. The term "<u>Event of Default</u>" as used herein means the occurrence or happening, at any time and from time to time, of any of the following:

(i) (A) the failure of the Maker to pay when due and payable (whether at maturity or otherwise) the full amount of interest then accrued on this Note within one (1) Business Day of the date when due, (B) the failure of the Maker to pay the full amount of any principal payment on this Note, or (C) the failure of the Maker or any Debtor Entity to reimburse Payee for any expense reimbursable hereunder or under any other DIP Loan Document;

(ii) Any Debtor Entity shall be in default under the covenants set forth herein or any other DIP Loan Document, and shall fail to cure such default on the earlier of one (1) day (or, in the case of a default under Section 5(c) hereof, three (3) days following any such default) following (x) written notice from Payee or (y) the Debtor Entities having actual knowledge of the existence of such default;

(iii) any representation or warranty made or deemed made by or on behalf of any Debtor Entity or by any officer of any Debtor Entity under or in connection with this Note or any DIP Loan Document or under or in connection with any report, certificate, or other document delivered to Payee shall have been incorrect in any material respect when made or deemed made;

(iv) any provision of this Note, or any other DIP Loan Document shall at any time for any reason (other than pursuant to the express terms thereof) cease to be valid and binding on or enforceable against the Debtor Entity intended to be a party thereto, or the validity or enforceability thereof shall be contested by any party thereto, or a proceeding shall be commenced by any Debtor Entity or any Governmental Authority having jurisdiction over any of them, seeking to establish the invalidity or unenforceability thereof, or any Debtor Entity shall deny in writing that it has any liability or obligation purported to be created under this Note or any other DIP Loan Document;

(v) any security agreement, any mortgage or any other security document, after delivery thereof pursuant hereto, shall for any reason fail or cease to create a valid and

perfected lien in favor of the holder of this Note on any Collateral purported to be covered thereby;

(vi)     assets of any Debtor Entity with a fair market value of one hundred thousand Dollars ($100,000) or more are attached, seized, levied upon or subjected to a writ or distress warrant, or come within the possession of any receiver, trustee, custodian or assignee for the benefit of creditors of any Debtor Entity and such condition continues for thirty (30) days or more;

(vii)     a final judgment or judgments for the payment of money in excess of one hundred thousand Dollars ($100,000) in the aggregate at any time are outstanding against any Debtor Entity (exclusive of judgments (i) covered by insurance policies as to which liability has been accepted by the insurance carrier and (ii) entered for purposes of liquidating a Claim (as defined in the Bankruptcy Code) but not directing any payment from the estate of any of the Debtor Entities)), and the same are not, within thirty (30) days after the entry thereof, discharged or execution thereof stayed or bonded pending appeal, or such judgments are not discharged prior to the expiration of any such stay;

(viii)    The occurrence of any of the following in the Chapter 11 Case (unless otherwise agreed to by Payee):

(A) the bringing of a motion, taking of any action or the filing of any plan of reorganization or disclosure statement attendant thereto by any Debtor Entity in the Chapter 11 Case: (w) to obtain additional financing under Section 364(c) or (d) of the Bankruptcy Code not otherwise permitted pursuant to this Note; (x) to grant any Lien other than Liens permitted hereunder upon or affecting any Collateral; (y) except as provided in the Interim Order and the Final Order, to use cash collateral of Payee under Section 363(c) of the Bankruptcy Code without the prior written consent of Payee; or (z) any other action or actions adverse to Payee (determined in its sole reasonable discretion) with respect to its rights and remedies hereunder or its interest in the Collateral;

(B) the filing of any plan of reorganization or liquidation other than the Plan;

(C) the entry of an order in the Chapter 11 Case confirming a plan or plans of reorganization or liquidation other than the Plan;

(D) the entry of an order amending, supplementing, staying, vacating or otherwise modifying the DIP Loan Documents or the Interim Order or the Final Order without the written consent of the Payee;

(E) the payment of, or application for authority to pay, any pre-petition claim without Payee's prior written consent or pursuant to an order of the Bankruptcy Court after notice and a hearing unless otherwise permitted under this Note;

(F) the allowance of any claim or claims under Section 506(c) of the Bankruptcy Code against Payee or any of the Collateral;

(G) the appointment of an interim or permanent trustee in the Chapter 11 Case or the appointment of a receiver or an examiner in the Chapter 11 Case with expanded powers to operate or manage the financial affairs, the business, or reorganization of any Debtor Entity; or the sale (other than pursuant to the APA) without Payee's consent, of all or substantially all of any Debtor Entities' assets either through a sale under Section 363 of the Bankruptcy Code ("363 Sale"), through a confirmed plan of reorganization in the Chapter 11 Case, or otherwise that does not provide for payment in full in cash of the DIP Obligations and termination of all obligations of Payee under the Note;

(H) the dismissal of the Chapter 11 Case, or the conversion of the Chapter 11 Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code;

(I) the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code (x) to allow any creditor to execute upon or enforce a Lien on any Collateral, or (y) with respect to any Lien of or the granting of any Lien on any Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a Material Adverse Effect;

(J) the entry of an order in the Chapter 11 Case avoiding or requiring repayment of any portion of the payments made on account of the DIP Obligations, or avoiding or otherwise nullifying any Lien securing any DIP Obligation, owing under this Note or the other DIP Loan Documents;

(K) the failure of Maker to perform any of its obligations under the Final Order, Interim Order, Bid Procedures Order or Sale Order or any of the Final Order, Interim Order, Bid Procedures Order or Sale Order after entry by the Bankruptcy Court shall cease to be in full force and effect, shall be reversed, stayed, modified or amended or otherwise shall be subject to a Material Problematic Appeal not stayed, or shall be subject to a stay pending appeal;

(L) the entry of an order in the Chapter 11 Case granting any other super priority administrative claim or Lien equal or superior to that granted to Payee; or

(M) the termination of the Maker's exclusive right to file a plan or plans of reorganization in the Chapter 11 Cases.

(N) the failure to satisfy any of the following within the prescribed time periods set forth below:

(1) On or prior to the 30th day following the Petition Date, the Maker shall have conducted an auction for the assets of the Debtor Entities identified as for sale in the APA pursuant to Section 363 of the Bankruptcy Code, and Payee shall be designated the successful bidder;

(2) On or prior to the 31st day following the Petition Date, the Bankruptcy Court shall have entered an order, in form and substance substantially the same as the order attached to the APA, approving the consummation of the 363 Sale pursuant to the APA (the "Sale Order");

(3) On or prior to the 31st day following the Petition Date, the Debtor Entities shall have consummated the transactions for the 363 Sale pursuant to the APA pursuant to Section 363 of the Bankruptcy Code;

(4) (i) On or prior to the 14th day following the Petition Date, the Maker shall have filed a motion to approve solicitation procedures, a disclosure statement reasonably acceptable to Payee, and a detailed plan of liquidation for Maker and Subsidiaries reasonably acceptable to Payee consistent with the plan term sheet set forth on Exhibit C hereto (the "Plan") and (ii) On or prior to October 1, 2010, there shall be an effective Plan;

(5) On or prior to the 14th day following the Petition Date, the Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to counsel to the Payee, approving the Bid Procedures Motion, which order has not been modified, reversed, stayed or vacated or amended nor shall any Material Problematic Appeal have been timely filed and not stayed, nor shall such order be subject to a stay pending appeal (the "Bid Procedures Order"); and

(6) On or prior to the 14th day following the Petition Date, the Bankruptcy Court shall have entered the Final Order.

(O)     The failure to cooperate with Payee, its affiliates and designees in connection with their enforcement of the Strict Foreclosure Agreement, including without limitation, the delivery of the Specified Equipment (as defined in the Strict Foreclosure Agreement).

(b)     Remedies.

(i)     Acceleration.     If any Event of Default has occurred and is continuing, Payee may, notwithstanding the provisions of Section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from, the Bankruptcy Court, suspend or terminate the obligation of the Payee to make loans under this Note and declare the Termination Date to have occurred, whereupon any disbursements under this Note shall be made or incurred, in Payee's sole discretion so long as such Default or Event of Default is continuing. If any Event of Default has occurred and is continuing, Payee may, upon proper notice, request relief from the automatic stay under Section 362 of the Bankruptcy Code, with a hearing to be held within five calendar days; provided, however; only the occurrence or non-occurrence of such Default or Event of Default shall be the subject of any such hearing. Subject to the Final Order or any order granting relief from the automatic stay, as applicable, if any Event of Default has occurred and is continuing, Payee may, (A) declare all or any portion of the DIP Obligations to be forthwith due and payable, all without presentment, demand, protest or further notice of any kind, all of which are expressly waived by each Debtor Entity, (B) direct the Debtor Entities to sell or otherwise dispose of any or all of the Collateral on terms and conditions acceptable to Payee pursuant to Sections 363, 365 and other applicable provisions of the Bankruptcy Code (and, without limiting the foregoing, direct any Debtor Entity to assume and assign any lease or executory contract included in the Collateral to Payee or Payee's designees in accordance with and subject to Section 365 of the Bankruptcy Code), (C) enter onto the premises of the Debtor Entities in

connection with an orderly liquidation of the Collateral, or (D) exercise any rights and remedies provided to Payee under the DIP Loan Documents or at law or equity, including all remedies provided under the UCC or the Bankruptcy Code. Upon the occurrence of an Event of Default and the exercise by Payee of its rights and remedies under this Note and the other DIP Loan Documents in accordance with the preceding sentence, the Debtor Entities shall assist Payee in effecting a sale or other disposition of the Collateral upon such terms as are acceptable to Payee.

(ii)     Waivers by Maker.  Except as otherwise provided for in this Note, the Final Order, the Interim Order or in any other DIP Loan Documents or by applicable law, Maker waives: (a) presentment, demand and protest and notice of presentment, dishonor, notice of intent to accelerate, notice of acceleration, protest, default, nonpayment, maturity, release, compromise, settlement, extension or renewal of any or all commercial paper, accounts, contract rights, documents, instruments, chattel paper and guaranties at any time held by Payee on which Maker may in any way be liable, and hereby ratifies and confirms whatever the Payee may do in this regard, (b) other than as required herein or in the Applicable Order, all rights to notice and a hearing prior to Payee taking possession or control of, or to Payee's replevy, attachment or levy upon, the Collateral or any bond or security that might be required by any court prior to allowing Payee to exercise any of its remedies, and (c) the benefit of all valuation, appraisal, marshaling and exemption laws.

8.     Amendment or Waiver.  The provisions of this Note may be amended or waived and the Maker may take any action herein prohibited, or omit to perform any act herein required to be performed by it, only if the Maker has obtained the prior written consent of the Payee.

9.     Definitions.  For purposes of this Note, the following capitalized terms have the following meaning:

"363 Sale" shall have the meaning assigned to such term in Section 7(a)(viii)(G).

"APA" means that certain Asset Purchase Agreement dated as of the Petition Date, among Payee and the Debtor Entities, with such amendments, restatements, supplements and other modifications as are agreed to by Payee in its sole discretion.

"Applicable Order" means the Interim Order until such time as the Final Order shall have been entered and, thereafter, the Final Order.

"Approved Budget" means the budget for Maker and its Subsidiaries through the consummation of the Plan, attached as Exhibit A hereto, together with any revisions agreed to by Payee in its sole discretion, as amended in connection with any Maturity Date extension in accordance herewith; provided, that to the extent that any collections are received, whether from the Continuing Business, any Disposition, tax refund, insurance recovery or otherwise, in excess of the amounts reflected in the Approved Budget, the budgeted amount for advances required under the DIP Loan shall be reduced thereby.

"Bankruptcy Code" means Chapter 11, 11 U.S.C. 101 et seq.

"Bankruptcy Court" shall have the meaning assigned to such term in the preamble hereof.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, as the same may from time to time be in effect and applicable to the Chapter 11 Case.

"Bid Procedures Motion" shall have the meaning assigned to such term in Section 1(e) hereof.

"Bid Procedures Order" shall have the meaning assigned to such term in Section 7(a)(viii)(N) hereof.

"Borrower" shall have the meaning assigned to such term in the preamble hereof.

"Business Day" means each day other than a Saturday, Sunday or legal holiday in the State of New York.

"Carve-Out Amount" shall have the meaning assigned to such term in the Final Order.

"Carve-Out Expenses" shall have the meaning assigned to such term in the Final Order.

"Chapter 11 Case" shall have the meaning assigned to such term in the preamble hereof.

"Collateral" means all of the Debtor Entities' right, title and interest, now or hereafter arising, in personal property (tangible or intangible) and real property, including but not limited to: all property of the estate, avoidance actions, accounts, chattel paper, commercial tort claims, deposit accounts and securities accounts, documents, equipment, fixtures, general intangibles, goods, intellectual property, instruments, inventory, investment property, leases, all letters of credit, letter of credit rights, and other supporting obligations, all money, cash and cash equivalents, tax refunds and tax credits, all products and proceeds of any of the foregoing, including all insurance proceeds payable for the loss, damage or destruction of any of the foregoing.

"Continuing Business" means (1) prior to consummation of the 363 Sale pursuant to the APA,(a) any actions necessary to effectuate the Plan or consummate the transactions under the APA or otherwise perform under the APA, which shall not include any disposition of property other than pursuant to the liquidating trust established for the Plan or pursuant to the APA, (b) with respect to concrete forming inventory or equipment of the Debtor Parties on rent to third parties as of the Petition Date (the "Forming Rental Equipment"), the collection of rental income relating to Forming Rental Equipment and the ongoing servicing of the Forming Rental Equipment, in each case by Form-Co., Inc., but for the avoidance of doubt shall not include any new rentals of concrete forming inventory or equipment following the Petition Date other than new rentals on such inventory or equipment held by FormCo. Inc. as of the Petition Date in the ordinary course of business consistent with past practice and (c) with respect to inventory and equipment of Accubrace, Inc. ("Accubrace Rental Equipment"), new rentals of Accubrace Rental Equipment in the ordinary course of business consistent with past practice, the collection of rental income related to Accubrace Rental Equipment on rent to third parties whether as of the Petition Date or thereafter, and installation services conducted by Accubrace, Inc. in the ordinary

course of business consistent with past practice, and (2) on and after consummation of the 363 Sale pursuant to the APA, only actions which are necessary to perform under the APA and necessary to effectuate the Plan."Debtor Entity" means Maker and each Subsidiary Borrower.

"Default" means any event that, with the passage of time or notice or both, would become an Event of Default.

"DIP Guaranty" means that certain guaranty executed and delivered by Subsidiary Borrowers, in the form attached as Exhibit B hereto.

"DIP Loan Documents" means this Note, the DIP Guaranty, security agreements, and any other agreement, document or instrument delivered to or in favor of Payee or any holder in connection with any of the foregoing.

"DIP Obligations" shall have the meaning assigned to such term in Section 6(a) hereof.

"Disposition" means any transaction, or series of transactions pursuant to which any Debtor Entity conveys, sells, leases or subleases, assigns, transfers or otherwise disposes of any part of its business, property or assets (whether now owned or hereafter acquired) to any other Person, in each case whether or not the consideration therefor consists of cash, securities or other assets, including any sales of inventory in the ordinary course of business but excluding the rental of equipment out for rent as of the Petition Date and excluding the 363 Sale to Payee pursuant to the APA.

"Dollar(s)" or "$" means lawful currency of the United States of America.

"Environmental Liabilities" means, with respect to any Person, all liabilities, obligations, responsibilities, response, remedial and removal costs, investigation and feasibility study costs, capital costs, operation and maintenance costs, losses, damages, punitive damages, property damages, natural resource damages, consequential damages, treble damages, costs and expenses (including all reasonable fees, disbursements and expenses of counsel, experts and consultants), fines, penalties, sanctions and interest incurred as a result of or related to any claim, suit, action, investigation, proceeding or demand by any Person, whether based in contract, tort, implied or express warranty, strict liability, criminal or civil statute or common law, including any arising under or related to any Environmental Laws, or in connection with any release or threatened release or presence of any Materials of Environmental Concern whether on, at, in, under, from or about or in the vicinity of any real or personal property.

"Event of Default" shall have the meaning assigned to such term in Section 7(a) hereof.

"Final Order" means, collectively, the order of the Bankruptcy Court entered in the Chapter 11 Case after a final hearing under Bankruptcy Rule 4001(c)(2) or such other procedures as approved by the Bankruptcy Court which order shall be in the form and substance attached as Exhibit D hereto or (b) otherwise satisfactory in form and substance to Payee, and from which no appeal or motion to reconsider has been timely filed, or if timely filed, such appeal or motion to reconsider has been dismissed or denied unless Payee waives such requirement, together with all extensions, modifications and amendments thereto, in each such case, in form and substance

satisfactory to Payee, which, among other matters but not by way of limitation, authorizes Maker to obtain credit, incur (or guaranty) Indebtedness, and grant Liens under the Note and the other DIP Loan Documents, as the case may be, and provides for the super priority of the Payee's claims.

"Guarantors" means the Subsidiary Borrowers who are party to the DIP Guaranty.

"Indemnified Liabilities" shall have the meaning assigned to such term in Section 11 hereof.

"Indemnified Person" shall have the meaning assigned to such term in Section 11 hereof.

"Interest Payment Date" means the first day of each month.

"Interim Order" means the order of the Bankruptcy Court entered in the Chapter 11 Case which order shall be in the form and substance attached as Exhibit E hereto or as otherwise agreed to by Payee."Lender" shall have the meaning assigned to such term in the preamble hereof.

"Maker" shall have the meaning assigned to such term in the preamble hereof.

"Material Adverse Effect" means a material adverse effect, other than the filing of the Chapter 11 Case, on (a) the assets of any Debtor Entity, (b) the confirmation of the Plan or achievement of the milestones set forth in Section 7(a)(viii)(N), (c) the Collateral or the Payee's Liens on the Collateral or the priority of such Liens, or (e) Payee's rights and remedies under the Note and the other DIP Loan Documents, the Prepetition Credit Agreement and the Credit Documents.

"Material Problematic Appeal" means an appeal, motion for reconsideration or any other motion or other pleading which in the reasonable good faith determination of Payee is reasonably likely to result in a Material Adverse Effect.

"Maturity Date" shall have the meaning assigned to such term in Section 3(a) hereof.

"Note" shall have the meaning assigned to such term in the preamble hereof.

"Payee" shall have the meaning assigned to such term in the preamble hereof.

"Petition Date" means August 4, 2010.

"PIK Interest" shall have the meaning assigned to such term in Section 2(b).

"Plan" shall have the meaning assigned to such term in Section 7(a)(viii)(N) hereof.

"Prepetition Administrative Agent" shall have the meaning assigned to such term in the preamble hereof.

"Prepetition Credit Agreement" shall have the meaning assigned to such term in the preamble hereof.

"Prior Permitted Liens" means liens permitted under the Prepetition Loan Documents to have priority over the Prepetition Obligations (as defined in the Final Order), to the extent that any valid, properly perfected, unavoidable and senior liens exist; provided, that "Prior Permitted Liens" shall exclude all liens securing the Prepetition Obligations (as defined in the Final Order).

"Released Parties" shall have the meaning assigned to such term in Section 20 hereof.

"Releasing Parties" shall have the meaning assigned to such term in Section 20 hereof.

"Restructuring Agreement" shall mean that certain letter agreement, dated as of August 2, 2010, between UBP Acquisition Corp. and Maker.

"Sale Order" shall have the meaning assigned to such term in Section 7(a)(viii)(N) hereof.

"Strict Foreclosure Agreement" shall mean that certain Strict Foreclosure Agreement, dated as of August 3, 2010, by and among the Debtor Entities, the Payee and other parties named therein.

"Subsidiary Borrowers" shall have the meaning assigned to such term in the preamble hereof.

"Termination Date" means the earlier of (a) the Maturity Date and (b) the date so declared by the Payee at any time an Event of Default shall have occurred and be continuing.

All other terms not defined herein and not defined in the Prepetition Credit Agreement shall, unless the context indicates otherwise, have the meanings provided for by the UCC to the extent the same are used herein.

10.     Assignment.  The Payee may assign at any time this Note to any of its affiliates, any financial institutions or any other person, in which event, the assignee shall have, to the extent of such assignment, the same rights and benefits as it would have if it were the Payee, except as otherwise provided by the terms of such assignment or participation.  The rights and obligations of the Maker and the holder of this Note shall be binding upon and benefit the successors and permitted assigns and transferees of the Maker and the holder of this Note.  Payee agrees that if no Event of Default shall have occurred and be continuing, it shall not assign this Note to any Person not an affiliate without the consent of the Maker.

11.     Indemnification.  Maker shall indemnify and hold harmless Payee, each of its Affiliates and shareholders, and each such Person's respective partners, members, officers, directors, employees, attorneys, agents and representatives (each, an "Indemnified Person"), from and against any and all suits, actions, proceedings, claims, damages, losses, liabilities and expenses (including reasonable attorneys' fees and disbursements and other costs of investigation or defense, including those incurred upon any appeal) that may be instituted or

asserted against or incurred by any such Indemnified Person as the result of credit having been extended, suspended or terminated under this Note and the other DIP Loan Documents and the administration of such credit, and in connection with or arising out of the transactions contemplated hereunder and thereunder and any actions or failures to act in connection therewith, including any and all Environmental Liabilities and legal costs and expenses arising out of or incurred in connection with disputes between or among any parties to any of the DIP Loan Documents (collectively, "Indemnified Liabilities"); provided, that Maker shall not be liable for any indemnification to an Indemnified Person to the extent that any such suit, action, proceeding, claim, damage, loss, liability or expense results from that Indemnified Person's gross negligence or willful misconduct as determined by a final, non-appealable judgment of a court of competent jurisdiction. No Indemnified Person shall be responsible or liable to any other party to any DIP Loan Document, any successor, assignee or third party beneficiary of such person or any other person asserting claims derivatively through such party, for indirect, punitive, exemplary or consequential damages which may be alleged as a result of credit having been extended, suspended or terminated under any DIP Loan Document or as a result of any other transaction contemplated hereunder or thereunder.

12.     Notices. Except as otherwise provided herein, whenever it is provided herein that any notice, demand, request, consent, approval, declaration or other communication shall or may be given to or served upon any of the other parties, or whenever any of the parties desires to give or serve upon any other parties any communication with respect to this Note, each such notice, demand, request, consent, approval, declaration or other communication shall be in writing and shall be sent by telecopy or other similar facsimile transmission (with such telecopy or facsimile promptly confirmed by delivery of a copy by personal delivery or United States Mail as otherwise provided in this Section), by deposit with a reputable overnight courier with all charges prepaid or by hand delivery by messenger, addressed to the party to be notified and sent to the address or facsimile number indicated in Schedule 13 or to such other address (or facsimile number) as may be substituted by notice given as herein provided. Each such notice shall be deemed delivered at the time indicated in the delivery receipt customary for such mode of delivery. The giving of any notice required hereunder may be waived in writing by the party entitled to receive such notice. Notwithstanding anything herein to the contrary, notice to Maker with respect to any requested loan or payment thereof shall only be deemed effective if delivered by electronic mail to all of the persons (and no other method of notice shall be required) described on Schedule 13.

13.     GOVERNING LAW. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN ANY OF THE DIP LOAN DOCUMENTS, IN ALL RESPECTS, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THE DIP LOAN DOCUMENTS AND THE OBLIGATIONS SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN THAT STATE) AND ANY APPLICABLE LAWS OF THE UNITED STATES OF AMERICA (INCLUDING THE BANKRUPTCY CODE). EACH DEBTOR ENTITY HEREBY CONSENTS AND AGREES THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN ANY DEBTOR ENTITY AND PAYEE PERTAINING TO THIS NOTE OR ANY

OF THE OTHER DIP LOAN DOCUMENTS OR TO ANY MATTER ARISING OUT OF OR RELATING TO THIS NOTE OR ANY OF THE OTHER DIP LOAN DOCUMENTS; PROVIDED, THAT THE PAYEE AND THE EACH DEBTOR ENTITY ACKNOWLEDGE THAT ANY APPEALS FROM THE BANKRUPTCY COURT MAY HAVE TO BE HEARD BY A COURT OTHER THAN THE BANKRUPTCY COURT; PROVIDED, FURTHER, THAT NOTHING IN THIS NOTE SHALL BE DEEMED OR OPERATE TO PRECLUDE PAYEE FROM BRINGING SUIT OR TAKING OTHER LEGAL ACTION IN ANY OTHER JURISDICTION TO REALIZE ON THE COLLATERAL OR ANY OTHER SECURITY FOR THE DIP OBLIGATIONS, OR TO ENFORCE A JUDGMENT OR OTHER COURT ORDER IN FAVOR OF PAYEE AFTER RELIEF FROM THE AUTOMATIC STAY TO THE EXTENT SUCH AUTOMATIC STAY IS APPLICABLE. EACH DEBTOR ENTITY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND EACH DEBTOR ENTITY HEREBY WAIVES ANY OBJECTION THAT ANY DEBTOR ENTITY MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT.

14. Expenses; Taxes; Attorneys Fees. The Debtor Entities will pay on the Termination Date, all reasonable documented costs and expenses incurred by or on behalf of Payee, including, but not limited to, reasonable fees, costs, expenses of counsel for Payee, arising from or relating to this Note and any other DIP Loan Document, the Interim Order and the Final Order, all liabilities and costs arising from or in connection with the past, present or future operations of the Maker involving any damage to real or personal property or natural resources or harm or injury alleged to have resulted from any release of Materials of Environmental Concern on, upon or into such property, which are incurred by reason of Payee's capacity as provider of the loans under this Note, recipient of the collateral grant under the Applicable Order, or as a result of exercise of its rights and remedies related hereunder and under the other DIP Loan Documents, and any Environmental Liabilities incurred in connection with the investigation, removal, cleanup or remediation of any Materials of Environmental Concern present or arising out of the operations of any facility owned or operated by any Debtor Entity. Without limitation of the foregoing or any other provision of any DIP Loan Document, each Debtor Entity agrees to pay all stamp, document, transfer, recording or filing taxes or fees and similar impositions now or hereafter determined by Payee to be payable in connection with this Note or any other DIP Loan Document, and each Debtor Entity agrees to save Payee harmless from and against any and all present or future claims, liabilities or losses with respect to or resulting from any omission to pay or delay in paying any such taxes, fees or impositions. Any and all payments by any Debtor Entity hereunder shall be made free and clear of and without deduction for any and all present or future Taxes. If any Debtor Entity shall be required by law to deduct any Taxes from or in respect of any sum payable hereunder or under the Note, (i) the sum payable shall be increased as much as shall be necessary so that, after making all required deductions (including deductions applicable to additional sums payable hereunder), the Payee receives an amount equal to the sum they would have otherwise received had no such deductions been made, (ii) the Debtor Entities shall make such deductions, and (iii) the Debtor Entities shall pay the full amount deducted to the relevant taxing or other authority in accordance with applicable law. Within thirty (30) days after the date of any payment of Taxes, the Debtor

Entities shall furnish to Payee the original or a certified copy of a receipt evidencing payment thereof.

15. <u>Business Days</u>. If any payment is due, or any time period for giving notice or taking action expires, on a day which is not a Business Day, the payment shall be due and payable on, and the time period shall automatically be extended to, the immediately following Business Day, and interest shall continue to accrue at the required rate hereunder until any such payment is made.

16. <u>No Waiver</u>. The rights and remedies of the holder of this Note expressly set forth in this Note are cumulative and in addition to, and not exclusive of, all other rights and remedies available at law, in equity or otherwise. No failure or delay on the part of the holder of this Note in exercising any right, power or privilege shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege or be construed to be a waiver of any Event of Default. No course of dealing between the Maker and the holder of this Note or their agents or employees shall be effective to amend, modify or discharge any provision of this Note or to constitute a waiver of any Event of Default. No notice to or demand upon Maker in any case shall entitle Maker to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of the holder of this Note to exercise any right or remedy or take any other or further action in any circumstances without notice or demand.

17. <u>Construction</u>. The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation," whether or not so expressly stated in each such instance and the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or." The word "will" shall be construed to have the same meaning and effect as the word "shall." All references to time herein shall mean and be a reference to the time in New York, New York. Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth herein), (b) any reference herein to any Person shall be construed to include such Person's successors and assigns, (c) the words "herein," "hereof" and "hereunder," and words of similar import, shall be construed to refer to this Note in its entirety and not to any particular provision hereof, (d) all references herein to Sections shall be construed to refer to Sections of this Note and (e) the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights. Unless otherwise expressly provided herein, each accounting term used herein shall have the meaning given it under GAAP.

18. <u>Parties Including Trustees; Bankruptcy Court Proceedings</u>. This Note, the other DIP Loan Documents, and all Liens and other rights and privileges created hereby or pursuant hereto or to any other DIP Loan Document shall be binding upon the Debtor Entities, the estate

of the Debtor Entities, and any trustee, other estate representative or any successor in interest of the Debtor Entities in the Chapter 11 Case or any subsequent case commenced under Chapter 7 of the Bankruptcy Code, and shall not be subject to Section 365 of the Bankruptcy Code. This Note and the other DIP Loan Documents shall be binding upon, and inure to the benefit of, the successors of Payee and its assigns, transferees and endorsees. The Liens created by this Note and the other DIP Loan Documents shall be and remain valid and perfected in the event of the substantive consolidation or conversion of any Chapter 11 Case or any other bankruptcy case of Maker to a case under Chapter 7 of the Bankruptcy Code or in the event of dismissal of any Chapter 11 Case or the release of any Collateral from the jurisdiction of the Bankruptcy Court for any reason, without the necessity that Payee file financing statements or otherwise perfect its Liens under applicable law. The Debtor Entities may not assign, transfer, hypothecate or otherwise convey its rights, benefits, obligations or duties hereunder or under any of the other DIP Loan Documents without the prior express written consent of Payee. Any such purported assignment, transfer, hypothecation or other conveyance by any Debtor Entity without the prior express written consent of Payee shall be void. The terms and provisions of this Note are for the purpose of defining the relative rights and obligations of the Debtor Entities and Payee with respect to the transactions contemplated hereby and no Person shall be a third party beneficiary of any of the terms and provisions of this Note or any of the other DIP Loan Documents.

19.    No Discharge; Survival of Claims.

(a)    The Debtor Entities agree that (a) the DIP Obligations (and all liens securing such DIP Obligations) hereunder shall not be discharged or released by the entry of an order confirming a plan of reorganization or liquidation in the Chapter 11 Case (and each Debtor Entity pursuant to Section 1141(d)(4) of the Bankruptcy Code, hereby waives any such discharge or release) and (ii) the superpriority administrative claim granted to the Payee pursuant to the Applicable Order and as further described herein and the Liens granted to the Payee pursuant to the Applicable Order and as further described herein shall not be affected in any manner by the entry of an order confirming a plan of reorganization in the Chapter 11 Case, upon any conversion to a case under Chapter 7 of the Bankruptcy Code, or upon dismissal of any bankruptcy case.

(b)    Except as otherwise expressly provided herein or in any other DIP Loan Document, all undertakings, agreements, covenants, warranties and representations of or binding upon the Debtor Entities, and all rights of Payee, all as contained in the DIP Loan Documents, shall not terminate or expire, but rather shall survive any such termination or cancellation and shall continue in full force and effect until the Termination Date; provided, that the provisions of Section 4, the payment obligations under Sections 11 and 14 and the indemnities contained in the DIP Loan Documents shall survive the Termination Date.

20.    Release. Each Debtor Entity hereby acknowledges, effective upon entry of the Applicable Order, that no Debtor Entity has a defense, counterclaim, offset, recoupment, cross-complaint, claim or demand of any kind or nature whatsoever that can be asserted to reduce or eliminate all or any part of the Maker's liability to repay the Payee as provided in this Note or to seek affirmative relief or damages of any kind or nature from the Payee (in any capacity) arising, directly or indirectly, out of, connected with, or in any way related to, the Note, the DIP Loan

Documents, the Interim Order, the Final Order, the Prepetition Credit Agreement, the Credit Documents, the transactions contemplated thereby, and all other agreements, certificates, instruments and other documents and statements (whether written or oral) related to any of the foregoing. Each Debtor Entity, on behalf of its bankruptcy estate, and on behalf of all its successors, assigns, Subsidiaries and any Affiliates and any Person acting for and on behalf of, or claiming through them, (collectively, the "Releasing Parties"), hereby fully, finally and forever releases and discharges the Payee (in any capacity) and all of the Payee's officers, shareholders, directors, servants, agents, attorneys, other professionals, assigns, heirs, parents, subsidiaries, and each Person acting for or on behalf of any of them (collectively, the "Released Parties") of and from any and all actions, causes of action, demands, suits, claims, liabilities, Liens, lawsuits, adverse consequences, amounts paid in settlement, costs, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses and other obligations of any kind or nature whatsoever, whether in law, equity or otherwise (including, without limitation, interest or other carrying costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), whether known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or which may heretofore accrue against any of the Released Parties, whether held in a personal or representative capacity, and which are based on any act, fact, event or omission or other matter, cause or thing directly or indirectly arising out of, connected with or relating to this Note, the Interim Order, the Final Order, the DIP Loan Documents, the Prepetition Credit Agreement, the Credit Documents, the transactions contemplated thereby, and all other agreements, certificates, instruments and other documents and statements (whether written or oral) related to any of the foregoing.

21. <u>Waiver of any Priming Rights</u>. As of the date hereof, and on behalf of itself and its estate, and for so long as any DIP Obligations or any commitments hereunder shall be outstanding, each Debtor Entity hereby irrevocably waives any right, pursuant to Sections 364(c) or 364(d) of the Bankruptcy Code or otherwise, to grant any Lien of equal or greater priority than the Liens securing the DIP Obligations, or to approve a claim of equal or greater priority than the DIP Obligations.

22. <u>Waiver</u>. As of the date hereof and for so long as any DIP Obligations or any commitments hereunder shall be outstanding, each Debtor Entity, on behalf of itself and its estate, hereby irrevocably waives any right to use cash collateral of the Payee under Section 363 of the Bankruptcy Code, other than as provided herein or in the Applicable Order, without the prior written consent of the Payee.

23. <u>Counterparts; Telefacsimile or Electronic Mail Execution</u>. This Note may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Note. Delivery of an executed counterpart of this Note by telefacsimile or electronic mail shall be equally as effective as delivery of an original executed counterpart of this Note. Any party delivering an executed counterpart of this Note by telefacsimile or electronic mail also shall deliver an original executed counterpart of this Note but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Note.

\*        \*        \*

IN WITNESS WHEREOF, each Debtor Entity has executed and delivered this Senior Secured, Super-Priority Debtor-In-Possession Note on the date first above written.

UNIVERSAL BUILDING PRODUCTS, INC.,
A Delaware Corporation

By:
Name:
Title:

DON DE CRISTO CONCRETE ACCESSORIES, INC.,
A California Corporation

By:
Name:
Title:

UNIVERSAL FORM CLAMP, INC.,
A Delaware Corporation

By:
Name:
Title:

FORM-CO, INC.,
A Delaware Corporation

By:
Name:
Title:

ACCUBRACE, INC.,
A Delaware Corporation

By:
Name:
Title:

Agreed to and accepted as of the date hereof.

UBP ACQUISITION CORP.

By: _____
Name:        David Quick
Its:          Authorized Signatory

## ANNEX A

**Senior Secured Super-Priority Debtor-In-Possession Promissory Note**

| Date Made | Principal Amount Advanced | Amount Available to be Advanced | Name of Person Making Entry |
|-----------|--------------------------|-------------------------------|----------------------------|
|           |                          |                               |                            |
|           |                          |                               |                            |
|           |                          |                               |                            |
|           |                          |                               |                            |
|           |                          |                               |                            |

## Schedule 1(c)

**Wire Information**
Comerica Bank
39200 Six Mile Road
Livonia, MI 48152-7612
ABA# 072000096
Account 1852074614

<u>In Favor of:</u>
Universal Building Products Inc

## Schedule 13

### Notice Information

**Maker**

Universal Building Products, Inc.
15172 Goldenwest Circle
Westminster CA 92683
Facsimile: (714) 901-5995
Attention: Chief Executive Officer

with copies to:
K&L Gates LLP
70 West Madison Street, Ste. 3100
Chicago, Illinois 60602
Facsimile: (312) 345-9979
Attention: Sven T. Nylen

**Payee**

UBP Acquisition Corp.
c/o Oaktree Capital Management, L.P.
333 South Grand Avenue, 28th Floor
Los Angeles, California 90071
Facsimile: (213) 830-6394
Attention: David Quick, Diana Hang and David Orkin

with copies to:
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA 90071
Facsimile: (213) 680-8500
Attention: Samantha Good

# EXHIBIT A

## APPROVED BUDGET

**[see attached]**

# UBP Inc
## 9 Week Cash Flow

| For the Period: | Forecast | BK Filing Date | Week 1 Forecast | 2 Forecast | 3 Forecast | 4 Forecast | 5 Forecast | 6 Forecast | 7 Forecast | 8 Forecast | 9 Forecast | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Mon - Tuesday 08/02 - 08/03 | 4-Aug | Wed - Fri 08/04 - 08/06 | Mon - Fri 08/09 - 08/13 | Mon - Fri 08/16 - 08/20 | Mon - Fri 08/23 - 08/27 | Mon - Fri 08/30 - 09/03 | Mon - Fri 09/06 - 09/10 | Mon - Fri 09/13 - 09/17 | Mon - Fri 09/20 - 09/24 | Mon - Fri 09/27 - 10/01 | Forecast Period |
| **Cash Inflows:** | | | | | | | | | | | | |
| Customer Receipts (AR): | | | | | | | | | | | | |
| AccoReceivable Inflows | 17,000 | | 13,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 253,000 |
| FormCo Inflows | 33,000 | | 25,000 | 58,000 | 58,000 | 58,000 | 58,000 | 58,000 | 58,000 | 58,000 | 58,000 | 489,000 |
| Total Customer Receipts (AR) | | | 38,000 | 88,000 | 88,000 | 88,000 | 88,000 | 88,000 | 88,000 | 88,000 | 88,000 | 742,000 |
| | | | | | | | | | | | | |
| **Total Cash Inflows** | | | 38,000 | 88,000 | 88,000 | 88,000 | 88,000 | 88,000 | 88,000 | 88,000 | 88,000 | 742,000 |
| | | | | | | | | | | | | |
| **Cash Outflows:** | | | | | | | | | | | | |
| Payroll, and Related Taxes | | | | | | | | | | | | |
| UPC | | | | 81,000 | | 72,000 | | 54,000 | | 54,000 | 54,000 | 315,000 |
| DDC | | | | 18,000 | 12,000 | 18,000 | | 8,000 | | 8,000 | 8,000 | 60,000 |
| ADMIN, all companies | | | | 72,000 | | 72,000 | | 72,000 | | 67,000 | 67,000 | 350,000 |
| Medical | | | 40,000 | | 121,950 | | 151,000 | 75,900 | | | | 197,800 |
| Stay on plan | | | 18,000 | | | | | | | | | 204,000 |
| Taxes | | | 13,000 | | | 38,000 | | 31,000 | | 30,000 | 113,000 | 169,000 |
| Office/Equip/Rent | | | 23,000 | 40,000 | | | | 245,000 | | | 30,000 | 500,000 |
| End cleanup costs at avg $25.50/unit plus lump sums | | | | 260,000 | 128,000 | | | | | 279,000 | | 635,000 |
| Property Taxes | | | | 61,000 | | | 228,000 | | | | | 129,000 |
| Collected Taxes (Sales Taxes) | | | 12,000 | 100,000 | | 49,000 | 68,000 | | | 49,000 | | 20,000 |
| Insurance (auto, liability, workers comp, medical) | | | 16,000 | 40,000 | 40,000 | 17,000 | 46,000 | 40,000 | 40,000 | 7,000 | 8,000 | 370,000 |
| Outside Services - Data Warehouse Management | | | | 4,000 | | 16,000 | 18,000 | 4,000 | | 3,000 | 40,000 | 48,000 |
| AccoRease Outflows (all costs including payroll) | | | | 30,000 | 40,000 | | 30,000 | 30,000 | 30,000 | | 4,000 | 233,000 |
| FormCo Outflows (all costs including payroll) | | | | 58,000 | 30,000 | 58,000 | 58,000 | 58,000 | 58,000 | 58,000 | 30,000 | 489,000 |
| Other Operating Expenses | | | | | 58,000 | | | | | | 58,000 | |
| Utilities | | | | | | | | | | 49,000 | | 158,000 |
| Other | | | | 17,000 | 17,000 | 17,000 | 17,000 | 7,000 | 7,000 | 7,000 | 7,000 | 108,000 |
| Security Services | | | | 16,000 | 16,000 | 16,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 79,000 |
| Director Fees | | | | | | 10,000 | | | | 10,000 | 10,000 | 30,000 |
| Freight (cost for inventory move) | | | | 45,000 | | 45,000 | | | | | | 90,000 |
| | | | | | | | | | | | | |
| **Operating Cash Outflows** | | | 134,000 | 842,000 | 423,000 | 465,000 | 613,000 | 622,900 | 138,000 | 653,000 | 434,000 | 4,394,800 |
| | | | | | | | | | | | | |
| **Net Operating Cash Flow** | | | (86,000) | (754,000) | (334,900) | (377,000) | (515,900) | (534,000) | (50,000) | (565,000) | (336,000) | (3,563,800) |
| | | | | | | | | | | | | |
| Restructuring Legal & Professional Fees | | | | | | | | | | | | |
| BK Professional Fees | | | 5,000 | 162,500 | | | 562,500 | | | | 700,000 | 1,425,000 |
| Court & Trustee Fees | | | | | | | | | | | 15,000 | 15,000 |
| Other Administrative | | | | | | | | | | | 20,000 | 20,000 |
| Administrative Claims | | | | | | | | | | | 272,173 | 272,173 |
| WARN net claims | | | | | | | | | | | | |
| Accrued Real Estate Taxes | | | | | | | | | | | 719,409 | 719,409 |
| Sale Notice publication and other claims agent mailings | | | | | 50,000 | | | | | | 125,592 | 125,592 |
| Liquidating Trust Seed money | | | | | | | | | | | 50,000 | 50,000 |
| Federal/State tax prep | | | | | | | | | | | 200,000 | 200,000 |
| **Total Restructuring Legal & Professional Fees** | | | 5,000 | 162,500 | 50,000 | | 562,500 | | | | 2,102,174 | 2,877,174 |
| | | | | | | | | | | | | |
| Financing Related: Inflows (Outflows) | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| **Net Cash Flow Before Subsidiary A B C D and E Cash Transfers** | | | (91,000) | (916,500) | (384,900) | (377,000) | (1,087,500) | (534,000) | (50,000) | (565,000) | (336,000) | (6,439,974) |
| | | | | | | | | | | | | |
| **Cash Transfers From Subsidiary A B C D and E** | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| **Net Cash Flow** | | | (91,000) | (916,500) | (384,900) | (377,000) | (1,087,500) | (534,000) | (50,000) | (565,000) | (336,000) | (6,429,974) |
| | | | | | | | | | | | | |
| Bank Balance | | | 427,391 | 336,361 | (384,900) | (966,099) | (1,341,499) | (2,429,599) | (2,964,499) | (3,014,499) | (3,579,499) | 425,381 |
| **Ending Bank Balance [1]** | 427,391 | | 336,301 | (580,199) | (965,099) | (1,342,499) | (2,429,599) | (2,964,499) | (3,014,499) | (3,579,499) | (6,603,673) | (6,603,673) |

1. UBP received a cash deposit of $1314,093.07 but it has not verified. If it is determined to be an asset of UBP the starting cash balance will be adjusted up for that amount and the Interim DIP and Total DIP amounts will be reduced by such amount, and the ending bank balance for each week will be reduced accordingly.

# EXHIBIT B

## DIP GUARANTY

[see attached]

# GUARANTY

GUARANTY (this "Guaranty"), dated as of August 3, 2010 by the undersigned parties (the "Guarantors") in favor of UBP Acquisition Corp. (together with its successors and assigns "Payee").

FOR VALUE RECEIVED, and in consideration of any loans, advances, payments, extensions of credit and/or other financial accommodations, now or hereafter made, granted or extended by Payee pursuant to that certain Senior Secured, Super-Priority Debtor-In-Possession Promissory Note executed by Universal Building Products, Inc. (the "Maker"), Don De Cristo Concrete Accessories, Inc., Universal Form Clamp, Inc., Form-Co. Inc., and Accubrace, Inc. in favor of the Payee (as amended, modified, extended, supplemented, renewed or restated, the "Note"; all capitalized terms used and not otherwise defined in this Guaranty shall have the respective meanings ascribed to them in the Note), and in consideration of any obligations, now or hereafter incurred by Maker to Payee, the undersigned hereby absolutely and unconditionally guarantees to Payee the prompt and complete payment when due in accordance with its terms (whether by reason of demand, maturity, acceleration or otherwise) of any and all of Maker's Obligations (including the DIP Obligations) to Payee of every kind and character, now existing or hereafter arising, absolute or contingent, joint or several or joint and several, secured or unsecured, due or not due, direct or indirect, expressed or implied in law, contractual or tortious, liquidated or unliquidated, at law or in equity, or otherwise, and whether now or hereafter incurred or given by the Maker as principal, surety, endorser, guarantor or otherwise, and whether created directly or acquired by Payee by assignment or otherwise (collectively, the "Guaranteed Indebtedness"). The Guarantors obligations hereunder are made jointly and severally with each other.

Notice of the acceptance of this Guaranty, and of the incurrence of any of the Guaranteed Indebtedness, and presentment, demand for payment, notice of dishonor, protest, notice of protest and of default by the Maker are hereby waived by the Guarantors. The Guarantors hereby agree that (a) this Guaranty is a guaranty of payment and not of collection and the obligations of the Guarantors under this Guaranty may be enforced directly against the Guarantors independently of and without proceeding against the Maker and/or any other guarantor(s) of any or all of the Guaranteed Indebtedness or foreclosing any collateral pledged to Payee and (b) Payee may from time to time in their sole and absolute discretion, without notice to or consent of the Guarantors and without releasing the Guarantors from any of its obligations under this Guaranty, (i) extend the time of payment, change the interest rates and renew or change the manner, place, time and/or terms of payment of and make any other changes with respect to any or all of the Guaranteed Indebtedness, (ii) sell, exchange, release, surrender and otherwise deal with any collateral pledged to Payee by the Maker or any other person or entity to secure any or all of the Guaranteed Indebtedness, (iii) release and otherwise deal with any other guarantor(s) of any or all of the Guaranteed Indebtedness, (iv) exercise or refrain from exercising any rights against the Maker and/or any other guarantor(s) of any or all of the Guaranteed Indebtedness and otherwise act or refrain from acting with respect to the Maker and/or any other guarantor(s) of any or all of the Guaranteed Indebtedness and/or (v) settle or compromise any or all of the Guaranteed Indebtedness with Maker.

The Guarantors shall not exercise any right of subrogation, reimbursement, contribution or indemnity whatsoever with respect to the Maker and/or any other guarantor(s) of any or all of the Guaranteed Indebtedness and not exercise any right of recourse to or with respect to any assets or property of the Maker and/or any other guarantor(s) of any or all of the Guaranteed Indebtedness or to any collateral or other security for the payment of any or all of the Guaranteed Indebtedness until (a) all of the Guaranteed Indebtedness shall have been fully, finally and indefeasibly paid in cash, (b) all of the financing arrangements and commitments between Maker and the Payee under the Note or any other DIP Loan Documents shall have been terminated, and (c) this Guaranty has been terminated. Nothing shall discharge or satisfy the liability of the Guarantors under this Guaranty except the full performance and payment in cash of all of the Guaranteed Indebtedness and all obligations of the Guarantors under this Guaranty.

Payee's books and records showing the account between itself and the Maker shall be admissible in evidence in any action or proceeding and shall constitute conclusive evidence of the items set forth therein in the absence of demonstrable error. No invalidity, irregularity or unenforceability of any or all of the Guaranteed Indebtedness or of any collateral or any other guarantees therefor shall affect, impair or be a defense to this Guaranty. The liability of the Guarantors under this Guaranty shall in no way be affected or impaired by any acceptance by Payee of any collateral for or other guarantees of any of the Guaranteed Indebtedness, or by any failure, neglect or omission on the part of Payee to realize upon or protect any of the Guaranteed Indebtedness or any collateral therefor or guarantees thereof. No act of commission or omission of any kind by Payee (including, without limitation, any act or omission which impairs, reduces the value of, releases or fails to perfect a lien upon, any collateral for or guarantee of any of the Guaranteed Indebtedness) shall affect or impair the obligations of the Guarantors under this Guaranty in any manner.

Guarantors hereby waive any right to require Payee to (a) proceed against Maker or any other person or entity, (b) marshal assets or proceed against or exhaust any security held from Maker or any other person or entity, (c) give notice (other than as may be required by applicable law) of the terms, time and place of any public or private sale or other disposition of personal property security held from Maker or any other person or entity, (d) take any action or pursue any other remedy in Payee's power and/or (e) make any presentment or demand for performance, or give a ny notice of nonperformance, protest, notice of protest or notice of dishonor under this Guaranty or in connection with any obligations or evidences of indebtedness held by Payee as security for or which constitute in whole or in part the Guaranteed Indebtedness, or in connection with the creation of new or additional Guaranteed Indebtedness.

Guarantors hereby waive any defense (other than defense of payment) to its obligations under this Guaranty based upon or arising by reason of (a) any disability or other defense (other than defense of payment) of Maker or any other person or entity, (b) the cessation or limitation from any cause whatsoever, other than indefeasible payment in cash in full, of the Guaranteed Indebtedness, (c) any lack of authority of any officer, director, member, manager, partner, agent or any other person or entity acting or purporting to act on behalf of Maker, or any defect in the formation of Maker, (d) the application by Maker of the proceeds of any of the Guaranteed Indebtedness for purposes other than the purposes represented by Maker to, or intended or

understood by, Payee and/or the Guarantors, (e) any act or omission by Payee which directly or indirectly results in or aids the discharge of Maker or all or any portion of the Guaranteed Indebtedness by operation of law or otherwise, or which in any way impairs or suspends any rights or remedies of Payee against Maker, (f) any impairment of the value of any interest in any security for the Guaranteed Indebtedness or any portion thereof, including without limitation, the failure to obtain or maintain perfection or recordation of any interest in any such security, the release of any such security without substitution and/or the failure to preserve the value of, or to comply with applicable law in disposing of, any such security, (g) any modification of any or all of the Guaranteed Indebtedness, in any form whatsoever, including, without limitation, the renewal, extension, acceleration or other change in time for payment of, or other change in the terms of, the Guaranteed Indebtedness or any portion thereof, including increasing or decreasing the rate of interest thereon and/or (h) any requirement that Payee give any notice of acceptance of this Guaranty. Guarantors hereby further waive all rights and defenses (other than defense of payment) which Guarantor may have arising out of (a) any election of remedies by Payee, even though that election of remedies destroys Guarantors' rights of subrogation or Guarantors' rights to proceed against Maker for reimbursement or (b) any loss of rights Guarantors may suffer by reason of any rights, powers or remedies of Maker in connection with any anti-deficiency laws or any other laws limiting, qualifying or discharging the Guaranteed Indebtedness, whether by operation of law or otherwise, including any rights which Guarantors may have to a fair market value hearing to determine the size of a deficiency following any foreclosure sale or other disposition of any real property security for any portion of the Guaranteed Indebtedness. Guarantors hereby further waive any and all other suretyship defenses.

No delay by Payee in exercising any of its options, powers or rights under this Guaranty and/or any partial or single exercise thereof shall constitute a waiver thereof. No waiver of any of Payee's rights under this Guaranty and no modification or amendment of this Guaranty shall be deemed to be made by Payee unless the same shall be in writing, duly signed by Payee and each such waiver (if any) shall apply only with respect to the specific instance involved and shall in no way impair Payee's rights or the obligations of the Guarantors to Payee in any other respect at any other time. In the event any one or more of the provisions contained in this Guaranty should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions of this Guaranty shall not be affected or impaired thereby.

This Guaranty is a continuing guaranty which shall remain in full force and effect and shall not be terminable so long as (a) any Guaranteed Indebtedness shall remain outstanding and/or unpaid, or (b) Payee shall have any commitment or obligation to make loans, extend credit or grant other financial accommodations to Maker under the DIP Loan Documents. The dissolution of any Guarantor shall not effect a termination of this Guaranty. If claim is ever made on Payee for repayment or recovery of any amount or amounts received by Payee in payment or on account of any of the Guaranteed Indebtedness (including payment under a guaranty or from application of collateral) and Payee repays all or part of said amount by reason of (a) any judgment, decree or order of any court or administrative body having jurisdiction over Payee or any of Payee's property, as the case may be, or (b) any settlement or compromise of any such claim effected by Payee with any such claimant (including, without limitation, the Maker), then and in such event the Guarantors agree that any such judgment, decree, order,

- 3 -

settlement or compromise shall be binding on the Guarantors, notwithstanding any cancellation of any note or other instrument or agreement evidencing such Guaranteed Indebtedness or of this Guaranty, and the Guarantors shall be and remain liable to Payee in each case under this Guaranty for the amount so repaid or recovered to the same extent as if such amount had never originally been received by Payee. This Guaranty shall continue to be effective or be reinstated, as the case may be, if (a) at any time any payment of any of the Guaranteed Indebtedness is rescinded or must otherwise be returned by Payee upon the insolvency, bankruptcy or reorganization of the Maker or the Guarantors or otherwise, all as though such payment had not been made or (b) this Guaranty is released or the liability of the Guarantors under this Guaranty is reduced in consideration of a payment of money or transfer of property or grant of a security interest by Maker, the Guarantors or any other person or entity and such payment, transfer or grant is rescinded or must otherwise be returned by Payee upon the insolvency, bankruptcy or reorganization of such person or entity or otherwise, all as though such payment, transfer or grant had not been made.

This is an unconditional and irrevocable waiver of any rights and defenses each Guarantor may have if all or part of the Guaranteed Indebtedness are secured by real property. These rights and defenses are based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure and any similar law of the State of New York or any other jurisdiction.

WITHOUT LIMITING THE GENERALITY OF ANY OTHER WAIVER OR OTHER PROVISION SET FORTH IN THIS GUARANTY, EACH GUARANTOR HEREBY WAIVES, TO THE FULLEST EXTENT SUCH WAIVER IS PERMITTED BY APPLICABLE LAW, ANY AND ALL BENEFITS OR DEFENSES ARISING DIRECTLY OR INDIRECTLY UNDER ANY ONE OR MORE OF CALIFORNIA CIVIL CODE §§ 2787, 2799, 2808, 2815, 2819, 2820, 2821, 2822, 2838, 2839, 2847, 2848, AND 2855, CALIFORNIA CODE OF CIVIL PROCEDURE §§ 580A, 580B, 580C, 580D, AND 726, AND CHAPTER 2 OF TITLE 14 OF THE CALIFORNIA CIVIL CODE OR ANY SIMILAR LAWS OF THE STATE OF NEW YORK OR ANY OTHER APPLICABLE JURISDICTION.

WITHOUT LIMITING THE GENERALITY OF ANY OTHER WAIVER OR OTHER PROVISION SET FORTH IN THIS GUARANTY, EACH GUARANTOR WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ALL RIGHTS AND DEFENSES ARISING OUT OF AN ELECTION OF REMEDIES BY PAYEE EVEN THOUGH SUCH ELECTION OF REMEDIES, SUCH AS A NONJUDICIAL FORECLOSURE WITH RESPECT TO SECURITY FOR THE GUARANTEED INDEBTEDNESS, HAS DESTROYED SUCH GUARANTOR'S RIGHTS OF SUBROGATION AND REIMBURSEMENT AGAINST MAKER OR ANY OTHER GUARANTOR (INCLUDING ANY OTHER GUARANTOR) BY THE OPERATION OF APPLICABLE LAW, INCLUDING §580D OF THE CALIFORNIA CODE OF CIVIL PROCEDURE OR ANY SIMILAR LAWS OF THE STATE OF NEW YORK OR ANY OTHER APPLICABLE JURISDICTION.

Without limiting the generality of any other waiver or other provision set forth in this Guaranty, each Guarantor hereby also agrees, to the fullest extent permitted by applicable law, to the following waivers:

a) The right of Payee to enforce this Guaranty is absolute and is not contingent upon the genuineness, validity or enforceability of the Guaranteed Indebtedness or any of the DIP Loan Documents. Each Guarantor waives all benefits and defenses it may have under California Civil Code Section 2810 or any similar laws of the State of New York or any other applicable jurisdiction and agrees that the rights of Payee under this Guaranty shall be enforceable even if Maker had no liability at the time of execution of the DIP Loan Documents or the Guaranteed Indebtedness is unenforceable in whole or in part, or any Debtor Entity ceases to be liable with respect to all or any portion of the Guaranteed Indebtedness (other than by virtue of the payment in full in cash of the Guaranteed Indebtedness).

b) Each Guarantor waives all benefits and defenses it may have under California Civil Code Section 2809 or any similar laws of the State of New York or any other applicable jurisdiction with respect to its obligations under this Guaranty and agrees that the rights of Payee under the DIP Loan Documents will remain enforceable even if the amount guarantied hereunder is larger in amount and more burdensome than that for which Maker is responsible. The enforceability of this Guaranty against each Guarantor shall continue until repayment in full in cash of the Guaranteed Indebtedness and shall not be limited or affected in any way by any impairment or any diminution or loss of value of any security or collateral for the Debtor Entities' obligations under the DIP Loan Documents, from whatever cause, the failure of any security interest in any such security or collateral, or any disability or other defense of Maker, any other guarantor (including any other Guarantor) of the Maker's obligations under any other DIP Loan Document, any pledgor of collateral securing any or all of the obligations or any other Person in connection with the Guaranteed Indebtedness, or any other person in connection with the DIP Loan Documents.

c) Each Guarantor waives all benefits and defenses it may have under California Civil Code §§ 2845, 2849 and 2850 or any similar laws of the State of New York or any other applicable jurisdiction with respect to its obligations under this Guaranty, including the right to require Payee to (1) proceed against Maker, any guarantor of Maker's obligations under any DIP Loan Document (including any other Guarantor), any other pledgor of collateral for any Person's obligations to Payee or any other Person in connection with the Guaranteed Indebtedness, (2) proceed against or exhaust any other security or collateral Payee may hold, or (3) pursue any other right or remedy for such Guarantor's benefit, and agrees that Payee may exercise their rights under this Guaranty without taking any action against Maker, any other guarantor (including any other Guarantor) of the Debtor Entities' obligations under the DIP Loan Documents, any pledgor of collateral securing any or all of the obligations or any other Person in connection with the Guaranteed Indebtedness, and without proceeding against or exhausting any security or collateral Payee may hold.

This Guaranty shall be understood to be for the benefit of Payee and for such other person or persons as may from time to time become or be the holder or owner of any of the Guaranteed Indebtedness or any interest therein and this Guaranty shall be transferable to the same extent and with the same force and effect as any of the Guaranteed Indebtedness may be transferable in accordance with the Note. This Guaranty cannot be changed or terminated orally, shall be binding on the heirs, executors, personal representatives, successors and assigns of the Guarantor and shall inure to the benefit of Payee's successors and permitted assigns. The Guarantor may not assign or delegate any of its rights, obligations or duties under this Guaranty without the prior written consent of Payee.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN ANY OF THE DIP LOAN DOCUMENTS, IN ALL RESPECTS, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS GUARANTY AND THE OBLIGATIONS ARISING THEREFROM OR RELATED TO OR IN CONNECTION THEREWITH SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN THAT STATE) AND ANY APPLICABLE LAWS OF THE UNITED STATES OF AMERICA (INCLUDING THE BANKRUPTCY CODE). EACH GUARANTOR HEREBY CONSENTS AND AGREES THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN ANY GUARANTOR AND PAYEE PERTAINING TO THIS GUARANTY OR ANY OF THE OTHER DIP LOAN DOCUMENTS OR TO ANY MATTER ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY OF THE OTHER DIP LOAN DOCUMENTS; PROVIDED, THAT THE PAYEE AND THE EACH DEBTOR ENTITY ACKNOWLEDGE THAT ANY APPEALS FROM THE BANKRUPTCY COURT MAY HAVE TO BE HEARD BY A COURT OTHER THAN THE BANKRUPTCY COURT; PROVIDED, FURTHER, THAT NOTHING IN THIS GUARANTY SHALL BE DEEMED OR OPERATE TO PRECLUDE PAYEE FROM BRINGING SUIT OR TAKING OTHER LEGAL ACTION IN ANY OTHER JURISDICTION TO REALIZE ON THE COLLATERAL OR ANY OTHER SECURITY FOR THE DIP OBLIGATIONS, OR TO ENFORCE A JUDGMENT OR OTHER COURT ORDER IN FAVOR OF PAYEE AFTER RELIEF FROM THE AUTOMATIC STAY TO THE EXTENT SUCH AUTOMATIC STAY IS APPLICABLE. EACH GUARANTOR EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND EACH GUARANTOR HEREBY WAIVES ANY OBJECTION THAT ANY GUARANTOR MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT.

Notwithstanding anything to the contrary contained herein, this Guaranty and the rights provided herein are subject to applicable bankruptcy law and orders entered by the Bankruptcy Court.

Guaranty

*[Signature page follows]*

Guaranty

Executed as of the 3rd day of August, 2010.

DON DE CRISTO CONCRETE ACCESSORIES, INC., a California Corporation

By:_____
Name: TfTCh
Title: CEO

UNIVERSAL FORM CLAMP, INC., a Delaware Corporation

By:_____
Name: THTCh
Title: CEO

FORM-CO. INC., a Delaware Corporation

By:_____
Name: TfTCh
Title: CEO

ACCUBRACE, INC., a Delaware Corporation

By:_____
Name: 3JfCh
Title: CEO

- 8 -

## EXHIBIT C

### Chapter 11 Plan of Liquidation Term Sheet
(Defined terms used in this Exhibit C shall have the meanings assigned to them in the Restructuring Agreement)

**Classification and Treatment of Claims:**

| | |
|---|---|
| Administrative Claims | Paid in full pursuant to usual and customary chapter 11 plan terms, consistent with the budget delivered in connection with the DIP Note. |
| Priority Tax Claims | Paid in full pursuant to usual and customary chapter 11 plan terms or otherwise consistently with 11 U.S.C. § 1129(a)(9), consistent with the budget delivered in connection with the DIP Note. |
| DIP Claims | May be impaired and receive the proceeds of the collateral (in which it maintains a super-priority priority interest) remaining in the bankruptcy estates after the consummation of the sale process contemplated in the Bankruptcy Transaction Documents, subject to the costs of such liquidation as set forth in a liquidating trust agreement. |
| Senior Secured Claims | May be impaired and receive any proceeds of the collateral (in which it maintains a first priority interest) remaining in the bankruptcy estates after repayment and satisfaction in full of DIP Claims, subject to the costs of such liquidation as set forth in a liquidating trust agreement. |
| Other Secured Claims | Shall receive the property securing such claim or such other agreed upon treatment. |
| Priority Claims | Shall receive such treatment as required by the Bankruptcy Code for purposes of confirming the Plan, consistent with the budget delivered in connection with the DIP Note. |
| Non-Priority Unsecured Claims | Shall not receive any distribution. |
| Intercompany Claims | Shall not receive any distribution |
| Equity Interests | Shall not receive any distribution |

| | |
|---|---|
| **Means for Implementation:** | The Plan shall be implemented by customary means, including establishment of a Liquidating Trust vested with any remaining property of the bankruptcy estates, including all causes of action. The Trust shall be funded in accordance with the Final DIP Order and administered by a Liquidating Trustee proposed by the Company and approved as part of the Plan. Subject to the terms of the Plan and governing trust agreement, the Trust shall be authorized to liquidate any remaining assets, prosecute causes of action, address tax matters, and make distributions under the Plan. |
| **Exculpation/Releases:** | The Plan shall provide for the exculpation of the Company, the bankruptcy estates, the Liquidating Trust, the Liquidating Trustee, the DIP Lenders, the Senior Secured Lenders and Agent, and their respective present or former officers, directors, shareholders, employees, advisors, attorneys or agents acting in such capacity or their respective affiliates with respect those matters related to the contemplated transactions and relief in a form usual and customary in chapter 11 plans. |
| | The Company and the bankruptcy estates shall provide a broad release to (a) the current and former directors, officers and employees (in their capacities as such) of any of the debtors; (b) the debtors' agents and professionals; (c) the DIP Lender; (d) the Senior Secured Lenders and Agent; and (e) the Liquidating Trustee under the Liquidating Trust. |
| | The Plan shall also provide for mutual releases among (a) the current and former directors, officers and employees (in their capacities as such) of any of the debtors; (b) the debtors' agents; (c) the DIP Lender; (d) the Senior Secured Lenders and Agent; (e) the Liquidating Trustee under the Liquidating Trust; and (f) those creditors entitled to vote to accept the Plan that do vote to accept the Plan and not otherwise able to opt out of such mutual release provisions. |
| **Executory Contracts:** | Any executory contracts or unexpired leases not previously assumed and assigned shall be rejected upon the consummation of the Plan. |
| **Other Plan Provisions:** | The Plan shall contain (i) such other provisions as are usual and customary in chapter 11 plans; and (ii) such other terms as to which the Company and the Senior |

Secured Lenders may agree.

**EXHIBIT D**

**FORM OF FINAL ORDER**

**[see attached]**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| UNIVERSAL BUILDING PRODUCTS, | ) | Case No. 10-_____ (___) |
| INC., *et al.*,[1] | ) |  |
|  | ) | Joint Administration Requested |
| Debtors. | ) |  |
|  | ) |  |

## FINAL ORDER (A)
## AUTHORIZING AND APPROVING DEBTORS'
## POST-PETITION FINANCING; (B) GRANTING
## LIENS AND SECURITY INTERESTS AND PROVIDING
## SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (C)
## AUTHORIZING USE OF CASH COLLATERAL AND AFFORDING
## ADEQUATE PROTECTION; AND (D) MODIFYING AUTOMATIC STAY

This matter came before this Court on the Debtors' Motion for Entry and Interim and

Final Orders: (A) Authorizing and Approving Postpetition Financing; (B) Granting Liens and

Security Interests and Providing Superpriority Administrative Expense Status; (C) Authorizing

Use of Cash Collateral and Affording Adequate Protection; (D) Modifying Automatic Stay; and

(E) Scheduling a Final Hearing (the "DIP Motion") [Docket No. __], pursuant to 11 U.S.C. §

§ 105, 361, 362, 363 and 364 of the United States Bankruptcy Code, 11 U.S.C. § § 101, *et. seq.*

(as amended, the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 2002, 4001(c)

and (d) (as amended, the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Universal Building Products, Inc. (7884); (ii) Accubrace, Inc. (3418); (iii) Don De Cristo Concrete Accessories, Inc. (7547); (iv) Form-Co, Inc. (0079); and (v) Universal Form Clamp, Inc. (3003). The address of the Debtors' corporate headquarters is 15172 Goldenwest Circle, Westminster, California 92683.

Delaware (the "Local Rules").  The DIP Motion requests the entry of a final order (the "Final Order"):

(a)      authorizing and approving postpetition financing (the "DIP Facility") on the terms and conditions set forth in this Final Order and the DIP Note (as hereinafter defined), from UBP Acquisition Corp. (together with any parties who subsequently become lenders in accordance with the terms of the DIP Note, the "DIP Lenders") to permit, among other things, (i) the management and preservation of the Debtors' assets and properties, (ii) a sale of certain of those assets (the "Proposed Sale") at an auction (the "Auction") pursuant to an order entered by the Court approving bid procedures (the "Bid Procedures") related thereto, and (iii) the Debtors to confirm and effectuate a chapter 11 plan of liquidation on the terms agreed to by the Prepetition Lenders and Debtors (the "Plan");[2]

(b)      authorizing the Debtors to enter into, execute, deliver and comply in all respects with the DIP Note and the other DIP Facility Documents, and approval of all of the terms and conditions of the DIP Note and the other DIP Facility Documents (as hereinafter defined);

(c)      providing that the financing under the DIP Note, including, without limitation, as to all principal, accrued interest, unpaid fees and expenses, indemnification, and all other amounts due from time to time under the documents referred to below, including the DIP Obligations (collectively, the "DIP Facility Obligations"):

(i)      have priority, pursuant to Bankruptcy Code § 364(c)(1), over any and all administrative expenses, subject only to the Carve-Out (as defined below), which allowed

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Note or Interim Order (as hereinafter defined).

superpriority claims of the DIP Lender shall be payable from and have recourse to all prepetition and postpetition property of the Debtors, as provided for herein; and

(ii)     pursuant to Bankruptcy Code § § 364(c)(2), (c)(3) and (d), be and be deemed to be secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior security interests in, and liens upon (all such liens and security interests granted to the DIP Lenders, pursuant to this Final Order and the DIP Facility Documents, the "DIP Facility Liens"), all prepetition and postpetition assets of the Debtors, whether now existing or hereafter acquired, including all of the real, personal (tangible and intangible) and mixed property (including equity interests) and all monies and other property of any kind received on account thereof, and all products and proceeds thereof (including, upon and following the approval of this Final Order by the Court, any and all Avoidance Actions or other claims or causes of action under Chapter 5 of the Bankruptcy Code and proceeds or property recovered in respect thereof (the "Avoidance Actions")) in which DIP Facility Liens are granted whether pursuant to this Final Order, or otherwise, in each case as security for the DIP Facility Obligations (each of the foregoing, the "Collateral"), but specifically (i) being subject solely to the Carve-Out to the extent provided for below, and (ii) receiving a junior lien on all Collateral encumbered by the Prior Liens (as such term is defined in the Interim Order), pursuant to Bankruptcy Code § 364(c)(2), subject to the provisions of Paragraphs 6 and 7 below;

(d)     authorizing the Debtors' use of the Prepetition Lenders' (as defined below) cash collateral and granting adequate protection on account of the Prepetition Loan Documents (as defined below) under Bankruptcy Code § § 105, 361, 362 and 363;

(e)     authorizing the DIP Lenders to exercise rights and remedies under the DIP Facility Documents upon the occurrence and continuance of an Event of Default, including

3

without limitation, upon the entry of an order or orders granting relief from the automatic stay applicable under Bankruptcy Code § 362;

(f)     subject to entry of this Final Order, authorizing the waiver by the Debtors of any right to seek to surcharge against the Collateral pursuant to Bankruptcy Code § 506(c);

(g)     authorizing the guarantors party to that certain guaranty, dated as of August 3, 2010, in favor of UBP Acquisition Corp. (together with its successors and assigns "Payee"), on a final basis to guaranty on a secured basis the obligations of UBP with respect to the loans and other financial accommodations made from time to time by the DIP Lenders under or pursuant to the DIP Note and the other DIP Facility Documents; and

(h)     granting certain related relief.

The Court having held an interim hearing (the "Interim Hearing") on the DIP Motion and use of Cash Collateral on August 4, 2010, and the Court having found that notice of the Interim Hearing and the interim relief requested therein was provided by the Debtors pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1) and Rule 2002-1 of the Local Rules on the following parties: (a) the Office of the United States Trustee for the District of Delaware; (b) the Internal Revenue Service; (c) the Securities and Exchange Commission; (d) the Prepetition Lenders; (e) the creditors holding the thirty (30) largest unsecured claims against the Debtors' estates on a consolidated basis; (f) UBP Acquisition Corp. ("NewCo"), 333 South Grand Ave, Floor 28, Los Angeles, CA 90071, Attn: Jordon Kruse and David Quick, (g) Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654 Attention: David L. Eaton, Esq., Christopher J. Greeno, P.C., and David A. Agay, Esq., counsel to the Administrative Agent (as defined below) and NewCo; (h) any known party that has filed a lien against any of the Debtors' assets; (i) the Debtors' landlords; and (j) all parties who filed requests for notices pursuant to Bankruptcy Rule 2002 in

4

the Debtors' chapter 11 cases. The Court having held a final hearing (the "DIP Hearing") on the DIP Motion on _____, 2010; and the Court having found that notice of the DIP Motion and the relief requested therein was provided by the Debtors pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1) and Local Rule 2002-1, on the following parties: (a) U.S. Trustee; (b) the entities listed on the Consolidated List of Creditors Holding Largest Thirty Unsecured Claims Against the Debtors on a consolidated basis pursuant to Bankruptcy Rule 1007(d); (c) the Internal Revenue Service; (d) the Securities and Exchange Commission; (e) counsel to the Administrative Agent; (f) any known party that has filed a lien against any of the Debtors' assets; (g) counsel to the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Committee"); (h) the taxing authorities to which the Debtors pay taxes; (i) the Debtors' landlords and (j) all parties who filed requests for notices pursuant to Bankruptcy Rule 2002 in the Debtors' chapter 11 cases (collectively, the "Final Notice Parties"). The Court having considered all the pleadings filed with this Court; and having overruled all unresolved objections to the relief requested in the DIP Motion; and upon the record made by the Debtors and other parties in interest at the Interim and Final Hearings, including the DIP Motion, and other filings and pleadings in the Debtors' chapter 11 cases, and after due deliberation and consideration and good and sufficient cause appearing therefor;

BASED ON THE RECORD OF THE INTERIM AND FINAL HEARINGS, WITH APPEARANCES OF ALL INTERESTED PARTIES, THE DEBTORS' STIPULATIONS CONTAINED HEREIN AND THE DIP MOTION, THE COURT HEREBY FINDS:[3]

A.    Petition Date. On August 4, 2010 (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy

---

[3]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Fed. R. Bankr. P. 7052.

Court for the District of Delaware (the "Bankruptcy Court" or this "Court"). The Debtors are functioning as debtors-in-possession pursuant to Bankruptcy Code § § 1107 and 1108.

B.  Jurisdiction and Venue. Consideration of the DIP Motion constitutes a "core proceeding" as defined in 28 U.S.C. §157(b)(2)(M). This Court has core jurisdiction over the chapter 11 cases, this proceeding, and the parties and property affected hereby pursuant to 28 U.S.C. § § 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409.

C.  Notice. Notice of the DIP Hearing, the DIP Motion, the relief requested therein and proposed entry of this Final Order has been provided to the Final Notice Parties. Under the circumstances, notice of the Hearing and the relief requested in the DIP Motion is due and sufficient notice and complies with Bankruptcy Code § 102(1), Bankruptcy Rule 2002, 4001(c), and 4001(d), and the Local Rules. In light of the nature of the relief requested in the DIP Motion, no other or further notice is necessary.

D.  Prepetition Operations. Prior to the Petition Date, the Debtors ceased all operations other than the Continuing Business (as defined below).

E.  Cooperation. The Debtors continue to assist, cooperate and consult with, the Administrative Agent in taking possession of the Specified Equipment, as such term is defined in that certain Strict Foreclosure Agreement, dated as of August 3, 2010, by and among the Borrowers, the Prepetition Lenders and the Administrative Agent, attached hereto as **Exhibit 3**.

F.  Committee. On _____, 2010, the U.S. Trustee appointed the Committee.

G.  The Debtors' Stipulations as to Existing Secured Debt. Subject to the limitations contained in Paragraph 11 of this Final Order, the Debtors, for themselves, their estates and all representatives of such estates, admit, stipulate, acknowledge and agree that:

6

(a)     Credit Agreement.  Pursuant to that certain Credit Agreement, dated as of April 28, 2006 as amended by (i) that certain First Amendment to Credit Agreement dated as of March 26, 2009, (ii) that certain Second Amendment to Credit Agreement dated as of April 13, 2009, and (iii) that certain Third Amendment to Credit Agreement and Waiver dated as of January 29, 2010  (such agreement, as amended, without giving effect to any other amendments, restatements, supplements or modifications thereto, the "Credit Agreement"), among Universal Building Products, Inc. ("UBP"), certain subsidiary borrowers party thereto (collectively, the "Subsidiary Borrowers" and together with UBP, the "Borrowers"), the several lenders from time to time party thereto which, as of the Petition Date, consisted solely of NewCo (collectively, the "Prepetition Lenders"), and OCM FIE L.P., as the successor to the administrative agent for the Prepetition Lenders (in such capacity, the "Administrative Agent"), the Prepetition Lenders made loans and other financial accommodations to or for the benefit of the Debtors.  As of the Petition Date, the Debtors were truly and justly indebted to the Prepetition Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $40,331,692.45 in respect of loans and other financial accommodations made, by the Prepetition Lenders pursuant to the Prepetition Loan Documents (as hereinafter defined), plus accrued and unpaid interest thereon, any cash management obligations owed to any Prepetition Lender and fees and expenses (including fees and expenses of attorneys and advisors) as provided in the Prepetition Loan Documents.  In connection with the Credit Agreement, the Borrowers and the Administrative Agent entered into: (A) that certain Security Agreement, dated as of April 28, 2006 (the "Security Agreement"), under which the Administrative Agent and Prepetition Lenders received a security interest in substantially all of the Debtors' real and personal assets, then or thereafter acquired, including, without limitation, bank accounts, cash and cash equivalents, chattel paper (including electronic chattel paper), certain deposit accounts, copyright licenses, copyrights, deposit accounts, documents, equipment, fixtures, general intangibles, goods, instruments, intellectual property, inventory, investment property, letter-of-credit rights, material contracts, payment intangibles, patent licenses, patents, trademark licenses, trademarks, software, supporting obligations, and other tangible and intangible personal property (including any setoff rights described in the Credit Agreement and arising by operation of law) (collectively, the "Security Collateral"), including, for the avoidance of doubt, any and all products and proceeds of the Security Collateral; and (B) that certain Pledge Agreement, dated as of April 28, 2006 (the "Pledge Agreement"), under which the Borrowers pledged and granted the Administrative Agent (on behalf of the Prepetition Lenders) a continuing security interest in any and all right, title and interest of each Borrower in certain Pledged Collateral (as such term is defined in the Pledge Agreement) (such Pledged Collateral, together with the Security Collateral, the "Prepetition Collateral").  In addition, the Debtors entered into certain additional guaranty, collateral and ancillary documentation with the Administrative Agent and Prepetition Lenders (such documentation, together with the Credit Agreement, Security Agreement, and Pledge Agreement, the "Prepetition Loan Documents" and the obligations under the Prepetition Loan Documents being the "Prepetition Obligations").

(b)     Validity and Priority of Prepetition Liens, Claims, and Prepetition Obligations.  As security for the Prepetition Obligations, the Debtors granted to the

7

Administrative Agent (on behalf of the Prepetition Lenders) valid and perfected first-priority continuing liens on and security interests (the "Prepetition Liens") in the Prepetition Collateral, all as more fully set forth in the Prepetition Loan Documents. For the avoidance of doubt, the Administrative Agent (on behalf of the Prepetition Lenders) received perfected first priority liens in all products and proceeds of the Prepetition Collateral, including the funds and any other proceeds of the Prepetition Collateral in any of the Debtors' deposit accounts. Subject in all respects only to (x) the Carve-Out (as defined herein) and (y) the Investigation Period set forth in Paragraph 11 hereof:

(i)      the Prepetition Liens are valid, binding, enforceable, non-avoidable, and perfected liens that have priority over any and all other security interests in the Prepetition Collateral except for certain prior liens permitted under the Prepetition Loan Documents (to the extent any valid, properly perfected, unavoidable, and senior liens exist, they are referred to herein as the "Prior Liens");

(ii)      the Prepetition Liens are not subject to avoidance, disallowance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(iii)      the Prepetition Obligations constitute legal, valid, binding and non-avoidable obligations of the Debtors that, except for the stay of enforcement arising from Bankruptcy Code § 362, are enforceable in accordance with the terms of the Prepetition Loan Documents; and

(iv)      no offsets, defenses, challenges, objections, claims, or counterclaims of any kind or nature to any of the Prepetition Obligations or the Prepetition Liens exist, and no portion of the Prepetition Obligations or the Prepetition Liens is subject to avoidance, recharacterization or subordination pursuant to the applicable provisions of the Bankruptcy Code or applicable non-bankruptcy law or otherwise, and the Debtors and their estates have no offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, Avoidance Actions and any proceeds thereof, against the Administrative Agent or any of the Prepetition Lenders which would in any way affect the validity, enforceability and non-avoidability of the Prepetition Obligations and the Prepetition Liens under the Prepetition Loan Documents.

(c)      Release of Claims. The Debtors hereby waive and release any and all claims, offsets, defenses, challenges, objections or counterclaims arising under the Prepetition Loan Documents against the Administrative Agent, the Prepetition Lenders, or their officers, directors, employees, attorneys, representatives, parent, shareholders, affiliates, predecessors, successors, or assigns, whether known or unknown, at law or in equity.

(d)      Budget. The Debtors have in good faith provided the Budget. The Debtors agree not to incur any expenses postpetition other than expenses incurred in accordance with the Budget without the prior written consent of the Administrative Agent.

8

(e)     The Debtors' Stipulations shall be binding on the Debtors and any of their successors-in-interest and assigns (including without limitation a receiver, administrator, or trustee appointed in this case or in any jurisdiction), but are subject to the provisions contained in Paragraph 11 below.

(f)     The Administrative Agent, on behalf of the Prepetition Lenders, has indicated a willingness to agree and consent to permit the use of Cash Collateral by the Debtors subject to (i) the entry of this Final Order and compliance by the Debtors of the terms contained herein and (ii) findings by the Court that such use of Cash Collateral is essential to the Debtors' estates, that the terms of such use of Cash Collateral were negotiated in good faith and at arm's length, and that the Administrative Agent's liens, claims, and other protections granted pursuant to this Final Order will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Final Order or any other order.

H.     Findings Regarding Postpetition Financing.

(a)     *Debtors' Request.* The Debtors have requested from the DIP Lenders, and the DIP Lenders are willing to extend, certain loans, advances and other financial accommodations, as more particularly described and on the terms and conditions set forth in the DIP Motion and this Final Order and the DIP Facility Documents.

(b)     *Need for Postpetition Financing.* The Debtors have an immediate need to use the DIP Facility and the Prepetition Collateral (including the Cash Collateral), in order to permit, among other things, the management and preservation of the Debtors' assets and properties and the Proposed Sale at the Auction in accordance with the Bid Procedures. Without such continued use of Cash Collateral and commitments under the DIP Facility, the Debtors' estates would be imminently and irreparably harmed.

(c)     *Interim Order.* On _____, 2010, this Court entered the Interim Order (I) Authorizing Use of Cash Collateral on Interim Basis, (II) Providing Adequate Protection, and (III) Scheduling Final Hearing (the "Interim Order") [Docket No. ___]. The Interim Order, including the findings made therein, is incorporated herein by reference.

9

(d)     *No Credit Available on More Favorable Terms.*  The Debtors represent that they are unable to obtain sufficient financing from sources other than the DIP Lenders on terms more favorable than under, and for the purposes set forth in, the DIP Note (as defined below and in substantially the form affixed as **Exhibit 1** hereto, subject to any modifications permitted hereunder, to the extent applicable) and any and all documents and instruments delivered pursuant thereto or in connection therewith (as may have been amended, modified or supplemented from time to time and inclusive of the DIP Note, the "<u>DIP Facility Documents</u>") and are not able to obtain sufficient unsecured credit allowable as an administrative expense under Bankruptcy Code § 503(b)(1).  The Debtors are also unable to obtain unsecured credit without the enhanced priority afforded by Bankruptcy Code § 364(c)(1).  New credit is unavailable to the Debtors without providing the DIP Lenders with (a) the DIP Facility Superpriority Claims and (b) the DIP Facility Liens, in each case on the terms and conditions set forth herein and in the DIP Facility Documents.

(e)     *Budget.*  The Debtors have prepared and delivered the Budget to the DIP Lenders, a copy of which Budget is attached hereto as **Exhibit 2**.  Such Budget has been thoroughly reviewed by the Debtors and their management.  The Debtors represent that the Budget is achievable and will allow the Debtors to preserve the value of their estates, conduct the Auction in accordance with the proposed Bid Procedures, and obtain approval of and consummate their chapter 11 plan of liquidation.  The DIP Lenders, Administrative Agent and the Prepetition Lenders relied and continue to rely upon the Debtors' compliance with the Budget, subject to the variances permitted by the DIP Note

10

in determining to enter into, and continue to make available, the postpetition financing arrangements and access to Cash Collateral provided for herein.

(f) *Cash Collateral*. The Debtors stipulate, agree and acknowledge, subject to the rights of the Committee or other party in interest pursuant to Paragraph 11 below, that its cash, including, without limitation, all cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and any amounts generated by the collection of accounts receivable, the sale of inventory or other disposition of Prepetition Collateral, constitute proceeds of the Prepetition Collateral and are cash collateral of the Prepetition Lenders within the meaning of Bankruptcy Code § 363(a) (the "Cash Collateral"). The Prepetition Lenders are entitled, pursuant to Bankruptcy Code §§ 361, 363(c)(2), 363(e), and 364(d)(1), to adequate protection of their liens and security interests in the Prepetition Collateral, in an amount equal to any diminution in value of the Prepetition Collateral, including, without limitation, any such diminution resulting from the use of Cash Collateral, the Carve-Out, the implementation of the DIP Facility, the sale, lease or use by the Debtors (or other decline in market value) of the Prepetition Collateral and the imposition of the automatic stay pursuant to Bankruptcy Code § 362. The Prepetition Lenders have indicated a willingness to consent and agree to allow the Debtors to use their Cash Collateral in accordance with the restrictions set forth in the Interim Order, this Final Order, and the DIP Facility Documents.

(g) *Business Judgment and Good Faith Pursuant to Section 364(e)*. Based on the record of the Interim Hearing and the DIP Hearing, the terms of the DIP Facility Documents, the Interim Order and this Final Order, the DIP Facility Documents and the use of Prepetition Collateral (including the Cash Collateral) are fair, just and reasonable

11

under the circumstances, ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration. The use of Prepetition Collateral (including the Cash Collateral) in accordance with this Final Order and the Interim Order and the terms of the DIP Note and the other DIP Facility Documents have been negotiated in good faith and at arm's length between the Debtors, the Administrative Agent, the Prepetition Lenders, and the DIP Lenders, with all parties represented by counsel, and any credit extended, loans made, and other financial accommodations extended to the Debtors by the Prepetition Lenders or the DIP Lenders shall be deemed to have been extended, issued, or made, as the case may be, in "good faith" as that term is used in Bankruptcy Code § 364(e) and in express reliance upon the protections afforded by Bankruptcy Code § 364(e) in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(h)     *Good Cause, Immediate Entry.*  The Debtors represent that the relief requested by the DIP Motion is necessary, essential and appropriate and is in the best interests of and will benefit the Debtors, their estates and their creditors as its implementation will, among other things, provide the Debtors with the necessary liquidity to (i) effect the Proposed Sale at the Auction in accordance with the Bid Procedures, (ii) preserve and maximize the value of the Debtors' estates for the benefit of all of the Debtors' creditors, and (iii) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets.  Thus, good cause has been shown for entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).

12

Based upon the foregoing, and after due consideration and good cause appearing therefor:

IT IS ORDERED, ADJUDGED AND DECREED, that:

1.    <u>DIP Motion Granted</u>. The DIP Motion is granted in and to the extent provided in this Final Order. This Final Order shall become effective immediately upon its entry.

2.    <u>Objections Overruled</u>. All objections to the entry of this Final Order are withdrawn or resolved by the terms hereof or, to the extent not resolved, are overruled.

3.    <u>Authorization of the Use of Cash Collateral</u>. The Debtors were by the Interim Order and hereby are authorized to continue to use the Prepetition Lenders' Cash Collateral in accordance with the Budget and the terms hereof, provided that the Debtors continue to satisfy the conditions to effectiveness thereof and the Debtors are not in default under the terms of the Interim Order or this Final Order and the DIP Facility Documents. For the avoidance of doubt, the Debtors shall not have access to any collections and other property of the Debtors, other than collections and other property of Form-Co, Inc. ("Form-Co") and Accubrace, Inc. ("Accubrace"), and any deposit accounts and lockboxes of such Debtors other than Form-Co and Accubrace shall be detached from that certain UBP Concentration Account (as such term is defined in the Debtors' Motion for Entry of Order Authorizing the Debtors to Continue to Use Existing Cash Management System, filed as of the Petition Date [Docket No. __]) and all disbursement accounts such that no funds flow out of such accounts and lockboxes. Debtors shall not change any payment instructions with any of their customers. To the extent any collections are received after the Petition Date with respect to (a) any accounts receivable of any Debtor other than Form-Co and Accubrace rental collections, Debtors shall immediately segregate such funds and deposit them in the deposit accounts of Debtors other than Form-Co and Accubrace and (b) any dispositions, insurance recoveries or tax refunds, Debtors shall apply such collections in accordance with the DIP Note.

13

4.    <u>DIP Facility Documents</u>.  The Debtors are hereby authorized:  (a) to borrow under that certain Senior Secured Super-Priority Debtor-In-Possession Promissory Note (the "<u>DIP Note</u>"), dated as of August 3, 2010, by and among the Debtors and the DIP Lenders (subject to any modifications permitted hereunder) up to an aggregate principal amount of $6,002,673 (which may be increased pursuant to the terms and conditions of the DIP Note and the other DIP Facility Documents), <u>provided</u>, that the Debtors continue to satisfy the conditions to effectiveness thereof and the Debtors are not in default under the terms of this Final Order, the DIP Note or the other DIP Facility Documents, and, <u>provided further</u> that the Debtors may borrow under the DIP Note in accordance with the terms thereof without the need for approval of this Court; and (b) to continue to operate the Continuing Business (as defined below) in accordance with the Budget and the DIP Note.  Upon execution and delivery of the DIP Facility Documents, the DIP Facility Documents shall constitute and are hereby deemed to be legal, valid, and binding obligations of the Debtors and the Debtors' estates, enforceable against the Debtors and their estates in accordance with the terms of this Final Order and the DIP Facility Documents.  Cash Collateral and available financing and advances under the DIP Note will continue to be used or made only in accordance with the terms and conditions of the Interim Order , this Final Order, the DIP Note and the other DIP Facility Documents, including § §1(b), 1(d) and 1(f) thereof, to: (a) fund the Debtors' operations solely to the extent necessary to maintain the Continuing Business and in accordance with the Budget; (b) to pay such other amounts as are required or permitted to be paid pursuant to the DIP Note (as limited by the Budget), the other DIP Facility Documents, the Interim Order and this Final Order; (c) complete the Proposed Sale; and (d) fund consummation of a Plan.  Unless expressly modified in this Final

Order, the findings, authorizations, protections and provisions contained in the Interim Order remain in full force and effect.

5. _Execution and Compliance with DIP Facility Documents_. The Debtors are hereby authorized to execute, deliver, perform and comply with (and, to the extent necessary or applicable, execute and deliver) all of the terms and covenants of the DIP Note and the other DIP Facility Documents, each of which constitute valid, binding, enforceable and non-avoidable obligations of the Debtors for all purposes during the Debtors' chapter 11 cases, any case of any Debtor subsequently converted pursuant to chapter 7 of the Bankruptcy Code or after the dismissal or reorganization of any Debtors' chapter 11 cases. The Debtors are hereby authorized to perform all acts, and execute and comply with the terms of all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), as the DIP Lenders may reasonably require as evidence of and for the protection of the DIP Facility Obligations and the Collateral or which may be otherwise deemed necessary by the DIP Lenders to effectuate the terms and conditions of this Final Order and the DIP Facility Documents.

6. _DIP Facility Superpriority Claims_. As security for the DIP Facility Obligations now existing or hereafter arising pursuant to the DIP Facility, the DIP Facility Documents and this Final Order, the DIP Lenders are hereby granted pursuant to this Final Order, allowed super-priority administrative claims pursuant to Bankruptcy Code § 364(c)(1), which claims shall have priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors, now in existence or hereafter incurred by any of the Debtors and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, _inter alia_, Bankruptcy Code § § 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726 and/or

K&E 17463626.12

364(c)(1) (the "DIP Facility Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all products and proceeds thereof, provided, that the DIP Facility Superpriority Claims shall be subordinate only to the Carve-Out to the extent specifically provided for in Paragraph 11 of this Final Order and the Prior Liens (as defined in the Interim Order).

7.  **DIP Facility Liens.** As security for the DIP Facility Obligations, pursuant to Bankruptcy Code § § 364(c)(2), (c)(3), and (d) and the consent of the Prepetition Lenders and the Administrative Agent, the DIP Lenders are hereby granted (effective and perfected upon the date hereof and without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements, control agreements, pledge agreements, lock box agreements financing statements, or otherwise, or the possession or control by the DIP Lenders of any property), subject only to the Carve-Out and the Prior Liens, the following DIP Facility Liens:

(a)      pursuant to Bankruptcy Code § 364(c)(2), valid, binding, continuing, perfected, enforceable and non-avoidable first priority liens on and security interests in all tangible and intangible prepetition and postpetition assets and property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, were not subject to valid, perfected, enforceable and non-avoidable liens, including, without limitation, any and all unencumbered cash, inventory, bank accounts, accounts receivable, other rights to payment whether arising before or after the Petition Date, Avoidance Actions, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights,

16

trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds and products of all the foregoing;

(b)  pursuant to Bankruptcy Code § 364(c)(3), valid, binding, continuing, perfected, enforceable and non-avoidable second priority or other junior liens on and security interests in all tangible and intangible prepetition and postpetition assets and property of the Debtors, whether now owned or hereafter acquired, that are subject to Prior Liens that are valid, perfected, enforceable and non-avoidable liens in existence on the Petition Date or to valid and unavoidable liens in existence on the Petition Date that are perfected subsequent to such commencement as permitted by Bankruptcy Code § 546(b) (other than assets and property that are subject to the existing liens as referred to in subparagraph (c) below, which existing liens shall be primed as provided therein);

(c)  pursuant to Bankruptcy Code § 364(d), valid, binding, continuing, perfected, enforceable and non-avoidable first priority senior priming liens on and security interests in the all of Prepetition Collateral and the proceeds and products thereof.  Such security interests and liens shall be senior in all respects to (i) the interests in such property of the Administrative Agent and the Prepetition Lenders arising from current and future liens of the Administrative Agent and the Prepetition Lenders (including, without limitation, the Adequate Protection Liens (defined below)) and (ii) the interests in such property held by any party whose interests are junior to the interests of the Administrative Agent and the Prepetition Lenders, other than, for avoidance of doubt, Prior Liens; and

(d)  the DIP Facility Liens and the Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for

17

the benefit of the Debtors and their estates under Bankruptcy Code § 551 or (B) any liens

arising after the Petition Date, or (ii) subordinated to or made *pari passu* with any other

lien or security interest under Bankruptcy Code § § 363 or 364 or otherwise other than as

set forth in this Final Order. The DIP Facility Liens shall not be subject to Bankruptcy

Code § § 510, 549 or 550.

8.    Adequate Protection. The Prepetition Lenders and Administrative Agent are

entitled to adequate protection for the DIP Facility Liens, the Carve-Out and the Debtors' use of

Cash Collateral. As adequate protection, the Prepetition Lenders and Administrative Agent were

granted and continue to be granted (effective and perfected upon the entry of the Interim Order

and without the necessity of the execution, recordation or filing by the Debtors of any security

agreements, financing statements or other agreements or documents) the following forms of

adequate protection:

(a)    Adequate Protection Liens. Solely to the extent of diminution in the value

of the Prepetition Collateral (whether the reason for such diminution is as a result of or

arises from, or is attributable to, the imposition of the automatic stay, the use of Cash

Collateral, the Carve-Out or the physical deterioration, consumption, use, sale, lease,

disposition, shrinkage, or decline in market value of the Prepetition Collateral), if any, the

Administrative Agent (on behalf of the Prepetition Lenders) is hereby granted, effective

and perfected as of the Petition Date and without the necessity of the execution by the

Debtors of security agreements, pledge agreements, financing statements, or other

agreements, a valid and perfected replacement security interest in, and lien on, the

Collateral, (including all products and proceeds thereof), now or hereafter acquired,

including any avoidance actions or other causes of action under Chapter 5 of the

Bankruptcy Code and proceeds or property recovered in respect thereof (the "Adequate Protection Liens"), which Adequate Protection Liens shall be senior to any prepetition liens (except as provided herein), shall also encumber all of the Debtors' assets not subject to a prepetition lien (if any), and shall be equivalent to a lien granted under Bankruptcy Code § 364(c). The Adequate Protection Liens shall be subject only to (i) the Carve-Out, (ii) the Investigation Period of Paragraph 11 hereof, (iii) the DIP Facility Liens, and (iv) any Prior Liens to the extent such Prior Liens are valid, perfected and unavoidable and senior to the Administrative Agent's Prepetition Liens. The Adequate Protection Liens granted by this Final Order: (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor of the Administrative Agent and the Prepetition Lenders on the Petition Date; and (ii) are and shall be valid, perfected, enforceable and effective as of the Petition Date without any further action by the Debtors or the Prepetition Lenders and without the necessity of the execution, filing or recordation of any financing statements, security agreements, pledge agreements filings with the United States Patent and Trademark Office, mortgages or other documents, obtaining control agreements or other agreements over bank accounts or possession of stock certificates. Notwithstanding the foregoing, the Administrative Agent (on behalf of the Prepetition Lenders) may, in its sole discretion, file such financing statements, mortgages (including ship mortgages), leasehold mortgages, notices of liens and other similar documents, and is hereby granted relief from, the automatic stay of Bankruptcy Code § 362 in order to do so, and all such financing statements, mortgages, leasehold mortgages, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of these chapter 11 cases.

(b)     Administrative Claim. The Administrative Agent (on behalf of the Prepetition Lenders) is hereby granted in each of the Debtors' chapter 11 cases an allowed administrative claim (the "Administrative Claim") under Bankruptcy Code § 507(b) with respect to all Adequate Protection Obligations, to the extent that the Adequate Protection Liens do not adequately protect the diminution in the value of the Prepetition Collateral. Such Administrative Claim shall be (i) payable from and have recourse to all prepetition and postpetition property of the Debtors and all products and proceeds thereof; and (ii) subject only to the Carve-Out, the DIP Facility Liens, the DIP Facility Superpriority Claims and any Prior Liens permitted under the Credit Agreement or this Final Order.

(c)     Professional and Other Fees. The Administrative Agent reserves the right to seek reimbursement from the Debtors of any reasonable and documented fees, costs and expenses reasonably incurred by or payable to the Administrative Agent in accordance with the Prepetition Loan Documents upon: (i) termination of the DIP Note for any reason; (ii) the Debtors' noncompliance with this Final Order or DIP Note; or (iii) as an obligation with the same priority as the Prepetition Obligations in accordance with the Debtors' plan of liquidation.

9.     Carve-Out. For purposes hereof, the "Carve-Out" shall mean: (a) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under § 1930(a) of title 28 of the United States Code or otherwise, and (b) to the extent allowed at any time (provided, however, that such fees and expenses are not subsequently disallowed or disgorged by this court), all unpaid fees and expenses allowed by the Bankruptcy Court of the Debtors' and Committee's professionals and professional firms pursuant to Bankruptcy Code

§ § 327 or 1103 (each a "Professional Person" and, collectively, the "Professional Persons"), that were incurred during these chapter 11 cases up to a maximum aggregate amount for clauses (a) and (b) not to exceed $1,450,000 in the aggregate and in accordance with the amount budgeted for each such Professional Person in the Budget, less the amount of any retainer or other deposit or security held by any Professional Person as of the Petition Date (the "Carve-Out Amount"); provided that the Carve-Out shall not include any professional fees and expenses of a chapter 7 trustee or any fees or disbursements arising after the conversion of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code; provided, further, that nothing in this Final Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates. The Carve-Out Amount shall be reduced dollar-for-dollar by any payment of fees and expenses allowed by the Court, payable under Bankruptcy Code § § 328, 330 and 331, and paid by the Debtors. The Carve-Out shall be free and clear of all liens, claims and encumbrances granted hereunder and under the Interim Order and shall be subject only to the allowed claims of the Professionals for such fees and expenses as may be awarded by the Court under Bankruptcy Code § § 327 or 328, and shall be free of any claim of creditors of the Debtors or any subsequently appointed trustee. The rights of the Professional Persons with respect to the Carve-Out shall survive the occurrence of an Event of Default.

10. <u>Fees and Expenses of Professionals</u>. So long as no Default or Event of Default shall have occurred and be continuing or have occurred and be waived, the Debtors shall be permitted to pay the compensation and reimbursement of fees and expenses allowed and payable under Bankruptcy Code § § 328, 330 and 331 (but excluding fees and expenses of third party professionals employed by Committee members) in accordance with the Budget, this Final Order and the DIP Note. Nothing contained herein is intended to constitute, nor should be construed as

K&E 17463626.12

consent to the allowance of any fees, disbursements or expenses by any party and nothing herein shall affect the ability or right of the Debtors, the DIP Lenders, the Committee, the U.S. Trustee or any other party in interest to object to the allowance and payment of any amounts incurred or requested. In addition, no DIP Lender shall be responsible for the payment or reimbursement of any fees or disbursements of any professional retained by the Debtors or the Committee pursuant to Bankruptcy Code § § 327, 328 or 1103(a), except with respect to their obligation to fund the Carve-Out.

11. <u>Prepetition Loan Challenge</u>. The stipulations and admissions contained in this Final Order shall be binding upon the Debtors and their estates in all circumstances. Subject to the terms of this paragraph, the Committee shall have until three (3) calendar days before the scheduled date of the Auction (the "<u>Investigation Termination Date</u>") within which to commence an adversary proceeding (collectively, a "<u>Prepetition Loan Challenge</u>") with respect to the validity, priority, extent, perfection, and enforceability of the claims and security interests held by the Administrative Agent (on behalf of the Prepetition Lenders) and the obligations arising under the Prepetition Loan Documents, or to assert any other claims or causes of action against the Administrative Agent and/or Prepetition Lenders held by the Debtors' estates; <u>provided</u>, that the Cash Collateral or the Carve-Out may be used for investigation by the Committee in connection therewith, subject to a limitation of $25,000, <u>provided, further</u>, that the Cash Collateral or the Carve-Out may not be used for the payment or reimbursement of any fees or disbursements of the Committee incurred in connection with the assertion or joinder of in any claim, counter-claim, action, proceeding, application, motion or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief: (a) invalidating, setting aside, avoiding, subordinating, in whole or in part, the Prepetition Indebtedness or any

22

lien and security interest securing the Prepetition Indebtedness; or (b) preventing, hindering or delaying, whether directly or indirectly, the assertion by the Prepetition Lenders or enforcement by the Prepetition Lenders of its liens or realization upon any of the respective Prepetition Collateral; or (c) challenging the postpetition liens or claims seeking an affirmative recovery from the Prepetition Lenders. If such a Prepetition Loan Challenge is not timely commenced within such applicable period set forth above, (a) the stipulations contained in Paragraph 11 of this Final Order shall be irrevocably binding on the estates, the Committee and all parties-in-interest (including without limitation a receiver, administrator, or trustee appointed in this case or in any jurisdiction), (b) the claims and security interests held by the Administrative Agent (on behalf of the Prepetition Lenders) and the obligations arising under the Prepetition Loan Documents shall be recognized and allowed as valid, binding, in full force and effect, and perfected, and not subject to any claims, counterclaims, setoff or defenses, (c) the Committee and any other party in interest (including without limitation a receiver, administrator, or trustee appointed in this case or in any jurisdiction) shall thereafter be forever barred from bringing any Prepetition Loan Challenge, and (d) the Administrative Agent and the Prepetition Lenders and their respective agents, officers, directors and employees shall be deemed released and discharged from all claims and causes of action of any kind, nature or description arising at any time prior to the Petition Date, and all of Debtors' acknowledgements, releases and waivers of claims and security interests held by the Administrative Agent (on behalf of the Prepetition Lenders) and the obligations arising under the Prepetition Loan Documents in accordance with this Final Order shall be binding upon all parties-in-interest in the Debtors' chapter 11 cases and/or in any subsequently converted case(s) under chapter 7 of the Bankruptcy Code. Nothing in this Final Order shall be deemed to confer or deny standing to commence an action on the

23

Committee. Unless the Administrative Agent (on behalf of the Prepetition Lenders) and the Debtors each consents in writing to an extension, the Investigation Termination Date may not be extended, unless cause therefor is shown and only upon notice to the Administrative Agent and the Debtors and the filing of a motion and scheduling of a hearing date before the expiration of the Investigation Termination Date.

12.    Waiver of 506(c) Claims Against the Prepetition Lenders and the DIP Lenders. Except for the Carve-Out and effective upon and subject to entry of this Final Order, no costs or expenses of administration which already have been, or may hereafter be, incurred in the Debtors' chapter 11 cases or any future proceeding that may result therefrom or in any subsequently converted case under chapter 7 of the Bankruptcy Code at any time shall be charged or asserted by the Debtors against, or recovered from, the Administrative Agent, the Prepetition Lenders or the DIP Lenders or any of their respective claims or the Prepetition Collateral, pursuant to Bankruptcy Code § § 105 or 506(c) or otherwise without the prior written consent of the Administrative Agent, Prepetition Lenders or the DIP Lenders (and no such consent shall be implied from any other action, inaction or acquiescence by the Administrative Agent, the Prepetition Lenders or the DIP Lenders in this proceeding, including, but not limited to, funding of the Debtors' ongoing operations by the DIP Lenders).

13.    Restrictions on Use of Proceeds. Subject to the limitations applicable in the DIP Note and in accordance with the Budget, the Debtors shall use the Prepetition Lenders' Cash Collateral and the proceeds of the DIP Facility made or arranged for by the DIP Lenders pursuant to the DIP Facility Documents and this Final Order, and in accordance the terms and conditions of this Final Order, the DIP Facility Documents and the Budget: (a) to preserve the value of their estates and otherwise conduct their chapter 11 cases in accordance with the

24

Budget; and (b) to make any other payments permitted to be made by the Bankruptcy Code, in this Final Order or in any other order of this Court to the extent provided for under the DIP Facility Documents or expressly consented to by the DIP Lenders as provided in the DIP Facility Documents.

14.     Commitment Termination Date. The DIP Facility Obligations shall be due and payable, without notice or demand, on the Maturity Date (as such term is defined in the DIP Note) unless extended in accordance with the DIP Note.

15.     Restrictions on the Debtors. Other than the Carve-Out, the Debtors shall not seek entry of an order granting any claim that has a priority superior to or *pari passu* with those granted by the Interim Order or this Final Order to the DIP Lenders, while any portion of the DIP Facility (or refinancing thereof) or the commitment thereunder remains outstanding without the express written consent of the DIP Lenders. Except as may be expressly permitted by the DIP Note, the Debtors will not, at any time during the case, grant mortgages, security interests, or liens in the Collateral or any portion thereof to any other parties pursuant to Bankruptcy Code § 364(d) or otherwise without the express written consent of the DIP Lenders in their sole discretion.

16.     Lien Perfection. Either the Interim Order or this Final Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the liens and security interests in and upon the Collateral granted herein (including without limitation, the DIP Facility Liens and the Adequate Protection Liens), effective as of the date of the entry of the Interim Order, pursuant to the Interim Order or this Final Order, and/or the DIP Facility Documents, as applicable, without the necessity of (a) filing, recording or serving any financing statements, mortgages, deeds of trust or other agreements, documents or instruments which may otherwise

25

be required under federal or state law in any jurisdiction (collectively, the "Lien Recording Documents"), (b) taking possession of Collateral or evidence thereof (provided, that, without limiting the foregoing, any third party in possession of any Collateral is hereby deemed a bailee for the benefit of and on behalf of the DIP Lenders) or (c) taking any other action to validate or perfect the liens and security interests granted in the Interim Order or this Final Order, and/or the DIP Facility Documents, as applicable. If the DIP Lenders or the Administrative Agent or the Prepetition Lenders (as applicable) shall, in their discretion, elect for any reason to file any such Lien Recording Documents with respect to such liens and security interests, the Debtors are authorized and directed to execute, or cause to be executed, all such Lien Recording Documents upon the DIP Lenders' or the Administrative Agent's or the Prepetition Lenders' (as applicable) request and the filing, recording or service thereof (as the case may be) of such Lien Recording Documents shall be deemed to have been made at the time of and on the Petition Date. The DIP Lenders, the Administrative Agent or the Prepetition Lenders (as applicable) may, in their discretion, without seeking modification of the automatic stay under Bankruptcy Code § 362, file a certified copy of this Final Order in any filing or recording office in any county or other jurisdiction in which the Debtors have an interest in real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Final Order. To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the liens and security interests authorized or created hereby, or otherwise would impose filing or registration requirements with respect thereto, such law is preempted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of this Court (provided, that if the DIP Lenders take steps to perfect the

26

DIP Facility Liens or the Administrative Agent or the Prepetition Lenders take steps to perfect

the Adequate Protection Liens under otherwise applicable state law, it does so without waiving

the benefits of this provision of this Final Order). In the event that any Lien Recording

Document which the DIP Lenders, the Prepetition Lenders or the Administrative Agent elect to

file in accordance with this paragraph contains any limitations, defects, deficiencies or other

information which might otherwise limit or adversely affect the DIP Lenders', the Prepetition

Lenders' or the Administrative Agent's liens upon and security interests in the Collateral or any

of the DIP Lenders', the Prepetition Lenders' or the Administrative Agent's claims, rights,

priorities and/or protections afforded under the Interim Order, this Final Order and/or the DIP

Facility Documents, such limitations, defects, deficiencies or other information shall not impair,

limit, restrict or adversely affect in any way any of the DIP Lenders', the Prepetition Lenders' or

the Administrative Agent's liens and security interests in the Collateral or their claims, rights,

priorities and/or protections granted under the Interim Order, this Final Order and/or the DIP

Facility Documents.

17.     Modification of Automatic Stay. Subject only to the provisions of the DIP Note

and without further order from this Court, the automatic stay provisions of Bankruptcy Code

§ 362 are vacated and modified to the extent necessary to permit the DIP Lenders to implement

the provisions of the DIP Facility Documents and this Final Order including exercising, upon the

occurrence and during the continuance of any Event of Default, all rights and remedies provided

for herein and in the DIP Facility Documents; provided, that prior to the exercise of any

enforcement or liquidation remedies against the Collateral, the DIP Lenders shall be required to

give written notice to the Debtors, its bankruptcy counsel, the Committee's counsel, if any, and

the U.S. Trustee with a hearing to be held within five (5) calendar days of receipt of such notice;

K&E 17463626.12

provided, further; only the occurrence or non-occurrence of such Default or Event of Default shall be the subject of any such hearing. Notwithstanding the occurrence of an Event of Default (as hereinafter defined) or the Maturity Date or anything herein, all of the rights, remedies, benefits, and protections provided to the DIP Lenders under the DIP Facility Documents and this Final Order shall survive the Maturity Date.

18.     Binding Effect of Final Order and DIP Facility Documents.

(a)     The Debtors irrevocably waive any right to seek any modifications or extensions of this Final Order without the prior written consent of the DIP Lenders as authorized under the DIP Note to give such consent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Lenders.

(b)     The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered converting any of the Debtors' chapter 11 cases to a chapter 7 case, dismissing any of the Debtors' bankruptcy cases (in the case of any such dismissal, to the maximum extent permitted under the Bankruptcy Code and other applicable law) or any order which may be entered confirming or consummating any chapter 11 plan of liquidation of the Debtors; and the terms and provisions of this Final Order as well as the priorities in payment, liens, and security interests granted pursuant to this Final Order and the DIP Facility Documents shall continue in this or any superseding case under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by this Final Order and the DIP Facility Documents until all DIP Facility Obligations are indefeasibly paid and satisfied in full; provided, that all obligations and duties of the DIP Lenders hereunder, under the DIP Facility Documents or otherwise with respect to any

28

future loans and advances or otherwise shall terminate immediately upon the earlier of the date of any Event of Default, the Maturity Date or the date that a chapter 11 plan of liquidation of the Debtors becomes effective unless the DIP Lenders, as is required under the DIP Facility Documents, have given their express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by the DIP Lenders.

(c)     The provisions of this Final Order and the DIP Facility Documents shall be binding upon and inure to the benefit all parties-in-interest in these cases, including, without limitation, the Debtors, the DIP Lenders, the Prepetition Lenders, the Administrative Agent, and the Committee, subject to the provisions contained in Paragraph 11 of this Final Order, and their respective successors and assigns (including, to the fullest extent permitted by applicable law, any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any Debtor's estate, an examiner appointed pursuant to Bankruptcy Code § 1104 (upon entry of this Final Order) or any other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the Debtors' estates); provided, that the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the Debtors' estates.

19.     Survival. The rights of the DIP Lenders under the DIP Facility Documents or this Final Order, the provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order (a) confirming a chapter 11 plan of liquidation in these cases (and, to the extent not satisfied in full in cash, the DIP Facility Obligations shall not be discharged by the entry of any such order, or pursuant to Bankruptcy Code § 1141(d)(4), the Debtors having

29

hereby waived such discharge, unless otherwise consented to by the DIP Lenders); (b)

converting any of the cases to a chapter 7 case; or (c) dismissing any of the cases, and the terms

and provisions of this Final Order as well as the DIP Facility Superpriority Claims and the DIP

Facility Liens granted to and conferred upon the DIP Lenders and the protection afforded to the

DIP Lenders pursuant to this Final Order and the DIP Facility Documents shall continue in full

force and effect notwithstanding the entry of any such order, and such claims and liens shall

maintain their priority as provided by this Final Order and the DIP Facility Documents and to the

maximum extent permitted by law until all of the DIP Facility Obligations shall have been paid

and satisfied in full in accordance with the provisions of the DIP Note (and that such DIP

Facility Liens, DIP Facility Superpriority Claims and other protections shall remain binding on

all interested parties).

20.     Nullifying Prepetition Restrictions on Postpetition Lien Grants. Notwithstanding

anything to the contrary contained in any prepetition agreement, contract, lease, document, note

or instrument to which any Debtor is a party or under which any Debtor is obligated, any

provision that restricts, limits or impairs in any way any Debtor's ability or right to grant liens on

or security interests in any of the Collateral (including, among other things, any anti-lien granting

or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is

a party) under the DIP Facility Documents or this Final Order or otherwise enter into and comply

with all of the terms, conditions and provisions thereof (all such provisions being collectively

referred to as the "Restrictive Clauses") shall not be effective and shall be unenforceable against

any such Debtor and the DIP Lenders to the maximum extent permitted under the Bankruptcy

Code and other applicable law, and, therefore, shall not adversely affect the validity, priority or

enforceability of the liens, security interests, claims, rights, priorities and/or protections granted

to the DIP Lenders pursuant to this Final Order and/or the DIP Facility Documents or any of the rights of the DIP Lenders hereunder or thereunder to the maximum extent permitted under the Bankruptcy Code and other applicable law.

21.     After-Acquired Property.  Except as otherwise provided in this Final Order, pursuant to Bankruptcy Code § 552(a), all proceeds and property acquired by the Debtors after the Petition Date, including, without limitation, all Collateral pledged or otherwise granted to the DIP Lenders, on behalf of itself, pursuant to the Debtors' use of Cash Collateral, the DIP Facility Documents and this Final Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date (other than Prior Liens), except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date which is not subject to subordination under Bankruptcy Code § 510(c) or other provisions or principles of applicable law.

22.     Access to the Debtors.  Without limiting the rights of access and information afforded the DIP Lenders under the DIP Facility Documents, the Debtors shall permit representatives, agents, and/or employees of the Administrative Agent, its counsel and the Prepetition Lenders (coordinated through the Administrative Agent) to have full and complete access to their premises and records and shall cooperate, consult with, and provide to such representatives, agents, and/or employees all such information as they may request including, without limitation, as may be required in accordance with the provisions of access in the Prepetition Loan Documents.

23.     Amendment to DIP Facility Documents.  The DIP Lenders, with the consent of the Debtors, are authorized to amend and/or modify the DIP Note or any other DIP Facility

Documents, in accordance with their terms and conditions, without further order of the Court on non-material matters; provided, that notice of any such amendments or modifications must be provided to the Committee at least two (2) calendar days prior to such amendments or modifications taking effect; provided, further, that any amendments or modifications that would have the effect of shortening the maturity date of the facilities or increasing the aggregate fees payable, or the rate or amount of interest payable, under the DIP Facility Documents or otherwise materially alter the DIP Facility Documents shall be done only pursuant to further order of the Court; provided, that any amendment or modification to increase the aggregate amount of borrowings permitted must be in writing, filed with the Court and served upon counsel for the Committee (if appointed at such time) and all parties who filed requests for notices pursuant to Bankruptcy Rule 2002, and shall become effective upon entry of an order of this Court.

24.     Insurance Policies.  Upon entry of this Final Order, the DIP Lenders shall be, and the Prepetition lenders shall continue to be, and shall continue to be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors which in any way relates to the Collateral.  The Debtors are authorized and directed to continue to take any action necessary to have the DIP Lenders and/or the Prepetition Lenders added as additional insureds and loss payees on each insurance policy. For the avoidance of doubt, the distribution of any proceeds recovered or received in respect of any such insurance policies will be applied, first, to the payment in full of the DIP Facility Obligations and, second, to the payment of the Prepetition Obligations.

25.     Conclusive Evidence of DIP Facility Obligations.  The terms, conditions and covenants of the DIP Note and the other DIP Facility Documents shall be sufficient and

conclusive evidence of the borrowing and financing arrangements among the Debtors and the DIP Lenders for all purposes, including, without limitation, the Debtors' obligation to pay all principal, interest, fees (including, without limitation, unused line fees, agency fees, servicing fees, letter of credit fees, closing fees, syndication fees, early termination fees and appraisal fees), and other costs and expenses (including, without limitation, all reasonable fees and expenses of consultants, advisors and attorneys), as more fully set forth and to the extent provided in the DIP Note and the other DIP Facility Documents.

26. <u>Maintenance of Collateral</u>. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, except for sales expressly permitted by, and in accordance with the terms of, the DIP Note, the DIP Facility Documents and/or this Final Order. Nothing contained in this paragraph shall limit or impair the right of any lessor or other contract party of any Debtor to request that the Court compel the Debtors to assume or reject any lease or license of real or personal property.

27. <u>Termination</u>. In the absence of a further order of this Court, and notwithstanding anything herein to the contrary, the Debtors shall no longer be authorized pursuant to the Interim Order or this Final Order to use Cash Collateral without the written consent of the DIP Lenders, and the DIP Note and access to all borrowings thereunder shall be terminated, after the earliest to occur of (i) the Maturity Date, and (ii) the fifth (5th) business day following the receipt by the Debtors of a termination notice setting forth the DIP Lenders' or Administrative Agent's intent to exercise its rights or remedies in accordance the Interim Order, this Final Order and the DIP Note, following the occurrence, and during the continuation, of any of the following events (the earliest such date being referred to herein as the "<u>Default Date</u>," and each of the foregoing being

33

referred to in this Final Order, individually, as an "<u>Event of Default</u>" and collectively, as the "<u>Events of Default</u>"):

(a)     any default under the DIP Facility or termination of the DIP Facility and final payment in full in cash of the DIP Facility Obligations;

(b)     the Debtors' failure to comply with any of the terms or provisions of the Interim Order or this Final Order;

(c)     the occurrence and continuation of any "Event of Default" as defined under the DIP Note or the other DIP Facility Documents;

(d)     the termination or non-renewal of the DIP Facility Documents as provided for in the DIP Note, or if terminated sooner by an order of this Court;

(e)     the Debtors' failure to comply with any of the terms or provisions of that certain asset purchase agreement (the "<u>Asset Purchase Agreement</u>"), dated as of August 3, 2010, by and among the Debtors and NewCo, or the DIP Note, or the termination of the Asset Purchase Agreement or DIP Note for any reason;

(f)     the Debtors failure to continue to assist, and cooperate and consult with, the Administrative Agent in taking possession of the Specified Equipment;

(e)     the Debtors' failure to discontinue all business operations other than the "<u>Continuing Business</u>," which shall mean:

(i)     prior to consummation of the Proposed Sale pursuant to the Asset Purchase Agreement, (A) any actions necessary to effectuate the Plan or consummate the transactions under the Asset Purchase Agreement or otherwise perform under the Asset Purchase Agreement, which shall not include any disposition of property other than pursuant to the liquidating trust established for

34

the Plan or pursuant to the Asset Purchase Agreement, (B) with respect to concrete forming inventory or equipment of the Debtors on rent to third parties as of the Petition Date (the "Forming Rental Equipment"), the collection of rental income relating to Forming Rental Equipment and the ongoing servicing of the Forming Rental Equipment, in each case by Form-Co but for the avoidance of doubt shall not include any new rentals of concrete forming inventory or equipment following the Petition Date other than new rentals on such inventory or equipment held by Form-Co as of the Petition Date in the ordinary course of business consistent with past practice and (C) with respect to inventory and equipment of Accubrace (the "Accubrace Rental Equipment"), new rentals of Accubrace Rental Equipment in the ordinary course of business consistent with past practice, the collection of rental income related to Accubrace Rental Equipment on rent to third parties whether as of the Petition Date or thereafter, and installation services conducted by Accubrace in the ordinary course of business consistent with past practice; and

(ii)     on and after consummation of the Proposed Sale pursuant to the Asset Purchase Agreement, only actions which are necessary to perform under the Asset Purchase Agreement and necessary to effectuate the Plan;

(f)     the Debtors' failure to maintain, preserve and protect its material assets and properties, including, without limitation, the Prepetition Collateral, including taking all appropriate security measures in connection therewith to prevent destruction, theft, damage or diminution thereof;

(g)     the occurrence of any of the following:

35

(i)        the failure of the Bankruptcy Court to enter an order approving the Bid Procedures within fourteen (14) days after the Petition Date;

(ii)        the failure of the Auction to occur, in accordance with the Bid Procedures, within twenty-nine (29) days after the Petition Date, unless an Auction does not occur because of a lack of Qualified Bids (as such term is defined in the Bid Procedures) other than the bid of NewCo;

(iii)       the failure of the Bankruptcy Court to enter an order approving the Proposed Sale within one (1) business day after the date scheduled for the Auction;

(iv)      the failure of the Debtors to file, within fourteen (14) days after the Petition Date: (a) a Plan; (b) a disclosure statement related to the Plan (the "Disclosure Statement"); and (c) a motion seeking Court approval of the Disclosure Statement, solicitation procedures and other matters related to confirming the Plan, in form and substance reasonably satisfactory to the DIP Lenders, the Administrative Agent and the Prepetition Lenders;

(h)      any stay, reversal, vacatur or rescission of the terms of this Final Order, or any other modification of the terms of this Final Order that is not consented to by the DIP Lenders;

(i)       entry of an order by this Court or any other Court having jurisdiction over these chapter 11 cases approving any postpetition financing that (i) grants liens, claims or interests that are senior to, or *pari passu* with, the DIP Facility Superpriority Claims and DIP Facility Liens, and (ii) is not consented to by the DIP Lenders;

36

(j)     the Debtors' assumption or rejection of any executory contracts or unexpired leases, including, without limitation, any real property leases, without the prior written consent of the Administrative Agent;

(k)     entry of an order by this Court subordinating, recharacterizing or disallowing (in each case, in whole or in part) in any way the DIP Facility Superpriority Claims and DIP Facility Liens of the DIP Lenders or the Prepetition Liens granted to, and the Prepetition Obligations owed to, the Administrative Agent and/or the Prepetition Lenders;

(l)     the Debtors' failure to comply with the Budget (as provided for herein) for any period of time without the consent of the DIP Lenders or the expiration of the Budget;

(m)     entry of an order by this Court dismissing any of the chapter 11 cases or converting any of the chapter 11 cases to cases under chapter 7 of the Bankruptcy Code;

(n)     entry of an order by this Court or any other Court having jurisdiction over these chapter 11 cases granting relief from the automatic stay so as to allow a third party to proceed against any material asset or assets of the Debtors that are Collateral;

(o)     subsequent to entry of this Final Order granting a § 506(c) waiver, entry of an order under Bankruptcy Code § 506(c) surcharging the Collateral;

(p)     the appointment of a trustee or the appointment of an examiner with enlarged powers in any of these chapter 11 cases unless such appointment is approved by the DIP Lenders;

(q)     any of the DIP Facility Superpriority Claims and DIP Facility Liens, or any other claims granted to the DIP Lenders pursuant to this Final Order shall cease to be

37

valid, binding and perfected, first-priority liens as and to the extent provided in this Final Order;

(r)     any of the Adequate Protection Liens, or any other claims (including the Administrative Claim) granted to the Administrative Agent (on behalf of the Prepetition Lenders) pursuant to the Interim Order and this Final Order shall cease to be valid, binding and perfected, first-priority liens as and to the extent provided in the Interim Order and this Final Order;

(s)     the termination of the Debtors' exclusive right to file a chapter 11 plan pursuant to Bankruptcy Code § 1121;

(t)     any Debtor shall have sought dismissal of its chapter 11 case or an order dismissing one or more of the Debtors' chapter 11 cases shall have been entered;

(u)     any of the Debtors shall file a motion, or the Bankruptcy Court shall enter an order, approving a payment to any party (whether in cash or other property or whether as adequate protection, settlement of a dispute, or otherwise) that would be materially inconsistent with the Budget, Asset Purchase Agreement, the DIP Note, or any other DIP Facility Documents; or

(v)     any of the Debtors file a pleading seeking, or otherwise consenting to, the matters set forth in clauses (h) through (u) above; provided, that as to clause (i) above, it shall not constitute a Termination Event for the Debtors to file a motion proposing to repay the Prepetition Obligations (as defined in the Interim Order) and the DIP Facility Obligations in cash in full.

28.     Remedies upon Occurrence of Event of Default.  Upon the occurrence of an Event of Default (unless such Event of Default is specifically waived in writing by the DIP Lenders as

provided for in the DIP Facility Documents, which waiver shall not be implied from any other action, inaction or acquiescence by the DIP Lenders), the DIP Lenders may, notwithstanding the provisions of Bankruptcy Code § 362, without any application, motion or notice to or order from, the Bankruptcy Court, without prior notice, take any one or more of the following actions: (a) terminate all or any portion of the commitments under the DIP Facility whereupon the DIP Lenders' obligation to make further Term Loans shall terminate; (b) declare all or any portion of the DIP Facility Obligations to be forthwith due and payable whereupon such DIP Facility Obligations shall become and be due and payable; and/or (c) exercise any rights and remedies provided to the DIP Lenders under the DIP Facility Documents or at law or equity, including all remedies provided under the Bankruptcy Code; and, pursuant to the Interim Order and this Final Order, the automatic stay of Bankruptcy Code § 362 shall be modified and vacated to permit the DIP Lenders to exercise their remedies under the DIP Note and the DIP Facility Documents, without further application or motion to, or order from, the Bankruptcy Court; provided, that notwithstanding anything to the contrary contained herein, the DIP Lenders shall be permitted to exercise any remedy in the nature of a liquidation of, or foreclosure on, any interest of Borrower in the Collateral only upon prior written notice to the Debtors, the U. S. Trustee, and the Committee's counsel with a hearing to be held within five (5) calendar days of receipt of such notice; provided, further, that only the occurrence or non-occurrence of such Event of Default shall be the subject of any such hearing. Unless the Court orders otherwise, upon the occurrence of an Event of Default and the exercise by the DIP Lenders of their rights and remedies under the DIP Note and the other DIP Facility Documents after the expiration of the notice period described herein, the Debtors shall assist the DIP Lenders, to the extent practicable, in effecting a sale or other disposition of the Collateral upon such terms as are designed to maximize the

39

proceeds obtainable from such sale or other disposition. Nothing contained in the Interim Order or this Final Order or otherwise shall be construed to obligate the DIP Lenders in any way to lend or advance any additional funds to the Debtors, or provide other financial accommodations to the Debtors upon or after the occurrence of an Event of Default.

29. <u>Collateral Rights</u>. Until all of the DIP Facility Obligations shall have been indefeasibly paid and satisfied in full in immediately available funds and without further order of the Court:

(a) In the event that any party who holds a lien or security interest in any of the Collateral that is junior and/or subordinate to the liens and claims of the DIP Lenders in such Collateral receives or is paid proceeds of the Collateral prior to the indefeasible payment and satisfaction in full of all DIP Facility Obligations, such junior or subordinate lienholder shall be deemed to have received, and shall hold, such Collateral proceeds in trust for the DIP Lenders and shall immediately turnover to the DIP Lenders such proceeds for application to the DIP Facility Obligations in accordance with the DIP Facility Documents and/or this Final Order;

(b) In addition to the rights set forth in Paragraph 16 and in lieu of requiring the Debtors to obtain any account control agreements with respect to their accounts on or prior to the Closing Date, the Administrative Agent is hereby ordered to continue to take direction from the DIP Lenders with respect to the Debtors' deposit accounts, including notifying any bank subject to an account control agreement to exercise the rights and remedies of a secured party thereunder, such that the DIP Lenders shall have "control" over such accounts as set forth in the applicable Uniform Commercial Code until the DIP Facility Obligations are finally indefeasibly paid in full in cash. In addition, the

40

Administrative Agent is hereby ordered to continue to take direction from the DIP Lenders with respect to any landlord lien waivers, collateral access agreements or any similar instruments such that the DIP Lenders shall have all of the rights and remedies of a secured party thereunder.

(c)     The Administrative Agent and the Prepetition Lenders are hereby ordered to continue to refrain from taking any action with respect to the Debtors or any of their assets until the DIP Facility Obligations are finally indefeasibly paid in full in cash.

(d)     Upon the acceleration of the DIP Facility Obligations following an Event of Default, and subject to the DIP Lenders providing the notice required by this Final Order, in connection with any liquidation of, or foreclosure on, any interest in the Collateral, the DIP Lenders (or any of their employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of the Debtors to be added to the DIP Facility Obligations, to: (i) enter upon, occupy and use any personal property, fixtures and equipment owned or leased by the Debtors and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses. If the DIP Lenders exercise any remedies provided for in this paragraph, the Debtors will remain responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that any DIP Lender uses the equipment or the intellectual property; and

(e)     Upon the acceleration of the DIP Facility Obligations following an Event of Default, and subject to the DIP Lenders providing the notice required by this Final

41

Order, as well as five (5) calendar days notice to any Debtor's real property lessor of any DIP Lender's intention to enter onto or into such lessor's leased premises to remove or otherwise dispose of any Collateral located at such leased premises in accordance with the terms of this paragraph, the DIP Lenders shall have the right, following the expiration of such five (5) calendar days notice period described in this paragraph, to enter onto or into such leased premises for the purpose of removing the Collateral from the leased premises or selling such Collateral at the leased premises, in each case subject to the applicable terms of such Debtor's lease arrangements with such lessor to the extent enforceable or effective under the Bankruptcy Code and subject to the rights of the DIP Lenders provided for herein. Subject to the following sentence, the Debtors shall remain obligated to perform any obligation and to pay any rent and additional rent due under the terms of their leases at all times, including during the period commencing upon the DIP Lenders obtaining the right to enter the Debtors' leased premises in accordance with this paragraph. Nothing herein shall require the DIP Lenders to assume any lease or cure any defaults as a condition to the rights afforded in this paragraph.

30. <u>Reservation of Rights</u>. Entry of this Final Order shall not be deemed to prejudice any and all rights, remedies, claims and causes of action the DIP Lenders may have against third parties, and shall not prejudice the rights of the DIP Lenders from and after the entry of this Final Order to seek any other relief in the Debtors' chapter 11 cases. Entry of this Final Order shall not in any way constitute: (a) a preclusion or a waiver of any right of the DIP Lenders to file, or to prosecute if already filed, a motion for relief from stay, a motion or request for other relief, including but not limited to any adversary proceeding; (b) agreement, consent, or acquiescence to the terms of any chapter 11 plan of liquidation by virtue of any term or provision of this Final

42

Order; (c) a preclusion or waiver to assert any other rights, remedies or defenses available to the DIP Lenders, or to respond to any motion, application, proposal, or other action, all such rights, remedies, defenses and opportunities to respond being specifically reserved by the DIP Lenders; or (d) a preclusion, waiver or modification of any rights or remedies that the DIP Lenders have against any other person or entity.

31.     <u>Restrictions on Additional Use of Cash Collateral, Additional Financing</u>.  All postpetition loans, advances and other financial accommodations under the DIP Note and the other DIP Facility Documents are made in reliance on this Final Order and in the event that an order is entered at any time in the Debtors' chapter 11 cases or in any subsequently converted case under chapter 7 of the Bankruptcy Code (other than the Final Order) which (a) authorizes the use of cash collateral of the Debtors in which the DIP Lenders have a security interest or the sale, lease, or other disposition of property of the Debtors' estates in which the DIP Lenders have a lien or security interest, except as expressly permitted hereunder or in the DIP Facility Documents, or (b) authorizes under Bankruptcy Code § 364 the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property or the proceeds thereof in which the DIP Lenders holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the DIP Lenders herein or in the DIP Facility Documents then, in each instance described in clauses (a) and (b) of this paragraph, (i) the DIP Lenders, as is required by the DIP Note, shall first have given their express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by the DIP Lenders, or (ii) such other order shall require that all DIP Facility Obligations first shall be indefeasibly paid in full in cash in immediately available funds.  The liens and security interests granted to or for the benefit

43

of the DIP Lenders hereunder and under the DIP Facility Documents and the rights and remedies

of the DIP Lenders pursuant to this Final Order and the DIP Facility Documents with respect to

the DIP Facility Obligations and the Collateral are cumulative and shall not be altered, modified,

extended, impaired, or affected by any chapter 11 plan of liquidation of the Debtors.

32.     _Proofs of Claim_.  The DIP Lenders, the Administrative Agent and the Prepetition

Lenders shall not be required to file proofs of claim in any of the chapter 11 cases for any claim

allowed herein or on account of the Prepetition Obligations or the DIP Facility Obligations, as

applicable.

33.     _No Obligation to Extend Credit_.  The DIP Lenders shall not have any obligation

to make any further loan or advance under the DIP Facility Documents unless all of the

conditions precedent to the making of such extension of credit under the DIP Facility

Documents, the Interim Order and this Final Order, as applicable, have been satisfied in full or

waived by the DIP Lenders in accordance with the DIP Facility Documents.

34.     _Limitation of Liability_.  Nothing in the Interim Order, this Final Order or the DIP

Facility Documents shall in any way be construed or interpreted to impose, or allow the

imposition upon the DIP Lenders of, any liability for any claims arising from the prepetition or

postpetition activities by the Debtors in the operation of its business or in connection with its

restructuring efforts.

35.     _No Modification or Stay of Final Order_.  If any or all of the provisions of this

Final Order or the DIP Facility Documents are hereafter modified, vacated or stayed, such

modification, vacatur or stay shall not affect (a) the validity of any obligation, indebtedness or

liability incurred by the Debtors to the DIP Lenders prior to the effective date of such

modification, vacatur or stay, or (b) the validity or enforceability of any security interest, lien, or

44

priority authorized or created hereunder or pursuant to the DIP Facility Documents, as applicable. Notwithstanding any such modification, vacatur or stay, any indebtedness, obligations or liabilities incurred by the Debtors to the DIP Lenders prior to the effective date of such modification, vacatur or stay shall be governed in all respects by the original provisions of this Final Order or the DIP Facility Documents, as applicable; and the DIP Lenders shall be entitled to all the rights, remedies, privileges and benefits granted herein and under the DIP Facility Documents with respect to all such indebtedness, obligations and/or liabilities. The indebtedness, obligations and/or liabilities of the Debtors to the DIP Lenders under this Final Order and/or the DIP Facility Documents shall not be discharged by the entry of an order approving a sale of substantially all of the Debtors' assets pursuant to Bankruptcy Code § 363, or an order confirming a plan of liquidation in the Debtors' bankruptcy cases pursuant to Bankruptcy Code § 1141(d)(4) or otherwise, unless and until all indebtedness, obligations and liabilities of the Debtors to the DIP Lenders are indefeasibly paid in full in cash in accordance with the terms and conditions of the DIP Facility Documents prior to or concurrently with the entry of such order unless otherwise agreed or consented to by the DIP Lenders. No indebtedness, obligation or liability owed by the Debtors to the DIP Lenders under this Final Order or the DIP Facility Documents, prior to the effective date of any modification, vacatur or stay of this Final Order can, as a result of any subsequent order in these chapter 11 cases, or in any superseding case, be subordinated, lose its lien priority or super-priority administrative claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Lenders under this Final Order and/or the DIP Facility Documents.

36. <u>Good Faith</u>. The terms of the financing arrangements among the Debtors and the DIP Lenders have been negotiated in good faith and at arms' length and any loans, advances or

other financial accommodations which are made or caused to be made to the Debtors by the DIP Lenders pursuant to the DIP Facility Documents are deemed to have been made and provided in good faith, as the term "good faith" is used in Bankruptcy Code § 364(e), and shall be entitled to the full protection of Bankruptcy Code § 364(e) in the event that this Final Order or the DIP Facility Documents or any provisions herein or therein are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court without the consent of the DIP Lenders.

37.  <u>Conflicting Provisions</u>.  Unless otherwise provided in this Final Order, to the extent the terms and conditions of the DIP Facility Documents or the DIP Motion are in conflict with the terms and conditions of this Final Order, the terms and conditions of this Final Order shall control.

38.  <u>Effectiveness</u>.  This Final Order shall constitute findings of fact and conclusions of law, and notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Final Order shall (a) be immediately enforceable, and (b) not be stayed absent the grant of such stay under Bankruptcy Rule 8005 after a hearing upon notice to the Debtors and the DIP Lenders.


Dated: Wilmington, Delaware

_____, 2009


_____
United States Bankruptcy Judge


46