## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| UNIVERSAL BUILDING PRODUCTS, INC., *et al.*,[1] | ) Case No. 10-12453 (MFW) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) **Related to Docket No. 17** |
| | ) |

### INTERIM ORDER (A) AUTHORIZING AND APPROVING DEBTORS' POST-PETITION FINANCING; (B) GRANTING LIENS AND SECURITY INTERESTS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (C) AUTHORIZING USE OF CASH COLLATERAL AND AFFORDING ADEQUATE PROTECTION; (D) MODIFYING AUTOMATIC STAY; AND (E) SCHEDULING A FINAL HEARING

This matter came before this Court on the Debtors' Motion for Entry of Interim and Final Orders: (A) Authorizing and Approving Postpetition Financing; (B) Granting Liens and Security Interests and Providing Superpriority Administrative Expense Status; (C) Authorizing Use of Cash Collateral and Affording Adequate Protection; (D) Modifying Automatic Stay; and (E) Scheduling a Final Hearing (the "DIP Motion"), pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et. seq.* (as amended, the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 2002, 4001(c) and (d) (as amended, the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). The DIP Motion requests the entry of an interim order (the "Interim Order"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Universal Building Products, Inc. (7884); (ii) Accubrace, Inc. (3418); (iii) Don De Cristo Concrete Accessories, Inc. (7547); (iv) Form-Co, Inc. (0079); and (v) Universal Form Clamp, Inc. (3003). The address of the Debtors' corporate headquarters is 15172 Goldenwest Circle, Westminster, California 92683.

(a)     authorizing and approving postpetition financing (the "DIP Facility") on the terms and conditions set forth in this Interim Order and the DIP Note (as hereinafter defined), from UBP Acquisition Corp. (together with any parties who subsequently become lenders in accordance with the terms of the DIP Note, the "DIP Lenders") to permit, among other things, (i) the management and preservation of the Debtors' assets and properties, (ii) a sale of certain of those assets (the "Proposed Sale") at an auction (the "Auction") pursuant to an order entered by the Court approving bid procedures (the "Bid Procedures") related thereto, and (iii) the Debtors to confirm and effectuate a chapter 11 plan of liquidation on the terms agreed to by the Prepetition Lenders and Debtors (the "Plan");[2]

(b)     authorizing the Debtors to enter into, execute, deliver and comply in all respects with the DIP Note and the other DIP Facility Documents, and approval of all of the terms and conditions of the DIP Note and the other DIP Facility Documents (as hereinafter defined);

(c)     providing that the financing under the DIP Note, including, without limitation, as to all principal, accrued interest, unpaid fees and expenses, indemnification, and all other amounts due from time to time under the documents referred to below, including the DIP Obligations (collectively, the "DIP Facility Obligations"):

(i)     have priority, pursuant to Bankruptcy Code § 364(c)(1), over any and all administrative expenses, subject only to the Carve-Out (as defined below), which allowed superpriority claims of the DIP Lender shall be payable from and have recourse to all prepetition and postpetition property of the Debtors, as provided for herein; and

---

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Note or Interim Order (as hereinafter defined).

596521.1 8/9/10

(ii) pursuant to Bankruptcy Code §§ 364(c)(2), (c)(3) and (d), be and be deemed to be secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior security interests in, and liens upon (all such liens and security interests granted to the DIP Lenders, pursuant to this Interim Order and the DIP Facility Documents, the "DIP Facility Liens"), all prepetition and postpetition assets of the Debtors, whether now existing or hereafter acquired, including all of the real, personal (tangible and intangible) and mixed property (including equity interests) and all monies and other property of any kind received on account thereof, and all products and proceeds thereof (including, upon and following entry of an order granting the relief requested in the DIP Motion on a final basis (the "Final Order") by the Court, any and all Avoidance Actions or other claims or causes of action under Chapter 5 of the Bankruptcy Code and proceeds or property recovered in respect thereof (the "Avoidance Actions")) in which DIP Facility Liens are granted whether pursuant to this Interim Order, or otherwise, in each case as security for the DIP Facility Obligations (each of the foregoing, the "Collateral"), but specifically (i) being subject solely to the Carve-Out to the extent provided for below, and (ii) receiving a junior lien on all Collateral encumbered by the Prior Liens (as hereinafter defined), pursuant to Bankruptcy Code § 364(c)(2), subject to the provisions of Paragraphs 6 and 7 below;

(d) authorizing the Debtors' use of the Prepetition Lenders' (as defined below) cash collateral and granting adequate protection on account of the Prepetition Loan Documents (as defined below) under Bankruptcy Code §§ 105, 361, 362 and 363;

(e) authorizing the DIP Lenders to exercise rights and remedies under the DIP Facility Documents upon the occurrence and continuance of an Event of Default, including

3

without limitation, upon the entry of an order or orders granting relief from the automatic stay applicable under Bankruptcy Code § 362;

(f)  subject to entry of the Final Order, authorizing the waiver by the Debtors of any right to seek to surcharge against the Collateral pursuant to Bankruptcy Code § 506(c);

(g)  providing, pursuant to Bankruptcy Rule 4001, for a final hearing to be held before this Court to consider entry of an order authorizing and granting the relief requested in the DIP Motion on a final basis, including without limitation, authorizing the guarantors party to that certain guaranty, dated as of August 3, 2010, in favor of UBP Acquisition Corp. (together with its successors and assigns "Payee"), on a final basis to guaranty on a secured basis the obligations of UBP with respect to the loans and other financial accommodations made from time to time by the DIP Lenders under or pursuant to the DIP Note and the other DIP Facility Documents;

(h)  scheduling a final hearing (the "Final Hearing") to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing; and

(i)  granting certain related relief.

The Court having held an interim hearing (the "Interim Hearing") on the DIP Motion and use of Cash Collateral on August 5, 2010, and the Court having found that notice of the Interim Hearing and the interim relief requested therein was provided by the Debtors pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1) and Rule 2002-1 of the Local Rules on the following parties:  (a) the Office of the United States Trustee for the District of Delaware; (b) the Internal Revenue Service; (c) the Securities and Exchange Commission; (d) the Prepetition Lenders; (e) the creditors holding the thirty (30) largest unsecured claims against the Debtors' estates on a consolidated basis; (f) UBP Acquisition Corp. ("NewCo"), 333 South Grand Ave, Floor 28, Los

596521.1 8/9/10

Angeles, CA 90071, Attn: Jordon Kruse and David Quick, (g) Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654 Attention: David L. Eaton, Esq., Christopher J. Greeno, P.C., and David A. Agay, Esq., counsel to the Administrative Agent (as defined below) and NewCo; (h) any known party that has filed a lien against any of the Debtors' assets; (i) the Debtors' landlords; and (j) all parties who filed requests for notices pursuant to Bankruptcy Rule 2002 in the Debtors' chapter 11 cases (collectively, the "Interim Notice Parties"). The Court having considered all the pleadings filed with this Court; and having overruled all unresolved objections to the relief requested in the DIP Motion; and upon the record made by the Debtors and other parties in interest at the Interim Hearing, including the DIP Motion, and other filings and pleadings in the Debtors' chapter 11 cases, and after due deliberation and consideration and good and sufficient cause appearing therefor;

BASED ON THE RECORD OF THE INTERIM HEARING, WITH APPEARANCES OF ALL INTERESTED PARTIES, THE DEBTORS' STIPULATIONS CONTAINED HEREIN AND THE DIP MOTION, THE COURT HEREBY FINDS:[3]

A.    Petition Date.  On the date of the DIP Motion (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or this "Court"). The Debtors are functioning as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

B.    Jurisdiction and Venue.  Consideration of the DIP Motion constitutes a "core proceeding" as defined in 28 U.S.C. § 157(b)(2)(M).  This Court has core jurisdiction over the chapter 11 cases, this proceeding, and the parties and property affected hereby pursuant to

---

[3]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Fed. R. Bankr. P. 7052.

596521.1 8/9/10

28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     <u>Committee Formation</u>. As of August 6, 2010, the United States Trustee (the "<u>U.S. Trustee</u>") has not yet appointed an official committee of unsecured creditors (the "<u>Committee</u>") in these cases pursuant to Section 1102 of the Bankruptcy Code.

D.     <u>Notice</u>. Notice of the DIP Hearing, the DIP Motion, the relief requested therein and proposed entry of this Interim Order has been provided to the Interim Notice Parties. Under the circumstances, notice of the Hearing and the relief requested in the DIP Motion is due and sufficient notice and complies with Bankruptcy Code § 102(1), Bankruptcy Rule 2002, 4001(c), and 4001(d), and the Local Rules. In light of the nature of the relief requested in the DIP Motion, no other or further notice is necessary.

E.     <u>Prepetition Operations</u>. Prior to the Petition Date, the Debtors ceased all operations other than the Continuing Business (as defined below).

F.     <u>Cooperation</u>. The Debtors continue to assist, cooperate and consult with, the Administrative Agent in taking possession of the Specified Equipment, as such term is defined in that certain Strict Foreclosure Agreement, dated as of August 3, 2010, by and among the Borrowers, the Prepetition Lenders and the Administrative Agent, attached hereto as **Exhibit 3**.

G.     <u>The Debtors' Stipulations as to Existing Secured Debt</u>. Subject to the limitations contained in Paragraph 12 of this Interim Order, the Debtors, for themselves, their estates and all representatives of such estates, admit, stipulate, acknowledge and agree that:

        (a)     <u>Credit Agreement</u>. Pursuant to that certain Credit Agreement, dated as of April 28, 2006 as amended by (i) that certain First Amendment to Credit Agreement dated as of March 26, 2009, (ii) that certain Second Amendment to Credit Agreement dated as of April 13, 2009, and (iii) that certain Third Amendment to Credit Agreement and Waiver dated as of January 29, 2010 (such agreement, as amended, without giving effect to any other amendments, restatements, supplements or modifications thereto, the

6

"Credit Agreement"), among Universal Building Products, Inc. ("UBP"), certain subsidiary borrowers party thereto (collectively, the "Subsidiary Borrowers" and together with UBP, the "Borrowers"), the several lenders from time to time party thereto which, as of the Petition Date, consisted solely of NewCo (collectively, the "Prepetition Lenders"), and OCM FIE L.P., as the successor to the administrative agent for the Prepetition Lenders (in such capacity, the "Administrative Agent"), the Prepetition Lenders made loans and other financial accommodations to or for the benefit of the Debtors. As of the Petition Date, the Debtors were truly and justly indebted to the Prepetition Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $40,331,692.45 in respect of loans and other financial accommodations made, by the Prepetition Lenders pursuant to the Prepetition Loan Documents (as hereinafter defined), plus accrued and unpaid interest thereon, any cash management obligations owed to any Prepetition Lender and fees and expenses (including fees and expenses of attorneys and advisors) as provided in the Prepetition Loan Documents. In connection with the Credit Agreement, the Borrowers and the Administrative Agent entered into: (A) that certain Security Agreement, dated as of April 28, 2006 (the "Security Agreement"), under which the Administrative Agent and Prepetition Lenders received a security interest in substantially all of the Debtors' real and personal assets, then or thereafter acquired, including, without limitation, bank accounts, cash and cash equivalents, chattel paper (including electronic chattel paper), certain deposit accounts, copyright licenses, copyrights, deposit accounts, documents, equipment, fixtures, general intangibles, goods, instruments, intellectual property, inventory, investment property, letter-of-credit rights, material contracts, payment intangibles, patent licenses, patents, trademark licenses, trademarks, software, supporting obligations, and other tangible and intangible personal property (including any setoff rights described in the Credit Agreement and arising by operation of law) (collectively, the "Security Collateral"), including, for the avoidance of doubt, any and all products and proceeds of the Security Collateral; and (B) that certain Pledge Agreement, dated as of April 28, 2006 (the "Pledge Agreement"), under which the Borrowers pledged and granted the Administrative Agent (on behalf of the Prepetition Lenders) a continuing security interest in any and all right, title and interest of each Borrower in certain Pledged Collateral (as such term is defined in the Pledge Agreement) (such Pledged Collateral, together with the Security Collateral, the "Prepetition Collateral"). In addition, the Debtors entered into certain additional guaranty, collateral and ancillary documentation with the Administrative Agent and Prepetition Lenders (such documentation, together with the Credit Agreement, Security Agreement, and Pledge Agreement, the "Prepetition Loan Documents" and the obligations under the Prepetition Loan Documents being the "Prepetition Obligations").

(b)     Validity and Priority of Prepetition Liens, Claims, and Prepetition Obligations. As security for the Prepetition Obligations, the Debtors granted to the Administrative Agent (on behalf of the Prepetition Lenders) valid and perfected first-priority continuing liens on and security interests (the "Prepetition Liens") in the Prepetition Collateral, all as more fully set forth in the Prepetition Loan Documents. For the avoidance of doubt, the Administrative Agent (on behalf of the Prepetition Lenders) received perfected first priority liens in all products and proceeds of the Prepetition Collateral, including the funds and any other proceeds of the Prepetition Collateral in any

7

of the Debtors' deposit accounts. Subject in all respects only to (x) the Carve-Out (as defined herein) and (y) the Investigation Period set forth in Paragraph 12 hereof:

(i)     the Prepetition Liens are valid, binding, enforceable, non-avoidable, and perfected liens that have priority over any and all other security interests in the Prepetition Collateral except for certain prior liens permitted under the Prepetition Loan Documents (to the extent any valid, properly perfected, unavoidable, and senior liens exist, they are referred to herein as the "Prior Liens");

(ii)     the Prepetition Liens are not subject to avoidance, disallowance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iii)     the Prepetition Obligations constitute legal, valid, binding and non-avoidable obligations of the Debtors that, except for the stay of enforcement arising from Bankruptcy Code § 362, are enforceable in accordance with the terms of the Prepetition Loan Documents; and

(iv)     no offsets, defenses, challenges, objections, claims, or counterclaims of any kind or nature to any of the Prepetition Obligations or the Prepetition Liens exist, and no portion of the Prepetition Obligations or the Prepetition Liens is subject to avoidance, recharacterization or subordination pursuant to the applicable provisions of the Bankruptcy Code or applicable non-bankruptcy law or otherwise, and the Debtors and their estates have no offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, Avoidance Actions and any proceeds thereof, against the Administrative Agent or any of the Prepetition Lenders which would in any way affect the validity, enforceability and non-avoidability of the Prepetition Obligations and the Prepetition Liens under the Prepetition Loan Documents.

(c)     <u>Release of Claims</u>. The Debtors hereby waive and release any and all claims, offsets, defenses, challenges, objections or counterclaims arising under the Prepetition Loan Documents against the Administrative Agent, the Prepetition Lenders, or their officers, directors, employees, attorneys, representatives, parent, shareholders, affiliates, predecessors, successors, or assigns, whether known or unknown, at law or in equity.

(d)     <u>Budget</u>. The Debtors have in good faith provided the Budget. The Debtors agree not to incur any expenses postpetition other than expenses incurred in accordance with the Budget without the prior written consent of the Administrative Agent.

(e)     The Debtors' Stipulations shall be binding on the Debtors and any of their successors-in-interest and assigns (including without limitation a receiver, administrator, or trustee appointed in this case or in any jurisdiction), but are subject to the provisions contained in Paragraph 12 below.

596521.1 8/9/10

(f)    The Administrative Agent, on behalf of the Prepetition Lenders, has indicated a willingness to agree and consent to permit the use of Cash Collateral by the Debtors subject to (i) the entry of this Interim Order and compliance by the Debtors of the terms contained herein and (ii) findings by the Court that such use of Cash Collateral is essential to the Debtors' estates, that the terms of such use of Cash Collateral were negotiated in good faith and at arm's length, and that the Administrative Agent's liens, claims, and other protections granted pursuant to this Interim Order will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Interim Order or any other order.

H.    Findings Regarding Postpetition Financing.

(a)    *Debtors' Request.* The Debtors have requested from the DIP Lenders, and the DIP Lenders are willing to extend, certain loans, advances and other financial accommodations, as more particularly described and on the terms and conditions set forth in the DIP Motion and this Interim Order and the DIP Facility Documents.

(b)    *Need for Postpetition Financing.* The Debtors have an immediate need to use the DIP Facility and the Prepetition Collateral (including the Cash Collateral), in order to permit, among other things, the management and preservation of the Debtors' assets and properties and the Proposed Sale at the Auction in accordance with the Bid Procedures. Without such continued use of Cash Collateral and commitments under the DIP Facility, the Debtors' estates would be imminently and irreparably harmed.

(c)    *No Credit Available on More Favorable Terms.* The Debtors represent that they are unable to obtain sufficient financing from sources other than the DIP Lenders on terms more favorable than under, and for the purposes set forth in, the DIP Note (as defined below and in substantially the form affixed as **Exhibit 1** hereto, subject to any modifications permitted hereunder, to the extent applicable) and any and all documents and instruments delivered pursuant thereto or in connection therewith (as may have been amended, modified or supplemented from time to time and inclusive of the DIP Note, the "DIP Facility Documents") and are not able to obtain sufficient unsecured

9

credit allowable as an administrative expense under Bankruptcy Code § 503(b)(1). The Debtors are also unable to obtain unsecured credit without the enhanced priority afforded by Bankruptcy Code § 364(c)(1). New credit is unavailable to the Debtors without providing the DIP Lenders with (a) the DIP Facility Superpriority Claims and (b) the DIP Facility Liens, in each case on the terms and conditions set forth herein and in the DIP Facility Documents.

(d)     *Budget.* The Debtors have prepared and delivered the Budget to the DIP Lenders, a copy of which Budget is attached hereto as **Exhibit 2**. Such Budget has been thoroughly reviewed by the Debtors and their management. The Debtors represent that the Budget is achievable and will allow the Debtors to preserve the value of their estates, conduct the Auction in accordance with the proposed Bid Procedures, and obtain approval of and consummate their chapter 11 plan of liquidation. The DIP Lenders, the Administrative Agent and the Prepetition Lenders have relied upon the Debtors' compliance with the Budget, subject to the variances permitted by the DIP Note and continue to rely upon the Debtors' compliance with the Budget in accordance with this Interim Order and subject to the variances permitted by the DIP Note in determining to enter into, and continue to make available, the postpetition financing arrangements and access to Cash Collateral provided for herein.

(e)     *Cash Collateral.* The Debtors stipulate, agree and acknowledge, subject to the rights of the Committee or other party in interest pursuant to Paragraph 12 below, that its cash, including, without limitation, all cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and any amounts generated by the collection of accounts receivable, the sale of inventory or other disposition of Prepetition

596521.1 8/9/10

Collateral, constitute proceeds of the Prepetition Collateral and are cash collateral of the Prepetition Lenders within the meaning of Bankruptcy Code § 363(a) (the "Cash Collateral"). The Prepetition Lenders are entitled, pursuant to Bankruptcy Code §§ 361, 363(c)(2), 363(e), and 364(d)(1), to adequate protection of their liens and security interests in the Prepetition Collateral, in an amount equal to any diminution in value of the Prepetition Collateral, including, without limitation, any such diminution resulting from the use of Cash Collateral, the Carve-Out, the implementation of the DIP Facility, the sale, lease or use by the Debtors (or other decline in market value) of the Prepetition Collateral and the imposition of the automatic stay pursuant to Bankruptcy Code § 362. The Prepetition Lenders have indicated a willingness to consent and agree to allow the Debtors to use their Cash Collateral in accordance with the restrictions set forth in this Interim Order, the DIP Note, and the other DIP Facility Documents.

(f)     *Business Judgment and Good Faith Pursuant to Section 364(e).*  Based on the record of the Interim Hearing, the terms of the DIP Facility Documents, and this Interim Order, the DIP Facility Documents and the use of Prepetition Collateral (including the Cash Collateral) are fair, just and reasonable under the circumstances, ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration. The use of Prepetition Collateral (including the Cash Collateral) in accordance with this Interim Order and the terms of the DIP Note and the other DIP Facility Documents have been negotiated in good faith and at arm's length between the Debtors, the Administrative Agent, the Prepetition Lenders, and the DIP Lenders, with all parties represented by counsel, and

596521.1 8/9/10

any credit extended, loans made, and other financial accommodations extended to the Debtors by the Prepetition Lenders or the DIP Lenders shall be deemed to have been extended, issued, or made, as the case may be, in "good faith" as that term is used in Bankruptcy Code § 364(e) and in express reliance upon the protections afforded by Bankruptcy Code § 364(e) in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(g) *Good Cause, Immediate Entry.* The Debtors represent that the relief requested by the DIP Motion is necessary, essential and appropriate and is in the best interests of and will benefit the Debtors, their estates and their creditors as its implementation will, among other things, provide the Debtors with the necessary liquidity to (i) effect the Proposed Sale at the Auction in accordance with the Bid Procedures, (ii) preserve and maximize the value of the Debtors' estates for the benefit of all of the Debtors' creditors, and (iii) avoid immediate and irreparable harm to the Debtors, their creditors, their businesses, their employees, and their assets. Thus, good cause has been shown for entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).

Based upon the foregoing, and after due consideration and good cause appearing therefor:

IT IS ORDERED, ADJUDGED AND DECREED, that:

1. <u>DIP Motion Granted</u>. The DIP Motion is granted in and to the extent provided in this Interim Order. This Interim Order shall become effective immediately upon its entry.

2. <u>Objections Overruled</u>. All objections to the entry of this Interim Order are withdrawn or resolved by the terms hereof or, to the extent not resolved, are overruled.

3. <u>Authorization of the Use of Cash Collateral</u>. The Debtors are hereby authorized to use the Prepetition Lenders' Cash Collateral in accordance with the Budget and the terms

12

hereof, provided, that the Debtors satisfy the conditions to effectiveness of the DIP Note (and funding thereunder after entry of the Interim Order and prior to entry of the Final Order) and the Debtors are not in default under the terms of this Interim Order and the DIP Facility Documents. For the avoidance of doubt, the Debtors shall not have access to any collections and other property of the Debtors, other than collections and other property of Form-Co, Inc. ("Form-Co") and Accubrace, Inc. ("Accubrace"), and any deposit accounts and lockboxes of such Debtors other than Form-Co and Accubrace shall be detached from that certain UBP Concentration Account (as such term is defined in the Debtors' Motion for Entry of Order Authorizing the Debtors to Continue to Use Existing Cash Management System, filed as of the Petition Date) and all disbursement accounts such that no funds flow out of such accounts and lockboxes. Debtors shall not change any payment instructions with any of their customers. To the extent any collections are received after the Petition Date with respect to (a) any accounts receivable of any Debtor other than Form-Co and Accubrace rental collections, Debtors shall immediately segregate such funds and deposit them in the deposit accounts of Debtors other than Form-Co and Accubrace and (b) any dispositions, insurance recoveries tax refunds, or funds not otherwise described in Clause (a) (other than disbursements under the DIP Notes), the Debtors shall apply such collections in accordance with the DIP Note.

4. <u>DIP Facility Documents</u>. The Debtors are hereby authorized: (a) to borrow under that certain Senior Secured Super-Priority Debtor-In-Possession Promissory Note (the "<u>DIP Note</u>"), dated as of August 3, 2010, by and among the Debtors and the DIP Lenders (subject to any modifications permitted hereunder) up to an aggregate interim amount of $837,099 (which may be increased pursuant to the terms and conditions of the DIP Note and the other DIP Facility Documents), <u>provided</u>, that the Debtors continue to satisfy the conditions to funding thereunder

13

and the Debtors are not in default under the terms of this Interim Order, the DIP Note or the other DIP Facility Documents, and, provided further that the Debtors may borrow under the DIP Note in accordance with the terms thereof without the need for further approval of this Court; and (b) to continue to operate the Continuing Business (as defined below) in accordance with the Budget and the DIP Note. Upon execution and delivery of the DIP Facility Documents, the DIP Facility Documents shall constitute and are hereby deemed to be legal, valid, and binding obligations of the Debtors and the Debtors' estates, enforceable against the Debtors and their estates in accordance with the terms of this Interim Order and the DIP Facility Documents. Cash Collateral and available financing and advances under the DIP Note will continue to be used or made only in accordance with the terms and conditions of this Interim Order, the DIP Note and the other DIP Facility Documents, including §§ 1(b), 1(d) and 1(f) thereof, to: (a) fund the Debtors' operations solely to the extent necessary to maintain the Continuing Business and in accordance with the Budget; (b) to pay such other amounts as are required or permitted to be paid pursuant to the DIP Note (as limited by the Budget), the other DIP Facility Documents and this Interim Order; (c) complete the Proposed Sale; and (d) fund consummation of the Plan.

5.  <u>Execution and Compliance with DIP Facility Documents</u>. The Debtors are hereby authorized to execute, deliver, perform and comply with (and, to the extent necessary or applicable, execute and deliver) all of the terms and covenants of the DIP Note and the other DIP Facility Documents, each of which constitute valid, binding, enforceable and non-avoidable obligations of the Debtors for all purposes during the Debtors' chapter 11 cases, any case of any Debtor subsequently converted pursuant to chapter 7 of the Bankruptcy Code or after the dismissal or reorganization of any Debtors' chapter 11 cases. The Debtors are hereby authorized to perform all acts, and execute and comply with the terms of all instruments and

documents (including, without limitation, the execution of security agreements, mortgages and financing statements), as the DIP Lenders may reasonably require as evidence of and for the protection of the DIP Facility Obligations and the Collateral or which may be otherwise deemed necessary by the DIP Lenders to effectuate the terms and conditions of this Interim Order and the DIP Facility Documents.

6. <u>DIP Facility Superpriority Claims</u>. As security for the DIP Facility Obligations now existing or hereafter arising pursuant to the DIP Facility, the DIP Facility Documents and this Interim Order, the DIP Lenders are hereby granted pursuant to this Interim Order, allowed super-priority administrative claims pursuant to Bankruptcy Code § 364(c)(1), which claims shall have priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors, now in existence or hereafter incurred by any of the Debtors and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726 and/or 364(c)(1) (the "<u>DIP Facility Superpriority Claims</u>"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all products and proceeds thereof, <u>provided</u>, that the DIP Facility Superpriority Claims shall be subordinate only to the Carve-Out to the extent specifically provided for in Paragraph 12 of this Interim Order and the Prior Liens.

7. <u>DIP Facility Liens</u>. As security for the DIP Facility Obligations, pursuant to Bankruptcy Code §§ 364(c)(2), (c)(3), and (d) and the consent of the Prepetition Lenders and the Administrative Agent, the DIP Lenders are hereby granted (effective and perfected upon the date hereof and without the necessity of the execution by the Debtors or the filing or recordation of

15

mortgages, security agreements, control agreements, pledge agreements, lock box agreements financing statements, or otherwise, or the possession or control by the DIP Lenders of any property), subject only to the Carve-Out and the Prior Liens, the following DIP Facility Liens:

    (a)    pursuant to Bankruptcy Code § 364(c)(2), valid, binding, continuing, perfected, enforceable and non-avoidable first priority liens on and security interests in all tangible and intangible prepetition and postpetition assets and property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, were not subject to valid, perfected, enforceable and non-avoidable liens, including, without limitation, any and all unencumbered cash, inventory, bank accounts, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds and products of all the foregoing, including, subject to entry of the Final Order, Avoidance Actions and the proceeds and products thereof;

    (b)    pursuant to Bankruptcy Code § 364(c)(3), valid, binding, continuing, perfected, enforceable and non-avoidable second priority or other junior liens on and security interests in all tangible and intangible prepetition and postpetition assets and property of the Debtors, whether now owned or hereafter acquired, that are subject to Prior Liens that are valid, perfected, enforceable and non-avoidable liens in existence on the Petition Date or to valid and unavoidable liens in existence on the Petition Date that are perfected subsequent to such commencement as permitted by Bankruptcy Code

596521.1 8/9/10

§ 546(b) (other than assets and property that are subject to the existing liens as referred to in subparagraph (c) below, which existing liens shall be primed as provided therein);

(c)      pursuant to Bankruptcy Code § 364(d), valid, binding, continuing, perfected, enforceable and non-avoidable first priority senior priming liens on and security interests in the all of Prepetition Collateral and the proceeds and products thereof. Such security interests and liens shall be senior in all respects to (i) the interests in such property of the Administrative Agent and the Prepetition Lenders arising from current and future liens of the Administrative Agent and the Prepetition Lenders (including, without limitation, the Adequate Protection Liens (defined below)) and (ii) the interests in such property held by any party whose interests are junior to the interests of the Administrative Agent and the Prepetition Lenders, other than, for avoidance of doubt, Prior Liens; and

(d)      the DIP Facility Liens and the Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Bankruptcy Code § 551 or (B) any liens arising after the Petition Date, or (ii) subordinated to or made *pari passu* with any other lien or security interest under Bankruptcy Code §§ 363 or 364 or otherwise other than as set forth in this Interim Order. The DIP Facility Liens shall not be subject to Bankruptcy Code §§ 510, 549 or 550.

8.      <u>Adequate Protection</u>. The Prepetition Lenders and Administrative Agent are entitled to adequate protection for, among other things, the DIP Facility Liens, the Carve-Out and the Debtors' use of Cash Collateral. As adequate protection, the Prepetition Lenders and Administrative Agent are hereby granted and continue to be granted (effective and perfected

17

upon the entry of this Interim Order and without the necessity of the execution, recordation or filing by the Debtors of any security agreements, financing statements or other agreements or documents) the following forms of adequate protection:

(a)     Adequate Protection Liens.  Solely to the extent of diminution in the value of the Prepetition Collateral (whether the reason for such diminution is as a result of or arises from, or is attributable to, the imposition of the automatic stay, the use of Cash Collateral, the Carve-Out or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral), if any, the Administrative Agent (on behalf of the Prepetition Lenders) is hereby granted, effective and perfected as of the Petition Date and without the necessity of the execution by the Debtors of security agreements, pledge agreements, financing statements, or other agreements, a valid and perfected replacement security interest in, and lien on, the Collateral, (including all products and proceeds thereof), now or hereafter acquired, including, subject to entry of a Final Order, any Avoidance Actions and proceeds or property recovered in respect thereof (the "Adequate Protection Liens"), which Adequate Protection Liens shall be senior to all prepetition liens (except Prior Liens), shall also encumber all of the Debtors' assets not subject to a prepetition lien (if any), and shall be equivalent to a lien granted under Bankruptcy Code § 364(c).  The Adequate Protection Liens shall be subject only to (i) the Carve-Out, (ii) the Investigation Period of Paragraph 12 hereof, (iii) the DIP Facility Liens, and (iv) any Prior Liens to the extent such Prior Liens are valid, perfected and unavoidable and senior to the Administrative Agent's Prepetition Liens.  The Adequate Protection Liens granted by this Interim Order: (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor

18

of the Administrative Agent and the Prepetition Lenders on the Petition Date; and (ii) are and shall be valid, perfected, enforceable and effective as of the Petition Date without any further action by the Debtors or the Prepetition Lenders and without the necessity of the execution, filing or recordation of any financing statements, security agreements, pledge agreements filings with the United States Patent and Trademark Office, mortgages or other documents, obtaining control agreements or other agreements over bank accounts or possession of stock certificates. Notwithstanding the foregoing, the Administrative Agent (on behalf of the Prepetition Lenders) may, in its sole discretion, file such financing statements, mortgages (including ship mortgages), leasehold mortgages, notices of liens and other similar documents, and is hereby granted relief from, the automatic stay of Bankruptcy Code § 362 in order to do so, and all such financing statements, mortgages, leasehold mortgages, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of these chapter 11 cases.

(b)     <u>Administrative Claim</u>.  The Administrative Agent (on behalf of the Prepetition Lenders) is hereby granted in each of the Debtors' chapter 11 cases an allowed administrative claim (the "<u>Administrative Claim</u>") under Bankruptcy Code § 507(b) with respect to all Adequate Protection Obligations, to the extent that the Adequate Protection Liens do not adequately protect the diminution in the value of the Prepetition Collateral.  Such Administrative Claim shall be (i) payable from and have recourse to all prepetition and postpetition property of the Debtors and all products and proceeds thereof; and (ii) subject only to the Carve-Out, the DIP Facility Liens, the DIP

596521.1 8/9/10

Facility Superpriority Claims and any Prior Liens permitted under the Credit Agreement or this Interim Order.

(c)     <u>Professional and Other Fees</u>. The Administrative Agent reserves the right to seek reimbursement from the Debtors of any reasonable and documented fees, costs and expenses reasonably incurred by or payable to the Administrative Agent in accordance with the Prepetition Loan Documents upon: (i) termination of the DIP Note for any reason; (ii) the Debtors' noncompliance with this Interim Order or the DIP Note; or (iii) as an obligation with the same priority as the Prepetition Obligations in accordance with the Debtors' plan of liquidation.

9.     For purposes of this Interim Order and the Debtors' initial funding request only, the DIP Lenders are authorized to provide funding by and through OCM Principal Opportunities Fund IV Delaware, L.P., and such funding shall be treated in all respects as if made by the DIP Lenders hereunder, and subject in all respects to: (a) the protections, claims, rights, remedies and other obligations granted to the DIP Lenders under this Interim Order and (b) any arrangements among the DIP Lender's shareholders.

10.     <u>Carve-Out</u>. For purposes hereof, the "<u>Carve-Out</u>" shall mean: (a) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under § 1930(a) of title 28 of the United States Code or otherwise, and (b) to the extent allowed at any time (provided, however, that such fees and expenses are not subsequently disallowed or disgorged by this court), all unpaid fees and expenses allowed by the Bankruptcy Court of the Debtors' and Committee's professionals and professional firms pursuant to Bankruptcy Code §§ 327 or 1103 (each a "<u>Professional Person</u>" and, collectively, the "<u>Professional Persons</u>"), that were incurred during these chapter 11 cases up to a maximum aggregate amount for clauses

(a) and (b) not to exceed the amount listed in the professional fee carve-out break-down attached to the Budget (as allocated to each such Professional Person in such break-down) less the amount of any retainer or other deposit or security held by any Professional Person as of the Petition Date (the "Carve-Out Amount"); provided that the Carve-Out shall not include any professional fees and expenses of a chapter 7 trustee or any fees or disbursements arising after the conversion of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code; provided, further, that nothing in this Interim Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates. The Carve-Out Amount shall be reduced dollar-for-dollar by any payment of fees and expenses allowed by the Court, payable under Bankruptcy Code §§ 328, 330 and 331, and paid by the Debtors. Each Professional Person's right with respect to the Carve-Out shall be limited to the separate budgeted amounts for each such Professional Person in the professional fee carve-out break-down attached to the Budget. The Carve-Out shall be free and clear of all liens, claims and encumbrances granted under this Interim Order and shall be subject only to the allowed claims of the Professionals for such fees and expenses as may be awarded by the Court under Bankruptcy Code §§327 or 328, and shall be free of any claim of creditors of the Debtors or any subsequently appointed trustee. The rights of the Professional Persons with respect to the Carve-Out shall survive the occurrence of an Event of Default.

11.     Fees and Expenses of Professionals. So long as no Default or Event of Default shall have occurred and be continuing or have occurred and be waived, the Debtors shall be permitted to pay the compensation and reimbursement of fees and expenses allowed and payable under Bankruptcy Code §§ 328, 330 and 331 (but excluding fees and expenses of third party professionals employed by Committee members) in accordance with the Budget, this Interim

21

Order and the DIP Note. Nothing contained herein is intended to constitute, nor should be construed as consent to the allowance of any fees, disbursements or expenses by any party and nothing herein shall affect the ability or right of the Debtors, the DIP Lenders, the Committee, the U.S. Trustee or any other party in interest to object to the allowance and payment of any amounts incurred or requested. In addition, no DIP Lender shall be responsible for the payment or reimbursement of any fees or disbursements of any professional retained by the Debtors or the Committee pursuant to Bankruptcy Code §§ 327, 328 or 1103(a), except with respect to their obligation to fund the Carve-Out.

12.  <u>Prepetition Loan Challenge</u>. The stipulations and admissions contained in this Interim Order shall be binding upon the Debtors and their estates in all circumstances. Subject to the terms of this paragraph, the Committee shall have until three (3) calendar days before the scheduled date of the Auction (the "<u>Investigation Termination Date</u>") within which to commence an adversary proceeding (collectively, a "<u>Prepetition Loan Challenge</u>") with respect to the validity, priority, extent, perfection, and enforceability of the claims and security interests held by the Administrative Agent (on behalf of the Prepetition Lenders) and the obligations arising under the Prepetition Loan Documents, or to assert any other claims or causes of action against the Administrative Agent and/or Prepetition Lenders held by the Debtors' estates; <u>provided</u>, that the Cash Collateral or the Carve-Out may be used for investigation by the Committee in connection therewith, subject to a limitation of $25,000, <u>provided</u>, <u>further</u>, that the Cash Collateral or the Carve-Out may not be used for the payment or reimbursement of any fees or disbursements of the Committee incurred in connection with the assertion of or joinder in any claim, counter-claim, action, proceeding, application, motion or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief: (a) invalidating,

596521.1 8/9/10

setting aside, avoiding, disallowing, subordinating, in whole or in part, the Prepetition Indebtedness or any lien and security interest securing the Prepetition Indebtedness; or (b) preventing, hindering or delaying, whether directly or indirectly, the assertion by the Prepetition Lenders or enforcement by the Prepetition Lenders of its liens or realization upon any of the respective Prepetition Collateral; or (c) challenging the Adequate Protection Liens or the Administrative Claims, or claims seeking an affirmative recovery from the Prepetition Lenders. If such a Prepetition Loan Challenge is not timely commenced within such applicable period set forth above, (a) the stipulations contained in Paragraph 12 of this Interim Order shall be irrevocably binding on the estates, the Committee and all parties-in-interest (including without limitation a receiver, administrator, or trustee appointed in this case or in any jurisdiction), (b) the claims and security interests held by the Administrative Agent (on behalf of the Prepetition Lenders) and the obligations arising under the Prepetition Loan Documents shall be recognized and allowed as valid, binding, in full force and effect, and perfected, and not subject to any claims, counterclaims, setoff or defenses, (c) the Committee and any other party in interest (including without limitation a receiver, administrator, or trustee appointed in this case or in any jurisdiction) shall thereafter be forever barred from bringing any Prepetition Loan Challenge, and (d) the Administrative Agent and the Prepetition Lenders and their respective agents, officers, directors and employees shall be deemed released and discharged from all claims and causes of action of any kind, nature or description arising at any time prior to the Petition Date, and all of Debtors' acknowledgements, releases and waivers of claims and security interests held by the Administrative Agent (on behalf of the Prepetition Lenders) and the obligations arising under the Prepetition Loan Documents in accordance with this Interim Order shall be binding upon all parties-in-interest in the Debtors' chapter 11 cases and/or in any subsequently converted case(s)

23

under chapter 7 of the Bankruptcy Code. Nothing in this Interim Order shall be deemed to confer or deny standing to commence an action on the Committee. Unless the Administrative Agent (on behalf of the Prepetition Lenders) and the Debtors each consents in writing to an extension, the Investigation Termination Date may not be extended, unless cause therefor is shown and only upon notice to the Administrative Agent and the Debtors and the filing of a motion and scheduling of a hearing date before the expiration of the Investigation Termination Date. If a timely Prepetition Loan Challenge is commenced, all of the Prepetition Liens, Adequate Protection Liens and Administrative Claims not subject to challenge shall be irrevocably allowed.

13. <u>Waiver of 506(c) Claims Against the Prepetition Lenders and the DIP Lenders</u>. Except for the Carve-Out and effective upon and subject to entry of the Final Order, no costs or expenses of administration which already have been, or may hereafter be, incurred in the Debtors' chapter 11 cases or any future proceeding that may result therefrom or in any subsequently converted case under chapter 7 of the Bankruptcy Code at any time shall be charged or asserted by the Debtors against, or recovered from, the Administrative Agent, the Prepetition Lenders or the DIP Lenders or any of their respective claims or the Prepetition Collateral, pursuant to Bankruptcy Code §§ 105 or 506(c) or otherwise without the prior written consent of the Administrative Agent, Prepetition Lenders or the DIP Lenders (and no such consent shall be implied from any other action, inaction or acquiescence by the Administrative Agent, the Prepetition Lenders or the DIP Lenders in this proceeding, including, but not limited to, funding of the Debtors' ongoing operations by the DIP Lenders).

14. <u>Restrictions on Use of Proceeds</u>. Subject to the limitations applicable in the DIP Note and in accordance with the Budget, the Debtors shall use the Prepetition Lenders' Cash

596521.1 8/9/10

Collateral and the proceeds of the DIP Facility made or arranged for by the DIP Lenders pursuant to the DIP Facility Documents and this Interim Order, and in accordance the terms and conditions of this Interim Order, the DIP Facility Documents and the Budget: (a) to preserve the value of their estates and otherwise conduct their chapter 11 cases in accordance with the Budget; and (b) to make any other payments permitted to be made by the Bankruptcy Code, in this Interim Order or in any other order of this Court to the extent provided for under the DIP Facility Documents or expressly consented to by the DIP Lenders as provided in the DIP Facility Documents.

15.    Commitment Termination Date. The DIP Facility Obligations shall be due and payable, without notice or demand, on the Termination Date (as such term is defined in the DIP Note) unless extended in accordance with the DIP Note.

16.    Restrictions on the Debtors. Other than the Carve-Out, the Debtors shall not seek entry of an order granting any claim that has a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Lenders, while any portion of the DIP Facility (or refinancing thereof) or the commitment thereunder remains outstanding without the express written consent of the DIP Lenders. Except as may be expressly permitted by the DIP Note, the Debtors will not, at any time during the case, grant mortgages, security interests, or liens in the Collateral or any portion thereof to any other parties pursuant to Bankruptcy Code § 364(d) or otherwise without the express written consent of the DIP Lenders in their sole discretion.

17.    Lien Perfection. This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the liens and security interests in and upon the Collateral granted herein (including without limitation, the DIP Facility Liens and the Adequate Protection Liens), effective as of the date of the entry of this Interim Order, pursuant to this

596521.1 8/9/10

Interim Order, and/or the DIP Facility Documents, as applicable, without the necessity of (a) filing, recording or serving any financing statements, mortgages, deeds of trust or other agreements, documents or instruments which may otherwise be required under federal or state law in any jurisdiction (collectively, the "Lien Recording Documents"), (b) taking possession of Collateral or evidence thereof (provided, that, without limiting the foregoing, any third party in possession of any Collateral is hereby deemed a bailee for the benefit of and on behalf of the DIP Lenders) or (c) taking any other action to validate or perfect the liens and security interests granted in this Interim Order, and/or the DIP Facility Documents, as applicable. If the DIP Lenders or the Administrative Agent or the Prepetition Lenders (as applicable) shall, in their discretion, elect for any reason to file any such Lien Recording Documents with respect to such liens and security interests, the Debtors are authorized and directed to execute, or cause to be executed, all such Lien Recording Documents upon the DIP Lenders' or the Administrative Agent's or the Prepetition Lenders' (as applicable) request and the filing, recording or service thereof (as the case may be) of such Lien Recording Documents shall be deemed to have been made at the time of and on the Petition Date. The DIP Lenders, the Administrative Agent or the Prepetition Lenders (as applicable) may, in their discretion, without seeking modification of the automatic stay under Bankruptcy Code § 362, file a certified copy of this Interim Order in any filing or recording office in any county or other jurisdiction in which the Debtors have an interest in real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Interim Order. To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the liens and security interests authorized or created hereby, or otherwise would impose filing or registration requirements with respect thereto, such law is

596521.1 8/9/10

preempted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of this Court (provided, that if the DIP Lenders take steps to perfect the DIP Facility Liens or the Administrative Agent or the Prepetition Lenders take steps to perfect the Adequate Protection Liens under otherwise applicable state law, it does so without waiving the benefits of this provision of this Interim Order). In the event that any Lien Recording Document which the DIP Lenders, the Prepetition Lenders or the Administrative Agent elect to file in accordance with this paragraph contains any limitations, defects, deficiencies or other information which might otherwise limit or adversely affect the DIP Lenders', the Prepetition Lenders' or the Administrative Agent's liens upon and security interests in the Collateral or any of the DIP Lenders', the Prepetition Lenders' or the Administrative Agent's claims, rights, priorities and/or protections afforded under this Interim Order and/or the DIP Facility Documents, such limitations, defects, deficiencies or other information shall not impair, limit, restrict or adversely affect in any way any of the DIP Lenders', the Prepetition Lenders' or the Administrative Agent's liens and security interests in the Collateral or their claims, rights, priorities and/or protections granted under this Interim Order and/or the DIP Facility Documents.

18.    Modification of Automatic Stay.  Subject only to the provisions of the DIP Note and without further order from this Court, the automatic stay provisions of Bankruptcy Code § 362 are vacated and modified to the extent necessary to permit the DIP Lenders to implement the provisions of the DIP Facility Documents and this Interim Order including exercising, upon the occurrence and during the continuance of any Event of Default, all rights and remedies provided for herein and in the DIP Facility Documents; provided, that prior to the exercise of any enforcement or liquidation remedies against the Collateral, the DIP Lenders shall be required to give written notice to the Debtors, its bankruptcy counsel, the Committee's counsel, if any, and

596521.1 8/9/10

the U.S. Trustee with a hearing (if any such hearing is requested by any such party) to be held within five (5) calendar days of receipt of such notice; provided, further; only the occurrence or non-occurrence of such Event of Default shall be the subject of any such hearing. Notwithstanding the occurrence of an Event of Default (as hereinafter defined) or the Termination Date or anything herein, all of the rights, remedies, benefits, and protections provided to the DIP Lenders under the DIP Facility Documents and this Interim Order shall survive the Termination Date.

19. <u>Binding Effect of Interim Order and DIP Facility Documents</u>.

(a) The Debtors irrevocably waive any right to seek any modifications or extensions of this Interim Order without the prior written consent of the DIP Lenders as authorized under the DIP Note to give such consent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Lenders.

(b) The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered converting any of the Debtors' chapter 11 cases to a chapter 7 case, dismissing any of the Debtors' bankruptcy cases (in the case of any such dismissal, to the maximum extent permitted under the Bankruptcy Code and other applicable law) or any order which may be entered confirming or consummating any chapter 11 plan of liquidation of the Debtors; and the terms and provisions of this Interim Order as well as the priorities in payment, liens, and security interests granted pursuant to this Interim Order and the DIP Facility Documents shall continue in this or any superseding case under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by this Interim Order and the DIP Facility Documents until all DIP Facility Obligations are

596521.1 8/9/10

indefeasibly paid and satisfied in full; provided, that all obligations and duties of the DIP Lenders hereunder, under the DIP Facility Documents or otherwise with respect to any future loans and advances or otherwise shall terminate immediately upon the earlier of the date of any Event of Default, the Maturity Date or the date that a chapter 11 plan of liquidation of the Debtors becomes effective unless the DIP Lenders, as is required under the DIP Facility Documents, have given their express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by the DIP Lenders.

(c)     The provisions of this Interim Order and the DIP Facility Documents shall be binding upon and inure to the benefit all parties-in-interest in these cases, including, without limitation, the Debtors, the DIP Lenders, the Prepetition Lenders, the Administrative Agent, and the Committee, subject to the provisions contained in Paragraph 12 of this Interim Order, and their respective successors and assigns (including, to the fullest extent permitted by applicable law, any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any Debtor's estate, an examiner appointed pursuant to Bankruptcy Code § 1104 (upon entry of this Interim Order) or any other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the Debtors' estates); provided, that the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the Debtors' estates.

20.     Survival. The rights of the DIP Lenders under the DIP Facility Documents or this Interim Order, the provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order (a) confirming a chapter 11 plan of liquidation in these cases (and,

596521.1 8/9/10

to the extent not satisfied in full in cash, the DIP Facility Obligations shall not be discharged by the entry of any such order, or pursuant to Bankruptcy Code § 1141(d)(4), the Debtors having hereby waived such discharge, unless otherwise consented to be the DIP Lenders); (b) converting any of the cases to a chapter 7 case; or (c) dismissing any of the cases, and the terms and provisions of this Interim Order as well as the DIP Facility Superpriority Claims and the DIP Facility Liens granted to and conferred upon the DIP Lenders and the protection afforded to the DIP Lenders pursuant to this Interim Order and the DIP Facility Documents shall continue in full force and effect notwithstanding the entry of any such order, and such claims and liens shall maintain their priority as provided by this Interim Order and the DIP Facility Documents and to the maximum extent permitted by law until all of the DIP Facility Obligations shall have been paid and satisfied in full in accordance with the provisions of the DIP Note (and that such DIP Facility Liens, DIP Facility Superpriority Claims and other protections shall remain binding on all interested parties).

21. <u>Nullifying Prepetition Restrictions on Postpetition Lien Grants</u>. Notwithstanding anything to the contrary contained in any prepetition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, any provision that restricts, limits or impairs in any way any Debtor's ability or right to grant liens on or security interests in any of the Collateral (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the DIP Facility Documents or this Interim Order or otherwise enter into and comply with all of the terms, conditions and provisions thereof (all such provisions being collectively referred to as the "<u>Restrictive Clauses</u>") shall not be effective and shall be unenforceable against any such Debtor and the DIP Lenders to the maximum extent permitted

30

under the Bankruptcy Code and other applicable law, and, therefore, shall not adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to the DIP Lenders pursuant to this Interim Order and/or the DIP Facility Documents or any of the rights of the DIP Lenders hereunder or thereunder to the maximum extent permitted under the Bankruptcy Code and other applicable law.

22. <u>After-Acquired Property</u>. Except as otherwise provided in this Interim Order, pursuant to Bankruptcy Code § 552(a), all proceeds and property acquired by the Debtors after the Petition Date, including, without limitation, all Collateral pledged or otherwise granted to the DIP Lenders, on behalf of itself, pursuant to the Debtors' use of Cash Collateral, the DIP Facility Documents and this Interim Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date which is not subject to subordination under Bankruptcy Code § 510(c) or other provisions or principles of applicable law.

23. <u>Access to the Debtors</u>. Without limiting the rights of access and information afforded the DIP Lenders under the DIP Facility Documents, the Debtors shall permit representatives, agents, and/or employees of the Administrative Agent, its counsel and the Prepetition Lenders (coordinated through the Administrative Agent) to have full and complete access to their premises and records and shall cooperate, consult with, and provide to such representatives, agents, and/or employees all such information as they may request including, without limitation, as may be required in accordance with the provisions of access in the Prepetition Loan Documents.

596521.1 8/9/10

24.     <u>Amendment to DIP Facility Documents</u>.  The DIP Lenders, with the consent of the Debtors, are authorized to amend and/or modify the DIP Note or any other DIP Facility Documents, in accordance with their terms and conditions, without further order of the Court on non-material matters; <u>provided</u>, that notice of any such amendments or modifications must be provided to the Committee at least two (2) calendar days prior to such amendments or modifications taking effect; <u>provided, further</u>, that any amendments or modifications that would have the effect of shortening the maturity date of the facilities or increasing the aggregate fees payable, or the rate or amount of interest payable (other than the default rate of interest), under the DIP Facility Documents or otherwise materially alter the DIP Facility Documents shall be done only pursuant to further order of the Court; <u>provided</u>, that any amendment or modification to increase the aggregate amount of borrowings permitted must be in writing, filed with the Court and served upon counsel for the Committee (if appointed at such time) and all parties who filed requests for notices pursuant to Bankruptcy Rule 2002, and shall become effective upon entry of an order of this Court.

25.     <u>Insurance Policies</u>.   Upon entry of this Interim Order, the DIP Lenders, Administrative Agent and Prepetition Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors which in any way relates to the Collateral.   The Debtors are authorized and directed to continue to take any action necessary to have the DIP Lenders and/or the Prepetition Lenders added as additional insureds and loss payees on each insurance policy. For the avoidance of doubt, the distribution of any proceeds recovered or received in respect of any such insurance policies will be applied, first, to the payment in full of the DIP Facility Obligations and, second, to the payment of the Prepetition Obligations.

596521.1 8/9/10

26.     Conclusive Evidence of DIP Facility Obligations.     The terms, conditions and covenants of the DIP Note and the other DIP Facility Documents shall be sufficient and conclusive evidence of the borrowing and financing arrangements among the Debtors and the DIP Lenders for all purposes, including, without limitation, the Debtors' obligation to pay all principal, interest, fees (including, without limitation, unused line fees, agency fees, servicing fees, letter of credit fees, closing fees, syndication fees, early termination fees and appraisal fees), and other costs and expenses (including, without limitation, all reasonable fees and expenses of consultants, advisors and attorneys), as more fully set forth and to the extent provided in the DIP Note and the other DIP Facility Documents.

27.     Maintenance of Collateral.     The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, except for sales expressly permitted by, and in accordance with the terms of, the DIP Note, the DIP Facility Documents and/or this Interim Order.  Nothing contained in this paragraph shall limit or impair the right of any lessor or other contract party of any Debtor to request that the Court compel the Debtors to assume or reject any lease or license of real or personal property.

28.     Termination.     In the absence of a further order of this Court, and notwithstanding anything herein to the contrary, the Debtors shall no longer be authorized pursuant to this Interim Order to use Cash Collateral without the written consent of the DIP Lenders (or, in the case of subsection (a) below, the Prepetition Lenders), and the DIP Note and access to all borrowings thereunder shall be terminated, after the earliest to occur of (i) the Maturity Date, and (ii) the fifth (5th) business day following the receipt by the Debtors of a termination notice setting forth the DIP Lenders' or Administrative Agent's intent to exercise any of its rights or remedies in accordance with this Interim Order and the DIP Note, following the occurrence, and during the

33

continuation, of any of the following events (the earliest such date being referred to herein as the "Default Date," and each of the foregoing being referred to in this Interim Order, individually, as an "Event of Default" and collectively, as the "Events of Default"):

(a)     any default under the DIP Facility or termination of the DIP Facility and final payment in full in cash of the DIP Facility Obligations;

(b)     the Debtors' failure to comply with any of the terms or provisions of this Interim Order;

(c)     the occurrence and continuation of any "Event of Default" as defined under the DIP Note or the other DIP Facility Documents;

(d)     the termination or non-renewal of the DIP Facility Documents as provided for in the DIP Note, or if terminated sooner by an order of this Court;

(e)     the Debtors' failure to comply with any of the terms or provisions of that certain asset purchase agreement (the "Asset Purchase Agreement"), dated as of August 3, 2010, by and among the Debtors and NewCo, or the DIP Note, or the termination of the Asset Purchase Agreement or DIP Note for any reason;

(f)     the Debtors failure to continue to assist, and cooperate and consult with, the Administrative Agent in taking possession of the Specified Equipment;

(g)     the Debtors' failure to discontinue all business operations other than the "Continuing Business," which shall mean:

(i)     prior to consummation of the Proposed Sale pursuant to the Asset Purchase Agreement, (A) any actions necessary to effectuate the Plan or consummate the transactions under the Asset Purchase Agreement or otherwise perform under the Asset Purchase Agreement, which shall not include any

34

disposition of property other than pursuant to the liquidating trust established for the Plan or pursuant to the Asset Purchase Agreement, (B) with respect to concrete forming inventory or equipment of the Debtors on rent to third parties as of the Petition Date (the "Forming Rental Equipment"), the collection of rental income relating to Forming Rental Equipment and the ongoing servicing of the Forming Rental Equipment, in each case by Form-Co but for the avoidance of doubt shall not include any new rentals of concrete forming inventory or equipment following the Petition Date other than new rentals on such inventory or equipment held by Form-Co as of the Petition Date in the ordinary course of business consistent with past practice and (C) with respect to inventory and equipment of Accubrace (the "Accubrace Rental Equipment"), new rentals of Accubrace Rental Equipment in the ordinary course of business consistent with past practice, the collection of rental income related to Accubrace Rental Equipment on rent to third parties whether as of the Petition Date or thereafter, and installation services conducted by Accubrace in the ordinary course of business consistent with past practice; and

(ii)     on and after consummation of the Proposed Sale pursuant to the Asset Purchase Agreement, only actions which are necessary to perform under the Asset Purchase Agreement and necessary to effectuate the Plan;

(h)     the Debtors' failure to maintain, preserve and protect its material assets and properties, including, without limitation, the Prepetition Collateral, including taking all appropriate security measures in connection therewith to prevent destruction, theft, damage or diminution thereof;

596521.1 8/9/10

(i)     the occurrence of any of the following:

(i)     the failure of the Bankruptcy Court to enter a Final Order, substantially in the form attached as an Exhibit to the DIP Motion, within fourteen (14) days after the Petition Date

(ii)    the failure of the Bankruptcy Court to enter an order approving the Bid Procedures within fourteen (14) days after the Petition Date;

(iii)   the failure of the Auction to occur, in accordance with the Bid Procedures, within twenty-nine (29) days after the Petition Date, unless an Auction does not occur because of a lack of Qualified Bids (as such term is defined in the Bid Procedures) other than the bid of NewCo;

(iv)    the failure of the Bankruptcy Court to enter an order approving the Proposed Sale within one (1) business day after the date scheduled for the Auction;

(v)     the failure of the Debtors to file, within fourteen (14) days after the Petition Date: (a) a Plan; (b) a disclosure statement related to the Plan (the "Disclosure Statement"); and (c) a motion seeking Court approval of the Disclosure Statement, solicitation procedures and other matters related to confirming the Plan, in form and substance reasonably satisfactory to the DIP Lenders, the Administrative Agent and the Prepetition Lenders;

(j)     any stay, reversal, vacatur or rescission of the terms of this Interim Order, or any other modification of the terms of this Interim Order that is not consented to by the DIP Lenders and the Prepetition Lenders;

596521.1 8/9/10

(k)     entry of an order by this Court or any other Court having jurisdiction over these chapter 11 cases approving any postpetition financing that (i) grants liens, claims or interests that are senior to, or *pari passu* with, the DIP Facility Superpriority Claims and DIP Facility Liens, and (ii) is not consented to by the DIP Lenders and the Prepetition Lenders;

(l)     the Debtors' assumption or rejection of any executory contracts or unexpired leases, including, without limitation, any real property leases, without the prior written consent of the Administrative Agent;

(m)    entry of an order by this Court subordinating, recharacterizing or disallowing (in each case, in whole or in part) in any way the DIP Facility Superpriority Claims and DIP Facility Liens of the DIP Lenders or the Prepetition Liens and Adequate Protection Liens granted to, and the Prepetition Obligations and Adequate Protection Obligations owed to, the Administrative Agent and/or the Prepetition Lenders;

(n)     the Debtors' failure to comply with the Budget (as provided for herein) for any period of time without the consent of the DIP Lenders or the expiration of the Budget;

(o)     entry of an order by this Court dismissing any of the chapter 11 cases or converting any of the chapter 11 cases to cases under chapter 7 of the Bankruptcy Code;

(p)     entry of an order by this Court or any other Court having jurisdiction over these chapter 11 cases granting relief from the automatic stay so as to allow a third party to proceed against any material asset or assets of the Debtors that are Collateral;

(q)     subsequent to entry of this Interim Order granting a § 506(c) waiver, entry of an order under Bankruptcy Code § 506(c) surcharging the Collateral;

37

(r)     the appointment of a trustee or the appointment of an examiner with enlarged powers in any of these chapter 11 cases unless such appointment is approved by the DIP Lenders;

(s)     any of the DIP Facility Superpriority Claims and DIP Facility Liens, or any other claims granted to the DIP Lenders pursuant to this Interim Order shall cease to be valid, binding and perfected, first-priority liens as and to the extent provided in this Order;

(t)     any of the Adequate Protection Liens, or any other claims (including the Administrative Claim) granted to the Administrative Agent (on behalf of the Prepetition Lenders) pursuant to this Interim Order shall cease to be valid, binding and perfected, first-priority liens as and to the extent provided in this Interim Order;

(u)     the termination of the Debtors' exclusive right to file a chapter 11 plan pursuant to Bankruptcy Code § 1121;

(v)     any Debtor shall have sought dismissal of its chapter 11 case or an order dismissing one or more of the Debtors' chapter 11 cases shall have been entered;

(w)     any of the Debtors shall file a motion, or the Bankruptcy Court shall enter an order, approving a payment to any party (whether in cash or other property or whether as adequate protection, settlement of a dispute, or otherwise) that would be materially inconsistent with the Budget, Asset Purchase Agreement, the DIP Note or any other DIP Facility Documents; or

(x)     any of the Debtors file a pleading seeking, or otherwise consenting to, the matters set forth in clauses (j) through (w) above; provided, that as to clause (k) above, it

596521.1 8/9/10

shall not constitute a Termination Event for the Debtors to file a motion proposing to repay the Prepetition Obligations and the DIP Facility Obligations in cash in full.

Notwithstanding the foregoing, or anything else herein to the contrary, the scheduling of the Final Hearing established herein, and the resulting inability for the Final Order to be entered by August 18, 2010, shall not constitute an Event of Default under this Interim Order, the DIP Note, the DIP Facility Documents, the Asset Purchase Agreement, or any other agreements among the Debtors, the Administrative Agent, the DIP Lenders, and the Prepetition Lenders, so long as the Final Order is entered on or prior to August 23, 2010. The Debtors shall use commercially reasonable efforts to minimize cash expenditures during this interim period.

29. <u>Remedies upon Occurrence of Event of Default</u>. Upon the occurrence of an Event of Default (unless such Event of Default is specifically waived in writing by the DIP Lenders as provided for in the DIP Facility Documents, which waiver shall not be implied from any other action, inaction or acquiescence by the DIP Lenders), the DIP Lenders may, notwithstanding the provisions of Bankruptcy Code § 362, without any application, motion or notice to or order from, the Bankruptcy Court, without prior notice, take any one or more of the following actions: (a) terminate all or any portion of the commitments under the DIP Facility whereupon the DIP Lenders' obligation to make further loans or advances shall terminate; (b) declare all or any portion of the DIP Facility Obligations to be forthwith due and payable whereupon such DIP Facility Obligations shall become and be due and payable; and/or (c) exercise any rights and remedies provided to the DIP Lenders under the DIP Facility Documents or at law or equity, including all remedies provided under the Bankruptcy Code; and, pursuant to this Interim Order, the automatic stay of Bankruptcy Code § 362 shall be modified and vacated to permit the DIP Lenders to exercise their remedies under the DIP Note and the DIP Facility Documents, without further application or motion to, or order from, the Bankruptcy Court; <u>provided</u>, that notwithstanding anything to the contrary contained herein, the DIP Lenders shall be permitted to exercise any remedy in the nature of a liquidation of, or foreclosure on, any interest of Borrower

596521.1 8/9/10

in the Collateral only upon prior written notice to the Debtors, the U. S. Trustee, and the Committee's counsel with a hearing to be held within five (5) calendar days of receipt of such notice; provided, further; only the occurrence or non-occurrence of such Default or Event of Default shall be the subject of any such hearing. Unless the Court orders otherwise, upon the occurrence of an Event of Default and the exercise by the DIP Lenders of their rights and remedies under the DIP Note and the other DIP Facility Documents after the expiration of the notice period described herein, the Debtors shall assist the DIP Lenders, to the extent practicable, in effecting a sale or other disposition of the Collateral upon such terms as are designed to maximize the proceeds obtainable from such sale or other disposition. Nothing contained in this Interim Order or otherwise shall be construed to obligate the DIP Lenders in any way to lend or advance any additional funds to the Debtors, or provide other financial accommodations to the Debtors upon or after the occurrence of an Event of Default.

30.    <u>Collateral Rights</u>.  Until all of the DIP Facility Obligations shall have been indefeasibly paid and satisfied in full in immediately available funds and all commitments thereunder have been terminated, and without further order of the Court:

(a)    In the event that any party who holds a lien or security interest in any of the Collateral that is junior and/or subordinate to the liens and claims of the DIP Lenders in such Collateral receives or is paid proceeds of the Collateral prior to the indefeasible payment and satisfaction in full of all DIP Facility Obligations, such junior or subordinate lienholder shall be deemed to have received, and shall hold, such Collateral proceeds in trust for the DIP Lenders and shall immediately turnover to the DIP Lenders such proceeds for application to the DIP Facility Obligations in accordance with the DIP Facility Documents and/or this Interim Order;

40

(b)     In addition to the rights set forth in Paragraph 17 and in lieu of requiring the Debtors to obtain any account control agreements with respect to their accounts on or prior to the Closing Date, the Administrative Agent is hereby ordered to continue to take direction from the DIP Lenders with respect to the Debtors' deposit accounts, including notifying any bank subject to an account control agreement to exercise the rights and remedies of a secured party thereunder, such that the DIP Lenders shall have "control" over such accounts as set forth in the applicable Uniform Commercial Code until the DIP Facility Obligations are finally indefeasibly paid in full in cash.   In addition, the Administrative Agent is hereby ordered to continue to take direction from the DIP Lenders with respect to any landlord lien waivers, collateral access agreements or any similar instruments such that the DIP Lenders shall have all of the rights and remedies of a secured party thereunder.

(c)     The Administrative Agent and the Prepetition Lenders are hereby ordered to continue to refrain from taking any action with respect to the Debtors or any of their assets until the DIP Facility Obligations are finally indefeasibly paid in full in cash, except that the Prepetition Lenders are authorized to take any action in furtherance of any transaction anticipated in this Interim Order or the Asset Purchase Agreement.

(d)     Upon the acceleration of the DIP Facility Obligations following an Event of Default, and subject to the DIP Lenders providing the notice required by this Interim Order, in connection with any liquidation of, or foreclosure on, any interest in the Collateral, the DIP Lenders (or any of their employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of the Debtors to be added to the DIP Facility Obligations, to: (i) enter upon, occupy and use any personal

41

property, fixtures and equipment owned or leased by the Debtors and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses. If the DIP Lenders exercise any remedies provided for in this paragraph, the Debtors will remain responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that any DIP Lender uses the equipment or the intellectual property; and

(e)     Upon the acceleration of the DIP Facility Obligations following an Event of Default, and subject to the DIP Lenders providing the notice required by this Interim Order, as well as five (5) calendar days notice to any Debtor's real property lessor of any DIP Lender's intention to enter onto or into such lessor's leased premises to remove or otherwise dispose of any Collateral located at such leased premises in accordance with the terms of this paragraph, the DIP Lenders shall have the right, following the expiration of such five (5) calendar days notice period described in this paragraph, to enter onto or into such leased premises for the purpose of removing the Collateral from the leased premises or selling such Collateral at the leased premises, in each case subject to the applicable terms of such Debtor's lease arrangements with such lessor to the extent enforceable or effective under the Bankruptcy Code and subject to the rights of the DIP Lenders provided for herein. Subject to the following sentence, the Debtors shall remain obligated to perform any obligation and to pay any rent and additional rent due under the terms of their leases at all times, including during the period commencing upon the DIP Lenders obtaining the right to enter the Debtors' leased premises in accordance with this

42

paragraph. Nothing herein shall require the DIP Lenders to assume any lease or cure any defaults as a condition to the rights afforded in this paragraph.

31.     <u>Reservation of Rights</u>.     Entry of this Interim Order shall not be deemed to prejudice any and all rights, remedies, claims and causes of action the DIP Lenders may have against third parties, and shall not prejudice the rights of the DIP Lenders from and after the entry of this Interim Order to seek any other relief in the Debtors' chapter 11 cases. Entry of this Interim Order shall not in any way constitute:  (a) a preclusion or a waiver of any right of the DIP Lenders to file, or to prosecute if already filed, a motion for relief from stay, a motion or request for other relief, including but not limited to any adversary proceeding; (b) agreement, consent, or acquiescence to the terms of any chapter 11 plan of liquidation by virtue of any term or provision of this Interim Order; (c) a preclusion or waiver to assert any other rights, remedies or defenses available to the DIP Lenders, or to respond to any motion, application, proposal, or other action, all such rights, remedies, defenses and opportunities to respond being specifically reserved by the DIP Lenders; or (d) a preclusion, waiver or modification of any rights or remedies that the DIP Lenders have against any other person or entity.

32.     <u>Restrictions on Additional Use of Cash Collateral, Additional Financing</u>.     All postpetition loans, advances and other financial accommodations under the DIP Note and the other DIP Facility Documents are made in reliance on this Interim Order and in the event that an order is entered at any time in the Debtors' chapter 11 cases or in any subsequently converted case under chapter 7 of the Bankruptcy Code (other than this Interim Order) which (a) authorizes the use of cash collateral of the Debtors in which the DIP Lenders have a security interest or the sale, lease, or other disposition of property of the Debtors' estates in which the DIP Lenders have a lien or security interest, except as expressly permitted hereunder or in the DIP Facility

596521.1 8/9/10

Documents, or (b) authorizes under Bankruptcy Code § 364 the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property or the proceeds thereof in which the DIP Lenders holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the DIP Lenders herein or in the DIP Facility Documents then, in each instance described in clauses (a) and (b) of this paragraph, (i) the DIP Lenders, as is required by the DIP Note, shall first have given their express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by the DIP Lenders, or (ii) such other order shall require that all DIP Facility Obligations first shall be indefeasibly paid in full in cash in immediately available funds. The liens and security interests granted to or for the benefit of the DIP Lenders hereunder and under the DIP Facility Documents and the rights and remedies of the DIP Lenders pursuant to this Interim Order and the DIP Facility Documents with respect to the DIP Facility Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any chapter 11 plan of liquidation of the Debtors.

33.    <u>Proofs of Claim</u>. The DIP Lenders, the Administrative Agent and the Prepetition Lenders shall not be required to file proofs of claim in any of the chapter 11 cases for any claim allowed herein or on account of the Prepetition Obligations or the DIP Facility Obligations, as applicable.

34.    <u>No Obligation to Extend Credit</u>. The DIP Lenders shall not have any obligation to make any further loan or advance under the DIP Facility Documents unless all of the conditions precedent to the making of such extension of credit under the DIP Facility Documents and this Interim Order, as applicable, have been satisfied in full or waived by the DIP Lenders in accordance with the DIP Facility Documents.

44

35.     <u>Limitation of Liability</u>.  Nothing in this Interim Order or the DIP Facility Documents shall in any way be construed or interpreted to impose, or allow the imposition upon the DIP Lenders of, any liability for any claims arising from the prepetition or postpetition activities by the Debtors in the operation of its business or in connection with its restructuring efforts.

36.     <u>No Modification or Stay of Interim Order</u>.  If any or all of the provisions of this Interim Order or the DIP Facility Documents are hereafter modified, vacated or stayed, such modification, vacatur or stay shall not affect (a) the validity of any obligation, indebtedness or liability incurred by the Debtors to the DIP Lenders prior to the effective date of such modification, vacatur or stay, or (b) the validity or enforceability of any security interest, lien, or priority authorized or created hereunder or pursuant to the DIP Facility Documents, as applicable.  Notwithstanding any such modification, vacatur or stay, any indebtedness, obligations or liabilities incurred by the Debtors to the DIP Lenders prior to the effective date of such modification, vacatur or stay shall be governed in all respects by the original provisions of this Interim Order or the DIP Facility Documents, as applicable; and the DIP Lenders shall be entitled to all the rights, remedies, privileges and benefits granted herein and under the DIP Facility Documents with respect to all such indebtedness, obligations and/or liabilities.  The indebtedness, obligations and/or liabilities of the Debtors to the DIP Lenders under this Interim Order and/or the DIP Facility Documents shall not be discharged by the entry of an order approving a sale of substantially all of the Debtors' assets pursuant to Bankruptcy Code § 363, or an order confirming a plan of liquidation in the Debtors' bankruptcy cases pursuant to Bankruptcy Code § 1141(d)(4) or otherwise, unless and until all indebtedness, obligations and liabilities of the Debtors to the DIP Lenders are indefeasibly paid in full in cash in accordance

45

with the terms and conditions of the DIP Facility Documents prior to or concurrently with the entry of such order unless otherwise agreed or consented to by the DIP Lenders. No indebtedness, obligation or liability owed by the Debtors to the DIP Lenders under this Interim Order or the DIP Facility Documents, prior to the effective date of any modification, vacatur or stay of this Interim Order can, as a result of any subsequent order in these chapter 11 cases, or in any superseding case, be subordinated, lose its lien priority or super-priority administrative claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Lenders under this Interim Order and/or the DIP Facility Documents.

37.　Good Faith. The terms of the financing arrangements among the Debtors and the DIP Lenders have been negotiated in good faith and at arms' length and any loans, advances or other financial accommodations which are made or caused to be made to the Debtors by the DIP Lenders pursuant to the DIP Facility Documents are deemed to have been made and provided in good faith, as the term "good faith" is used in Bankruptcy Code § 364(e), and shall be entitled to the full protection of Bankruptcy Code § 364(e) in the event that this Interim Order or the DIP Facility Documents or any provisions herein or therein are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court without the consent of the DIP Lenders.

38.　Final Hearing and Objection Date. This matter is set for a Final Hearing at **12:00 p.m. prevailing Eastern Time on August 23, 2010**, in the United States Bankruptcy Court for the District of Delaware. The Debtors shall promptly mail copies of this Order to (a) the Interim Notice Parties, (ii) all parties who filed requests for notices pursuant to Bankruptcy Rule 2002, (iii) counsel to be selected by the Committee upon its formation if selected by such date, (iv) the taxing authorities to which the Debtors pay taxes; (v) the Debtors' landlords; and (vi) those other

46

creditors known to the Debtors who may have liens upon or perfected security interests in any of the Debtors' assets and properties. Objections to the entry of the Final Order shall be in writing and shall be filed with the Clerk of this Court, on or before **August 18, 2010, at 4:00 p.m.** prevailing Eastern Time, with a copy served upon: (i) counsel for the Debtors, K&L Gates LLP, 70 W. Madison St., Suite 3100, Chicago, Illinois 60602, Attn: Sven T. Nylen; (ii) UBP Acquisition Corp., 333 South Grand Ave, Floor 28, Los Angeles, CA 90071, Attn: Jordon Kruse and David Quick, (iii) counsel for the Administrative Agent, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654 Attention: David L. Eaton, Esq., Christopher J. Greeno, P.C., and David A. Agay, Esq. and Pachulski, Stang, Ziehl & Jones, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, Attn: Laura Davis-Jones; (iii) counsel to be selected by the Committee upon its formation if selected by such date; and (iv) the U.S. Trustee. Any objections by creditors or any other party-in-interest to the DIP Motion or any of the provisions of the postpetition financing and cash collateral arrangements among the Debtors, the Administrative Agent, the Prepetition Lenders, and the lenders (the "DIP Lenders") under the DIP Note shall be deemed waived unless filed and received in accordance with the foregoing on or before the close of business on such date. In the event this Court modifies any of the provisions of the documents governing the DIP Note following such Final Hearing, such modifications shall not affect the rights and priorities of the Administrative Agent and the Prepetition Lenders pursuant to this Order with respect to the Collateral and this Interim Order shall remain in full force and effect except as specifically modified pursuant to such Final Hearing.

39. Conflicting Provisions. Unless otherwise provided in this Interim Order, to the extent the terms and conditions of the DIP Facility Documents or the DIP Motion are in conflict

47

with the terms and conditions of this Interim Order, the terms and conditions of this Interim Order shall control.

40. <u>Effectiveness</u>. This Interim Order shall constitute findings of fact and conclusions of law, and notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Interim Order shall (a) be immediately enforceable, and (b) not be stayed absent the grant of such stay under Bankruptcy Rule 8005 after a hearing upon notice to the Debtors and the DIP Lenders.

41. <u>Retention of Jurisdiction</u>. The Court has retained and will retain jurisdiction to enforce this Order according to its terms.

Dated: Wilmington, Delaware

    Aug 10    , 2010

_____
United States Bankruptcy Judge

596521.1 8/9/10