**EXHIBIT 1**

**DIP Note**

## SENIOR SECURED SUPER-PRIORITY
## DEBTOR-IN-POSSESSION PROMISSORY NOTE

**August 3, 2010**                                                                 6,002,673

FOR VALUE RECEIVED, **UNIVERSAL BUILDING PRODUCTS, INC.**, a Delaware corporation (the "<u>Maker</u>"), currently the subject of voluntary Chapter 11 proceedings in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") in jointly administered Chapter 11 Case No. _____ (the "<u>Chapter 11 Case</u>") hereby covenants and promises to pay to **UBP ACQUISITION CORP.**, a Delaware corporation (together with successors and assigns, the "<u>Payee</u>"), the principal amount of SIX MILLION TWO THOUSAND SIX HUNDRED SEVENTY-THREE DOLLARS ($6,002,673), or such lesser amount as may be disbursed pursuant to <u>Section 1(a)</u> below, along with interest (including PIK Interest), fees, expenses and indemnification and other obligations as set forth in this note ("<u>Note</u>"). Capitalized terms used but not defined in <u>Section 9</u> hereof shall have the meanings ascribed to such terms in the Credit Agreement, dated as of April 28, 2006, as amended by (i) that certain First Amendment to Credit Agreement dated as of March 26, 2009, (ii) that certain Second Amendment to Credit Agreement dated as of April 13, 2009 and (ii) that certain Third Amendment to Credit Agreement and Waiver dated as of January 29, 2010 (such agreement, as amended, without giving effect to any other amendments, restatements, supplements or modifications thereto, the "<u>Prepetition Credit Agreement</u>"), by and among Maker, Don De Cristo Concrete Accessories, Inc., Universal Form Clamp, Inc., Form-Co. Inc., Accubrace, Inc. ("<u>Subsidiary Borrowers</u>", together with the Maker, each a "<u>Borrower</u>" and collectively, the "<u>Borrowers</u>"), Payee as the sole lender thereunder (together with any successors and assigns, "<u>Lenders</u>") and OCM FIE, L.P., a Delaware limited partnership, as administrative agent on behalf of the Lenders (in such capacity, the "<u>Prepetition Administrative Agent</u>"). Each Subsidiary Borrower is a debtor in possession in the Chapter 11 Case pending before the Bankruptcy Court and is a party hereto for the purposes of making the representations and warranties and covenants contained herein (including, without limitation, granting a lien on its Collateral) and concurrently herewith is delivering the DIP Guaranty in favor of Payee, and all of such Subsidiary Borrower's obligations hereunder are made jointly and severally with each other and the Maker and are subject to the waivers and other terms and conditions of the DIP Guaranty.

1.      <u>Loans</u>.

(a)      The Maker hereby covenants and promises to pay to the Payee on or before the Termination Date the aggregate unpaid principal amount of all loan advances made to or for the account of the Maker from time to time under this Note, together with interest thereon (including, without limitation, PIK Interest) calculated in accordance with the provisions of this Note.

(b)      Subject to the terms and conditions of this Note:

(i)    prior to the earlier of the Termination Date and October 1, 2010, the Payee agrees to make loans from time to time in amounts requested by the Maker, provided that (v) such disbursements are not in excess of the amounts necessary to fund the Approved Budget in the immediately succeeding five (5) Business Days; provided, that with respect to the advance made with respect to the ninth week of the Approved Budget, such advance shall be made for all purposes set forth in the Approved Budget other than the line item for "liquidating trust seed money" which shall be funded per Section 1(b)(iii), (w) Maker shall not request loans more frequently than one time per week, (x) the Maker shall have given the Payee notice of such requested loan at least one (1) Business Day in advance of the requested disbursement date (prior to 3 p.m. (New York city time), (y) after giving effect to any such loans, the principal amount of all loans outstanding under this Note shall not exceed $6,002,673, and (z) loans disbursed under this Note shall be in a minimum amount of $100,000;

(ii)    payments with respect to the loans made hereunder may be reborrowed in accordance with Section 1(b)(i) until the earlier of October 1, 2010 and the Termination Date; and

(iii)    so long as the Termination Date has not occurred, subject to the terms and conditions herein, on October 1, 2010 Payee shall disburse the least of (A) $200,000, (B) the amount by which maximum amount permitted to be advanced pursuant to Section 1(b)(i) above exceeds the outstanding aggregate principal amount of loans outstanding pursuant to this Note, and (C) the amount that Maker notifies Payee is required to fund the Plan, which notice shall be given at least one (1) Business Day (by 3 p.m. New York city time) prior to such disbursement.

(c)    Any such loan advance made by the Payee pursuant to this Section 1, shall be sent by wire transfer of immediately available funds to the Maker's account as set forth on Schedule 1(c) hereto or such other place as the Maker may from time to time designate in writing.

(d)    Debtor Entities shall utilize the proceeds of the loans made under this Note and their cash collateral to (i) pay all fees payable to Payee hereunder, (ii) pay any interest obligations with respect to loans made under this Note, (iii) reimburse any fees and expenses and pay any indemnities owed to Payee under this Note and (iv) fund working capital and other lawful general corporate purposes of the Debtor Entities, in each case the payments and fundings shall be in accordance with the Approved Budget; provided, that if Debtor Entities have any proceeds in their possession on the Termination Date, Debtor Entities shall use all such amounts to pay all DIP Obligations without regard to the Approved Budget. No Debtor Entity shall be permitted to use the proceeds of the loans or any cash collateral for any other purpose, including: (a) to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation (including, without limitation, any related or prepatory discovery or depositions under Bankruptcy Rule 2004 or any other applicable law or rules) of any type adverse to the interests of the Payee or their rights and remedies under this Note, the other DIP Loan Documents, the Applicable Order, or the Prepetition Credit Agreement or Credit Documents, (b) to make any distribution under a plan of reorganization or plan of liquidation in any Chapter 11 Case unless and until the effective date of the Plan and then only in accordance with the Plan, or (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of Payee.

(e) **Conditions to each Loan Made Under This Note After Entry of the Interim Order and Prior to Entry of the Final Order.** Each loan made under this Note prior to the entry of the Final Order, shall be subject to the satisfaction, or waiver in writing by Payee of, the following conditions precedent:

(i) the loan requested shall not cause the aggregate outstanding principal amount under the Note to exceed the lesser of $965,099 and the amount then authorized by the Interim Order, the Interim Order shall be in full force and effect, and such Interim Order shall not have been modified, reversed, stayed or vacated or amended, nor shall any Material Problematic Appeal have been timely filed and not stayed, and such Interim Order is not in any respect the subject of a stay pending appeal;

(ii) each representation or warranty by any Debtor Entity contained herein or in any other DIP Loan Document shall be true and correct in all material respects as of such date as determined by the Payee, except to the extent that such representation or warranty expressly relates to an earlier date and except for changes therein expressly permitted or expressly contemplated by this Note and except if a representation or warranty is qualified by materiality, then such representation and warranty shall be true and correct in all respects;

(iii) no Default or Event of Default shall have occurred and be continuing or would result after giving effect to such loan;

(iv) all orders directly affecting the transactions contemplated by this Note entered by the Bankruptcy Court shall be satisfactory in form and substance to Payee and its counsel in their sole reasonable discretion;

(v) neither any Debtor Entity nor any other party-in-interest, including the United States Trustee or the committee, shall have filed a motion or other pleading seeking the dismissal or conversion of any Chapter 11 Case under Section 1112 of the Bankruptcy Code or otherwise, which such motion is a Material Problematic Appeal;

(vi) the Maker shall have filed motions with the Bankruptcy Court, reasonably acceptable to counsel to Payee, on shortened notice, seeking authority to conduct the 363 Sale pursuant to the APA and approval of bid procedures in connection therewith (the "Bid Procedures Motion"); and

(vii) (A) no Debtor Entity shall have commenced any suit or action against Payee, and (B) no judgment shall have been rendered in connection with any suit or action brought against Payee by any person, which judgment includes any legal or equitable remedy that would have the effect of subordinating any or all of the DIP Obligations, Credit Party Obligations, Liens of the Payee under the DIP Loan Documents or Liens securing the Credit Party Obligations to any other claim or interest, or would otherwise have a Material Adverse Effect.

The request and acceptance by Maker of the proceeds of any loans under this Note shall be deemed to constitute, as of the date thereof, (i) a representation and warranty by Maker that the

conditions in this Section have been satisfied and (ii) a reaffirmation by each Debtor Entity of the granting and continuance of the Payee's Liens.

(f) <u>Conditions to Each Loan Made Under This Note Following Entry of the Final Order</u>. Each loan made under this Note, following entry of the Final Order, shall be subject to the satisfaction, or waiver in writing by Payee of, the following conditions precedent:

(i) each DIP Loan Document reasonably requested by Payee shall have been fully executed by the applicable Debtor Entity and delivered to Payee in such form and substance as Payee shall reasonably request in connection with the transactions contemplated by this Note and shall be in full force and effect;

(ii) the loan requested shall not cause the aggregate outstanding principal amount under the Note to exceed the amount then authorized by the Final Order, the Final Order shall be in full force and effect, and such Final Order shall not have been modified, reversed, stayed or vacated or amended, nor shall any Material Problematic Appeal have been timely filed and not stayed, and such Final Order is not in any respect the subject of a stay pending appeal;

(iii) each representation or warranty by any Debtor Entity contained herein or in any other DIP Loan Document shall be true and correct in all material respects as of such date as determined by the Payee, except to the extent that such representation or warranty expressly relates to an earlier date and except for changes therein expressly permitted or expressly contemplated by this Note and except if a representation or warranty is qualified by materiality, then such representation and warranty shall be true and correct in all respects;

(iv) no Default or Event of Default shall have occurred and be continuing or would result after giving effect to such loan;

(v) all orders directly affecting the transactions contemplated by this Note entered by the Bankruptcy Court on or prior to the entry of the Final Order shall be satisfactory in form and substance to Payee and its counsel in their sole reasonable discretion;

(vi) neither any Debtor Entity nor any other party-in-interest, including the United States Trustee or the committee, shall have filed a motion or other pleading seeking the dismissal or conversion of any Chapter 11 Case under Section 1112 of the Bankruptcy Code or otherwise, which such motion is a Material Problematic Appeal;

(vii) the Maker shall have filed the Bid Procedures Motion; and

(viii) (A) no Debtor Entity shall have commenced any suit or action against Payee, and (B) no judgment shall have been rendered in connection with any suit or action brought against Payee by any person other than any Debtor Entity, which judgment includes any legal or equitable remedy that would have the effect of subordinating any or all of the DIP Obligations, Credit Party Obligations, Liens of the Payee under the DIP Loan Documents or Liens securing the Credit Party Obligations to any other claim or interest, or would otherwise have a Material Adverse Effect.

The request and acceptance by Maker of the proceeds of any loans under this Note shall be deemed to constitute, as of the date thereof, (i) a representation and warranty by Maker that the conditions in this Section have been satisfied and (ii) a reaffirmation by each Debtor Entity of the granting and continuance of the Payee's Liens.

2. Interest.

(a) Interest Accrual. Interest shall accrue on a daily basis at a rate of seven percent (7%) per annum (calculated on the basis of a 360-day year) on the unpaid principal balance (including any accrued PIK Interest) of this Note then outstanding; provided, however, that, if any Event of Default shall have occurred and be continuing or any interest due shall not be paid on the Interest Payment Date or the principal amount of this Note shall not be paid on the Termination Date, interest shall accrue on a daily basis during the period commencing on the date on which the Event of Default occurred, the Interest Payment Date or Termination Date, as applicable, and ending on the date this Note is paid in full in cash at a rate of nine percent (9%) per annum (calculated on the basis of the number of days in the applicable Fiscal Year) on the unpaid principal balance of this Note then outstanding and on all accrued and unpaid overdue interest payable on demand.

(b) Interest Payments. Interest shall be due and payable, in arrears, on the Interest Payment Date; provided, that prior to the earlier of a Termination Date and the occurrence of any Event of Default hereunder, Maker may pay such interest in kind by accreting such amount to the principal obligations outstanding hereunder (the "PIK Interest").

(c) Grid Note. The Payee is hereby authorized to endorse Annex A to this Note with an appropriate notation evidencing each loan of principal on this Note; provided, that the failure to make any such notation will not limit, expand or otherwise affect the rights of the Payee of this Note or the obligations of the Maker under this Note.

3. Principal; Payments.

(a) Maturity Date. On October 29, 2010 or such later date pursuant to the procedures set forth in this Section 3(a) (the "Maturity Date"), the Maker shall pay in cash the entire unpaid principal amount of this Note then outstanding to the Payee, together with all accrued and unpaid interest thereon, including any PIK Interest. The initial Maturity Date may be extended on a week-to-week basis (or, in the sole discretion of Payee, on such longer basis) provided that (i) Maker has provided Payee at least one Business Day's written notice of such requested extension, (ii) Maker has provided Payee with an updated budget through such extended date which Payee has approved in its sole discretion, (iii) no Default or Event of Default shall have occurred, and (iv) Maker and its Subsidiaries continue to actively pursue the confirmation of the Plan prior to the extended Maturity Date.

(b) Prepayment at the Maker's Election. At any time, the Maker may without premium or penalty prepay all or any portion of the unpaid principal amount of this Note. To the extent Maker wants any prepayment to permanently reduce the amount available under this Note, Maker shall so designate to Payee in writing on or prior to the making of such payment.

(c)     Mandatory Prepayment.  Immediately upon receipt by Maker of cash or cash equivalent proceeds of any Disposition, insurance or condemnation proceeds, tax refunds, or other amounts not constituting collections of accounts receivable and proceeds of this Note (net of any payment with respect to Prior Permitted Liens that require such payment),Maker shall either prepay the unpaid principal amount of this Note in an amount equal to such proceeds and amounts or use such amounts as cash flow to reduce the budgeted amount for advances under the DIP Note in the next 5 Business Days, with any excess proceeds and amounts remaining thereafter applied to repay the Note.  Following the effectiveness of the Plan, Maker or any applicable liquidating trust shall disburse all funds from time to time, whether from collections of accounts receivable, or otherwise, in accordance with the Plan.

(d)     Application of Principal Payments and Reductions.  All payments made by Maker hereunder shall be applied to the obligations under this Note as follows: (a) first, to all unreimbursed expenses and indemnification obligations hereunder, (b) second, to all unpaid overdue interest obligations hereunder and all accrued interest with respect to principal obligations to be repaid with the proceeds of such payment, and (c) third, all outstanding unpaid principal obligations under this Note.

(e)     Payment Mechanics.  All payments to be made by the Maker hereunder shall be made in lawful money of the United States of America in immediately available funds by wire transfer to the Payee's account, as provided by Payee to Maker from time to time, not later than 3 p.m. (New York City time) on the Business Day that payment is so required. The Maker shall give the Payee prior written notice of each payment to be made hereunder.

4.     Representations, Warranties and Covenants.  On each date of disbursement of a loan hereunder, each Debtor Entity hereby represents and warrants that each representation and warranty set forth herein is true and correct as of such date. The representations and warranties shall survive the execution and delivery of this Note.

(a)     Organizational Existence; Compliance with Law.  Each Debtor Entity (a) is a corporation duly organized, validly existing and in good standing under the laws of its state of incorporation; (b) is duly qualified to conduct business and is in good standing in each other jurisdiction where its ownership or lease of property or the conduct of its business requires such qualification, except where the failure to be so qualified would not result in exposure to losses or liabilities that could reasonably be expected to have a Material Adverse Effect; (c) subject to the entry of the Applicable Order by the Bankruptcy Court, has the requisite organizational power and authority and the legal right to own, pledge, mortgage or otherwise encumber and operate its properties, to lease the property it operates under lease and to conduct its business as now conducted or proposed to be conducted; (d) has all licenses, permits, consents or approvals from or by, and has made all material filings with, and has given all notices to, all Governmental Authorities having jurisdiction, to the extent required for such ownership, operation and conduct except where the failure to do so could not reasonably be expected to have a Material Adverse Effect; (e) is in compliance with its charter and bylaws, as applicable; and (f) is in compliance with all applicable provisions of law, except where the failure to comply, individually or in the aggregate, could not reasonably be expected to have a Material Adverse Effect or where such compliance is excused or suspended as a result of the pendency of the Chapter 11 Case. As of

August 3, 2010, each Debtor Entity discontinued all business operations (other than the Continuing Business) and since such date has not resumed any business operations other than the Continuing Business.

(b) <u>Organizational Power, Authorization, Enforceable Obligations</u>. Upon the entry by the Bankruptcy Court of the Applicable Order, the execution, delivery and performance by each Debtor Entity of the DIP Loan Documents to which it is a party and the creation of all Liens provided for therein: (a) are within such Person's corporate power; (b) have been duly authorized by all necessary corporate action; (c) do not contravene any provision of such Person's charter or bylaws; (d) do not violate any law or regulation, or any order or decree of any court or Governmental Authority; and (e) do not require the consent or approval of any Governmental Authority or any other Person other than those which have been duly obtained, made or complied with prior to the date hereof. Each of the DIP Loan Documents shall be duly executed and delivered by the Debtor Entity party thereto and, subject to the entry of the Applicable Order, each such DIP Loan Document shall constitute a legal, valid and binding obligation of the applicable Debtor Entity party thereto enforceable against it in accordance with its terms.

(c) <u>Reorganization Matters</u>.

(i) The Chapter 11 Case was commenced on the Petition Date in accordance with applicable law and proper notice thereof was given. The Debtor Entities shall give, on a timely basis as specified in the Applicable Order, the Bid Procedures Order and the Sale Order, all notices required to be given to all parties specified therein.

(ii) Pursuant to and to the extent permitted in the Applicable Order, the DIP Obligations will constitute allowed administrative expense claims in the Chapter 11 Case having priority over all administrative expense claims and unsecured claims against the Debtor Entities now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expense claims of the kind specified in any provision of the Bankruptcy Code or otherwise, as provided under Section 364(c)(I) of the Bankruptcy Code, subject, as to priority only, to the Carve-Out Expenses up to the Carve-Out Amount and Prior Permitted Liens.

(iii) To the extent provided in the Applicable Order, the DIP Obligations will be secured by a valid and perfected first priority Lien on all of the Collateral (which includes Prepetition Collateral (as defined in the Final Order) and unencumbered collateral as of and after the Petition Date, including, but not limited to, avoidance actions), subject, as to priority only, to the Carve-Out Expenses up to the Carve-Out Amount and Prior Permitted Liens. To the extent provided in the Final Order, the DIP Obligations will be secured by a valid and perfected second priority lien on any Collateral subject to Prior Permitted Liens.

5. <u>Covenants</u>.

(a) <u>Reporting</u>. The Debtor Entities shall provide Payee such reports and information as to the Collateral or the financial condition of the Debtor Entities as Payee may reasonably request, in form and substance reasonably acceptable to the Payee including, but not limited to,

budget variance reports. Each Debtor Entity shall make its accountants available to Payee upon request.

(b) <u>Maintenance of Existence and Conduct of Business</u>. Each Debtor Entity shall: (a) do or cause to be done all things necessary to preserve and keep in full force and effect its organizational existence; and (b) at all times maintain, preserve and protect all of its material assets and properties (including taking all appropriate security measures in connection therewith) and ensure no decline in the condition of such assets and properties (taking into consideration ordinary wear and tear) and make, or cause to be made, all repairs, replacements and improvements thereto provided for in the Approved Budget. No Debtor Entity shall conduct any business or other activities other than the Continuing Business, in all cases in accordance with the Approved Budget.

(c) <u>Further Assurances</u>. Each Debtor Entity agrees that it shall, at its expense and upon the reasonable request of Payee, duly execute and deliver, or cause to be duly executed and delivered, to Payee such further instruments and do and cause to be done such further acts as may be necessary or proper in the reasonable opinion of Payee to carry out more effectively the provisions and purposes of this Note and each DIP Loan Document. Without limiting the foregoing, each Debtor Entity shall execute any and all further documents, financing statements, agreements and instruments, and take all further action (including filing UCC and other financing statements) that may be required under applicable law, or that Payee may reasonably request, in order to grant, confirm, preserve, protect and perfect the validity and applicable priority nature of the security interests created or intended to be created in favor of Payee by the DIP Loan Documents, and each Debtor Entity will take all actions and do all things necessary or advisable to maintain the perfection and such priority of such security interests. Each Debtor Entity shall deliver, or cause to delivered, such security agreement, mortgages and other collateral documents as are necessary to provide the Payee with security interests in the same type of assets as the collateral documents delivered pursuant to the Prepetition Credit Agreement, together with such opinions, title insurance policies, endorsements, financing statements, control agreements and other agreements, documents and instruments in furtherance of such guaranties and collateral arrangements, in each case, as the Payee may from time to time reasonably request.

(d) <u>Mergers, Subsidiaries, Etc</u>. No Debtor Entity shall directly or indirectly, by operation of law or otherwise, (a) form any Subsidiary or acquire any Subsidiary, or (b) merge with, consolidate with, acquire all or substantially all of the assets or Capital Stock of, or otherwise combine with or acquire, any Person.

(e) <u>Investments</u>. No Debtor Entity shall make or permit to exist any investment in, or make, accrue or permit to exist loans or advances of money to, any Person, through the direct or indirect lending of money, holding of securities or otherwise.

(f) <u>Indebtedness</u>. No Debtor Entity shall create, incur, assume or permit to exist any Indebtedness, except Indebtedness existing as of the date hereof and any other Indebtedness as may be agreed to by Payee. Except pursuant to "first day orders" entered prior to the date hereof or the Plan and except as specifically permitted hereunder, no Debtor Entity shall, without the

express prior written consent of Payee, make any payment or transfer with respect to any Lien or Indebtedness incurred or arising prior to the filing of the Chapter 11 Case that is subject to the automatic stay provisions of the Bankruptcy Code whether by way of "adequate protection" under the Bankruptcy Code or otherwise.

(g) <u>Liens</u>. No Debtor Entity shall create, incur, assume or permit to exist any Lien on or with respect to its property except for Liens in existence on the date hereof, the Administrative Claims and Adequate Protection Liens (each as defined in, and in accordance with, the Applicable Order) and Liens with respect to the Carve-Out Expenses up to the Carve-Out Amount under and in accordance with the Final Order. The prohibition provided for in this Section specifically includes, without limitation, any effort by any Debtor Entity, any committee, or any other party-in-interest in the Chapter 11 Case to prime or create pari passu to any claims, Liens or interests of Payee any Lien (other than for the Carve-Out Expenses up to the Carve-Out Amount) irrespective of whether such claims, Liens or interests may be "adequately protected".

(h) <u>Sale of Assets</u>. No Debtor Entity shall sell, transfer, convey, assign or otherwise dispose of any of its properties or other assets, other than such other dispositions as are agreed to by the Payee, other than the 363 Sale pursuant to the APA, or other than pursuant to the Plan after the effective date thereof.

(i) <u>Cancellation of Indebtedness</u>. No Debtor Entity shall cancel or otherwise forgive any claim or debt owing to it.

(j) <u>Reclamation Claims</u>. No Debtor Entity shall enter into any agreement to return any of its inventory to any of its creditors for application against any prepetition Indebtedness, prepetition trade payables or other prepetition claims under Section 546(h) of the Bankruptcy Code or allow any creditor to take any setoff or recoupment against any of its prepetition Indebtedness, prepetition trade payables or other prepetition claims based upon any such return pursuant to Section 553(b)(l) of the Bankruptcy Code or otherwise.

(k) <u>Chapter 11 Claims</u>. No Debtor Entity shall incur, create, assume, suffer to exist or permit any other superpriority administrative claim which is pari passu with or senior to the claims of Payee against any Debtor Entity, except as specifically permitted herein.

(l) <u>Budget Compliance</u>. No Debtor Entity shall request any loan hereunder and make any cash disbursement if, after giving effect thereto: (A) the aggregate cash disbursements by the Debtor Entities during any weekly period would exceed the product of: (x) the cumulative aggregate of the weekly disbursements budgeted for such weekly period including the date of such disbursement times ( y) one hundred and five percent (105%); or (B) the aggregate cash disbursements by the Debtor Entities in respect of any one line item contained in the Approved Budget (for disbursements) during any weekly period would exceed the product of: (x) the aggregate of the disbursements for such line item for such weekly period times (y) one hundred and ten percent (110%); <u>provided</u>, that, the cumulative aggregate of the weekly disbursements for such line item from the Petition Date through such week period shall not exceed the cumulative aggregate of the weekly budgeted disbursements for such line item from the Petition Date through such weekly period times one hundred and five percent (105%).

(m)     Contractual Obligations. No Debtor Entity shall, without Payee's prior written consent, (x) incur, create, or assume any contractual obligation (including any real property lease) or (y) reject any existing contractual obligation (including any real property lease).

6.     Collateral.

(a)     Grant of Security Interest. Each Debtor Entity hereby pledges, assigns and grants to Payee a security interest in all of such Debtor Entities' right, title and interest, whether now owned or hereafter acquired, in and to the Collateral to secure the prompt and complete payment and performance of the Maker's obligations under this Note and under the DIP Loan Documents and each Guarantor's obligation under the DIP Guaranty and the DIP Loan Documents, including, but not limited to, all obligations to pay interest, fees, expenses, indemnities and principal hereunder (collectively, the "DIP Obligations").

(b)     Super Priority Nature of Obligations and Payee's Liens.

(i)     The priority of the Payee's Liens on the Collateral shall be set forth in the Interim Order and the Final Order.

(ii)     All DIP Obligations shall constitute administrative expenses of the Debtor Entities in the Chapter 11 Case, with administrative priority and senior secured status under Sections 364(c) and 364(d) of the Bankruptcy Code. Subject to the Carve-Out Amount and any other amounts expressly provided for in the Interim Order and the Final Order, such administrative claim shall have priority over all other costs and expenses of the kinds specified in, or ordered pursuant to, any other provision of the Bankruptcy Code or otherwise, and shall at all times be senior to the rights of each of the Debtor Entities' estate, and any successor trustee or estate representative in the Chapter 11 Cases or any subsequent proceeding or case under the Bankruptcy Code. The Liens granted to the Payee on the Collateral owned by the Debtor Entities, and the priorities accorded to the DIP Obligations shall have the priority and senior secured status afforded by Sections 364(c) and 364(d)(l) of the Bankruptcy Code (all as more fully set forth in the Interim Order and the Final Order) senior to all claims and interests other than the Carve-Out Expenses up to the Carve-Out Amount.

(iii)     The Payee's Liens on the Collateral and the Payee's administrative claims under Sections 364(c)(l) and 364(d) of the Bankruptcy Code afforded the DIP Obligations shall be subject and subordinate to the Carve-Out Expenses not to exceed the Carve-Out Amount; provided, that the Carve-Out Expenses shall not include any other claims that are or may be senior to or pari passu with any of the Carve-Out Expenses or any professional fees and expenses of a Chapter 7 trustee and, provided, further, that Carve-Out Expenses shall not include any fees or disbursements (A) arising after the conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code or (B) of the type for which proceeds of loans made hereunder may not be applied or otherwise related to the investigation of, preparation for, or commencement or prosecution of, any claims or proceedings against the Payee or its claims or security interests in or Liens on, the Collateral whether under this Note or any other DIP Loan Document or the Prepetition Credit Agreement or otherwise, except to the extent permitted in the Interim Order and the Final Order with respect to investigations of the validity, perfection,

priority and enforceability of the liens securing the Prepetition Obligations (as defined therein). Except as set forth herein or in the Interim Order and the Final Order, no other claim having a priority superior or pari passu to that granted to the Payee by the Interim Order and the Final Order shall be granted or approved while any DIP Obligations remain outstanding. Except as set forth in the Interim Order and the Final Order and except for the Carve-Out Expenses up to the Carve-Out Amount, no costs or expenses of administration shall be imposed against the Payee or any of the collateral under Sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise, and each Debtor Entity hereby waives for itself and on behalf of its estate in bankruptcy, any and all rights under sections 105, 506 or 552, or otherwise, to assert or impose or seek to assert or impose, any such costs or expenses of administration against the Payee.

7.   Events of Default; Remedies.

(a)   Events of Default.   The term "Event of Default" as used herein means the occurrence or happening, at any time and from time to time, of any of the following:

(i)   (A) the failure of the Maker to pay when due and payable (whether at maturity or otherwise) the full amount of interest then accrued on this Note within one (1) Business Day of the date when due, (B) the failure of the Maker to pay the full amount of any principal payment on this Note, or (C) the failure of the Maker or any Debtor Entity to reimburse Payee for any expense reimbursable hereunder or under any other DIP Loan Document;

(ii)   Any Debtor Entity shall be in default under the covenants set forth herein or any other DIP Loan Document, and shall fail to cure such default on the earlier of one (1) day (or, in the case of a default under Section 5(c) hereof, three (3) days following any such default) following (x) written notice from Payee or (y) the Debtor Entities having actual knowledge of the existence of such default;

(iii)   any representation or warranty made or deemed made by or on behalf of any Debtor Entity or by any officer of any Debtor Entity under or in connection with this Note or any DIP Loan Document or under or in connection with any report, certificate, or other document delivered to Payee shall have been incorrect in any material respect when made or deemed made;

(iv)   any provision of this Note, or any other DIP Loan Document shall at any time for any reason (other than pursuant to the express terms thereof) cease to be valid and binding on or enforceable against the Debtor Entity intended to be a party thereto, or the validity or enforceability thereof shall be contested by any party thereto, or a proceeding shall be commenced by any Debtor Entity or any Governmental Authority having jurisdiction over any of them, seeking to establish the invalidity or unenforceability thereof, or any Debtor Entity shall deny in writing that it has any liability or obligation purported to be created under this Note or any other DIP Loan Document;

(v)   any security agreement, any mortgage or any other security document, after delivery thereof pursuant hereto, shall for any reason fail or cease to create a valid and

perfected lien in favor of the holder of this Note on any Collateral purported to be covered thereby;

(vi) assets of any Debtor Entity with a fair market value of one hundred thousand Dollars ($100,000) or more are attached, seized, levied upon or subjected to a writ or distress warrant, or come within the possession of any receiver, trustee, custodian or assignee for the benefit of creditors of any Debtor Entity and such condition continues for thirty (30) days or more;

(vii) a final judgment or judgments for the payment of money in excess of one hundred thousand Dollars ($100,000) in the aggregate at any time are outstanding against any Debtor Entity (exclusive of judgments (i) covered by insurance policies as to which liability has been accepted by the insurance carrier and (ii) entered for purposes of liquidating a Claim (as defined in the Bankruptcy Code) but not directing any payment from the estate of any of the Debtor Entities)), and the same are not, within thirty (30) days after the entry thereof, discharged or execution thereof stayed or bonded pending appeal, or such judgments are not discharged prior to the expiration of any such stay;

(viii) The occurrence of any of the following in the Chapter 11 Case (unless otherwise agreed to by Payee):

(A) the bringing of a motion, taking of any action or the filing of any plan of reorganization or disclosure statement attendant thereto by any Debtor Entity in the Chapter 11 Case: (w) to obtain additional financing under Section 364(c) or (d) of the Bankruptcy Code not otherwise permitted pursuant to this Note; (x) to grant any Lien other than Liens permitted hereunder upon or affecting any Collateral; (y) except as provided in the Interim Order and the Final Order, to use cash collateral of Payee under Section 363(c) of the Bankruptcy Code without the prior written consent of Payee; or (z) any other action or actions adverse to Payee (determined in its sole reasonable discretion) with respect to its rights and remedies hereunder or its interest in the Collateral;

(B) the filing of any plan of reorganization or liquidation other than the Plan;

(C) the entry of an order in the Chapter 11 Case confirming a plan or plans of reorganization or liquidation other than the Plan;

(D) the entry of an order amending, supplementing, staying, vacating or otherwise modifying the DIP Loan Documents or the Interim Order or the Final Order without the written consent of the Payee;

(E) the payment of, or application for authority to pay, any pre-petition claim without Payee's prior written consent or pursuant to an order of the Bankruptcy Court after notice and a hearing unless otherwise permitted under this Note;

(F) the allowance of any claim or claims under Section 506(c) of the Bankruptcy Code against Payee or any of the Collateral;

(G) the appointment of an interim or permanent trustee in the Chapter 11 Case or the appointment of a receiver or an examiner in the Chapter 11 Case with expanded powers to operate or manage the financial affairs, the business, or reorganization of any Debtor Entity; or the sale (other than pursuant to the APA) without Payee's consent, of all or substantially all of any Debtor Entities' assets either through a sale under Section 363 of the Bankruptcy Code ("363 Sale"), through a confirmed plan of reorganization in the Chapter 11 Case, or otherwise that does not provide for payment in full in cash of the DIP Obligations and termination of all obligations of Payee under the Note;

(H) the dismissal of the Chapter 11 Case, or the conversion of the Chapter 11 Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code;

(I) the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code (x) to allow any creditor to execute upon or enforce a Lien on any Collateral, or (y) with respect to any Lien of or the granting of any Lien on any Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a Material Adverse Effect;

(J) the entry of an order in the Chapter 11 Case avoiding or requiring repayment of any portion of the payments made on account of the DIP Obligations, or avoiding or otherwise nullifying any Lien securing any DIP Obligation, owing under this Note or the other DIP Loan Documents;

(K) the failure of Maker to perform any of its obligations under the Final Order, Interim Order, Bid Procedures Order or Sale Order or any of the Final Order, Interim Order, Bid Procedures Order or Sale Order after entry by the Bankruptcy Court shall cease to be in full force and effect, shall be reversed, stayed, modified or amended or otherwise shall be subject to a Material Problematic Appeal not stayed, or shall be subject to a stay pending appeal;

(L) the entry of an order in the Chapter 11 Case granting any other super priority administrative claim or Lien equal or superior to that granted to Payee; or

(M) the termination of the Maker's exclusive right to file a plan or plans of reorganization in the Chapter 11 Cases.

(N) the failure to satisfy any of the following within the prescribed time periods set forth below:

(1) On or prior to the 30th day following the Petition Date, the Maker shall have conducted an auction for the assets of the Debtor Entities identified as for sale in the APA pursuant to Section 363 of the Bankruptcy Code, and Payee shall be designated the successful bidder;

(2) On or prior to the 31st day following the Petition Date, the Bankruptcy Court shall have entered an order, in form and substance substantially the same as the order attached to the APA, approving the consummation of the 363 Sale pursuant to the APA (the "Sale Order");

(3) On or prior to the 31st day following the Petition Date, the Debtor Entities shall have consummated the transactions for the 363 Sale pursuant to the APA pursuant to Section 363 of the Bankruptcy Code;

(4) (i) On or prior to the 14th day following the Petition Date, the Maker shall have filed a motion to approve solicitation procedures, a disclosure statement reasonably acceptable to Payee, and a detailed plan of liquidation for Maker and Subsidiaries reasonably acceptable to Payee consistent with the plan term sheet set forth on Exhibit C hereto (the "Plan") and (ii) On or prior to October 1, 2010, there shall be an effective Plan;

(5) On or prior to the 14th day following the Petition Date, the Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to counsel to the Payee, approving the Bid Procedures Motion, which order has not been modified, reversed, stayed or vacated or amended nor shall any Material Problematic Appeal have been timely filed and not stayed, nor shall such order be subject to a stay pending appeal (the "Bid Procedures Order"); and

(6) On or prior to the 14th day following the Petition Date, the Bankruptcy Court shall have entered the Final Order.

(O)    The failure to cooperate with Payee, its affiliates and designees in connection with their enforcement of the Strict Foreclosure Agreement, including without limitation, the delivery of the Specified Equipment (as defined in the Strict Foreclosure Agreement).

(b)    Remedies.

(i)    Acceleration.  If any Event of Default has occurred and is continuing, Payee may, notwithstanding the provisions of Section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from, the Bankruptcy Court, suspend or terminate the obligation of the Payee to make loans under this Note and declare the Termination Date to have occurred, whereupon any disbursements under this Note shall be made or incurred, in Payee's sole discretion so long as such Default or Event of Default is continuing. If any Event of Default has occurred and is continuing, Payee may, upon proper notice, request relief from the automatic stay under Section 362 of the Bankruptcy Code, with a hearing to be held within five calendar days; provided, however; only the occurrence or non-occurrence of such Default or Event of Default shall be the subject of any such hearing. Subject to the Final Order or any order granting relief from the automatic stay, as applicable, if any Event of Default has occurred and is continuing, Payee may, (A) declare all or any portion of the DIP Obligations to be forthwith due and payable, all without presentment, demand, protest or further notice of any kind, all of which are expressly waived by each Debtor Entity, (B) direct the Debtor Entities to sell or otherwise dispose of any or all of the Collateral on terms and conditions acceptable to Payee pursuant to Sections 363, 365 and other applicable provisions of the Bankruptcy Code (and, without limiting the foregoing, direct any Debtor Entity to assume and assign any lease or executory contract included in the Collateral to Payee or Payee's designees in accordance with and subject to Section 365 of the Bankruptcy Code), (C) enter onto the premises of the Debtor Entities in

connection with an orderly liquidation of the Collateral, or (D) exercise any rights and remedies provided to Payee under the DIP Loan Documents or at law or equity, including all remedies provided under the UCC or the Bankruptcy Code. Upon the occurrence of an Event of Default and the exercise by Payee of its rights and remedies under this Note and the other DIP Loan Documents in accordance with the preceding sentence, the Debtor Entities shall assist Payee in effecting a sale or other disposition of the Collateral upon such terms as are acceptable to Payee.

(ii)  Waivers by Maker.  Except as otherwise provided for in this Note, the Final Order, the Interim Order or in any other DIP Loan Documents or by applicable law, Maker waives: (a) presentment, demand and protest and notice of presentment, dishonor, notice of intent to accelerate, notice of acceleration, protest, default, nonpayment, maturity, release, compromise, settlement, extension or renewal of any or all commercial paper, accounts, contract rights, documents, instruments, chattel paper and guaranties at any time held by Payee on which Maker may in any way be liable, and hereby ratifies and confirms whatever the Payee may do in this regard, (b) other than as required herein or in the Applicable Order, all rights to notice and a hearing prior to Payee taking possession or control of, or to Payee's replevy, attachment or levy upon, the Collateral or any bond or security that might be required by any court prior to allowing Payee to exercise any of its remedies, and (c) the benefit of all valuation, appraisal, marshaling and exemption laws.

8.    Amendment or Waiver.  The provisions of this Note may be amended or waived and the Maker may take any action herein prohibited, or omit to perform any act herein required to be performed by it, only if the Maker has obtained the prior written consent of the Payee.

9.    Definitions.  For purposes of this Note, the following capitalized terms have the following meaning:

"363 Sale" shall have the meaning assigned to such term in Section 7(a)(viii)(G).

"APA" means that certain Asset Purchase Agreement dated as of the Petition Date, among Payee and the Debtor Entities, with such amendments, restatements, supplements and other modifications as are agreed to by Payee in its sole discretion.

"Applicable Order" means the Interim Order until such time as the Final Order shall have been entered and, thereafter, the Final Order.

"Approved Budget" means the budget for Maker and its Subsidiaries through the consummation of the Plan, attached as Exhibit A hereto, together with any revisions agreed to by Payee in its sole discretion, as amended in connection with any Maturity Date extension in accordance herewith; provided, that to the extent that any collections are received, whether from the Continuing Business, any Disposition, tax refund, insurance recovery or otherwise, in excess of the amounts reflected in the Approved Budget, the budgeted amount for advances required under the DIP Loan shall be reduced thereby.

"Bankruptcy Code" means Chapter 11, 11 U.S.C. 101 et seq.

"Bankruptcy Court" shall have the meaning assigned to such term in the preamble hereof.

"**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure, as the same may from time to time be in effect and applicable to the Chapter 11 Case.

"**Bid Procedures Motion**" shall have the meaning assigned to such term in Section 1(e) hereof.

"**Bid Procedures Order**" shall have the meaning assigned to such term in Section 7(a)(viii)(N) hereof.

"**Borrower**" shall have the meaning assigned to such term in the preamble hereof.

"**Business Day**" means each day other than a Saturday, Sunday or legal holiday in the State of New York.

"**Carve-Out Amount**" shall have the meaning assigned to such term in the Final Order.

"**Carve-Out Expenses**" shall have the meaning assigned to such term in the Final Order.

"**Chapter 11 Case**" shall have the meaning assigned to such term in the preamble hereof.

"**Collateral**" means all of the Debtor Entities' right, title and interest, now or hereafter arising, in personal property (tangible or intangible) and real property, including but not limited to: all property of the estate, avoidance actions, accounts, chattel paper, commercial tort claims, deposit accounts and securities accounts, documents, equipment, fixtures, general intangibles, goods, intellectual property, instruments, inventory, investment property, leases, all letters of credit, letter of credit rights, and other supporting obligations, all money, cash and cash equivalents, tax refunds and tax credits, all products and proceeds of any of the foregoing, including all insurance proceeds payable for the loss, damage or destruction of any of the foregoing.

"**Continuing Business**" means (1) prior to consummation of the 363 Sale pursuant to the APA, (a) any actions necessary to effectuate the Plan or consummate the transactions under the APA or otherwise perform under the APA, which shall not include any disposition of property other than pursuant to the liquidating trust established for the Plan or pursuant to the APA, (b) with respect to concrete forming inventory or equipment of the Debtor Parties on rent to third parties as of the Petition Date (the "**Forming Rental Equipment**"), the collection of rental income relating to Forming Rental Equipment and the ongoing servicing of the Forming Rental Equipment, in each case by Form-Co., Inc., but for the avoidance of doubt shall not include any new rentals of concrete forming inventory or equipment following the Petition Date other than new rentals on such inventory or equipment held by FormCo. Inc. as of the Petition Date in the ordinary course of business consistent with past practice and (c) with respect to inventory and equipment of Accubrace, Inc. ("**Accubrace Rental Equipment**"), new rentals of Accubrace Rental Equipment in the ordinary course of business consistent with past practice, the collection of rental income related to Accubrace Rental Equipment on rent to third parties whether as of the Petition Date or thereafter, and installation services conducted by Accubrace, Inc. in the ordinary

course of business consistent with past practice, and (2) on and after consummation of the 363 Sale pursuant to the APA, only actions which are necessary to perform under the APA and necessary to effectuate the Plan."**Debtor Entity**" means Maker and each Subsidiary Borrower.

"**Default**" means any event that, with the passage of time or notice or both, would become an Event of Default.

"**DIP Guaranty**" means that certain guaranty executed and delivered by Subsidiary Borrowers, in the form attached as **Exhibit B** hereto.

"**DIP Loan Documents**" means this Note, the DIP Guaranty, security agreements, and any other agreement, document or instrument delivered to or in favor of Payee or any holder in connection with any of the foregoing.

"**DIP Obligations**" shall have the meaning assigned to such term in **Section 6(a)** hereof.

"**Disposition**" means any transaction, or series of transactions pursuant to which any Debtor Entity conveys, sells, leases or subleases, assigns, transfers or otherwise disposes of any part of its business, property or assets (whether now owned or hereafter acquired) to any other Person, in each case whether or not the consideration therefor consists of cash, securities or other assets, including any sales of inventory in the ordinary course of business but excluding the rental of equipment out for rent as of the Petition Date and excluding the 363 Sale to Payee pursuant to the APA.

"**Dollar(s)**" or "**$**" means lawful currency of the United States of America.

"**Environmental Liabilities**" means, with respect to any Person, all liabilities, obligations, responsibilities, response, remedial and removal costs, investigation and feasibility study costs, capital costs, operation and maintenance costs, losses, damages, punitive damages, property damages, natural resource damages, consequential damages, treble damages, costs and expenses (including all reasonable fees, disbursements and expenses of counsel, experts and consultants), fines, penalties, sanctions and interest incurred as a result of or related to any claim, suit, action, investigation, proceeding or demand by any Person, whether based in contract, tort, implied or express warranty, strict liability, criminal or civil statute or common law, including any arising under or related to any Environmental Laws, or in connection with any release or threatened release or presence of any Materials of Environmental Concern whether on, at, in, under, from or about or in the vicinity of any real or personal property.

"**Event of Default**" shall have the meaning assigned to such term in **Section 7(a)** hereof.

"**Final Order**" means, collectively, the order of the Bankruptcy Court entered in the Chapter 11 Case after a final hearing under Bankruptcy Rule 4001(c)(2) or such other procedures as approved by the Bankruptcy Court which order shall be in the form and substance attached as **Exhibit D** hereto or (b) otherwise satisfactory in form and substance to Payee, and from which no appeal or motion to reconsider has been timely filed, or if timely filed, such appeal or motion to reconsider has been dismissed or denied unless Payee waives such requirement, together with all extensions, modifications and amendments thereto, in each such case, in form and substance

satisfactory to Payee, which, among other matters but not by way of limitation, authorizes Maker to obtain credit, incur (or guaranty) Indebtedness, and grant Liens under the Note and the other DIP Loan Documents, as the case may be, and provides for the super priority of the Payee's claims.

"<u>Guarantors</u>" means the Subsidiary Borrowers who are party to the DIP Guaranty.

"<u>Indemnified Liabilities</u>" shall have the meaning assigned to such term in <u>Section 11</u> hereof.

"<u>Indemnified Person</u>" shall have the meaning assigned to such term in <u>Section 11</u> hereof.

"<u>Interest Payment Date</u>" means the first day of each month.

"<u>Interim Order</u>" means the order of the Bankruptcy Court entered in the Chapter 11 Case which order shall be in the form and substance attached as <u>Exhibit E</u> hereto or as otherwise agreed to by Payee."<u>Lender</u>" shall have the meaning assigned to such term in the preamble hereof.

"<u>Maker</u>" shall have the meaning assigned to such term in the preamble hereof.

"<u>Material Adverse Effect</u>" means a material adverse effect, other than the filing of the Chapter 11 Case, on (a) the assets of any Debtor Entity, (b) the confirmation of the Plan or achievement of the milestones set forth in <u>Section 7(a)(viii)(N)</u>, (c) the Collateral or the Payee's Liens on the Collateral or the priority of such Liens, or (e) Payee's rights and remedies under the Note and the other DIP Loan Documents, the Prepetition Credit Agreement and the Credit Documents.

"<u>Material Problematic Appeal</u>" means an appeal, motion for reconsideration or any other motion or other pleading which in the reasonable good faith determination of Payee is reasonably likely to result in a Material Adverse Effect.

"<u>Maturity Date</u>" shall have the meaning assigned to such term in <u>Section 3(a)</u> hereof.

"<u>Note</u>" shall have the meaning assigned to such term in the preamble hereof.

"<u>Payee</u>" shall have the meaning assigned to such term in the preamble hereof.

"<u>Petition Date</u>" means August 4, 2010.

"<u>PIK Interest</u>" shall have the meaning assigned to such term in <u>Section 2(b)</u>.

"<u>Plan</u>" shall have the meaning assigned to such term in <u>Section 7(a)(viii)(N) hereof</u>.

"<u>Prepetition Administrative Agent</u>" shall have the meaning assigned to such term in the preamble hereof.

"Prepetition Credit Agreement" shall have the meaning assigned to such term in the preamble hereof.

"Prior Permitted Liens" means liens permitted under the Prepetition Loan Documents to have priority over the Prepetition Obligations (as defined in the Final Order), to the extent that any valid, properly perfected, unavoidable and senior liens exist; provided, that "Prior Permitted Liens" shall exclude all liens securing the Prepetition Obligations (as defined in the Final Order).

"Released Parties" shall have the meaning assigned to such term in Section 20 hereof.

"Releasing Parties" shall have the meaning assigned to such term in Section 20 hereof.

"Restructuring Agreement" shall mean that certain letter agreement, dated as of August 2, 2010, between UBP Acquisition Corp. and Maker.

"Sale Order" shall have the meaning assigned to such term in Section 7(a)(viii)(N) hereof.

"Strict Foreclosure Agreement" shall mean that certain Strict Foreclosure Agreement, dated as of August 3, 2010, by and among the Debtor Entities, the Payee and other parties named therein.

"Subsidiary Borrowers" shall have the meaning assigned to such term in the preamble hereof.

"Termination Date" means the earlier of (a) the Maturity Date and (b) the date so declared by the Payee at any time an Event of Default shall have occurred and be continuing.

All other terms not defined herein and not defined in the Prepetition Credit Agreement shall, unless the context indicates otherwise, have the meanings provided for by the UCC to the extent the same are used herein.

10.  **Assignment.** The Payee may assign at any time this Note to any of its affiliates, any financial institutions or any other person, in which event, the assignee shall have, to the extent of such assignment, the same rights and benefits as it would have if it were the Payee, except as otherwise provided by the terms of such assignment or participation. The rights and obligations of the Maker and the holder of this Note shall be binding upon and benefit the successors and permitted assigns and transferees of the Maker and the holder of this Note. Payee agrees that if no Event of Default shall have occurred and be continuing, it shall not assign this Note to any Person not an affiliate without the consent of the Maker.

11.  **Indemnification.** Maker shall indemnify and hold harmless Payee, each of its Affiliates and shareholders, and each such Person's respective partners, members, officers, directors, employees, attorneys, agents and representatives (each, an "Indemnified Person"), from and against any and all suits, actions, proceedings, claims, damages, losses, liabilities and expenses (including reasonable attorneys' fees and disbursements and other costs of investigation or defense, including those incurred upon any appeal) that may be instituted or

UBP SENIOR SECURED, SUPER-PRIORITY
DEBTOR-IN-POSSESSION PROMISSORY NOTE

PAGE 19

asserted against or incurred by any such Indemnified Person as the result of credit having been extended, suspended or terminated under this Note and the other DIP Loan Documents and the administration of such credit, and in connection with or arising out of the transactions contemplated hereunder and thereunder and any actions or failures to act in connection therewith, including any and all Environmental Liabilities and legal costs and expenses arising out of or incurred in connection with disputes between or among any parties to any of the DIP Loan Documents (collectively, "Indemnified Liabilities"); provided, that Maker shall not be liable for any indemnification to an Indemnified Person to the extent that any such suit, action, proceeding, claim, damage, loss, liability or expense results from that Indemnified Person's gross negligence or willful misconduct as determined by a final, non-appealable judgment of a court of competent jurisdiction. No Indemnified Person shall be responsible or liable to any other party to any DIP Loan Document, any successor, assignee or third party beneficiary of such person or any other person asserting claims derivatively through such party, for indirect, punitive, exemplary or consequential damages which may be alleged as a result of credit having been extended, suspended or terminated under any DIP Loan Document or as a result of any other transaction contemplated hereunder or thereunder.

12. **Notices.** Except as otherwise provided herein, whenever it is provided herein that any notice, demand, request, consent, approval, declaration or other communication shall or may be given to or served upon any of the parties by any other parties, or whenever any of the parties desires to give or serve upon any other parties any communication with respect to this Note, each such notice, demand, request, consent, approval, declaration or other communication shall be in writing and shall be sent by telecopy or other similar facsimile transmission (with such telecopy or facsimile promptly confirmed by delivery of a copy by personal delivery or United States Mail as otherwise provided in this Section), by deposit with a reputable overnight courier with all charges prepaid or by hand delivery by messenger, addressed to the party to be notified and sent to the address or facsimile number indicated in Schedule 13 or to such other address (or facsimile number) as may be substituted by notice given as herein provided. Each such notice shall be deemed delivered at the time indicated in the delivery receipt customary for such mode of delivery. The giving of any notice required hereunder may be waived in writing by the party entitled to receive such notice. Notwithstanding anything herein to the contrary, notice to Maker with respect to any requested loan or payment thereof shall only be deemed effective if delivered by electronic mail to all of the persons (and no other method of notice shall be required) described on Schedule 13.

13. **GOVERNING LAW.** EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN ANY OF THE DIP LOAN DOCUMENTS, IN ALL RESPECTS, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THE DIP LOAN DOCUMENTS AND THE OBLIGATIONS SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN THAT STATE) AND ANY APPLICABLE LAWS OF THE UNITED STATES OF AMERICA (INCLUDING THE BANKRUPTCY CODE). EACH DEBTOR ENTITY HEREBY CONSENTS AND AGREES THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN ANY DEBTOR ENTITY AND PAYEE PERTAINING TO THIS NOTE OR ANY

OF THE OTHER DIP LOAN DOCUMENTS OR TO ANY MATTER ARISING OUT OF OR RELATING TO THIS NOTE OR ANY OF THE OTHER DIP LOAN DOCUMENTS; PROVIDED, THAT THE PAYEE AND THE EACH DEBTOR ENTITY ACKNOWLEDGE THAT ANY APPEALS FROM THE BANKRUPTCY COURT MAY HAVE TO BE HEARD BY A COURT OTHER THAN THE BANKRUPTCY COURT; PROVIDED, FURTHER, THAT NOTHING IN THIS NOTE SHALL BE DEEMED OR OPERATE TO PRECLUDE PAYEE FROM BRINGING SUIT OR TAKING OTHER LEGAL ACTION IN ANY OTHER JURISDICTION TO REALIZE ON THE COLLATERAL OR ANY OTHER SECURITY FOR THE DIP OBLIGATIONS, OR TO ENFORCE A JUDGMENT OR OTHER COURT ORDER IN FAVOR OF PAYEE AFTER RELIEF FROM THE AUTOMATIC STAY TO THE EXTENT SUCH AUTOMATIC STAY IS APPLICABLE. EACH DEBTOR ENTITY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND EACH DEBTOR ENTITY HEREBY WAIVES ANY OBJECTION THAT ANY DEBTOR ENTITY MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT.

14. Expenses; Taxes; Attorneys Fees. The Debtor Entities will pay on the Termination Date, all reasonable documented costs and expenses incurred by or on behalf of Payee, including, but not limited to, reasonable fees, costs, expenses of counsel for Payee, arising from or relating to this Note and any other DIP Loan Document, the Interim Order and the Final Order, all liabilities and costs arising from or in connection with the past, present or future operations of the Maker involving any damage to real or personal property or natural resources or harm or injury alleged to have resulted from any release of Materials of Environmental Concern on, upon or into such property, which are incurred by reason of Payee's capacity as provider of the loans under this Note, recipient of the collateral grant under the Applicable Order, or as a result of exercise of its rights and remedies related hereunder and under the other DIP Loan Documents, and any Environmental Liabilities incurred in connection with the investigation, removal, cleanup or remediation of any Materials of Environmental Concern present or arising out of the operations of any facility owned or operated by any Debtor Entity. Without limitation of the foregoing or any other provision of any DIP Loan Document, each Debtor Entity agrees to pay all stamp, document, transfer, recording or filing taxes or fees and similar impositions now or hereafter determined by Payee to be payable in connection with this Note or any other DIP Loan Document, and each Debtor Entity agrees to save Payee harmless from and against any and all present or future claims, liabilities or losses with respect to or resulting from any omission to pay or delay in paying any such taxes, fees or impositions. Any and all payments by any Debtor Entity hereunder shall be made free and clear of and without deduction for any and all present or future Taxes. If any Debtor Entity shall be required by law to deduct any Taxes from or in respect of any sum payable hereunder or under the Note, (i) the sum payable shall be increased as much as shall be necessary so that, after making all required deductions (including deductions applicable to additional sums payable hereunder), the Payee receives an amount equal to the sum they would have otherwise received had no such deductions been made, (ii) the Debtor Entities shall make such deductions, and (iii) the Debtor Entities shall pay the full amount deducted to the relevant taxing or other authority in accordance with applicable law. Within thirty (30) days after the date of any payment of Taxes, the Debtor

Entities shall furnish to Payee the original or a certified copy of a receipt evidencing payment thereof.

15. **Business Days.** If any payment is due, or any time period for giving notice or taking action expires, on a day which is not a Business Day, the payment shall be due and payable on, and the time period shall automatically be extended to, the immediately following Business Day, and interest shall continue to accrue at the required rate hereunder until any such payment is made.

16. **No Waiver.** The rights and remedies of the holder of this Note expressly set forth in this Note are cumulative and in addition to, and not exclusive of, all other rights and remedies available at law, in equity or otherwise. No failure or delay on the part of the holder of this Note in exercising any right, power or privilege shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege or be construed to be a waiver of any Event of Default. No course of dealing between the Maker and the holder of this Note or their agents or employees shall be effective to amend, modify or discharge any provision of this Note or to constitute a waiver of any Event of Default. No notice to or demand upon Maker in any case shall entitle Maker to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of the holder of this Note to exercise any right or remedy or take any other or further action in any circumstances without notice or demand.

17. **Construction.** The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation," whether or not so expressly stated in each such instance and the term "or" has, except where otherwise indicated, the inclusive meaning represented by the phrase "and/or." The word "will" shall be construed to have the same meaning and effect as the word "shall." All references to time herein shall mean and be a reference to the time in New York, New York. Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth herein), (b) any reference herein to any Person shall be construed to include such Person's successors and assigns, (c) the words "herein," "hereof" and "hereunder," and words of similar import, shall be construed to refer to this Note in its entirety and not to any particular provision hereof, (d) all references herein to Sections shall be construed to refer to Sections of this Note and (e) the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights. Unless otherwise expressly provided herein, each accounting term used herein shall have the meaning given it under GAAP.

18. **Parties Including Trustees; Bankruptcy Court Proceedings.** This Note, the other DIP Loan Documents, and all Liens and other rights and privileges created hereby or pursuant hereto or to any other DIP Loan Document shall be binding upon the Debtor Entities, the estate

of the Debtor Entities, and any trustee, other estate representative or any successor in interest of the Debtor Entities in the Chapter 11 Case or any subsequent case commenced under Chapter 7 of the Bankruptcy Code, and shall not be subject to Section 365 of the Bankruptcy Code. This Note and the other DIP Loan Documents shall be binding upon, and inure to the benefit of, the successors of Payee and its assigns, transferees and endorsees. The Liens created by this Note and the other DIP Loan Documents shall be and remain valid and perfected in the event of the substantive consolidation or conversion of any Chapter 11 Case or any other bankruptcy case of Maker to a case under Chapter 7 of the Bankruptcy Code or in the event of dismissal of any Chapter 11 Case or the release of any Collateral from the jurisdiction of the Bankruptcy Court for any reason, without the necessity that Payee file financing statements or otherwise perfect its Liens under applicable law. The Debtor Entities may not assign, transfer, hypothecate or otherwise convey its rights, benefits, obligations or duties hereunder or under any of the other DIP Loan Documents without the prior express written consent of Payee. Any such purported assignment, transfer, hypothecation or other conveyance by any Debtor Entity without the prior express written consent of Payee shall be void. The terms and provisions of this Note are for the purpose of defining the relative rights and obligations of the Debtor Entities and Payee with respect to the transactions contemplated hereby and no Person shall be a third party beneficiary of any of the terms and provisions of this Note or any of the other DIP Loan Documents.

19.     No Discharge; Survival of Claims.

(a)     The Debtor Entities agree that (a) the DIP Obligations (and all liens securing such DIP Obligations) hereunder shall not be discharged or released by the entry of an order confirming a plan of reorganization or liquidation in the Chapter 11 Case (and each Debtor Entity pursuant to Section 1141(d)(4) of the Bankruptcy Code, hereby waives any such discharge or release) and (ii) the superpriority administrative claim granted to the Payee pursuant to the Applicable Order and as further described herein and the Liens granted to the Payee pursuant to the Applicable Order and as further described herein shall not be affected in any manner by the entry of an order confirming a plan of reorganization in the Chapter 11 Case, upon any conversion to a case under Chapter 7 of the Bankruptcy Code, or upon dismissal of any bankruptcy case.

(b)     Except as otherwise expressly provided herein or in any other DIP Loan Document, all undertakings, agreements, covenants, warranties and representations of or binding upon the Debtor Entities, and all rights of Payee, all as contained in the DIP Loan Documents, shall not terminate or expire, but rather shall survive any such termination or cancellation and shall continue in full force and effect until the Termination Date; provided, that the provisions of Section 4, the payment obligations under Sections 11 and 14 and the indemnities contained in the DIP Loan Documents shall survive the Termination Date.

20.     Release. Each Debtor Entity hereby acknowledges, effective upon entry of the Applicable Order, that no Debtor Entity has a defense, counterclaim, offset, recoupment, cross-complaint, claim or demand of any kind or nature whatsoever that can be asserted to reduce or eliminate all or any part of the Maker's liability to repay the Payee as provided in this Note or to seek affirmative relief or damages of any kind or nature from the Payee (in any capacity) arising, directly or indirectly, out of, connected with, or in any way related to, the Note, the DIP Loan

Documents, the Interim Order, the Final Order, the Prepetition Credit Agreement, the Credit Documents, the transactions contemplated thereby, and all other agreements, certificates, instruments and other documents and statements (whether written or oral) related to any of the foregoing. Each Debtor Entity, on behalf of its bankruptcy estate, and on behalf of all its successors, assigns, Subsidiaries and any Affiliates and any Person acting for and on behalf of, or claiming through them, (collectively, the "Releasing Parties"), hereby fully, finally and forever releases and discharges the Payee (in any capacity) and all of the Payee's officers, shareholders, directors, servants, agents, attorneys, other professionals, assigns, heirs, parents, subsidiaries, and each Person acting for or on behalf of any of them (collectively, the "Released Parties") of and from any and all actions, causes of action, demands, suits, claims, liabilities, Liens, lawsuits, adverse consequences, amounts paid in settlement, costs, damages, debts, deficiencies, diminution in value, disbursements, expenses, losses and other obligations of any kind or nature whatsoever, whether in law, equity or otherwise (including, without limitation, interest or other carrying costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), whether known or unknown, fixed or contingent, direct, indirect, or derivative, asserted or unasserted, foreseen or unforeseen, suspected or unsuspected, now existing, heretofore existing or which may heretofore accrue against any of the Released Parties, whether held in a personal or representative capacity, and which are based on any act, fact, event or omission or other matter, cause or thing directly or indirectly arising out of, connected with or relating to this Note, the Interim Order, the Final Order, the DIP Loan Documents, the Prepetition Credit Agreement, the Credit Documents, the transactions contemplated thereby, and all other agreements, certificates, instruments and other documents and statements (whether written or oral) related to any of the foregoing.

21.  Waiver of any Priming Rights. As of the date hereof, and on behalf of itself and its estate, and for so long as any DIP Obligations or any commitments hereunder shall be outstanding, each Debtor Entity hereby irrevocably waives any right, pursuant to Sections 364(c) or 364(d) of the Bankruptcy Code or otherwise, to grant any Lien of equal or greater priority than the Liens securing the DIP Obligations, or to approve a claim of equal or greater priority than the DIP Obligations.

22.  Waiver. As of the date hereof and for so long as any DIP Obligations or any commitments hereunder shall be outstanding, each Debtor Entity, on behalf of itself and its estate, hereby irrevocably waives any right to use cash collateral of the Payee under Section 363 of the Bankruptcy Code, other than as provided herein or in the Applicable Order, without the prior written consent of the Payee.

23.  Counterparts; Telefacsimile or Electronic Mail Execution. This Note may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Note. Delivery of an executed counterpart of this Note by telefacsimile or electronic mail shall be equally as effective as delivery of an original executed counterpart of this Note. Any party delivering an executed counterpart of this Note by telefacsimile or electronic mail also shall deliver an original executed counterpart of this Note but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Note.

\* \* \*

UBP SENIOR SECURED, SUPER-PRIORITY
DEBTOR-IN-POSSESSION PROMISSORY NOTE

IN WITNESS WHEREOF, each Debtor Entity has executed and delivered this Senior Secured, Super-Priority Debtor-In-Possession Note on the date first above written.

UNIVERSAL BUILDING PRODUCTS, INC.,
A Delaware Corporation

By:
Name:
Title:

DON DE CRISTO CONCRETE ACCESSORIES,
INC.,
A California Corporation

By:
Name:
Title:

UNIVERSAL FORM CLAMP, INC.,
A Delaware Corporation

By:
Name:
Title:

FORM-CO. INC.,
A Delaware Corporation

By:
Name:
Title:

ACCUBRACE, INC.,
A Delaware Corporation

By:
Name:
Title:

Agreed to and accepted as of the date hereof.

UBP ACQUISITION CORP.

By: _____
Name:         David Quick
Its:          Authorized Signatory

## ANNEX A

### Senior Secured Super-Priority Debtor-In-Possession Promissory Note

| Date Made | Principal Amount Advanced | Amount Available to be Advanced | Name of Person Making Entry |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

## Schedule 1(c)

**Wire Information**
Comerica Bank
39200 Six Mile Road
Livonia, MI 48152-7612
ABA# 072000096
Account 1852074614

In Favor of:
Universal Building Products Inc

<u>**Schedule 13**</u>

**Notice Information**

<u>**Maker**</u>
Universal Building Products, Inc.
15172 Goldenwest Circle
Westminster CA 92683
Facsimile: (714) 901-5995
Attention: Chief Executive Officer

<u>with copies to:</u>
K&L Gates LLP
70 West Madison Street, Ste. 3100
Chicago, Illinois 60602
Facsimile: (312) 345-9979
Attention: Sven T. Nylen

<u>**Payee**</u>

UBP Acquisition Corp.
c/o Oaktree Capital Management, L.P.
333 South Grand Avenue, 28th Floor
Los Angeles, California 90071
Facsimile: (213) 830-6394
Attention: David Quick, Diana Hang and David Orkin

<u>with copies to:</u>
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA 90071
Facsimile: (213) 680-8500
Attention: Samantha Good