# **EXHIBIT 3**

**Strict Foreclosure Agreement**

# STRICT FORECLOSURE AGREEMENT

Dated as of August 3, 2010

Universal Building Products, Inc.
15172 Goldenwest Circle
Westminster, California 92683
Attn: Jeffrey D. Church, CEO
     Gregory D. Waller, CFO

Re: <u>Acceptance of Collateral in Partial Strict Foreclosure</u>

Ladies and Gentlemen:

    References are made to (i) the Credit Agreement, dated as of April 28, 2006 (such agreement, as amended, restated, supplemented or otherwise modified from time to time, including any replacement agreement therefor, being hereinafter referred to as the "<u>Credit Agreement</u>"), by and among Universal Building Products, Inc., a Delaware corporation (the "<u>Company</u>"), the Subsidiary Borrowers party thereto (together with the Company, each a "<u>Borrower</u>" and collectively, the "<u>Borrowers</u>"), UBP Acquisition Corp., a Delaware corporation as the sole lender thereunder (together with any successors and assigns, "<u>Lenders</u>") and OCM FIE, L.P., a Delaware limited partnership, as administrative agent on behalf of the Lenders (in such capacity, the "<u>Administrative Agent</u>"), and (ii) the Security Agreement, dated as of April 28, 2006 (such agreement, as amended, restated, supplemented or otherwise modified from time to time, including any replacement agreement therefor, being hereinafter referred to as the "<u>Security Agreement</u>") by and among the Borrowers and the Administrative Agent. Capitalized terms used and not otherwise defined herein shall have the respective meanings ascribed to them or incorporated by reference in the Credit Agreement.

    Pursuant to Section 2 of the Security Agreement Borrowers granted the Administrative Agent a security interest in, among other things, all Equipment (as defined in the Security Agreement), including without limitation the Equipment set forth on the attached <u>Schedule A</u>. The Equipment set forth on the attached <u>Schedule A</u> is hereinafter referred to as, the "<u>Specified Equipment</u>." Schedule A sets forth the net book value of the Specified Equipment as set forth on the Borrowers' books and records as of December 31, 2009, which Administrative Agent hereby acknowledges and agrees. The Borrowers, Administrative Agent and Designee each agree that the value of the Specified Equipment is less than the amount of the Discharged Obligations.

    Certain Defaults and Events of Default have occurred and are continuing under the Credit Agreement and the other Credit Documents, including, without limitation, those Defaults and Events of Default set forth on the attached <u>Schedule B</u> (the "<u>Specified Defaults</u>"). Accordingly, pursuant to Uniform Commercial Code Section 9-620, the Administrative Agent and Borrowers have agreed to a strict foreclosure of the Administrative Agent's security interest in the Specified

K&E 17463714.5

Equipment in partial satisfaction of the Credit Party Obligations on the terms set forth herein by executing and delivering a copy of this Strict Foreclosure Agreement.

Borrowers hereby acknowledge the occurrence and continuance of the Specified Defaults. Upon execution and delivery of a copy hereof by each of the parties hereto, Borrowers shall be deemed to have conveyed the Specified Equipment on the date hereof, in satisfaction and discharge of $2,000,000 of the outstanding Credit Party Obligations (the "Discharged Obligations" and all Credit Party Obligations under the Credit Agreement and the other Credit Documents other than the Discharged Obligations, the "Surviving Obligations"), to UBP Acquisition Corp., a Delaware corporation, as designee of the Administrative Agent (the "Designee"). Borrowers hereby consent without objection of any kind or nature to the acceptance of the Specified Equipment on the date hereof by the Designee, and the Designee shall be deemed to have accepted the Specified Equipment on the date hereof in full satisfaction and discharge of the Discharged Obligations.

To the extent that the Uniform Commercial Code does not govern the conveyance described in the preceding paragraph, and regardless of whether the property and rights comprising the Specified Equipment constitute real, personal, mixed, tangible or intangible property, upon execution and delivery of a copy hereof by each of the parties hereto, Borrowers shall be deemed to have relinquished all right, title and interest in, to and under any and all of the Specified Equipment, pursuant to any applicable federal, state or local law. Borrowers hereby agree to take such other and further action and to execute and deliver such other and further documents at the reasonable request of the Administrative Agent as may be necessary or desirable to consummate the transfer of the Specified Equipment to the Designee.

By executing and delivering this Strict Foreclosure Agreement, the parties hereto expressly acknowledge and agree that on and after the date hereof the Surviving Obligations shall continue in full force and effect and that this Strict Foreclosure Agreement shall not be deemed or construed as (i) a satisfaction or discharge of any Surviving Obligations, (ii) a waiver of any rights or remedies of the Administrative Agent or the Lenders with respect to the Surviving Obligations, or (iii) a waiver or release of any Defaults or Events of Default under the Credit Documents, including, without limitation, the Specified Defaults. The parties hereto further expressly acknowledge and consent to the acceptance of the Specified Equipment by the Designee in satisfaction of the Discharged Obligations.

Borrowers hereby waive (i) the right to notification of disposition of the Specified Equipment under Uniform Commercial Code Section 9-611, or other notification pertaining to the transactions contemplated hereby under the Security Agreement, the other Credit Documents or any otherwise applicable federal, state or local law or regulation, and (ii) the right to redeem the Specified Equipment under Uniform Commercial Code Section 9-623 or any applicable provision of the Security Agreement, the other Credit Documents or any otherwise applicable federal, state or local law or regulation, in each case, whether relating to real, personal, mixed, tangible or intangible property or otherwise. Borrowers hereby represent and warrant to the Administrative Agent and the Designee as of the date hereof that title to the Specified Equipment conveyed hereby is free and clear of all liens, claims or encumbrances.

Each of the parties hereto represents and warrants to each other as of the date hereof that (a) it has the requisite authority and power to enter into this Strict Foreclosure Agreement and the transactions contemplated hereby, and (b) the execution and delivery of this Strict Foreclosure Agreement has been duly authorized and constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms.

As of the date hereof, each of the Borrowers hereby acknowledge and confirm that it has no knowledge of any actions, causes of action, claims, demands, damages and liabilities of whatever kind or nature, in law or in equity, against the Administrative Agent, the Lenders, the Designee or the Administrative Agent's, the Designee's or the Lenders' respective officers, employees, representatives, agents, counsel or directors arising from any action by such Persons, or failure of such Persons to act under any of the Credit Documents on or prior to the date hereof.

In consideration of the Administrative Agent's, on behalf of the Lenders, willingness to enter into this Strict Foreclosure Agreement, each Borrower hereby releases and forever discharges the Administrative Agent, the Lenders, the Designee and the Administrative Agent's, the Designee's and the Lender's respective predecessors, successors, assigns, officers, managers, directors, employees, agents, attorneys, representatives, shareholders and affiliates (hereinafter all of the above collectively referred to as "Bank Group"), from any and all claims, counterclaims, demands, damages, debts, suits, liabilities, actions and causes of action of any nature whatsoever, including, without limitation, all claims, demands, and causes of action for contribution and indemnity, whether arising at law or in equity, whether known or unknown, whether liability be direct or indirect, liquidated or unliquidated, whether absolute or contingent, foreseen or unforeseen, and whether or not heretofore asserted, which any Borrower may have or claim to have against any of the Bank Group in any way related to or connected with the Credit Documents or the transactions contemplated hereby.

If the Administrative Agent, the Designee or any Lender is required in any bankruptcy or insolvency proceeding or otherwise to turn over or otherwise pay to the estate of any Borrower or any other Person any Specified Equipment delivered in satisfaction of all or any portion of the Discharged Obligations (a "Recovery"), then the Discharged Obligations shall be reinstated to the extent of such Recovery. If the Credit Agreement shall have been terminated prior to such Recovery, the Credit Agreement shall be reinstated in full force and effect in the event of such Recovery, and such prior termination shall not diminish, release, discharge, impair, or otherwise affect the obligations of the parties hereto from such date of reinstatement. All rights, interests, agreements, and obligations of the parties under this Strict Foreclosure Agreement shall remain in full force and effect and shall continue irrespective of the commencement of, or any discharge, confirmation, conversion, or dismissal of, any bankruptcy or insolvency proceeding by or against any Borrower or any other circumstance which otherwise might constitute a defense available to, or a discharge of any Borrower in respect of the Credit Party Obligations.

Each Borrower agrees to indemnify and hold harmless the Administrative Agent, the Designee and the Lenders and their officers, directors, employees, agents, advisors, controlling persons, shareholders, members and successors and assigns (each, an "Indemnified Person") from and against any and all actual losses (other than lost profit), claims, damages, liabilities and expenses, joint or several, to which any such Indemnified Person may become subject arising out

3

of or in connection with this Strict Foreclosure Agreement or any related transaction or any claim, litigation, investigation or proceeding relating to the foregoing, regardless of whether any such Indemnified Person is a party thereto, and to reimburse each such Indemnified Person upon demand from time to time for any reasonable and documented legal or other reasonable and documented out-of-pocket expenses incurred in connection with investigating or defending any of the foregoing; *provided* that the foregoing indemnity will not, as to any Indemnified Person, apply to losses, claims, damages, liabilities or related expenses to the extent they are found in a final, non-appealable judgment of a court of competent jurisdiction to have resulted from the willful misconduct or gross negligence of such Indemnified Person.

This Strict Foreclosure Agreement may be executed in one or more counterparts, each of which when taken together shall constitute one and the same instrument.

THIS STRICT FORECLOSURE AGREEMENT SHALL IN ALL RESPECTS BE GOVERNED BY AND INTERPRETED, CONSTRUED AND DETERMINED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (WITHOUT REGARD TO ANY CONFLICTS OF LAW PROVISION OTHER THAN GENERAL OBLIGATIONS LAW 5-1401 AND 5-1402).

*[Signature page follows]*

Very truly yours,

OCM FIE, L.P., as Administrative Agent

By: Oaktree Fund GP, LLC
Its: General Partner

By: Oaktree Fund GP I, L.P.
Its: Managing Member

By: _____
Name: Michael Harmon
Title: Authorized Signatory

By: _____
Name: David Quick
Title: Authorized Signatory

UBP ACQUISITION CORP., as Designee
of the Administrative Agent

By: _____
Name:
Title: David Quick
Authorized Signatory

5

ACKNOWLEDGED, ACCEPTED, CONSENTED AND AGREED:

UNIVERSAL BUILDING PRODUCTS, INC.,
A Delaware Corporation

By: _____
Name:
Title:

DON DE CRISTO CONCRETE ACCESSORIES, INC.,
A California Corporation

By: _____
Name:
Title:

UNIVERSAL FORM CLAMP, INC.,
A Delaware Corporation

By: _____
Name:
Title:

FORM-CO. INC.,
A Delaware Corporation

By: _____
Name:
Title:

ACCUBRACE, INC.,
A Delaware Corporation

By: _____
Name:
Title:

6

STRICT FORECLOSURE AGREEMENT

## Schedule A
## Specified Equipment

| Equipment | Value | Location |
|---|---|---|
| 2004 Wire Straightener | $43,000 | Kent, WA |
| 2006 Auto HH Upsetter (2nd Machine) | $296,249 | Kent, WA |
| 2004 Auto HH Upsetter (2007 upgrade 14,07) | $299,072 | Kent, WA |
| 1995 StraightM/Cutting Mach | $9,900 | Westminster, CA |
| Snap Tie Machine #1 | $56,500 | Westminster, CA |
| Snap Tie Machine #2 | $56,500 | Westminster, CA |
| Loop Tie Machine (Trf from DDC) | $84,487.00 | Bellwood IL |
| 487 - Amada Model Coma 50-60-72, 50-Ton CNC Turret | $75,996.00 | Bellwood IL |
| Auto Hot Header, Shop Made w/ feed | $68,396.40 | Bellwood IL |
| Hydraulic automatic Upsetter, Shop Made | $68,396.40 | Bellwood IL |
| Two Combo Machines Mfg's in Bellwood (1794) | $69,319.99 | Bellwood IL |
| Self Centering Loop Tie Machine, Shop | $24,065.40 | Bellwood IL |
| Induction Oven 9/30/07 (1792) | $26,956.49 | Bellwood IL |
| Induction Oven 11/30/07 (1792) | $25,507.50 | Bellwood IL |
| Shuster 5/8 Wire Cutter Used (Trf from DDC) | $7,434.70 | Bellwood IL |
| Reinforced Earth Wire Welding Line (that is owned by the Borrowers and not leased from any 3rd party) | | Bellwood IL |
| Lockport Lock & Dam project raw materials | | |
| Lockport Lock & Dam fixtures | | |
| Whitney Model 661 40-Ton Capacity CNC Plasma | $120,327 | Sellersburg, IN |

K&E 17463714.5

STRICT FORECLOSURE AGREEMENT

## Schedule B
## Specified Defaults

Events of Defaults arising under Section 7.1(a) resulting from the Borrowers' failure to timely make (i) the principal installment payment due on March 31, 2010, and (ii) the interest payment due on March 31, 2010.