# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UNIVERSAL BUILDING PRODUCTS, INC., et al.,[1] | ) | Case No. 10-12453 (MFW) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

## JOINT LIQUIDATING PLAN OF UNIVERSAL BUILDING PRODUCTS, INC. AND CERTAIN OF ITS SUBSIDIARIES PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

K&L Gates LLP
Harley J. Goldstein
Sven T. Nylen
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
Telephone: (312) 372-1121
Facsimile: (312) 827-8000

Saul Ewing LLP
Mark Minuti
Teresa K.D. Currier
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, Delaware 19899
Telephone: (302) 421-6840
Facsimile: (302) 421-5873

Co-Counsel for the Debtors and Debtors in Possession

Dated: August 31, 2010

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Universal Building Products, Inc. (7884); (ii) Accubrace, Inc. (3418); (iii) Don De Cristo Concrete Accessories, Inc. (7547); (iv) Form-Co, Inc. (0079); and (v) Universal Form Clamp, Inc. (3003). The address of the Debtors' corporate headquarters is 15172 Goldenwest Circle, Westminster, California 92683.

# TABLE OF CONTENTS

Article I. Definitions, Rules of Interpretation, Computation of Time, and Governing Law ........... 1
    A.     Rules of Interpretation, Computation of Time, and Governing Law ...................... 1
    B.     Defined Terms .................................................................................................. 2
Article II. Administrative Claims; Priority Tax Claims .................................................................. 10
    A.     Administrative Claims ...................................................................................... 10
    B.     DIP Facility Claim ........................................................................................... 10
    C.     Priority Tax Claims .......................................................................................... 10
Article III. Classification and Treatment of Classified Claims and Equity Interests .................... 10
    A.     Summary ........................................................................................................... 10
    B.     Treatment of Claims and Equity Interests ....................................................... 11
Article IV. Implementation of the Plan ......................................................................................... 13
    A.     Funding From DIP Facility .............................................................................. 13
    B.     Establishment of the Liquidating Trust .......................................................... 13
    C.     Corporate Action ............................................................................................. 13
    D.     Preservation of Rights ..................................................................................... 14
    E.     Cancellation of Notes, Instruments, Debentures, and Equity Interests ............... 15
    F.     Dissolution of Committee(s) ........................................................................... 15
    G.     Insurance Preservation .................................................................................... 15
    H.     Accounting ....................................................................................................... 16
Article V. Treatment of Disputed Claims ...................................................................................... 16
    A.     Objections to Claims; Prosecution of Disputed Claims ....................................... 16
    B.     Estimation of Claims ....................................................................................... 16
    C.     Payments and Distributions on Disputed Claims ................................................ 17
Article VI. Distributions ................................................................................................................ 17
    A.     Means of Cash Payment .................................................................................. 17
    B.     Delivery of Distributions ................................................................................ 17
    C.     Undeliverable Distributions ............................................................................ 17
    D.     Withholding and Reporting Requirements ........................................................... 18
    E.     Time Bar to Cash Payments ............................................................................ 18
    F.     Distributions After the Effective Date ............................................................. 18
    G.     Interest ............................................................................................................. 18
    H.     Fractional Dollars; De Minimis Distributions ................................................ 19
    I.     Set-Offs ........................................................................................................... 19
    J.     Settlement of Claims and Controversies ......................................................... 19
Article VII. Executory Contracts and Unexpired Leases ............................................................... 19
    A.     Rejection of Executory Contracts and Unexpired Leases ...................................... 19
    B.     Rejection Damages Claim ................................................................................ 20

597245.1 8/31/10

Article VIII. Liquidating Trust; Liquidating Trustee ................................................20
    A.    Generally ........................................................................................20
    B.    Purpose of the Liquidating Trust ...................................................20
    C.    Termination of Liquidating Trust ...................................................20
    D.    Termination of Liquidating Trustee ................................................20
    E.    Compensation of Liquidating Trustee .............................................21
    F.    Exculpation; Indemnification .........................................................21
Article IX. acceptance or rejection of the plan...........................................................21
    A.    Acceptance by Impaired Classes .....................................................21
    B.    Elimination of Classes ...................................................................21
    C.    Nonconsensual Confirmation .........................................................21
Article X. Conditions Precedent to Confirmation and the Effective Date ....................22
    A.    Conditions Precedent to the Confirmation Date of the Plan ..............22
    B.    Conditions Precedent to the Effective Date of the Plan ....................22
    C.    Waiver of Conditions Precedent......................................................22
    D.    The Confirmation Order .................................................................23
Article XI. Effect of Plan Confirmation .....................................................................23
    A.    Discharge of Claims and Termination of Interests ...........................23
    B.    Termination of Subordination Rights and Settlement of Related Claims .............23
    C.    Injunction.....................................................................................24
    D.    Terms of Existing Injunctions or Stays ...........................................24
    E.    Exculpation..................................................................................24
    F.    Releases by the Debtors..................................................................25
    G.    Mutual Releases by Holders of Claims and Interests ........................26
Article XII. Miscellaneous .......................................................................................27
    A.    Payment of Statutory Fees..............................................................27
    B.    Section 1146 Exemption.................................................................27
    C.    Business Day ................................................................................27
    D.    Severability..................................................................................27
    E.    Conflicts.......................................................................................27
    F.    Further Assurances .......................................................................28
    G.    Notices ........................................................................................28
    H.    Filing of Additional Documents......................................................29
    I.    Successors and Assigns .................................................................29
    J.    Closing of Cases ..........................................................................30
    K.    Section Headings ..........................................................................30
    L.    Further Information .......................................................................30

597245.1 8/31/10

Article XIII. Retention of Jurisdiction.................................................................30

Article XIV. Modification, Revocation, or Withdrawal of the Plan ...............................31

    A.    Modification of Plan.......................................................................31

    B.    Revocation, Withdrawal, or Non-Consummation ..................................32

597245.1 8/31/10

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

JOINT LIQUIDATING PLAN OF REORGANIZATION OF UNIVERSAL
BUILDING PRODUCTS, INC. AND CERTAIN OF ITS SUBSIDIARIES
PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

Universal Building Products, Inc., Accubrace, Inc., Don De Cristo Concrete Accessories, Inc., Form-Co, Inc., and Universal Form Clamp, Inc. (collectively, the "*Debtors*"), hereby jointly propose the following joint liquidating plan of reorganization pursuant to section 1121(a) of title 11 of the United States Code.

Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, results of operations, and properties, and for a summary and analysis of the Plan.

All holders of Claims and Equity Interests are encouraged to consult the Disclosure Statement and read the Plan carefully before voting to accept or reject the Plan.

## ARTICLE I.
## DEFINITIONS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

### A. Rules of Interpretation, Computation of Time, and Governing Law

1. For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and neutral gender; (b) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (e) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2. Except as otherwise specifically provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3. Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State in which the Bankruptcy Court resides, without giving effect to the principles of conflict of laws thereof.

## B.    Defined Terms

Unless the context otherwise requires, the following terms shall have the meanings ascribed to them below when used in capitalized form herein:

1. *Administrative Agent* means the agent to the Prepetition Lenders under the Credit Agreement.

2. *Administrative Claim* means a Claim for costs and expenses of administration of the Chapter 11 Cases Allowed under section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code incurred after the Petition Date, including, but not limited to: (a) any actual and necessary costs and expenses of preserving the Debtors' Estates and operating the businesses of the Debtors (such as wages, salaries, commissions for services, and payments for inventories, leased equipment, and premises); (b) compensation for legal, financial, advisory, accounting, and other services and reimbursement of expenses Allowed by the Bankruptcy Court under section 330, 331, or 503(b) of the Bankruptcy Code to the extent incurred prior to the Effective Date; (c) all fees and charges assessed against the Debtors' Estates under section 1930, Chapter 123 of Title 28, United States Code; and (d) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court.

3. *Affiliate* means any Entity that is an affiliate of the Debtors within the meaning of section 101(2) of the Bankruptcy Code.

4. *Allowed* means, with respect to any Claim or Equity Interest, except as otherwise provided herein, any of the following: (a) the amount set forth on the Debtors' books and records, that is not otherwise the subject of a pending objection or dispute; (b) a Claim or Equity Interest that has been scheduled by the Debtors in their Schedules as other than disputed, contingent, or unliquidated and as to which (i) the Debtors or any other party in interest have not Filed an objection or (ii) no contrary proof of Claim has been Filed; (c) a Claim or Equity Interest that either is not a Disputed Claim or Equity Interest or has been Allowed by a Final Order; (d) a Claim or Equity Interest that is Allowed: (i) in any stipulation with the Debtors of the amount and nature of such Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court; (ii) in any stipulation with the Debtors of the amount and nature of such Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court; or (iii) in any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that (i) is not a Disputed Claim or (ii) has been allowed by a Final Order; or (f) a Claim or Equity Interest that is Allowed pursuant to the terms of the Plan.

2

5. *Asset Purchase Agreement* shall mean the asset purchase agreement attached to the Sale Motion as Exhibit A.

6. *Avoidance Actions* means all claims and any avoidance, recovery, subordination, or other actions against insiders and/or any other Entity arising under the Bankruptcy Code, including sections 506, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or otherwise.

7. *Ballot* means each of the ballot forms distributed to each Holder of an Impaired Claim in which the Holder is to indicate acceptance or rejection of the Plan.

8. *Bankruptcy Code* means title 11 of the United States Code, 11 U.S.C. § 101, et seq., as amended from time to time.

9. *Bankruptcy Court* means the United States District Court having jurisdiction over the Chapter 11 Cases and, to the extent any reference is made pursuant to section 157 of Title 28 of the United States Code or the General Order of the District Court pursuant to section 151 of Title 28 of the United States Code, the bankruptcy unit of such District Court.

10. *Bankruptcy Rules* are, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended from time to time, and the Federal Rules of Civil Procedure, as amended from time to time as applicable to the Chapter 11 Cases or proceedings therein.

11. *Bar Date* means the date for filing proofs of Claim relating to any Claim as set forth in the Bar Date Order.

12. *Bar Date Order* means that order of the Bankruptcy Court (A) Setting Bar Dates for Filing Proofs of Claim and (B) Approving the Form and Manner of Notice Thereof.

13. *Budget* means the budget attached as Exhibit 2 to the *Final Order (A) Authorizing and Approving Debtors' Post-Petition Financing; (B) Granting Liens and Security Interests and Providing Superpriority Administrative Expense Status; (C) Authorizing Use of Cash Collateral and Affording Adequate Protection; and (D) Modifying Automatic Stay* [Docket No. 167], entered by the Bankruptcy Court on August 27, 2010.

14. *Business Day* means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)).

15. *Cash* means legal tender of the United States of America or equivalents thereof.

16. *Causes of Action* means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims that are or may be pending on the Effective Date or instituted by the Liquidating Trustee, on behalf of the Liquidating Trust, after the Effective Date against any Entity, based in law or equity, including, but not limited to, under the Bankruptcy

3

Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order; provided, however, that Causes of Action shall not include any rights, claims, or causes of action of the Debtors that constitute "Acquired Assets" pursuant to the Asset Purchase Agreement.

17. *Chapter 11 Cases* means the cases commenced under chapter 11 of the Bankruptcy Code by the Debtors on the Petition Date currently pending before the Bankruptcy Court.

18. *Claim* means a "Claim" (as defined in section 101(5) of the Bankruptcy Code) against one or more of the Debtors, including, but not limited to: (a) any right to payment from one or more of the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance by one or more of the Debtors, if such performance gives rise to a right of payment from one or more of the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

19. *Class* means a category of Holders of Claims or Equity Interests as set forth in Article III of the Plan.

20. *Committee* means any and all committees appointed in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as constituted from time to time, up to the Effective Date.

21. *Confirmation* means the entry of the Confirmation Order, subject to all conditions specified in Article X herein having been satisfied or waived pursuant to Article X.C of the Plan.

22. *Confirmation Date* means the date upon which the Confirmation Order is entered on the docket of the Bankruptcy Court.

23. *Confirmation Hearing* means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, as the same may be adjourned from time to time.

24. *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

25. *Consummation* means the occurrence of the Effective Date.

26. *Credit Agreement* means that certain Credit Agreement dated as of April 28, 2006 and providing for aggregate borrowings of up to $106 million, as amended from time to time, among Debtor Universal Building Products, Inc. as borrower, the remaining Debtors as Subsidiary Borrowers (as defined in the Credit Agreement), the several lenders from time to time party thereto, and the Administrative Agent.

4

27. *Debtor Releasees* means, collectively: (a) Jeff Church (the Debtors' CEO and a member of the Debtors' board of directors); (b) Kerry Shiba (a member of the Debtors' board of directors); (c) Greg Waller (the Debtors' CFO); and (d) Dan Scouler (the Debtors' CRO), Scouler & Company, and its professionals.

28. *Debtors in Possession* means the Debtors as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

29. *DIP Facility* means, pursuant to the terms and conditions set forth in the DIP Order, the debtor in possession financing arrangement and financial accommodations set forth in that certain Senior Secured Super-Priority Debtors In Possession Promissory Note dated August 3, 2010, in the amount of $6,002,673.

30. *DIP Facility Claim* means a Claim arising under or as a result of the DIP Facility, in the Allowed amount of [$6,002,673].

31. *DIP Lender* means the lender under the DIP Facility.

32. *DIP Lender Deficiency Claim* means any Claim arising from the DIP Facility to the extent such Claim is not a Secured Claim.

33. *DIP Order* means the Bankruptcy Court orders entered on the *Debtors' Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(C)(2), 364(C)(1), 364(C)(2), 364(C)(3), 364(D)(1) and 364(E) (I) Authorizing and Approving Debtors' Post-Petition Financing; (II) Granting Liens and Security Interests and Providing Superpriority Administrative Expense Status; (III) Authorizing Use of Cash Collateral and Affording Adequate Protection; (IV) Modifying Automatic Stay; and (V) Scheduling Final Hearing.*

34. *Disclosure Statement* means the written *Disclosure Statement for the Joint Liquidating Plan of Reorganization of Universal Building Products, Inc. and Certain of Its Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code*, as amended, supplemented, or modified from time to time, and that is prepared and distributed in accordance with section 1125 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

35. *Disputed Claims or Equity Interest* means a Claim or Equity Interest, or any portion thereof: (i) listed on the Schedules as unliquidated, disputed, or contingent; (ii) that is the subject of an objection or request for estimation Filed or is otherwise disputed by any of the Debtors or any other party in interest in accordance with applicable law and which objection has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court; (iii) that is in excess of the amount scheduled as other than disputed, contingent, or unliquidated, or (iv) that is otherwise disputed by any of the Debtors or any other party in interest in accordance with applicable law, which dispute has not been withdrawn, resolved, or overruled by a Final Order.

36. *Distribution* means any consideration given to any Entity by the Debtors under the Plan.

37. *Effective Date* means the date selected by the Debtors which is a Business Day after the Confirmation Date on which all conditions specified in Article X.B herein have

5

been satisfied or waived pursuant to Article X.C and no stay of the Confirmation Order is in effect. When used in the Plan, Effective Date means on the Effective Date or as soon as reasonably practicable thereafter.

38. *Entity* means a Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an Estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, the United States Trustee, or any other entity.

39. *Equity Interests* means any interest in any Debtor, including, without limitation, (i) a share in a corporation, whether or not denominated "stock," or similar security, and whether or not issued, unissued, authorized, or outstanding, (ii) an interest of a limited partner in a limited partnership, (iii) an interest of a general partner in a general partnership, or (iv) a warrant, option, contract, or right to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subsections (i), (ii), or (iii) of this definition.

40. *Estate(s)* means individually, the Estate of each Debtor in the Chapter 11 Cases, and, collectively, the Estates of all Debtors in the Chapter 11 Cases, created pursuant to section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Cases.

41. *Excluded Property* shall mean (i) any and all Avoidance Actions or other Causes of Action not otherwise released herein (provided, that "Excluded Property" shall not include any of the "Acquired Assets" as that term is used in the Asset Purchase Agreement), and (ii) the available proceeds of the DIP Facility to be funded in accordance with Article IV.A herein.

42. *File or Filed* means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

43. *Final Decree* means the decree contemplated under Bankruptcy Rule 3022.

44. *Final Order* means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, with respect to the subject matter, that has not been reversed, stayed, modified, or amended, and is no longer subject to appeal, *certiorari* proceeding, or other proceeding for review, reargument, or rehearing, and as to which no appeal, *certiorari* proceeding, or other proceeding for review, reargument, or rehearing has been timely requested or is then pending and the time to file any such appeal, *certiorari* proceeding, or other proceeding for review, reargument, or rehearing has expired or as to which any right to appeal, petition for *certiorari*, reargue, or seek rehearing shall have been waived in writing in form and substance satisfactory to the Debtors.

45. *Forfeited Distributions* means any undeliverable or unclaimed Distributions on account of Administrative Claims, Priority Tax Claims, and Other Priority Claims that are deemed forfeited pursuant to Article VI.C.2 of the Plan.

46. *Holder* means any Entity owning or holding a Claim or Equity Interest.

6

47. *Impaired* means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

48. *Intercompany Claim* means any Claim held by any Affiliate against any other Affiliate that is a Debtor or its Estate.

49. *Lien* means any charge against or interest in property to secure payment of a debt or performance of an obligation.

50. *Liquidating Trust* means the grantor trust to be created on the Effective Date in accordance with the provisions of Article IV.B of the Plan and the Liquidating Trust Agreement.

51. *Liquidating Trust Agreement* means the trust agreement relevant to implementation of the Plan, to be Filed with the Bankruptcy Court at least five business days prior to the Confirmation Hearing, that, in part, addresses the retention, including compensation, of the Liquidating Trustee, and discloses the identity of the Liquidating Trustee, which agreement shall be in form and substance reasonably satisfactory to the Prepetition Lenders and the DIP Lender.

52. *Liquidating Trust Assets* means the (i) available proceeds of the DIP Facility to be funded in accordance with Article IV.A herein, and (ii) any property of the Debtors not otherwise transferred pursuant to the Sale.

53. *Liquidating Trustee* means the Person designated by the Debtors, which person shall be acceptable to the Prepetition Lenders and the DIP Lender, and retained as of the Effective Date, under the Liquidating Trust Agreement, as the employee or fiduciary responsible for, among other things, the matters described in Article V and Article VI herein. To the extent that the Bankruptcy Court does not approve the Person selected by the Debtors to serve as the Liquidating Trustee, the Debtors shall retain the right, in consultation with the Prepetition Lenders and the DIP Lender, to select any subsequent Liquidation Trustee. The Liquidating Trustee shall have all rights and powers necessary to effectuate the Plan. When the context requires, any reference to the Liquidating Trustee or the Liquidating Trust shall mean the Liquidating Trustee on behalf of the Liquidating Trust.

54. *Non-Released Parties* means any Entity that is not a Debtor-Releasee or a Third Party Releasee.

55. *Other Priority Claim* means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

56. *Other Secured Claim* means a Secured Claim other than the Prepetition Lender Secured Claims and the DIP Facility Claim.

57. *Person* means a "person" as defined in section 101(41) of the Bankruptcy Code.

597245.1 8/31/10

58. *Petition Date* means the date on which the Debtors Filed their respective petitions for relief commencing the Chapter 11 Cases.

59. *Plan* means this *Joint Liquidating Plan of Universal Building Products, Inc. and Certain of Its Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code*, including, without limitation, any exhibits, supplements, appendices, and schedules hereto, either in its present form or as it may be amended, modified, altered, or supplemented from time to time in accordance with the terms and provisions hereof.

60. *Prepetition Lender Deficiency Claim* means any Claim arising from the Credit Agreement to the extent such Claim is not a Secured Claim.

61. *Prepetition Lender Secured Claim* means any Claim arising from the Credit Agreement to the extent such Claim is a Secured Claim, which shall be deemed Allowed in the aggregate principal amount of $40,331,692.45, plus accrued and unpaid interest thereon and fees and expenses as provided in the Credit Agreement and related documents.

62. *Prepetition Lender* means the lender under the Credit Agreement.

63. *Priority Tax Claim* means a Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

64. *Professional* means any professional or other Entity that (a) has been retained in the Chapter 11 Cases by a Final Order of the Bankruptcy Court pursuant to sections 327, 328, or 1103 of the Bankruptcy Code or otherwise, including, but not limited to, K&L Gates LLP, Saul Ewing LLP, Scouler & Company, Arent Fox LLP, Elliot Greenleaf, and NHB Advisors, or (b) seeks compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

65. *Pro Rata* means proportionately so that with respect to an Allowed Claim, the ratio of (a) (i) the amount of property distributed on account of a particular Allowed Claim to (ii) the amount of that particular Allowed Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims of the Class in which the particular Allowed Claim is included to (ii) the amount of all Allowed Claims in that Class.

66. *Released Parties* means any Entity granted a release by the Debtors in Article XI.F of the Plan.

67. *Releasing Parties* means, collectively, the DIP Lender, the Administrative Agent, the Prepetition Lenders, the Committee and members thereof, and Holders of Claims or Equity Interests except any Holder of a Claim or Equity Interest: (a) that voted to reject the Plan; or (b) that is in a Class that is deemed to reject the Plan.

68. *Sale* means the sale of assets contemplated in the Sale Motion, as approved by the Sale Order.

69. *Sale Motion* means the *Debtors' Motion for Order Under Sections 105(a), 363, and 1146(c) of the Bankruptcy Code (A) Authorizing the Sale(s) of Certain or All of the*

8

*Debtors' Assets, Free and Clear of Liens, Claims, Encumbrances and Interests, (B) Approving Asset Purchase Agreement, and (C) Granting Related Relief.*

70. *Sale Order* means one or more orders of the Bankruptcy Court granting the Sale Motion.

71. *Schedules* means the respective schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors in accordance with section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended.

72. *Secured Claim* means: (a) a Claim (other than a Claim in any way arising from or relating to a Claim of a lessor for damages resulting from the termination of a lease of real property) that is secured by a Lien on a property in which any of the Estates has an interest, which lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in any of the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) a Claim Allowed under the Plan as a Secured Claim.

73. *Senior Creditor Claims* means, collectively: (a) the Prepetition Lender Secured Claims, (b) the DIP Facility Claims; (c) the DIP Lender Deficiency Claim; and (d) the Prepetition Lender Deficiency Claim.

74. *Series A Trust Interests* means the interests in the Liquidating Trust to be issued in accordance with this Plan and the Liquidating Trust Agreement and on account of which holders of such interests will receive distributions of the Debtors' assets (or the proceeds thereof) other than the Excluded Property.

75. *Series B Trust Interests* means the interests in the Liquidating Trust to be issued in accordance with this Plan and the Liquidating Trust Agreement and on account of which holders of such interests will receive distributions of the Excluded Property (or the proceeds thereof).

76. *Third Party Releasees* means, collectively: (a) the Prepetition Lenders; (b) the Administrative Agent; (c) the DIP Lender; (d) UBP Acquisition Corp. and any affiliate, successor or assign thereof in any capacity; (d) Oaktree Capital Management, L.P.; (e) Solus Capital Partners, LLC; (f) Dayton Superior Corporation; (g) the Liquidating Trustee; (h) the Committee and (i) all attorneys, financial advisors, advisors, accountants, investment bankers, investment advisors, actuaries, professionals, officers, directors, employees, partners, and affiliates of each of the foregoing, each of the foregoing in their respective capacities as such.

77. *Unimpaired* means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

78. *Unsecured Claim* means any Claim against any of the Debtors other than an Administrative Claim, a DIP Facility Claim, a Priority Tax Claim, a Prepetition Lender Secured

Claim, a DIP Lender Deficiency Claim, a Prepetition Lender Deficiency Claim, an Other Secured Claim, an Other Priority Claim, an Intercompany Claim, or an Equity Interest.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS; PRIORITY TAX CLAIMS

### A.    Administrative Claims

Each Allowed Administrative Claim shall be, at the Debtors' election, either (i) paid by the Debtors in full, in Cash, in such amounts as such Administrative Claim is Allowed by the Bankruptcy Court upon the later of the Effective Date or the date upon which such Administrative Claim is Allowed or (ii) satisfied upon such other terms as may be agreed upon between the Holder of such Administrative Claim and the applicable Debtor. Any application for the payment of any Administrative Claims on account of any fees or reimbursement of expenses of any Professional, shall be Filed with the Bankruptcy Court no later than fifteen (15) days after the Effective Date.

### B.    DIP Facility Claim

Notwithstanding anything to the contrary herein, in full and final satisfaction, settlement, release and discharge of and in exchange for release of the DIP Facility Claim, in accordance with section 1129(a)(9) of the Bankruptcy Code, the DIP Lender has agreed that the DIP Facility Claim shall receive the treatment afforded in Article III.B.1.

### C.    Priority Tax Claims

On, or as soon as reasonably practicable after, the latest of the Effective Date or the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (i) Cash equal to the unpaid portion of such Allowed Priority Tax Claim or (ii) such other treatment as to which the Debtors and such Holder have agreed upon in writing.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

### A.    Summary

1. The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation, and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. In accordance with section 1123(a)(1) of the

597245.1 8/31/10

Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified, but the treatment for such unclassified claims are set forth in Article II.

2. Subject to the occurrence of the Effective Date, the Debtors will be deemed consolidated for the following purposes under the Plan: (a) no Distributions will be made under the Plan on account of the Intercompany Claims; (b) the guarantees of certain Debtors of obligations of other Debtors will be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint and several liability of any Debtor with another Debtor will be deemed to be one obligation of the deemed consolidated Debtors; and (c) each and every Claim against a Debtor will be deemed asserted against the consolidated Estates of all of the Debtors, will be deemed one Claim against and obligation of the deemed consolidated Debtors and their Estates and will be treated in the same Class regardless of the Debtor.

3. The classification of Claims against and Equity Interests in the Debtors pursuant to the Plan is as follows:

| Class | Claim | Status | Voting Right |
|-------|-------|--------|--------------|
| 1 | Senior Creditor Claims | Impaired | Entitled to vote |
| 2 | Other Secured Claims | Unimpaired | Not entitled to vote – deemed to accept |
| 3 | Other Priority Claims | Unimpaired | Not entitled to vote – deemed to accept |
| 4 | Unsecured Claims | Impaired | Not entitled to vote -- deemed to reject |
| 5 | Intercompany Claims | Impaired | Not entitled to vote – deemed to reject |
| 6 | Equity Interests | Impaired | Not entitled to vote – deemed to reject |

## B. Treatment of Claims and Equity Interests

1. Class 1 – Senior Creditor Claims

(a) Classification: Class 1 consists of all Senior Creditor Claims.

(b) Treatment: Holders of Allowed Senior Creditor Claims shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Senior Creditor Claims, the Series A Trust Interests as provided for in the Liquidating Trust Agreement.

(c) Voting: Class 1 is impaired. Holders of Senior Creditor Claims in Class 1 are entitled to vote to accept or reject the Plan.

2. Class 2 – Other Secured Claims

(a) Classification: Class 2 consists of all Other Secured Claims.

11

(b)     Treatment: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, on, or as soon as reasonably practicable after, the later of the Effective Date or the date such Claim becomes an Allowed Other Secured Claim, each Holder of such Allowed Other Secured Claim shall receive (i) the property securing such Allowed Other Secured Claim, or (ii) such other treatment as to which the Debtors and such Holder have agreed upon in writing, upon consultation with the Prepetition Lenders and the DIP Lender.

(c)     Voting:  Class 2 is unimpaired.  Holders of Other Secured Claims in Class 2 are deemed to accept the Plan and are therefore not entitled to vote to accept or reject the Plan.

3.  Class 3 – Other Priority Claims

(a)     Classification: Class 3 consists of all Other Priority Claims.

(b)     Treatment: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, on, or as soon as reasonably practicable after, the later of the Effective Date or the date such Other Priority Claim becomes an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Other Priority Claim, (i) Cash equal to the unpaid portion of such Allowed Other Priority Claim, or (ii) such other treatment as to which the Debtors and such Holder have agreed upon in writing upon consultation with the Prepetition Lenders and the DIP Lender.

(c)     Voting: Class 3 is unimpaired.  Holders of Other Priority Claims in Class 3 are deemed to accept the Plan and are not therefore entitled to vote to accept or reject the Plan.

4.  Class 4 – Unsecured Claims

(a)     Classification:  Class 4 consists of all Unsecured Claims.

(b)     Treatment:  Holders of Allowed Unsecured Claims shall receive pro rata Distributions of the Series B Trust Interests, as provided in the Liquidating Trust Agreement.

(c)     Voting:  Class 4 is impaired.   Holders of Allowed Unsecured Claims in Class 4 are entitled to vote to reject the Plan.

5.  Class 5 – Intercompany Claims

(a)     Classification:  Class 5 consists of all Intercompany Claims.

(b)     Treatment:  On the Effective Date, all Intercompany Claims shall be cancelled and Holders of Intercompany Claims shall not receive any Distribution on account of such Intercompany Claim under the Plan.

12

(c)     Voting:  Class 5 is impaired.  Because Holders of Intercompany Claims will receive no Distributions under the Plan, Class 5 will be deemed to have voted to reject the Plan.

6.    <u>Class 6 – Equity Interests</u>

(a)     Classification:  Class 6 consists of all Equity Interests.

(b)     Treatment:  On the Effective Date, all Equity Interests shall be cancelled and the Holders of Equity Interests shall not receive or retain any Distribution or property on account of such Equity Interests.

(c)     Voting:  Class 6 is impaired.  Because Holders of Equity Interests will receive no Distribution under the Plan, Class 6 will be deemed to have voted to reject the Plan.

## ARTICLE IV.
## IMPLEMENTATION OF THE PLAN

### A.     Funding From DIP Facility

On or prior to the Effective Date, the DIP Lender shall fund to the Debtors or the Liquidating Trust from the DIP Facility the entire amount of credit provided for under the DIP Facility, less amounts previously funded to the Debtors in accordance with the DIP Order; <u>provided</u>, <u>however</u>, that the DIP Lender shall not be obligated to fund any amount in excess of the Budget.

### B.     Establishment of the Liquidating Trust

1.    On or prior to the Effective Date, the Debtor shall consummate the Sale.  On the Effective Date, the Debtors, on their own behalf and on behalf of Holders of Allowed Claims, shall execute the Liquidating Trust Agreement and shall take all other steps necessary to establish the Liquidating Trust.  On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtors shall assign and transfer to the Liquidating Trust all of their right, title, and interest in and to all of the Liquidating Trust Assets, notwithstanding any prohibition of assignability under applicable non-bankruptcy law.

2.    For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the beneficiaries of the Liquidating Trust) shall treat the transfer of assets to the Liquidating Trust in accordance with the terms of the Plan, as a transfer of such assets by the Debtors to the Holders of Allowed Claims and followed by a transfer by such Holders to the Liquidating Trust, and the Liquidating Trust beneficiaries shall be treated as the grantors and owners thereof.

### C.     Corporate Action

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan involving the corporate structure of the Debtors shall be deemed authorized and

13

approved without any requirement of further action by the Debtors, the Debtors' shareholders or the Debtors' boards of directors. The Debtors (and their boards of directors) shall dissolve or otherwise terminate their existence upon the Effective Date.

## D.  Preservation of Rights

The Debtors are currently investigating whether to pursue potential Causes of Action against other parties or Entities. Under the Plan, the Liquidating Trustee retains all rights of and on behalf of the Debtors and the Liquidating Trust to commence and pursue any and all Causes of Action (under any theory of law, including, without limitation, the Bankruptcy Code, and in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Debtors' Chapter 11 Cases) discovered in such investigation to the extent the Liquidating Trustee deems appropriate, other than any Causes of Action against the Released Parties, as all such Causes of Action have been released by the Debtors under Article XI.F of the Plan. Potential Causes of Action, other than any Causes of Action against the Released Parties, may but need not (if at all) be pursued by the Debtors prior to the Effective Date and by the Liquidating Trustee after the Effective Date to the extent warranted.

Subject to the releases and exculpation provisions herein, potential Causes of Action which may be pursued by the Debtors prior to the Effective Date and by the Liquidating Trust and the Liquidating Trustee after the Effective Date, also include, without limitation, any other Causes of Action, whether legal, equitable, or statutory in nature, arising out of, or in connection with, the Debtors' businesses or operations, including, without limitation, the following: possible claims against vendors, landlords, sublessees, assignees, customers, or suppliers for warranty, indemnity, back charge/set-off issues, overpayment, or duplicate payment issues, and collections/accounts receivable matters; deposits or other amounts owed by any creditor, lessor, utility, supplier, vendor, landlord, sublessee, assignee, or other Entity; claims against landlords, sublessees and assignees arising from the various leases, subleases, and assignment agreement relating thereto, including, without limitation, claims for overcharges relating to taxes, common area maintenance, and other similar charges; financial reporting; environmental and product liability matters; actions against insurance carriers relating to coverage, indemnity, or other matters; counterclaims and defenses relating to any Claims or other obligations; contract or tort claims which may exist or subsequently arise; and any and all Avoidance Actions pursuant to any applicable section of the Bankruptcy Code arising from any transaction involving or concerning the Debtors; _provided, however,_ that neither the Debtors nor the Liquidating Trustee may pursue any causes of action that are Acquired Assets pursuant to the Asset Purchase Agreement.

In addition, there may be numerous other Causes of Action which currently exist or may subsequently arise that are not currently or fully known by the Debtors and, as a result, cannot be raised during the pendency of the Chapter 11 Cases. Nothing herein or in the Disclosure Statement is intended to limit the right of the Liquidating Trustee to pursue any unknown Cause of Action to the extent the facts underlying such unknown Cause of Action subsequently become fully known to the Debtors or the Liquidating Trustee.

597245.1 8/31/10

The Debtors and the Liquidating Trustee do not intend, and it should not be assumed that because any existing or potential Causes of Action have not yet been pursued by the Debtors or are not set forth herein, that any such Causes of Action have been waived.

Unless Causes of Action against an Entity are expressly waived, relinquished, released, compromised, or settled in the Plan, or any Final Order, the Debtors expressly reserve all Causes of Action, known or unknown, for later adjudication and therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Causes of Action upon or after the Confirmation or Consummation of the Plan.

Except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement entered into in connection with the Plan, including without limitation the Asset Purchase Agreement, in accordance with section 1123(b)(3) of the Bankruptcy Code, any claims, rights, and Causes of Action that the respective Debtors or the Liquidating Trust may hold against any Entity shall vest in the Liquidating Trust subject to any and all Liens of the DIP Lender and the Prepetition Lenders in the Causes of Action, and the Liquidating Trustee, on behalf of the Liquidating Trust, shall retain and may exclusively enforce, as the authorized representative of the Liquidating Trust, any and all such claims, rights, or Causes of Action, as appropriate, in accordance with the best interests of the Liquidating Trust and the Holders of Allowed Claims entitled to Distributions from the Liquidating Trust under the Plan, and the terms of the Liquidating Trust Agreement. The Liquidating Trustee, on behalf of the Liquidating Trust, shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, and Causes of Action without the consent or approval of any third party other than the Prepetition Lenders and without any further order of the Bankruptcy Court or any other court.

## E. Cancellation of Notes, Instruments, Debentures, and Equity Interests

On the Effective Date, except to the extent provided otherwise in the Plan, all notes, instruments, debentures, certificates, and other documents evidencing Claims and all Equity Interests in any of the Debtors shall be cancelled and deemed terminated and surrendered (regardless of whether such notes, instruments, debentures, certificates, or other documents are in fact surrendered for cancellation to the appropriate indenture trustee or other such Person). On the Effective Date, any indentures to which any Debtor is a party shall be deemed cancelled as permitted by section 1123(a)(5) of the Bankruptcy Code.

## F. Dissolution of Committee(s)

On the Effective Date, any and all Committees shall dissolve and the members thereof and the professionals retained by such Committees in accordance with section 1103 of the Bankruptcy Code shall be released and discharged from their respective fiduciary obligations without need of any further Bankruptcy Court approval.

## G. Insurance Preservation

Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that may cover any claims against the Debtors or any other Entity.

## H. Accounting

Any and all reserves maintained by the Debtors or the Liquidating Trustee, as the case may be, in connection with the distribution of funds on account of the Allowed Claims, may be maintained by bookkeeping entries alone; the Debtors or the Liquidating Trustee, as the case may be, need not (but may) establish separate bank accounts for such purposes.

## ARTICLE V.
## TREATMENT OF DISPUTED CLAIMS

### A. Objections to Claims; Prosecution of Disputed Claims

1.    After the Effective Date, the Liquidating Trustee may object (and shall take over, and continue prosecuting, any outstanding objections by the Debtors) to the allowance of Disputed Claims filed with the Bankruptcy Court.  All objections shall be litigated to Final Order; provided, however, that the Liquidating Trustee shall have the authority and sole discretion to file, settle, compromise, or withdraw any objections to Claims, without approval of the Bankruptcy Court.

2.    There shall be no deadline to object to or investigate and review Claims, and any objections to Claims and settlement thereof shall be dealt with as the Debtors or the Liquidating Trustee, as the case may be, in their sole discretion, deem to be appropriate.  Further, the Liquidating Trustee shall have the sole and complete discretion to decide not to review and/or object to proofs of Claim below a certain dollar amount to the extent such review and/or objection would be uneconomical.

3.    Unless otherwise provided by the Plan or the Liquidating Trust Agreement, no Bankruptcy Court approval shall be required in order for the Liquidating Trustee to settle and/or compromise any Claim, objection to Claim, cause of action, or right to payment of or against the Debtors, their Estates, or the Liquidating Trust.

### B. Estimation of Claims

The Debtors or the Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trustee previously have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or Disputed Claim, the amount so estimated shall constitute the maximum allowable amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Liquidating Trust may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

16

## C. Payments and Distributions on Disputed Claims

No interest shall be paid on Disputed Claims that later become Allowed Claims or with respect to any distribution to such Holder. No distribution shall be made with respect to all or any portion of any Claim, a portion of which or all of which is a Disputed Claim, pending the entire resolution thereof.

## ARTICLE VI.
## DISTRIBUTIONS

## A. Means of Cash Payment

Cash Payments, made pursuant to the Plan, shall be in U.S. dollars and, at the option and in the sole discretion of the Debtors or the Liquidating Trustee, be made by (a) checks drawn on or (b) wire transfers from a domestic bank selected by the Debtors or the Liquidating Trustee. Cash payments to foreign creditors may be made, at the option of the Debtors or the Liquidating Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

## B. Delivery of Distributions

Subject to the provisions of Bankruptcy Rule 2002(g), and except as otherwise provided herein, distributions and deliveries to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the Schedules filed with the Bankruptcy Court, unless superseded by the address set forth on timely filed proof(s) of claim or some other writing Filed with the Bankruptcy Court and served upon the Liquidating Trustee.

## C. Undeliverable Distributions

### 1. Holding of Undeliverable Distributions

If any Distribution to any Holder is returned to the Liquidating Trustee as undeliverable, no further Distributions shall be made to such Holder unless and until the Liquidating Trustee is notified by such Holder, in writing, of such Holder's then-current address. Upon such an occurrence, the appropriate Distribution shall be made as soon as reasonably practicable after such Distribution has become deliverable. All Entities ultimately receiving previously undeliverable Cash shall not be entitled to any interest or other accruals of any kind. Nothing contained in the Plan shall require the Debtors or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

### 2. Failure to Claim Undeliverable Distributions

Any Holder of an Allowed Claim entitled to an undeliverable or unclaimed Distribution that does not provide notice of such Holder's correct address to the Debtors and the Liquidating Trustee within the later of six (6) months after (i) the Effective Date or (ii) the date of the initial Distribution made by the Debtors or the Liquidating Trustee to such Holder, shall be deemed to have forfeited its claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed

Distribution against any of the Debtors, their Estates or the Liquidating Trust. In such cases, the Forfeited Distributions shall be distributed in accordance with the terms of the Plan. Nothing contained in the Plan shall require the Debtors or the Liquidating Trustee to attempt to locate any holder of an Allowed Claim.

**D.      Withholding and Reporting Requirements**

In connection with the Plan and all Distributions thereunder, the Debtors and the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed by any U.S. federal, state, or local, or non-U.S. taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Debtors and the Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and (b) the Debtors and the Liquidating Trustee reserve the option, in their discretion, to not make a Distribution to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Debtors or the Liquidating Trustee for the payment and satisfaction of such tax obligations or has, to the Debtors' or Liquidating Trustee's satisfaction, established an exemption therefrom. Any Distributions to be made pursuant to the Plan shall, pending the implementation of such withholding and reporting requirements, be treated as undeliverable pursuant to Article VI.C.2 of the Plan.

**E.      Time Bar to Cash Payments**

Checks issued by the Liquidating Trustee on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Liquidating Trustee by the Holder of the Allowed Claim. Any claim relating to such voided check shall be made on or before the later of: (i) six months after the Effective Date; or (ii) one hundred and eighty (180) days after the date of issuance of such check. After such date, all claims relating to such voided checks shall be discharged and forever barred, and the Liquidating Trustee shall treat all such moneys as Forfeited Distributions.

**F.      Distributions After the Effective Date**

Distributions made after the Effective Date to Holders of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made on the Effective Date.

**G.      Interest**

Unless otherwise required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim, provided, however, that the DIP Lender are entitled to interest at the rates set forth in the DIP Facility on the terms set forth in the DIP Order.

18

## H.     Fractional Dollars; De Minimis Distributions

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down. The Liquidating Trustee will not make any payment of less than twenty dollars ($20) on account of any Allowed Claim, unless a specific request therefor is made in writing to the Liquidating Trustee on or before ninety (90) days after the Effective Date.

## I.     Set-Offs

Consistent with applicable law, the Liquidating Trustee may, but shall not be required to, set-off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim), the claims, rights, and causes of action of any nature that the Debtors, their Estates, or the Liquidating Trust may hold against the Holder of such Allowed Claim (unless such claims, rights, and causes of action have been released by the Debtors pursuant the Releases or Mutual Releases contained herein); provided, however, that neither the failure to effect such a set-off nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, their Estates, the Liquidating Trustee, or the Liquidating Trust of any such claims, rights, and Causes of Action that the Debtors, their Estates, or the Liquidating Trust may possess against such Holder.

## J.     Settlement of Claims and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims or controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim with respect thereto, or any distribution to be made on account of such an Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims or controversies, and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and is fair, equitable, and reasonable.

## ARTICLE VII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A.     Rejection of Executory Contracts and Unexpired Leases

Any executory contracts or unexpired leases which have not (i) expired by their own terms on or prior to the Effective Date, or (ii) been assumed, assumed and assigned, or rejected with the approval of the Bankruptcy Court in connection with the Sale or otherwise, shall be deemed rejected by the Debtors as of the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections of such executory contracts and unexpired leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

597245.1 8/31/10

## B.     Rejection Damages Claim

Each entity that is a party to an executory contract or unexpired lease that is rejected as of the Effective Date pursuant to this Plan and the Confirmation Order will be entitled to File, not later than thirty (30) days following the Effective Date, a proof of Claim for damages alleged to have been suffered due to such rejection; provided, however, that the opportunity afforded an Entity whose executory contract or unexpired lease is rejected as of the Effective Date pursuant to this Plan and the Confirmation Order to file a proof of Claim shall in no way apply to Entities that may assert a claim on account of an executory contract or unexpired lease that was previously rejected by the Debtors for which a prior Bar Date was established. Any Entity that has a Claim for damages as a result of the rejection of an executory contract or unexpired lease pursuant to this paragraph of the Plan that does not File a proof of Claim in accordance with the terms and provisions of the Plan with the Bankruptcy Court (and serve such proof of Claim upon the Liquidating Trustee) will be forever barred from asserting that Claim against, and such Claim shall be unenforceable against, the Debtors or the Liquidating Trust.

## ARTICLE VIII.
## LIQUIDATING TRUST; LIQUIDATING TRUSTEE

## A.     Generally

The Debtors, with the consent of the DIP Lender and the Prepetition Lenders, shall appoint the Liquidating Trustee, except as may be otherwise authorized by Order of the Bankruptcy Court. The Liquidating Trustee shall perform the duties under the Plan and the Liquidating Trust Agreement until death, resignation, or discharge and the appointment of a successor Liquidating Trustee will be in accordance with the Liquidating Trust Agreement. The Liquidating Trust Agreement shall provide for Series A Trust Interests and Series B Interests, to be distributed to Holders of Allowed Claims in accordance with the Plan.

## B.     Purpose of the Liquidating Trust

The Liquidating Trust shall be established for the primary purpose of liquidating its assets, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. The Liquidating Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein. The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the beneficiaries treated as grantors and owners of the trust.

## C.     Termination of Liquidating Trust

The Liquidating Trust will dissolve when all Disputed Claims have been resolved, all Distributions have been made pursuant to the Plan, and all other obligations under the Plan have been fulfilled.

## D.     Termination of Liquidating Trustee

The duties, responsibilities, and powers of the Liquidating Trustee shall terminate when the Liquidating Trust dissolves.

597245.1 8/31/10

### E.     Compensation of Liquidating Trustee

The Liquidating Trustee shall be compensated from the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement. Any professionals retained by the Liquidating Trustee shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred from the Liquidating Trust. The payment of the fees and expenses of the Liquidating Trustee and his or her retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

### F.     Exculpation; Indemnification

Except as modified by the Liquidating Trust Agreement, no Holder of a Claim or any other party in interest will have, or otherwise pursue, any Claim or cause of action against the Liquidating Trustee, the Liquidating Trust, or the employees or professionals thereof (solely in the performance of their duties thereas), for making payments in accordance with the Plan or for implementing the provisions of the Plan.

## ARTICLE IX.
## ACCEPTANCE OR REJECTION OF THE PLAN

### A.     Acceptance by Impaired Classes

An Impaired Class of Claims will have accepted the Plan if the Holders of at least two-thirds in amount and more than one-half in number of the Allowed Claims in the Class actually voting have voted to accept the Plan, in each case not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code.

### B.     Elimination of Classes

Any Class that does not contain any Allowed Claims or Equity Interests or any Claims or Equity Interests temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, will be deemed not included in the Plan for purposes of (i) voting to accept or reject the Plan and (ii) determining whether such Class has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

### C.     Nonconsensual Confirmation

The Bankruptcy Court may confirm the Plan over the dissent of any Impaired Class if all of the requirements for consensual confirmation under subsection 1129(a), other than subsection 1129(a)(8), of the Bankruptcy Code and for nonconsensual confirmation under subsection 1129(b) of the Bankruptcy Code have been satisfied. In the event that any impaired Class of Claims or Equity Interests shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtors reserve the right to (i) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code or (ii) amend the Plan.

597245.1 8/31/10

## ARTICLE X.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND THE EFFECTIVE DATE

**A.     Conditions Precedent to the Confirmation Date of the Plan**

The occurrence of the Confirmation Date shall be subject to satisfaction of the following conditions precedent:

1.   The entry of the Confirmation Order in form and substance reasonably satisfactory to the Debtors, the Prepetition Lenders and the DIP Lender.

2.   All provisions, terms, and conditions hereof are approved in the Confirmation Order or in another Final Order of the Bankruptcy Court.

3.   The Sale Order becomes a Final Order in form and substance reasonably satisfactory to the DIP Lenders and the Debtors close the Sale.

4.   The Debtors are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the Plan and other agreements or documents created in connection with the Plan.

5.   The provisions of the Confirmation Order are nonseverable and mutually independent.

**B.     Conditions Precedent to the Effective Date of the Plan**

The occurrence of the Effective Date and the Consummation of the Plan are subject to satisfaction of the following conditions precedent:

1.   <u>Confirmation Order</u>.  The Confirmation Order as entered by the Bankruptcy Court shall be a Final Order in full force and effect, in form and substance reasonably satisfactory to the Debtors, the Prepetition Lenders and the DIP Lender.

2.   <u>Execution of Documents; Other Actions</u>.    All actions, documents, and agreements necessary to implement the Plan shall have been effected or executed, including the Liquidating Trust Agreement.

**C.     Waiver of Conditions Precedent**

To the extent legally permissible, each of the conditions precedent in Article X of the Plan may be waived, in whole or in part, by the Debtors with the consent of the DIP Lender and the Prepetition Lenders, which consent shall not be unreasonably withheld.  Any such waiver of a condition precedent may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action other than proceeding as if such condition did not exist.  The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights.  Upon the waiver of any conditions to the Effective Date set forth in Article X of the Plan, and subject to the satisfaction in full of each of the remaining conditions

597245.1 8/31/10

set forth in such Article, the Plan shall become effective in accordance with its terms without notice to third parties or any other formal action.

## D.    The Confirmation Order

If the Confirmation Order is vacated for whatever reason, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, any of the Debtors; (ii) prejudice in any manner the rights of the Debtors; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors in any respect.

## ARTICLE XI.
## EFFECT OF PLAN CONFIRMATION

## A.    Discharge of Claims and Termination of Interests

1.    Except as provided in the Confirmation Order, pursuant to section 1141(d) of the Bankruptcy Code, the rights afforded under the Plan and the treatment of Claims and Equity Interests under the Plan shall be in exchange for and in complete satisfaction, settlement, discharge, and release of all Claims and termination of all Equity Interests. Confirmation shall (a) discharge the Debtors from all Claims and other debts that arose before the Confirmation Date and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (i) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (ii) the Holder of a Claim based on such debt has accepted the Plan; and (b) terminate all Equity Interests and other rights of equity security holders in the Debtors.

2.    As of the Confirmation Date, all Entities shall be precluded from asserting against the Debtors, their Estates, the Liquidating Trust, the Liquidating Trustee, their successors, or their property, any other or further Claims, debts, rights, causes of action, liabilities, or Equity Interests based upon any act, omission, transaction, or other activity of any nature that occurred prior to the Confirmation Date. In accordance with the foregoing, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities and Equity Interests of or in the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time to the extent that such judgment relates to a discharged Claim or Equity Interest.

## B.    Termination of Subordination Rights and Settlement of Related Claims

The classification and manner of satisfying all Claims and Equity Interests and the respective distributions and treatments hereunder take into account and/or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise, and any and all such rights are settled, compromised, and released pursuant to the Plan. **The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Persons from enforcing or attempting to enforce any such contractual, legal, and equitable subordination rights satisfied, compromised, and settled in this manner.**

23

## C. Injunction

**Except as otherwise expressly provided in the Plan, all Entities that have held, hold, or may hold Claims against or Equity Interests in the Debtors are permanently enjoined, from and after the Effective Date, from taking any of the following actions against any of the Debtors, their Estates, the Liquidating Trust, the Liquidating Trustee, the Administrative Agent, UBP Acquisition Corp. and any of its affiliates, successors or assigns, including but not limited to Oaktree Capital Management, L.P., Solus Capital Partners, LLC and Dayton Superior Corporation, the Prepetition Lenders and the DIP Lender, or any of their property on account of any Claims or causes of action arising from events prior to the Effective Date including, without limitation, (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enforcing, attaching, collecting, or recovering by any manner or in any place or means any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; and (iv) asserting any defense or right of setoff, subrogation, or recoupment of any kind against any obligation, debt, or liability due to the Debtors.**

## D. Terms of Existing Injunctions or Stays

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105, 362, or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. The Confirmation Order will permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively, or otherwise, of any Claims, Equity Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities released pursuant to the Plan.

## E. Exculpation

Neither the Debtors, their Estates, the Liquidating Trust, the Liquidating Trustee, the Administrative Agent, the Prepetition Lenders, the DIP Lender, UBP Acquisition Corp., Oaktree Capital Management, L.P., Solus Capital Partners, LLC, Dayton Superior Corporation, nor any of their respective present or former officers, directors, shareholders, employees, advisors, attorneys, or agents acting in such capacity or their respective affiliates, shall have or incur any liability to, or be subject to any right of action by, the Debtors or any Holder of a Claim or an Equity Interest, or any other party in interest, or any of their respective agents, shareholders, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, (a) any act taken or omitted to be taken on or after the Petition Date, (b) the Disclosure Statement, the Plan, and the documents necessary to effectuate the Plan, (c) the solicitation of acceptances and rejections of the Plan, (d) the releases herein or the solicitation thereof, (e) the Chapter 11 Cases, (f) the administration of the Plan, (g) the distribution of property under the Plan, (h) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or the Chapter 11 Cases, or (i) the Sale, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.

24

## F.    Releases by the Debtors

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE AND EFFECTIVE AS OF THE EFFECTIVE DATE (SUCH THAT THE LIQUIDATING TRUSTEE WILL NOT RECEIVE ANY CLAIM OR CAUSE OF ACTION RELEASED HEREUNDER), FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE DEBTOR RELEASEES AND THE THIRD PARTY RELEASEES, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING: (1) THE DISCHARGE OF DEBT AND ALL OTHER GOOD AND VALUABLE CONSIDERATION PAID PURSUANT HERETO; AND (2) THE SERVICES OF THE DEBTORS' PRESENT AND FORMER OFFICERS, DIRECTORS, MANAGERS, AND ADVISORS IN FACILITATING THE EXPEDITIOUS IMPLEMENTATION OF THE LIQUIDATION AND ASSOCIATED TRANSACTIONS CONTEMPLATED HEREBY, EACH OF THE DEBTORS, IN THEIR INDIVIDUAL CAPACITIES AND AS DEBTORS IN POSSESSION, DISCHARGE AND RELEASE AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE AND RELEASE TO EACH DEBTOR RELEASEE AND TO EACH THIRD PARTY RELEASEE (AND EACH SUCH DEBTOR RELEASEE AND THIRD PARTY RELEASEE SO RELEASED SHALL BE DEEMED FULLY RELEASED AND DISCHARGED BY THE DEBTORS) AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF THE EFFECTIVE DATE IN LAW, AT EQUITY, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS, INCLUDING THOSE THAT ANY OF THE DEBTORS WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR AN EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF ANY OF THE DEBTORS OR ANY OF THEIR ESTATES.  NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, THE PLAN DOES NOT RELEASE ANY CAUSES OF ACTION THAT THE DEBTORS OR THE LIQUIDATING TRUSTEE HAVE OR MAY HAVE NOW OR IN THE FUTURE AGAINST THE NON-RELEASED PARTIES.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR RELEASEES AND THE THIRD PARTY RELEASEES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE

25

AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY OF THE DEBTORS OR THE LIQUIDATING TRUSTEE ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

G.    Mutual Releases by Holders of Claims and Interests

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE RELEASING PARTIES (REGARDLESS OF WHETHER A RELEASING PARTY IS A THIRD PARTY RELEASEE) SHALL PROVIDE A FULL DISCHARGE AND RELEASE (AND EACH ENTITY SO RELEASED SHALL BE DEEMED RELEASED BY THE RELEASING PARTIES) TO THE THIRD PARTY RELEASEES AND THE DEBTOR RELEASEES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF THE EFFECTIVE DATE IN LAW, AT EQUITY, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS, INCLUDING THOSE IN ANY WAY RELATED TO THE CHAPTER 11 CASES OR THE PLAN.  NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE PLAN DOES NOT RELEASE ANY CLAIMS OR CAUSES OF ACTION THAT THE RELEASING PARTIES, THE DEBTORS, OR THE LIQUIDATING TRUSTEE MAY HAVE NOW OR IN THE FUTURE AGAINST NON-RELEASED PARTIES.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR RELEASEES AND THE THIRD PARTY RELEASEES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD PARTY RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM RELEASED PURSUANT TO THE THIRD PARTY RELEASE.

597245.1 8/31/10

# ARTICLE XII.
## MISCELLANEOUS

### A.    Payment of Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date to the extent required by applicable law, or, if not required to be paid on or prior to the Effective Date, by the Liquidating Trustee as soon as practicable following the Effective Date.

### B.    Section 1146 Exemption

Pursuant to section 1146(c) of the Bankruptcy Code, (a) the creation, modification, consolidation, or recording of any mortgage, deed of trust, lien, pledge, or other security interest; (b) the making, recording, or assignment of any lease or sublease; or (c) the making, recording, or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan and the Sale, including, without limitation, any merger agreements; agreements of consolidation, restructuring, disposition, liquidation, or dissolution; deeds; bills of sale; and transfers of tangible property, will not be subject to any stamp tax, recording tax, personal property tax, real estate transfer tax, sales or use tax, or other similar tax. Any transfers from the Debtors to the Liquidating Trust or otherwise pursuant to the Plan shall not be subject to any such taxes, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Unless the Bankruptcy Court orders otherwise, any of the foregoing transactions taken on or prior to the Effective Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

### C.    Business Day

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### D.    Severability

The provisions of this Plan shall not be severable unless such severance is agreed to by the Debtors and such severance would constitute a permissible modification of the Plan pursuant to section 1127 of the Bankruptcy Code.

### E.    Conflicts

Except as set forth below, to the extent that any provision of the Disclosure Statement, the Liquidating Trust Agreement, or the Confirmation Order (or any exhibits, schedules, appendices, supplements, or amendments to the foregoing) or any other order referenced in the Plan, conflict with or are in any way inconsistent with the terms of the Plan, the Plan shall govern and control.

597245.1 8/31/10

**F.     Further Assurances**

The Debtors, the Liquidating Trustee, all Holders of Claims receiving Distributions under the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver agreements or documents and take other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**G.     Notices**

All notices, requests, and demands required by the Plan or otherwise, to be effective, shall be in writing, including by facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered to all of the following, or in the case of notice by facsimile transmission, when received by all of the following, addressed as follows or to such other addresses as Filed with the Bankruptcy Court:

597245.1 8/31/10

**To the Debtors:**

K&L Gates LLP
c/o Sven T. Nylen
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
Telephone: (312) 372-1121
Facsimile: (312) 827-8000

and

Saul Ewing LLP
c/o Mark Minuti
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6840
Facsimile: (302) 421-5873

**To Counsel for the Official Committee of Unsecured Creditors:**

Arent Fox LLP
c/o James Sullivan
1675 Broadway
New York, New York 10019-5820

and

Elliott Greenleaf
1105 North Market Street
Wilmington, Delaware 19801

**To the Prepetition Lenders and DIP Lender:**

Kirkland & Ellis LLP
c/o Christopher Greeno, P.C.
c/o David A. Agay
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2342
Facsimile: (312) 862-2200

**H.     Filing of Additional Documents**

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**I.     Successors and Assigns**

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

597245.1 8/31/10

**J. Closing of Cases**

The Liquidating Trustee shall, promptly upon the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

**K. Section Headings**

The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

**L. Further Information**

Requests for further information regarding the Debtors should be directed to counsel to the Debtors as set forth on the cover page hereof.

## ARTICLE XIII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction after the Effective Date over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases or the Plan, or that relates to the following, in each case to the greatest extent permitted by applicable law:

1. to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

2. to determine any and all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Liquidating Trustee or the Liquidating Trust after the Effective Date; provided, however, that the Liquidating Trustee and the Liquidating Trust shall reserve the right to commence collection actions, actions to recover receivables, and other similar actions in all appropriate jurisdictions;

3. to ensure that distributions to Holders of Allowed Claims are accomplished as provided herein;

4. to hear and determine any timely objections to Administrative Claims and Priority Claims or to proofs of Claim and Equity Interests Filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Equity Interest, and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

5. to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

597245.1 8/31/10

6. to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

7. to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

8. to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

9. to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any Entity's obligations incurred in connection with or released or exculpated under the Plan;

10. to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

11. to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Liquidating Trust Agreement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement to be executed in connection with the Plan;

12. to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

13. to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

14. to enter a Final Decree closing the Chapter 11 Cases.

## ARTICLE XIV.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.    Modification of Plan

The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan at any time prior to the entry of the Confirmation Order with the consent of the Prepetition Lenders and the DIP Lender, which consent shall not be unreasonably withheld. Upon entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such Holder and the votes of each Class for or against the Plan shall be counted and used in connection with the modified plan.

31

**B.      Revocation, Withdrawal, or Non-Consummation**

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization with the consent of the Prepetition Lenders and the DIP Lender, which consent shall not be unreasonably withheld. If the Debtors revoke or withdraw the Plan, or if the Confirmation Order confirming the Plan shall not be entered or become a Final Order, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (1) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity, (2) prejudice in any manner the rights of the Debtors, (3) constitute an admission of any sort by the Debtors, or (4) constitute a release of any Causes of Action possessed or maintained by the Debtors.

Dated: August 31, 2010                    Respectfully submitted,

                                          Universal Building Products, Inc.
                                          Accubrace, Inc.
                                          Don De Cristo Concrete Accessories, Inc.
                                          Form-Co, Inc.
                                          Universal Form Clamp, Inc.

                                          By:  _____
                                          Name:  Jeffrey Church
                                          Title:   Authorized Officer Signatory of the Debtors