IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| UNIVERSAL BUILDING PRODUCTS, INC., *et al.*,[1] | ) | Case No. 10-12453 (MFW) |
|  | ) |  |
|  | ) | Jointly Administered |
| Debtors. | ) | Re: Docket Nos. 15, 168 |
|  | ) |  |

## FINAL ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING SALE OF DEBTORS' ASSETS, (II) AUTHORIZING SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS AND (III) GRANTING RELATED RELIEF

Upon the motion, dated August 4, 2010 (the "Sale Motion") of the above-captioned

debtors and debtors-in-possession (the "Debtors") for the entry of an order pursuant to §§ 105,

363 and 365 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002,

6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

authorizing the Debtors to, *inter alia*, (i) enter into that certain Asset Purchase Agreement, dated

as of August 3, 2010, between UBP Acquisition Corp. ( "Purchaser") and the Debtors (the

"Agreement", attached as **Exhibit 1** to the Sale Motion), (ii) sell the Acquired Assets[2] free and

clear of all Liens, Claims, and Interests (as defined herein), with such sale to be in accordance

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Universal Building Products, Inc. (7884); (ii) Accubrace, Inc. (3418); (iii) Don De Cristo Concrete Accessories, Inc. (7547); (iv) Form-Co, Inc. (0079); and (v) Universal Form Clamp, Inc. (3003). The address of the Debtors' corporate headquarters is 15172 Goldenwest Circle, Westminster, California 92683.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Sale Motion, the Agreement, or the *Order (A) Approving Bid Procedures Relating to Sale of Debtors' Assets; (B) Scheduling Hearing to Consider Sale and Approving Form and Matter of Notices; (C) Approving Expense Reimbursement Provision and Break-up Fee; and (D) Granting Related Relief.* Notwithstanding the foregoing, the term "Acquired Assets" as used herein does not include the Excluded Property, as that term is used in the *Final Order (I) (A) Authorizing and Approving Debtors' Post-Petition Financing; (B) Granting Liens and Security Interests and Providing Superpriority Administrative Expense Status; (C) Authorizing Use of Cash Collateral and Affording Adequate Protection; and (D) Modifying Automatic Stay* (the "Final DIP Order").

with the terms and conditions of the Agreement; and (iii) granting related relief; and this Court having entered an order dated August 27, 2010 [Docket No. 169] (the "Bid Procedures Order" and attached as **Exhibit 1** thereto, the "Bid Procedures") authorizing the Debtors to conduct, and approving the terms and conditions of, the Auction to consider higher or otherwise better offers for the Acquired Assets, establishing a date for the Auction, and approving, *inter alia*, (i) the Bid Procedures in connection with the Auction, (ii) the form and manner of notice of the Auction and Bid Procedures, and (iii) the Expense Reimbursement and Break-Up Fee; and the Court having entered the *Interim Order (I) Approving Asset Purchase Agreement and Authorizing Sale of Debtors' Assets, (II) Authorizing Sale of Assets Free and Clear of Liens, Claims, and Interests and (III) Granting Related Relief* [Docket No. 168] approving the sale of the Acquired Assets to the Purchaser on an interim basis (the "Interim Order") to enable the Purchaser to begin immediately taking possession of the Acquired Assets pending either the passage of the deadline to submit bids , which was September 1, 2010 at 12:00 p.m. prevailing Eastern Time (the "Bid Deadline"), without submission of any Qualified Bids or the conduct of the Auction with Purchaser emerging as the Successful Bidder; and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and consideration of the Sale Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the hearing on August 26 and August 27, 2010 (the "Interim Sale Hearing"); and upon the record of the Interim Sale Hearing, and all other pleadings and proceedings in these chapter 11 cases, including the Sale Motion; and it appearing that the relief requested in the Sale

2

Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[3]

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     The Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Acquired Assets, to be sold, transferred or conveyed pursuant to the Agreement, and their respective estates pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these chapter 11 cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) Bankruptcy Code §§ 102, 105, 363, 365, 1123, 1141 and 1146, and (ii) Bankruptcy Rules 2002, 6004, 6006 and 9014.

E.     On August 4, 2010 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.  The Debtors ceased operating before the Petition Date, except for certain operations of the Debtors Form-Co, Inc. and Accubrace, Inc.

---

[3]     All findings of fact and conclusions of law announced by the Court at the Interim Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.  Solely with respect to or in connection with the Excluded Property, the findings in this Order shall not bind the Committee or any liquidating trustee or other entity charged with the power to prosecute, own, hold, liquidate, or distribute the Excluded Property.

K&E 17644229.2

F.     On the Petition Date, the Debtors filed motions to approve the Bid Procedures

[Docket No. 14] and the sale of the Acquired Assets to the Purchaser.  The statutory committee

of unsecured creditors appointed in these chapter 11 cases (the "Committee") filed an objection

to the proposed Bid Procedures [Docket No. 94] and to the entry of an order approving post-

petition financing on a final basis [Docket No. 95].  The Committee also filed a motion to

prohibit the Purchaser from credit bidding its secured debt to purchase the Acquired Assets

[Docket No. 96].  In order to resolve the Committee's objections and the motion to prohibit the

Purchaser from credit bidding, the Debtors, the Purchaser and the Committee agreed that (a) the

Debtors would seek entry of the Interim Order on an emergency basis; (b) the Purchaser would

immediately begin to take possession of the Acquired Assets to enable the Debtors to realize

certain administrative savings and limit borrowings under the post-petition credit facility, which

savings would inure to the benefit of the Debtors' estate; (c) the Auction would be held in the

event that the Debtors received one or more Qualified Bids (other than Purchaser's bid) on or

before the Bid Deadline of September 1, 2010 at 12:00 p.m. prevailing Eastern Time; (d) if the

Debtors received no additional Qualified Bids before the Bid Deadline, or in the event that an

Auction occurred and the Purchaser was the Successful Bidder, the Debtors would submit a final

order under certification of counsel, which final order would be identical in all material respects

to the Interim Order, and the Committee consented without objection to entry of such a final

order; and (e) in the event an Auction occurred and the Purchaser was not the Successful Bidder,

(i) conveyance of the Acquired Assets to the Purchaser would be rescinded and all right, title and

interest in the Acquired Assets would be deemed re-vested in the Debtors (provided that the

Interim Order will otherwise remain in full force and effect), (ii) all Liens, Claims and Interests

in the Acquired Assets would attach to the Acquired Assets to the same extent as prior to entry of

4

the Interim Order; and (iv) the Successful Bidder would (1) reimburse Purchaser for all costs and expenses incurred by Purchaser in transferring or storing Acquired Assets pursuant to the Interim Order; and (2) pay all costs of transferring the Acquired Assets from the Purchaser to the Successful Bidder.  The Debtors, Committee and UBP Acquisition Corp. (in its role as Purchaser, prepetition secured lender and post-petition secured lender) also agreed to support a liquidating plan containing certain terms, as further described herein.

   G.  As evidenced by the affidavits of service filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Interim Sale Hearing have been provided in accordance with Bankruptcy Code §§ 102(1) and 363(b), Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the local rules of this Court and the procedural due process requirements of the United States Constitution.  The Sale Motion and proposed order were served on: (a) creditors holding the 30 largest unsecured claims; (b) all entities known to have asserted any lien, claim, interest or encumbrance in or upon any of the Acquired Assets; (c) the Debtors' landlords; (d) the Environmental Protection Agency; (e) the state/local environmental agencies in the jurisdictions where the Debtors own or lease property; (f) all taxing authorities which have a reasonably known interest in the Debtors, including the Internal Revenue Service; (g) all entities known to have expressed a *bona fide* interest in acquiring all or portions of the Acquired Assets; and (h) the U.S. Trustee for the District of Delaware, on August 10, 2010 [Docket No. 73].  Notice of filing of the sale motion was served on the entire creditor matrix on August 11, 2010 and supplemented on August 16 and 17, 2010 [Docket Nos. 75, 82 and 93].  A Notice of Emergency Transitional Sale Subject to Bid Procedures (the "Emergency Notice") [Docket No. 135] was served on August 23, 2010 and August 24, 2010 [Docket Nos. 143 and 152], notifying recipients that the Debtors sought entry of the Interim Order on an

K&E 17644229.2

emergency, interim basis, subject to the submission of Qualified Bids and the conduct of the Auction. The *Notice of Auction and Sale* [Docket No. 171] was served on August 27, 2010, notifying recipients, including all creditors and those entities who had expressed interest in acquiring the Debtors' assets, of the Bid Deadline, the date, time and place of the Auction and that the Auction would not occur if no Qualified Bids are received by the Bid Deadline. [*See* Docket No. 175.] No other or further notice of the Sale Motion, the Auction, the Interim Sale Hearing, the entry of the Interim Order or the entry of this final order (the "Final Order"), is necessary or shall be required.

H.     A reasonable opportunity to object or be heard regarding the requested relief has been afforded to, and the Emergency Notice was served upon, all interested persons and entities, including, without limitation, (a) Universal Building Products, 15172 Goldenwest Circle, Westminster, California 92683, Attn: Jeff Church; (b) counsel for the Debtors, K&L Gates LLP, 70 W. Madison St., Suite 3100, Chicago, Illinois 60602-4207, Attn: Sven T. Nylen; (c) UBP Acquisition Corp., 333 S. Grand Avenue, 28th Floor, Los Angeles, California 90071, Attn: Jordon L. Kruse and David Quick, with a copy to Kirkland and Ellis LLP, 300 N. LaSalle Street, Chicago, Illinois 60654, Attn: Christopher J. Greeno, P.C. and David A. Agay; (d) counsel for the Committee; (e) all entities known to have asserted any lien, claim, interest or encumbrance in or upon and of the Acquired Assets; (f) all governmental taxing authorities or recording offices which have a reasonably known interest in the Debtors, including the Internal Revenue Service, or as a result of the sale of the Acquired Assets may have claims, contingent or otherwise, against the Debtors; (g) the Environmental Protection Agency; (h) the state/local environmental agencies in the jurisdictions where the Debtors own or lease real property; (i) the Debtors' landlords; (j) all entities known to have expressed a bona fide interest in acquiring all or portions

of the Acquired Assets; (k) the Office of the United States Trustee; (l) counsel to the Agent for the Debtors' prepetition secured lenders; (m) the Debtors' largest thirty (30) unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; (n) the Office of the United States Attorney for the District of Delaware, and (o) all parties that filed requests for notices under Bankruptcy Rule 9010(b). Other parties interested in bidding on the Acquired Assets were provided, upon request, sufficient information to make an informed judgment as to whether to bid on the Acquired Assets.

I.     The Acquired Assets are property of the Debtors' estates and good and marketable title thereto is vested in the Debtors' estates.

J.     The Debtors have demonstrated a sufficient basis, including exigent circumstances, to enter into the Agreement and sell the Acquired Assets under Bankruptcy Code §§ 363, 365, 1123, 1141 and 1146, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors.

K.     The Bid Procedures set forth in the Bid Procedures Order were non-collusive, substantively and procedurally fair to all parties and were the result of good faith, arm's length negotiations between the Debtors and the Purchaser.

L.     The Debtors and their professionals have complied, in good faith, in all respects with the Bid Procedures Order. As demonstrated by (i) the testimony and other evidence (including the representations of counsel made on the record) proffered or adduced at the Interim Sale Hearing and (ii) through robust marketing efforts carried out over the course of several weeks and a competitive sale process, the Debtors (a) have afforded interested potential purchasers a full, fair and reasonable opportunity to conduct diligence with respect to the Debtors' business and assets, to become Qualified Bidders and submit their highest and

7

otherwise best offer to purchase the Acquired Assets, and (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment as to whether to bid on the Acquired Assets.

M.     No bids were submitted on or before the Bid Deadline, other than the offer submitted by the Purchaser in the Agreement.

N.     The offer of the Purchaser, upon the terms and conditions set forth in the Agreement, including the form and total amount of consideration to be realized by the Debtors pursuant to the Agreement, (i) is the highest and best offer received by the Debtors; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' creditors and estates; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Acquired Assets; and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than under any other practicable and available alternative.

O.     The Purchaser is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code. The Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Bankruptcy Code §§ 363(m) and (n) with respect to all of the Acquired Assets. The Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind. Neither the Debtors nor the Purchaser has engaged in any conduct that would prevent the application of Bankruptcy Code § 363(m) or cause the application of or implicate Bankruptcy Code § 363(n) to the Agreement, the consummation of the sale transaction, or the transfer of the Acquired Assets to the Purchaser. Further, the Purchaser is entitled to all of the protections and immunities of Bankruptcy Code § 363(m).

8

P.     The Debtors have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Acquired Assets has been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the transactions contemplated by the Agreement.  No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtors to consummate such transactions.

Q.     The Debtors have demonstrated sound business reasons for seeking to enter into the Agreement and to sell the Acquired Assets, as more fully set forth in the Sale Motion and as demonstrated at the Interim Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Acquired Assets and to consummate the transactions contemplated by the Agreement.

R.     The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtors' estates and their creditors.

S.     Except as otherwise provided in the Agreement, the Acquired Assets shall be sold free and clear of all Liens, Claims, and Interests, as defined below.  All such Liens, Claims, and Interests shall attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as before the Closing, and Purchaser would not enter into the Agreement to purchase the Acquired Assets otherwise.  For purposes of this Final Order, "Liens, Claims and Interests" shall mean all liens (statutory or otherwise), claims, as defined in Bankruptcy Code § 101(5), interests, as such term is used in Bankruptcy Code § 363(f), hypothecation, encumbrances, indentures, loan agreements, collective bargaining

9

agreements, deeds of trusts, security interests, other interests, mortgages, interests, pledges, restrictions, charges, instruments, licenses, preferences, priorities, security agreements, easements, covenants, encroachments, options, rights of recovery, rights of pre-emption, rights of first refusal or other third party rights, judgments, demands, offsets, contracts, claims for reimbursement, contribution indemnity, exoneration, alter ego or environmental liabilities, pension liabilities including withdrawal liabilities, retiree medical benefit liabilities, taxes (including foreign, federal, state and local tax), orders of any governmental authority, of any kind or nature (including (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, (iii) any claim based on any theory that Purchaser is a successor, transferee or continuation of any or all Debtors, and (iv) any leasehold interest, license or other right, in favor of a third party or a debtor, to use any portion of the Acquired Assets), whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or known, it being understood that Liens, Claims and Interests shall be given the broadest possible meaning under applicable law.

T.     The transfer of the Acquired Assets to the Purchaser will be a legal, valid and effective transfer of the Acquired Assets, and, except as may otherwise be provided in the Agreement, shall vest the Purchaser with all right, title and interest of the Debtors in and to the Acquired Assets free and clear of any and all Liens, Claims, and Interests. The Purchaser shall not assume or become liable for any Liens, Claims, and/or Interests relating to the Acquired Assets being sold by the Debtors.

K&E 17644229.2

U.    The transfer of the Acquired Assets to the Purchaser free and clear of all Liens, Claims, and Interests will not result in any undue burden or prejudice to any holders of any Liens, Claims, and Interests, as all such Liens, Claims, and Interests of any kind or nature whatsoever shall attach to the net proceeds of the sale (if any) of the Acquired Assets received by the Debtors in the order of their priority, with the same validity, force and effect which they now or may hereafter have as against or in the Acquired Assets and subject to any claims and defenses the Debtors or other parties in interest may possess with respect thereto. All persons having Liens, Claims, and/or Interests of any kind or nature whatsoever against or in any of the Debtors or the Acquired Assets shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens, Claims, and/or Interests against the Purchaser, any of its assets, property, successors or assigns, or the Acquired Assets.

V.    The Debtors may sell the Acquired Assets free and clear of all Liens, Claims, and Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Bankruptcy Code § 363(f) has been satisfied. Those (i) holders of Liens, Claims, and Interests and (ii) non-debtor parties who did not object, or who withdrew their objections, to the sale of the Acquired Assets and the Sale Motion are deemed to have consented to the sale of the Acquired Assets pursuant to Bankruptcy Code § 363(f)(2). All objections to entry of this Final Order have been resolved. Those holders of Liens, Claims, and Interests who did object fall within one or more of the other subsections of Bankruptcy Code § 363(f) and are adequately protected by having their Liens, Claims, and Interests, if any, attach to the net proceeds of the sale (if any) of the Acquired Assets ultimately attributable to the property against or in which they claim or may claim any Liens, Claims, and Interests.

11

W.    Not selling the Acquired Assets free and clear of all Liens, Claims, and Interests would adversely impact the Debtors' estates, and the sale of the Acquired Assets on a basis other than free and clear of all Liens, Claims, and Interests would yield substantially less value to the Debtors' estates.

X.    In the absence of a stay pending appeal, the Purchaser will be deemed to be acting in good faith, pursuant to Bankruptcy Code § 363(m), in closing the transactions contemplated by the Agreement at any time on or after the entry of this Final Order, and cause has been shown as to why this Final Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).

Y.    The transactions contemplated under the Agreement do not constitute a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates because (i) there is no substantial continuity between the Purchaser and the Debtors, (ii) there is no continuity of enterprise between the Debtors and the Purchaser, (iii) the Purchaser is not a mere continuation of the Debtors or their estates, and (iv) the Purchaser does not constitute a successor to the Debtors or their estates.

Z.    The sale of the Acquired Assets outside of a plan of liquidation or reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of liquidation or reorganization for the Debtors. The sale of the Acquired Assets does not constitute a *sub rosa* chapter 11 plan.

AA.    The Purchaser's agreement to serve as the stalking horse bidder was part of a global, integrated agreement whereby the Purchaser agreed to provide the DIP Facility to enable the Debtors to conduct an orderly wind-down, including confirmation and consummation of a chapter 11 liquidating plan. To the extent that such a plan is confirmed and consummated, the

12

sale of the Acquired Assets to Purchaser is deemed to have occurred pursuant to such plan for purposes of Bankruptcy Code § 1146(a), with the effectiveness of the plan expressly conditioned on consummation of the sale of the Acquired Assets to Purchaser.

BB.    The Purchaser, by and through the Administrative Agent, is a secured creditor of the Debtors, holding valid Liens, Claims, and Interests in and against the Debtors and their estates arising out of, related to and in connection with the Credit Agreement and other Prepetition Loan Documents.  The Purchaser, by and through the Administrative Agent, holds an allowed Claim as of the Petition Date in the amount of $40,331,692.45 plus accrued and unpaid interest with respect thereto and any fees, expenses, costs and charges (the "Allowed Claim"), and authorized and directed the Administrative Agent to credit bid any portion or all of such Allowed Claim in connection with the Agreement and at the Auction.  In addition, the Purchaser holds a valid, perfected postpetition senior security interest and superpriority administrative expense claim for loans, advances and other financial accommodations outstanding under the DIP Note and the other DIP Loan Documents, and was authorized to credit bid any portion or all of the outstanding DIP Obligations in connection with the Agreement and at the Auction.

CC.    The Purchaser's credit bid pursuant to the Agreement is a valid and proper offer pursuant to the Bid Procedures Order and Bankruptcy Code §§ 363(b) and 363(k).

DD.    The total consideration provided by the Purchaser for the Acquired Assets is the highest and best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Acquired Assets.

13

EE.     Time is of the essence in consummating the sale. In order to maximize the value of the Acquired Assets, it is essential that the sale of the Acquired Assets occur within the time constraints set forth in the Agreement. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

FF.     The Purchaser shall have no obligations with respect to any liabilities of the Debtors other than its obligations under the Agreement.

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     The relief requested in the Sale Motion is granted in its entirety, subject to the terms and conditions contained herein and in the Agreement.

2.     All objections and responses concerning the Sale Motion are resolved in accordance with the terms of this Final Order. To the extent any such objection or response was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

3.     Notice of the Bid Procedures, the Interim Sale Hearing, the Auction and the entry of this Final Order was fair and equitable under the circumstances and complied in all respects with Bankruptcy Code § 102(1) and Bankruptcy Rules 2002, 6004 and 6006.

*Approval of Sale*

4.     The sale of the Acquired Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto) and the transactions contemplated thereby, and the Purchaser's credit bid are authorized and approved in all respects.

5.     The sale of the Acquired Assets to and the consideration provided by the Purchaser under the Agreement, including the Purchase Price, are fair and reasonable and shall

14

be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any applicable non-bankruptcy law.

6. The Purchaser is hereby granted and is entitled to all of the protections provided to a good faith buyer under Bankruptcy Code § 363(m).

7. The Debtors are hereby authorized and directed to fully assume, perform under, consummate and implement the terms of the Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, the Interim Order, this Final Order and the sale of the Acquired Assets contemplated hereby and thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may be necessary or otherwise reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession any portion or all of the Acquired Assets, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Agreement, without any further corporate action or need to obtain further orders of this Court. The Purchaser shall have no obligation to proceed with the Closing as specified in the Agreement until all conditions precedent to its obligations to do so have been met, satisfied or waived.

8. The Debtors and each other person or entity having duties or responsibilities under the Agreement, any agreements or documents related thereto, the Interim Order or this Final Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the Agreement, to carry out all of the provisions of the Agreement and any related agreements or documents; to issue, execute, deliver, file, and record, as appropriate,

15

the documents evidencing, consummating, effectuating and implementing the sale of the Acquired Assets and the Agreement and any related agreements; to take any and all actions contemplated by the Agreement, any related agreements or documents, the Interim Order or this Final order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements or documents, the Interim Order and this Final Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court or further action by their respective directors, officers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities. The secretary or any assistant secretary of the Debtors shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable). The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Agreement, any related agreements or documents, the Interim Order and this Final Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are

16

necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Final Order shall constitute all of the approvals and consents, if any, required by the corporation laws of the State of Delaware and all other applicable business corporation, trust, and other laws of the applicable governmental units with respect to the implementation and consummation of the Agreement, any related agreements or documents, the Interim Order and this Final Order, and the transactions contemplated thereby and hereby.

9. Effective as of the Closing Date, the sale of the Acquired Assets by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Acquired Assets notwithstanding any requirement for approval or consent by any person and shall vest the Purchaser with all right, title and interest of the Debtors in and to the Acquired Assets, free and clear of all Liens, Claims, and Interests of any kind, pursuant to Bankruptcy Code § 363(f).

10. The sale of the Acquired Assets is not subject to avoidance pursuant to Bankruptcy Code § 363(n).

11. Notwithstanding anything to the contrary in this Final Order, the Motion or the Agreement, the Acquired Assets shall not include any assets to which the Debtors do not have title and the right to sell. The Court shall retain jurisdiction to hear any disputes that exist as to whether the Debtors have title to and/or the right to sell particular assets.

*Transfer of Assets*

12. Pursuant to Bankruptcy Code § 1141(c), the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to Bankruptcy Code §§ 105, 363(b), 1123 and 1141, to sell the Acquired Assets to the Purchaser pursuant to the terms of the Agreement, the

Interim Order and this Final Order. The sale of the Acquired Assets shall vest the Purchaser with all right, title and interest of the Debtors in and to the Acquired Assets free and clear of any and all Liens, Claims, and Interests and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising before or after the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise, with all such Liens, Claims, and Interests to attach only to the net proceeds of the sale (if any) with the same priority, validity, force, and effect, if any, as they now have in or against the Acquired Assets, subject to all claims and defenses the Debtors may possess with respect thereto. No holder of any Liens, Claims, or Interests in the Acquired Assets shall interfere with the Purchaser's use and enjoyment of the Acquired Assets based on or related to such Liens, Claims, and Interests, or any actions that the Debtors may take in their chapter 11 cases, and no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated herein or by the Agreement.

13. The provisions of this Final Order that authorize the sale of the Acquired Assets free and clear of Liens, Claims, and Interests shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments, agreements or documents in order to effectuate, consummate and implement the provisions of this Final Order. However, the Debtors and the Purchaser, and each of their respective officers, directors, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Purchaser deem necessary or appropriate to implement,

18

consummate and effectuate the terms of the Agreement and this Final Order. Moreover, the Purchaser and its successors and assigns are designated and appointed the Debtors' true and lawful attorney and attorneys, with full power of substitution, in the Debtors' name and stead, on behalf and for the benefit of the Purchaser, its successors and assigns, to demand and receive any and all of the Acquired Assets and to give receipts and releases for and in respect of the Acquired Assets, or any part thereof, and from time to time to institute and prosecute in the Debtors' name, for the benefit of the Purchaser, its successors and assigns, any and all proceedings at law, in equity or otherwise, which the Purchaser, its successors and assigns, may deem proper for the collection or reduction to possession of any portion or all of the Acquired Assets, and to do all acts and things with respect to the Acquired Assets which the Purchaser, its successors and assigns, shall deem necessary or desirable. The foregoing powers are coupled with an interest and are and shall be irrevocable by the Debtors.

14. The Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary or reasonably requested by the Purchaser to release any Liens, Claims, or Interests of any kind or nature whatsoever against any portion or all of the Acquired Assets, as such Liens, Claims, or Interests may have been recorded or may otherwise exist. If any person or entity that has filed financing statements or other documents or agreements evidencing any Liens, Claims, or Interests in or against the Acquired Assets shall not have delivered to the Debtors prior to the Closing Date after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens, Claims, or Interests that the person or entity has with respect to any portion or all of the Acquired Assets, the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with

19

respect to such Acquired Assets prior to the Closing Date, and the Purchaser is authorized to file such documents after the Closing Date.

15.     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date; provided, however, that the Purchaser shall be responsible for any and all liability related to Purchaser's use after the Closing of any such license, permit, registration, and governmental authorization or approval.

16.     All of the Debtors' interests in the Acquired Assets shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser. Upon the occurrence of the Closing, the Interim Order and the Final Order shall each be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets acquired by the Purchaser under the Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Acquired Assets to the Purchaser.

17.     Except as expressly provided in the Agreement, the Purchaser is not assuming nor shall it or any affiliate of the Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors of any kind or nature whatsoever relating to or arising from the Debtors' ownership or use of the Acquired Assets prior to the consummation of the transactions contemplated by the Agreement, or any liabilities calculable by reference to the Debtors or their operations or the Acquired Assets, or relating to

20

continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Agreement, which liabilities, debts, and obligations are hereby cancelled, discharged and extinguished insofar as they may give rise to liability, successor or otherwise, against the Purchaser or any of its affiliates.

18.     All persons or entities, on or after the Closing Date, in possession of some or all of the Acquired Assets are directed to surrender possession of the Acquired Assets to the Purchaser at such time as the Purchaser may request. The Debtors will provide the Purchaser with commercially reasonable assistance in locating, transporting, collecting and otherwise taking possession of the Acquired Assets; provided, however, that the Debtors shall have no obligation to incur any expenses in connection with the providing of such assistance, except to the extent required in the DIP Facility Documents (as defined in the Final DIP Order) and in accordance with the Budget (as defined in the Final DIP Order).

19.     In connection with any receivable with respect to which the Debtors may have set-off rights or other rights to recovery based on rights in the obligor's property held by the Debtors, the Purchaser may elect to postpone the transfer of title of such receivable and shall retain its lien on such receivable, and the Debtor and Purchaser shall cooperate in the collection of such receivable.

*Additional Provisions*

20.     The Committee and UBP Acquisition Corp., in its role as Purchaser, secured lender under the Debtors' prepetition credit agreement (the "Prepetition Lender") and secured lender under the Debtors' postpetition debtor-in-possession financing facility (the "DIP Lender"), shall support a liquidating plan, or with the consent of each of the Debtors, the DIP Lender and the Committee, a structured dismissal order: (a) embodying the terms of the Final

21

DIP Order, the Bid Procedures Order and this Final Order; (b) providing for the waiver of the DIP Lender's and Prepetition Lender's deficiency claims upon the Excluded Property; and (c) providing broad releases to (i) Jeff Church (the Debtors' CEO and a member of the Debtors' board of directors); (ii) Kerry Shiba (a member of the Debtors' board of directors); (iii) Greg Waller (the Debtors' CFO); and (iv) Dan Scouler (the Debtors' CRO), Scouler & Company and its professionals. In addition, the Committee and its professionals shall be prohibited from encouraging the members of the Committee to fail to support such liquidating plan.

21.     Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all agreements, documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Final Order.

22.     The transfer of the Acquired Assets to Purchaser under this Final Order is exempt from any transfer or stamp tax under Bankruptcy Code § 1146(a), whether imposed or assessable against the Debtors or Purchaser.

23.     The Purchaser has not assumed or is otherwise not obligated for any of the Debtors' liabilities, and the Purchaser has not purchased any of the Excluded Assets or the Excluded Property. Consequently, all persons, Governmental Units (as defined in Bankruptcy Code §§ 101(27) and 101(41)) and all holders of Liens, Claims, or Interests based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Purchaser or the Acquired Assets to recover on any Liens, Claims, or Interests or on account of any liabilities of the Debtors. All persons holding or asserting any Interest in the Excluded Assets are hereby enjoined from asserting or prosecuting such Liens, Claims, or Interests or other cause of action against the Purchaser or the Acquired Assets for any liability associated with the Excluded Assets.

22

24.     The Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability or similar liability. Neither the purchase of the Acquired Assets by the Purchaser or its affiliates, nor the fact that the Purchaser or its affiliates (including any of its successors or assigns) are using any of the Acquired Assets previously operated by the Debtors, will cause the Purchaser or any such affiliates to be deemed a successor in any respect to the Debtors' businesses within the meaning of, or otherwise create any liability under, any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine. Purchaser and its affiliates (including any of its successors or assigns) shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 210 et seq.), or any state law equivalent thereof, or the Comprehensive Environmental Response Compensation and Liability Act, ERISA, or any foreign, federal, state or local labor, employment, benefits, wage, or environmental law by virtue of the Purchaser's purchase or use of the Acquired Assets.

25.     Pursuant to Bankruptcy Code §§ 105, 363, 1123 and 1141, all persons and entities, including, but not limited to, the Debtors, the Committee, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding any Liens, Claims, or Interests of any kind or nature whatsoever against, in or with respect to any of the Debtors or the Acquired Assets (whether legal or

equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Acquired Assets, the operation or cessation of any of the Debtors' businesses prior to the Closing Date, the DIP Loan, the Purchaser's prepetition acquisition of the secured debt of the Debtors, the Purchaser's prepetition strict foreclosure on certain of the Debtors' assets, or the transfer of the Acquired Assets to the Purchaser or any of its affiliates or assigns, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Liens, Claims, or Interests against the Purchaser or any affiliate, successor or assign thereof, including, without limitation, Dayton Superior Corporation, and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates, shareholders, financial advisors and representatives (each of the foregoing solely in their capacity as such), or the Acquired Assets; provided, however, that the relief granted under this paragraph 27 shall not be interpreted to bar, estop or enjoin any claims for breach of the Purchaser's obligations arising under this Final Order, the Final DIP Order, or any other order of the Court to which the Purchaser consents.

26.     Subject to the terms of the Agreement, the Agreement and any related agreements or documents may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Agreement and any related agreements or documents.

27.     The failure specifically to include any particular provisions of the Agreement or any related agreements or documents in this Final Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Purchaser

that the Agreement and any related agreements or documents are authorized and approved in their entirety with such amendments or modifications thereto as may be made by the parties in accordance with this Final Order prior to the Closing Date.

28.     No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the transactions contemplated by the Agreement.

29.     To the extent any provisions of this Final Order conflict with the terms and conditions of the Agreement, this Final Order shall govern and control.

30.     Nothing in this Final Order shall alter or amend the Agreement and the obligations of the Debtors and the Purchaser thereunder.

31.     The Interim Order, this Final Order and the Agreement shall be binding upon and govern the acts of all Persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case if this case is converted from chapter 11, the Committee, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Acquired Assets.

32.     The provisions of this Final Order are non-severable and mutually dependent.

33.     Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in these chapter 11 cases, or in any subsequent or converted cases of the

K&E 17644229.2

Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Final Order.

34.     Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Final Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the Agreement at any time, subject to the terms of the Agreement. In the absence of any person or entity obtaining a stay pending appeal, if the Debtors and the Purchaser close under the Agreement, the Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protections of Bankruptcy Code § 363(m) as to all aspects of the transactions under and pursuant to the Agreement if this Final Order or any authorization contained herein is reversed or modified on appeal.

35. This Court shall retain exclusive jurisdiction to enforce the terms and provisions of the Interim Order, this Final Order, and the Agreement in all respects and to decide any disputes concerning the Interim Order, this Final Order, the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement, the Interim Order and this Final Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Acquired Assets and all issues and disputes arising out of, related to or in connection with the relief authorized herein, inclusive of those concerning the transfer of the Acquired Assets free and clear of all Liens, Claims, and Interests.

Wilmington, Delaware
Dated: September ‾l‾ , 2010

THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

27