**Exhibit E**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| NORTH BAY GENERAL HOSPITAL, INC., | § | Case No. 05-32121 |
| | § | |
| Debtors. | § | (Chapter 11) |

**OBJECTION OF DEBTOR TO FINAL APPLICATION FOR
ALLOWANCE OF COMPENSATION AND REIMBURSEMENT
OF EXPENSES OF ATTORNEYS FOR THE COMMITTEE FOR
THE PERIOD APRIL 25, 2005 THROUGH SEPTEMBER 30, 2006**
[Relates to Docket Number 451]

COMES NOW North Bay General Hospital, Inc. ("Debtor") and files this Objection to the fees and expenses sought by Arent Fox PLLC ("Arent Fox") in its Final Application for Allowance of Compensation and Reimbursement of Expenses of Attorneys for the Committee for the Period April 25, 2005 Through September 30, 2006 ("Fee Application"), and for cause would show this Court as follows:

### I. Background

1.  After interviewing with the Official Unsecured Creditors Committee in a "beauty pageant" to be hired as counsel, Arent Fox was hired as Committee counsel. Upon information and belief, the only other firm seeking to be employed by the Committee was the Houston, Texas firm of Diamond McCarthy Taylor Finley & Lee,

LLP. The Committee elected to hire Arent Fox.[1] Committee counsel now seeks fees and expenses in excess of the amount awarded to Debtor's counsel in a case where the same result could have been accomplished for far less cost in legal fees by Committee counsel.

2. Arent Fox over-characterizes the efforts that were reasonably necessary by the Committee in this case. The Committee attempts to take credit for prodding the Debtor to propose and confirm a 100% plan. The fact is that from an early stage of this case it has always been the Debtor's intention to propose a 100% plan. The first plan filed by the Debtor, which was filed without consensus with the Committee, was a 100% plan which also contained an injunction precluding the Debtor's parent from transferring assets, a requirement for transfer restrictions on new stock to be issued by the Debtor and a requirement that the Debtor's parent enter into a tolling agreement. All of these

---

[1] Based upon information and belief, there may be potential ethical and/or failure to disclose issues regarding the circumstances under which the Committee was influenced to engage Arent Fox. The Debtor is informed and believes that during the initial Committee meeting an individual Committee representative aggressively advocated the hiring of Arent Fox. The Debtor is further informed and believes that this individual was not a paid employee of the corporate Committee member whom he ostensibly represented, and that, shortly before the initial Committee meeting, that individual may have gratuitously "volunteered" to "represent" the corporate Committee member as a "proxy" at no cost for reasons that are not presently apparent. The Debtor is further informed and believes that the referenced individual may be a New York turnaround professional whose prior relationships, if any, with Arent Fox are not clear and have never been disclosed by Arent Fox in this case. The Debtor is further informed and believes that the corporate Committee member resigned from the Committee very shortly after the Committee voted to hire Arent Fox, and that: (i) the individual (who aggressively promoted the hiring of Arent Fox) and (ii) the company/Committee member he purportedly represented thereafter disappeared from further participation in the case. No disclosure was ever made in this case of any connections between Arent Fox and the above-referenced "proxy" individual. See, *I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 355 (5th Cir. 2005) (holding that all fees and expenses incurred prior to full disclosure may be disallowed).

The Debtor reserves the right to seek further discovery regarding the potential issues arising from this situation in connection with the Court's consideration of Arent Fox's Fee Application, and to supplement its Objection if the facts so warrant. In light of the Court's previously-expressed admirable sensitivity to the critical need for public faith in the judicial process, the Debtor believes that the Court's consideration of Arent Fox's Fee Application ought to address any ethical solicitation issues pertaining to Arent Fox's engagement as Committee counsel and the Debtor requests that the Court issue an scheduling order with respect to the Fee Application which will allow sufficient time for investigation of the above-stated issues.

features of the Plan were the result of negotiation between the Debtor and its parent, and are not reasonably attributable to efforts of the Committee.

3. The Debtor filed two plans in this case, both of which proposed 100% payment of all creditors. The first plan proposed to fund the reorganization through payments over time from the revenue of the Debtor. The second plan filed by the Debtor, with the support of the Committee, contained some additional provisions, most notably the requirement that the Debtor's parent contribute substantially all of its assets toward the funding of the Plan.[2] This second plan also proposed 100% payment over time funded principally by the Debtor's revenue. The similarities between the two plans are significantly more common than the differences. The funding source for payment of general unsecured claims is the same in both plans – the future revenue of the Debtor. The Committee's activities in this case did nothing to improve the Debtor's revenue. Rather, it was the efforts of Debtor's management (whom the Court has to date not allowed to be paid), which resulted in improvement of the Debtor's operations and development of a business plan.

4. From the beginning of this case, the Debtor has sought to pay, and proposed to pay, all unsecured creditors in full from its future revenue. While the Committee's role in developing the confirmed Plan was in some cases constructive, the costs it seeks to impose upon the estate for such contributions are out of proportion to the benefits achieved.

5. Nor can the Committee legitimately take credit for discovering the existence of potential claims by the Debtor against its parent. These claims were

---

[2] Based upon the unexpectedly large size of the fee applications of Arent Fox and Mr. Skelton it appears that if the Court approves these fees and expenses, the majority of the funds contributed by the Debtor by its parent will go to Committee counsel.

identified and investigated early in the case (before the Committee was appointed) as a result of disclosures in Debtor's counsel's retention pleadings. The United States Trustee was heavily involved in seeking information about the nature of such claims. An important basis for the Debtor's confirmed plan was an agreement by the Debtor and the Committee that further investigation of the claims was moot and unnecessary if the Debtor's parent was contributing its assets to the funding of the Plan.

## II. Objections

### A. The Rates Charged by Committee Counsel are Excessive.

6. When the Committee sought to retain Arent Fox as counsel, the Debtor expressed its concern to the Court regarding the hourly rates charged by this New York/Washington D.C. firm. The Court's order approving Arent Fox's employment reserved the Court's right to review the reasonableness of Arent Fox's fees/expenses, as is customary. The Debtor's initial concerns about Arent Fox's rates stemmed from the fact that Arent Fox's employment application pleadings disclosed that Arent Fox's "East Coast rates" were as in some cases in excess of $600/hour.[3] According to Arent Fox's Fee Application, the average blended hourly rate for its services is approximately $352/hour, which is approximately equal to the *partner* rate charged by Debtor's counsel for its services. The Debtor asserts that the hourly rates charged by Arent Fox are in excess of the reasonable hourly rates charged in this District for representation of clients of this nature.

---

[3] As noted elsewhere in this Objection, Arent Fox increased its hourly rates during the case, without disclosure to the Court or the Debtor and without explanation in its Fee Application.

4

**B.     The Time Spent by Arent Fox is Excessive.**

7.      The amount of time Arent Fox billed is excessive. The fees sought by the Committee (especially factoring in Mr. Skelton's recently-asserted fee request) are in excess of the fees sought by Debtor's counsel. This is inverse to the typical situation.[4] Arent Fox was presented with a 100% Plan out of the bag. It somehow managed to bill over $200,000 in efforts to confirm that this Plan was feasible and investigate the possibility of selling the Debtor (which the Debtor had already done itself). The size of these fees is unreasonable in relation to the work that reasonably was required. In addition, the number of Arent Fox attorneys who worked on this case is excessive. The Fee Application indicates the participation of 7 partners, 12 associates and 3 para-professionals on this case. Counsel has a responsibility to exercise billing judgment. The Debtor is a small, community rural hospital, not a mega-medical center. "Investigating" every possible issue in a case is not warranted when the fees out-weigh the benefit.

**C.     Arent Fox has Failed to Take Reasonable Efforts to Avoid Duplication of Services With Co-Counsel, Barnet Skelton, as Required by the Order Approving Arent Fox's Retention.**

8.      The Court's order approving the retention of Arent Fox states:

Arent Fox shall use all reasonable efforts to avoid duplication between its services and the services of local counsel for the Committee, Barnet B. Skelton, Jr., whose scope of responsibility generally shall consist of routine appearances, local support and issues specific to Texas or Fifth

---

[4] See *In re Teraforce Tech Corp*, 2006 Bank. LEXIS 1866 (Bankr. N.D. Tex. 2006), where the Court stated:

> The Court agrees with the Objecting Parties' macro-level of analysis regarding LLS's fees for its work on the Joint Plan. While LLS was clearly unhappy with the provisions of the Joint Plan and sought through objections to contest and alter the Joint Plan, it was unreasonable and unnecessary for LLS to incur fees at an approximate one-to-one ratio with Munsch Hart. In the Court's view, LLS's fees are exceedingly high for the work it did on the Joint Plan.

5

Circuit law; provided, however, that, where circumstances so require, this scope of responsibility may be altered so long as counsel use their reasonable best efforts to avoid duplication between services.

9. The reason for this limitation is that the Debtor objected to Arent Fox and Mr. Skelton being "co-counsel," (as opposed to characterizing Mr. Skelton's role as "local counsel").[5] To resolve any ambiguity regarding the scope of counsels' responsibilities, Arent Fox assured counsel for the Debtor that Mr. Skelton's intended role was with respect to state law issues and local, routine appearances. To memorialize this understanding, Arent Fox agreed to inclusion of the above-quoted language in the order approving Arent Fox's employment.

10. A few days before objections to Arent Fox's fee application were due, Mr. Skelton filed his fee application, which counsel for the Debtor has not yet had an opportunity to review in detail.[6] However, a cursory review of Mr. Skelton's application indicates scant adherence to the above-quoted limitation in the Court's employment order. Much of the work described in Mr. Skelton's application appears to clearly duplicate the same work described in Arent Fox's fee application. This case involved little, if any, issues specific to state or Fifth Circuit law and thus it is surprising to the Debtor that Mr. Skelton's fee application is as large as it is. Arent Fox's fee application contains no meaningful explanation of the manner in which the parties used their reasonable best efforts to "avoid duplicating services." To the contrary, a cursory review appears to indicate substantial, unexplained duplication of services.

---

[5] The need for a firm the size and stature of Arent Fox to have "co-counsel" has never been self-evident to the Debtor.

[6] As noted in this Objection, both Arent Fox's and Mr. Skelton's fee applications appear to have been filed late.

6

11. The Debtor further asserts that realistic consideration of Arent Fox's fee application can only be conducted in conjunction with simultaneous consideration of its "co-counsel's" fee application in order to fully comprehend and assess the magnitude of fees and expenses sought by the Committee.

12. Arent Fox should also be equitably or judicially estopped (*i.e.*, its requested fees should be debited) from recovering the fees it seeks, as a result of issues raised in Mr. Skelton's fee application. In connection with approval of its Disclosure Statement, the Debtor requested from Arent Fox a non-binding estimate of the Committee's fees and expenses.[7] This estimate was included in the Court-approved Disclosure Statement. However, in connection with disclosure of such fees/expenses, Arent Fox never indicated that the fees and expenses of its supposedly "role-limited" "co-counsel" would be material or that it had found that it was unable to comply with the Court's order avoid to delegating main case work to Mr. Skelton.

**D. Arent Fox Improperly Charges Travel Time at Full Rates.**

13. In several instances Arent Fox appears to have charged its full hourly rates for travel time to and from Houston.[8] The Debtor asserts that this represents excessive billing which the estate should not be required to pay.

**E. Arent Fox Should Not be Compensated for Hourly Rate Increases Not Disclosed to the Court or the Debtor.**

14. Although it is not unusual for law firms to periodically change rates charged to clients, Arent Fox's application contains no explanation of how or why this

---

[7] Arent Fox subsequently notified the Debtor that its fees might be higher than estimates due to (its characterization of) unexpected delays in connection with confirmation diligence issues (the Debtor disputes the reasonableness of this position in other parts of this Objection). However, at no time did Arent Fox ever notify Debtor that the fee of its counsel were material or anything close to the magnitude of fees now asserted by Mr. Skelton.

[8] It is also unclear whether air travel expenses were at coach prices.

7

was done in this case or why such rate increases are appropriate. In several instances, the increases are not trivial.[9] The Debtor also notes that no increases were ever explicitly disclosed to the Court or the Debtor (the entity expected to pay the bills), and it unclear to the Debtor whether such increases were even explicitly disclosed to the Committee.[10]

**F.  Arent Fox's Fee Application is Filed Late in Violation of the Plan and Post-Confirmation Order.**

15. The Court's Order Confirming Chapter 11 Plan was entered on June 30, 2006.

The Plan states that the Effective Date shall be:

The date upon which the transactions contemplated in this Plan shall be consummated, which shall not be later than the thirtieth day after the Confirmation Date which is a Business Day.[11]

The Plan further states that:

Any Holder of an Administrative Claim against the Debtor, including final applications for allowance of Professional Fees incurred through and including the Effective Date, except for expenses incurred in the ordinary course of operating the Debtor's business, shall file a proof of such Claim or application for payment of such Administrative Claim, on or within sixty (60) days after the Effective Date, with actual service upon counsel for the Debtor, and counsel for the Committee and provide such other notice as required by the Bankruptcy Code and the Bankruptcy Rules, or such Holder's Administrative Claim will be forever barred and extinguished and such Holder shall, with respect to any such Administrative Claim be entitled to no distribution and no further notices.

The Court's Post-Confirmation Order, entered on July 12, 2006 states that:

All applications for award of compensation or expenses to a trustee, examiner, attorney or other professional person, and all other motions for

---

[9] As best as can be determined from Arent Fox's Fee Application, Jeff Rothleder's rate increased from $260/hour to $305/hour during the case. Schuyler Carroll's hourly rate increased from $445/hour to $475/hour. Jill Steinberg's hourly rate increased from $420/hour to $460/hour.

[10] Debtor's review of Arent Fox's Fee Application had not uncovered any reference to discussions with the Committee regarding the nature, basis or acceptability of hourly rate increases.

[11] The thirtieth day after the Confirmation Order was entered was July 30, 2006, a Saturday. Thus the Effective Date was July 31, 2006.

8

allowance of administrative expenses shall be served and filed within 60 days after the Effective Date.

16. Under the Plan and the Post-Confirmation Order, final fee applications were due 60 days after the Effective Date. The Effective Date occurred on July 31, 2006, which was the 30th business day after entry of the Confirmation Order and also the date on which the Debtor's exit financier paid off the Debtor's DIP lender and the Debtor received the AMT Funds as required by the Plan.[12]

17. Arent Fox filed its Fee Application on October 13, 2006, significantly past the deadlines established in the Plan and the Post-Confirmation Order. Under the terms of the Plan, professional fee claims filed after 60-day deadline are "forever barred and extinguished and such Holder shall, with respect to any such Administrative Claim be entitled to no distribution and no further notices."

### G. Arent Fox's "Objection" to the Debtor's "Refusal" to Coordinate the Filing of Fee Applications Has no Basis in Law.

18. In its Fee Application, Arent Fox complains that Debtor's counsel has "refused" to cooperate in "coordinating" the filing and scheduling of fee application hearings. First, Debtor's counsel is aware of no such requirement in the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, Local Rules, or guidelines for practice in this Court.

19. Second, and more importantly, when Arent Fox first suggested its "coordination" concept, it indicated that its Fee Application was ready to file. Debtor's counsel responded that one of its attorneys who was working on the file had recently undergone brain surgery, which was anticipated to result in a delay in the filing of

---

[12] For this reason, Debtor's counsel filed its final fee application on September 27, 2006 in order to adhere unambiguously to the 60-day deadline.

9

Debtor's counsel's fee application. Debtor's counsel, however, encouraged Arent Fox to file its Fee Application, since Arent Fox had indicated that it was "ready." Instead, presumably for some strategic reason Arent Fox indicated that it would wait to file it Fee Application.

20.     Debtor's counsel ultimately filed its fee application shortly before a conservative interpretation of the deadline: "60 days after the Effective Date." Arent Fox, for reasons unexplained in its Fee Application, and despite the fact that it had previously stated that its Fee Application was "ready to file" substantially before the deadline, chose to wait until substantially after the Effective Date to file its Fee Application.

**H.     Arent Fox's Fee Application Inappropriately Covers Periods Past the Effective Date.**

21.     The Plan indicates that final fee application should be for services through the Effective Date. Arent Fox's Fee Application extends to the end of September, past the Effective Date. Any fees or expenses sought for services after the Effective Date should be sought in the manner required in the Plan and should not be allowed as part of Arent Fox's Final Fee Application.

**I.     Arent Fox's Telecopy Charges Appear to be Excessive.**

22.     The expense breakdown in the Exhibit A to Arent Fox's Fee Application appears to indicate that Arent Fox bills outgoing telecopies at rates in excess of $1/page, which is excessive and unreasonable. Reimbursement for outgoing telecopy expenses should be limited to no more than the actual long distance cost, if any, involved in the telecopy. Moreover, an explanation should be provided as to why the documents which

were telecopied could not be scanned and emailed, which would have entailed substantially less cost.

### Prayer

WHEREFORE PREMISES CONSIDERED, North Bay General Hospital, Inc. prays that the Court sustain this Objection and for such other and further relief to which it is justly entitled.

Respectfully submitted this 1st day of November, 2006.

McCLAIN, MANEY & PATCHIN, P.C.

By: *Daniel F. Patchin* by permission
JeR
Daniel F. Patchin
State Bar Number: 15561400
711 Louisiana Street, Suite 3100
South Tower Pennzoil Place
Houston, Texas 77002
Telephone: (713) 654-8001
Telecopy: (713) 654-8818

ATTORNEYS FOR NORTH BAY
GENERAL HOSPITAL, INC.

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and complete copy of the above and foregoing document was served on November 1, 2006, by first class mail, postage prepaid, and/or by Pacer, to Arent Fox PLLC, 1675 Broadway, New York, New York 10019.

_____
J. Casey Roy

F:\WP\Client-Matters\North Bay General Hospital, Inc\Pleadings\CommitteeFeeAppObjection.11.1.06.doc