**Exhibit K**

Case 05-48509   Document 416   Filed in TXSB on 04/09/2007   Page 1 of 22

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| **TKO SPORTS GROUP USA LIMITED** | § | **CASE NO. 05-48509** |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |

### RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTOR'S SUPPLEMENTAL OBJECTION TO FINAL FEE APPLICATION OF ARENT FOX LLP [DOC. NO. 406]

TO:   THE HONORABLE JEFF BOHM,
      UNITED STATES BANKRUPTCY JUDGE

The Official Committee of Unsecured Creditors (the "Committee") of TKO Sports Group

USA Limited (the "Debtor"), by and through its undersigned counsel, Arent Fox LLP ("Arent

Fox") and Barnet B. Skelton, Jr., P.C., submits this Response (the "Response") to the

Supplemental Objection (the "Supplemental Objection") of the Debtor dated April 3, 2007

[Docket No. 406] to the Final Fee Application of Arent Fox, PLLC (the "Final Fee

Application"), as counsel to the Committee ("Committee Counsel") and respectfully represents

as follows:[1]

---

[1] The Committee denies each and every factual allegation contained in the Debtor's Supplemental Objection except admits:  Olympic International Limited ("Olympic"), a foreign corporation located in Asia, was appointed to and continues to be a member of the Committee; Olympic was selected and acted and continues to act as the Committee Chair; David Barr, a director of Olympic, participated as representative of Olympic on the Committee; from time to time Joseph Myers acted as the U.S. Representative and proxy for Olympic; Olympic, through Messrs. Barr and Myers, was an active member of the Committee; the rates charged by Arent Fox were subject to periodic review and adjustment, after disclosure to the Committee and in accordance with the terms of the retention, the rates were adjusted each calendar year; as an accommodation to the Committee the rates charged by the Financial Restructuring and Bankruptcy Group were the Arent Fox "Preferred Rates" (all other Arent Fox attorneys billed at their standard hourly rates); Joseph Myers was and still is the Creditor Trustee of Sitnal, Inc. f/k/a Lantis Eyewear Corporation Creditor Trust, Creditor Trustee of the Tactica International Inc. Creditor Trust and Creditor Trustee of Cross Media Liquidating Trust and Arent Fox has been engaged by the trusts in accordance with the engagement letter in each case; Joseph Myers had no involvement in the Tactica bankruptcy case prior to his appointment as Creditor Trustee; the Committee interviewed and considered three law firms prior to its selection of Arent Fox as counsel to the Committee and Olympic, though Mr. Myers did not support Arent Fox but supported and voted for a California law firm; and prior to the Committee selecting Joseph Myers as creditor representative under Section 5.3.2 of the Debtor's confirmed plan (the "Creditor Representative"), the Committee also considered Jeffrey Sutton

Case 05-48509     Document 416     Filed in TXSB on 04/09/2007     Page 2 of 22

## Preliminary Statement

1.    After one reads the Debtor's recent pleading -- which is yet another ruthless attack on the Committee and its members and professionals -- it becomes very clear that the Debtor's strategy has no basis in fact or law and that the Supplemental Objection, as well as the Debtor's Initial Objection, have no merit.[2] It seems that the Debtor and Reorganized Debtor, an entity allegedly quite strapped for cash upon its recent emergence from Chapter 11, rather spend the time, effort and resources by having its attorneys carry on an unjustified and unprofessional battle against the Committee and its members and professionals, rather than recognizing the Committee's success and achievements in this case and focusing on the company and revitalizing it so that it can survive and not face the financial predicament it was in not too long ago.

---

[Continuation of Footnote]
of Mahoney Cohen & Company, CPA, P.C., and Barnet Skelton and Mr. Myers did not participate in the Committee's deliberation or selection of the Creditor Representative. For a true and correct statement of facts, which facts are derived from the record of this case and admissible evidence, the Court is referred to the Committee's pleadings with respect to this contested matter, including this Response.

[2] On April 5, 2007, the Committee filed a Motion to Strike the Debtor's Supplemental Objection and Combined Objection to the First and Second Supplements to the Final Fee Application [Docket No. 408] (the "Motion to Strike") and motion to have Motion to Strike heard on an emergency basis [Docket No. 409], based upon on a number of grounds, including that the Debtor's filings were untimely, not authorized under the Bankruptcy Rules, Local Rules or Chambers Rules or by the parties pursuant to an agreed-upon schedule, and had no evidentiary basis and violated the Federal Rules of Evidence. The Motion to Strike also seeks to remove the Supplemental Objection from the docket since the pleadings serves no legitimate purpose, was filed in bad faith and contains untrue inflammatory and scandalous accusations and allegations. The Debtor filed an objection to the Motion to Strike on April 6, 2007 [Docket No. 411], to which the Committee then filed a Response and Declaration in support of having the Motion to Strike heard on an emergency basis [Docket Nos. 413 & 414] on the same day. On April 9, 2007, the Debtor filed a stipulation and notice [Docket No. 415] (the "Withdrawal Stipulation"), correcting a misstatement in the Supplemental Objection and requesting that it be considered a trial brief. In the Withdrawal Stipulation the Debtor admits that the Committee never agreed to the admission of Mr. Myers' deposition with exhibits into evidence, which serve as the cornerstone of the Supplemental Objection.

On October 10, 2006, the Debtor filed a Combined Objection [Docket No. 342] to the Final Fee Applications filed by Arent Fox and Barnet B. Skelton Jr., P.C., the Committee's local counsel (the "Initial Objection"). The Debtor's objection with respect to Mr. Skelton's final fee application was subsequently resolved. On February 8, 2007, the Committee filed its Response to the Initial Objection [Docket No. 391] (the "Initial Fee Response"), which arguments the Committee hereby incorporated by reference.

2.    It is critical that the Court analyze the Debtor's objections to Committee Counsel's fees in the context of the history of this case, where the Debtor and its professionals attempted to attack the Committee and its members and professionals on all fronts throughout this case -- starting with objecting to the retention of Arent Fox as Committee Counsel, objecting to the Committee's retention of accountants and financial advisors, then seeking to vacate an order that this Court entered approving the retention of Committee's selected accountants and financial advisors. The Committee was able to successfully defend these attacks and this Court allowed them to retain the very professionals which they selected based upon the Committee members' informed decisions.

3.    Once it was past the "retention" fight, the Committee was then faced with the Debtor's inappropriate tactics and frivolous actions which required the Committee and its professionals to expend an enormous amount of time and resources to address, including the Debtor's refusal to provide the Committee with critical information so that it could satisfy its statutory and fiduciary duties to its constituents; the Debtor's attempts to enter into transactions and strategies only designed to benefit insiders of the Debtor; the Debtor's attempt to enter into sweetheart deal with its lender, which deal only benefited the insiders of the Debtor, that violated Bankruptcy Rule 9019; the Debtor's failure to defend a lift stay motion filed by the very same lender; the Debtor's attempt to cease operations in violation of Section 363 of the Bankruptcy Code; the Debtor's attempt to convert this case to a Chapter 7 liquidation ....and the list goes on. We believe the Initial Fee Response sufficiently lays out the multitude of matters which the Committee and its professionals were forced to address and take positions on, resulting in more work, more expenses and more delay due to the Debtor's frivolous and at times questionable conduct.

4.      After the Committee was successful in getting past the obstacles created by the

Debtor, the parties were successful in formulating a consensual plan of reorganization which

provided for a reallocation of the secured lender's collateral to and for the benefit of unsecured

creditors and a mechanism by which the unsecured creditors could realize the very value that the

Committee and its professionals worked so hard to achieve and having a right sized, restructured

and viable reorganized debtor emerge from bankruptcy, notwithstanding the hurdles created by

the Debtor. The plan ultimately got confirmed, the Debtor's professionals got paid, which brings

us to the present, where the Committee and its professionals are not faced with having to defend

the very hard work that resulted in overcoming the impediments created by the Debtor, getting a

consensual plan confirmed and providing value to the Debtor's unsecured creditors.

5.      No other party, including the Office of the United States Trustee, has objected to

the Final Fee Application, or the First and Second Supplements to the Final Fee Application.

The Court itself approved Arent Fox's Interim Fee Application (defined below), which covered

the period from November 28, 2005 through May 31, 2006, approximately six (6) months worth

of work, and in fact explicitly found and ruled that the fees of Committee Counsel were

reasonable and appropriate and the time records were accurate and helpful and approved them

accordingly. The Final Fee Application at issue here was filed less than one month after the

hearing where the Court approved the Interim Fee Application and covered the fee period from

June 1, 2006 to September 5, 2006, approximately four (4) months worth of work.[3]

---

[3] Arent Fox filed a First Supplement and Second Supplement to its Final Fee Application [Docket Nos. 373 and 386, respectively] for services performed and expenses incurred subsequent to the filing of the Final Fee Application, a majority of such services were related to defending the Final Fee Application and drafting and preparing the Initial Fee Response. The Debtor filed a Combined Objection to the First Supplement and Second Supplement to its Final Fee Application on April 3, 2007 [Docket No. 407]. The Committee will be filing a separate response to this Combined Objection.

Case 05-48509     Document 416     Filed in TXSB on 04/09/2007     Page 5 of 22

6.     How has the Debtor strategized its most recent attack on the Committee and its professionals? One, the Debtor again attempts to support its objections to the Final Fee Application by claiming that the work was unnecessary, duplicative and unreasonable. The simple response to this is that the work performed by Committee Counsel can be broken into two (2) categories: (1) work that was performed in response to the Debtor's actions and inaction that required intervention, and (2) work that was performed by the Committee in furtherance of its statutory and fiduciary duties, which work provided substantial value to the estate and to the general unsecured creditors. Two, the Debtor attempts to mislead the Court by asserting baseless and false accusations and with respect to the professional relationship between Committee Counsel and the Creditor Representative appointed in this case. Three, the Debtor then attempts to have this Court create new law and expand the disclosure requirements under Bankruptcy Rule 2014 so that this Court can find that Committee Counsel somehow did not satisfy its disclosure requirements. As set forth in the Initial Fee Response and as set forth below, there is no basis for the Debtor's expanded interpretation of Bankruptcy Rule 2014 and Committee Counsel fully satisfied its disclosure requirements at the time it filed its retention application and then later, when it filed a supplemental disclosure when the case proceeded and the facts were such that the disclosure was appropriate. Four, the Debtor offers a weak and unsupported proposition that notwithstanding Committee Counsel's disclosure that its rates are subject to review and adjustment, any adjusted rate is unreasonable. Somehow the Debtor attempts to argue that the Committee's professionals should be treated differently than Debtor's counsel. Despite Debtor's counsel increasing its hourly rates throughout this case, they now argue the Committee Counsel's similar increase is unreasonable. The Debtor conveniently leaves out the crucial fact that its own counsel changed and increased their rates during the case and did not even make the disclosure in its own retention pleadings. Finally, the Debtor offers yet another

Case 05-48509      Document 416      Filed in TXSB on 04/09/2007      Page 6 of 22

feeble proposition that an attorney cannot be replaced with another attorney to lead the case notwithstanding the client's request for this change.

7.    In sum, leaving aside the Debtor's hyperbole, false and misleading statements and slanderous, defamatory and inflammatory accusations, the Committee believes the Supplemental Objections raises (or attempts to raise) five (5) issues that can be framed in the following questions:

(a)    Did the December 5, 2005 Affidavit, as defined below (the initial disclosure) satisfy the disclosure requirements under Bankruptcy Rule 2014?

(b)    Was the Second Supplemental Affidavit, as defined below (disclosing the connections between Arent Fox and CTG and Mr. Myers) timely and did it satisfy the disclosure requirements under Bankruptcy Rule 2014?

(c)    If the Court finds that Committee Counsel's disclosures were not timely and/or not adequate, should Arent Fox be punished notwithstanding mitigating circumstances?

(d)    Was the disclosure of Committee Counsel's periodic review and adjustment of its rates in the December 5, 2005 Affidavit and subsequent increases in hourly rates with respect to each calendar year reasonable?

(e)    Was the fact that Andrew I. Silfen assumed the role of lead attorney for this case unreasonable?

8.    It is clear that once the Debtor's accusations are ignored and the issues are properly framed, the record shows that Arent Fox is entitled to the fees and expenses as requested. As to the first and second question, as will be set forth below, at the time Arent Fox filed its initial disclosure affidavit, it complied with the requirements of Bankruptcy Rule 2014. At the time Arent Fox's Retention Application was filed, Mr. Myers was not a creditor or party in interest or an attorney or accountant of a creditor or party in interest and thus, Bankruptcy Rule 2014 was not triggered. No case law required Arent Fox to disclose its connection to Mr. Myers at that time. Moreover, at the onset of the case the parties contemplated a restructuring

Case 05-48509   Document 416   Filed in TXSB on 04/09/2007   Page 7 of 22

and there was no notion or intention that there would be a liquidating trust. As the case proceeded and the Committee expressed concerns about trusting the Debtor, there was an interest for creditors to be represented on a post-confirmation basis, where Mr. Myers was going to be considered as one of three candidates to serve in such capacity, Arent Fox, in an abundance of caution, then filed and served a supplemental disclosure setting forth its connections with Mr. Myers, thus satisfying the requirement of Bankruptcy Rule 2014.

9.     As to the third question, in the event that the Court finds that the requirements of Bankruptcy Rule 2014 were not met, either because the disclosures were not timely and/or adequate, certainly the remedy proposed by the Debtor is harsh and inequitable given the specific circumstances of this case, where proper disclosures were in fact made. Given that Bankruptcy Rule 2014 and case law do not affirmatively impose any duty to make the a disclosure with respect to a representative by proxy, and that Arent Fox always acted in good faith and with honestly and candor, no punishment should be imposed.

10.     With respect to the fourth and fifth questions, as will be set forth below, Committee Counsel disclosed in its Retention Application that the firm periodically reviews and adjusts its rates, as most firms do at the start of the year and as did Debtor's counsel, and there is no prohibition on an attorney replacing another attorney to serve as lead counsel for the case when the client so requests.

11.     Based upon the foregoing and for the reasons set forth below, the Supplemental Objection has no merit and should be overruled in its entirety.

Case 05-48509    Document 416    Filed in TXSB on 04/09/2007    Page 8 of 22

### Jurisdiction and Venue

12.     This Court has jurisdiction over this Response pursuant to 28 U.S.C. §§ 157 and 1334(b).  Venue of this proceeding is proper in this Judicial District pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).

### Background

General

13.     On October 11, 2005 (the "Petition Date"), the Debtor filed its petition for relief under Chapter 11 of Title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code").

14.     On November 23, 2005, more than one month after the Petition Date, the Committee was appointed.

Committee Counsel's Retention and Bankruptcy Rule 2014 Disclosures

15.     After the Committee was appointed its next task was to select counsel.  As set forth in the Initial Fee Response, three (3) law firms were considered.  Arent Fox was ultimately selected pursuant to a 3 to 2 vote.  Notably, both David Barr of Olympic, the Committee's Chairman, and Olympic's U.S. representative by proxy, Joseph E. Myers of Clear Thinking Group, LLC, supported a California firm as Committee Counsel.  Both the Debtor and the United States Trustee were aware that Mr. Myers was serving as Olympic's representative by proxy and there was no objection during the case.

16.     On December 5, 2005, an application to employ Arent Fox as counsel to the Committee was filed (the "Arent Fox Retention Application") [Docket No. 60], which application included a list of all those parties in interest submitted for its internal conflicts check. *See* Arent Fox PLLC's Rule 2014(a) Statement and Affidavit of Schuyler Carroll in Support of

Application for Order Authorizing Employment and Retention of Arent Fox PLLC as Counsel for the Official Committee of Unsecured Creditors Nunc Pro Tunc as of November 28, 2005 [Docket No. 60] (the "December 5, 2005 Affidavit"), a copy of which is annexed to the Initial Fee Response as Exhibit A. At the time Committee Counsel filed the December 5, 2005 Affidavit, Mr. Myers was not connected to the Debtor, was not a creditor, party in interest or attorney or accountant for the foregoing within the meaning of Bankruptcy Rule 2014 and as such Bankruptcy Rule 2014 was not triggered.

17.    The December 5, 2005 Affidavit also contained the following disclosure with respect to the review and adjustment of rates:

> Arent Fox agrees to charge, subject to this Court's approval in accordance with section 330(a) of the Bankruptcy Code, the Firm's standard hourly rates for work of this nature and for this type of matter, plus its customary reimbursements as charged to bankruptcy and non-bankruptcy clients. My reduced "Preferred" hourly rate, which I have agreed to charge for this matter, is $445 per hour. Other Arent Fox professionals and para-professionals presently are billed as follows:
>
>> Members: $360-$645
>> Of Counsel: $340-$580
>> Associates: $195-$450
>> Legal Assistants: $115-$210
>
> The rates set forth above *are subject to periodic review and adjustment* and are set at a level designed to fairly compensate Arent Fox for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.

*See* December 5, 2005 Affidavit, pp.4-5, ¶¶13-14 (emphasis added). It is noteworthy that the Debtor's retention application dated October 11, 2005 [Docket No. 6] did not contain such a disclosure yet the rates of Debtor's counsel appeared to increase as well, as indicated in their fee application dated September 13, 2006 [Docket No. 332].

Case 05-48509   Document 416   Filed in TXSB on 04/09/2007   Page 10 of 22

18.     On December 19, 2005, again using the same parties in interest enumerated at Exhibit 1 to the December 5, 2005 Affidavit, Arent Fox filed its Supplemental Affidavit and Disclosure Statement of Schuyler Carroll of Arent Fox PLLC Pursuant to Sections 327 and 1103(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) [Docket No. 87] (the "Supplemental Affidavit"), a copy of which is annexed to the Initial Fee Response as Exhibit B.

19.     In early April 2006, during the formulation and negotiation of the Debtor's proposed Chapter 11 plan, the concept of a Creditor Representative was raised by the Committee so that the interests of general unsecured creditors would be protected on a post-confirmation basis. At this time Mr. Myers became a candidate, along with two other candidates, to serve as Creditor Representative pursuant to the plan, thus possibly expanding his role in this case. Thus, on April 10, 2006, Committee Counsel filed its Supplemental Affidavit and Disclosure Statement of Schuyler G. Carroll in Support of Retention of Arent Fox PLLC as Counsel for the Official Committee of Unsecured Creditors [Docket No. 176] (the "Second Supplemental Affidavit"), a copy of which is annexed to the Initial Fee Response as Exhibit C. Specifically the Second Supplemental Affidavit provides:

> Joseph Myers ("Myers") is a Managing Director of Clear Thinking Group LLC ("CTG") and serves as a representative of Olympic International Limited, the Chair of the Committee. Myers and/or CTG serves as creditor, liquidating or similar type of trustee and plan administrator or creditor representative in numerous bankruptcy cases unrelated to the Debtor throughout the United States. Arent Fox has represented and continues to represent Myers and/or CTG in such capacities in other pending bankruptcy cases. Myers and/or CTG has acted as agent or representative and continues to act as agent or representative of certain creditors in matters unrelated to the Debtor who are members of a creditors committee that has engaged Arent Fox as counsel. Arent Fox does not represent Myers or CTG or an entity represented by Myers or CTG in this proceeding.

See Second Supplemental Affidavit, p.2, ¶ 3. At no time did the Court or any party, including the Debtor or the Office of the United States Trustee, inquire into the affidavits that were filed or request further information with respect to the information and parties disclosed in the affidavits,

NYC/327284.1                    10

Case 05-48509      Document 416      Filed in TXSB on 04/09/2007      Page 11 of 22

specifically the Second Supplemental Affidavit. Nor did the Debtor or any other party seek to later challenge the order approving Arent Fox's retention on the basis of disclosure infirmities or issues of disinterestedness.

Committee Counsel's Fee Applications and the Debtor's Objections to the Final Fee Application

20.    On July 25, 2006, Arent Fox filed the First Application for Allowance of Compensation and Reimbursement of Expenses of Attorneys for the Official Committee of Unsecured Creditors for the Period November 28, 2005 Through May 31, 2006 [Docket No. 218] (the "Interim Fee Application").

21.    At a hearing held on August 23, 2006 to consider confirmation of the Debtor's Chapter 11 Plan (the "Plan") and approval of Interim Fee Applications filed by the Committee's professionals, including Arent Fox (the "August 23 Hearing"), after confirming the Plan, the Court entered its Agreed Order Allowing First Interim Application for Allowance of Compensation and Reimbursement of Expenses for Counsel for the Official Unsecured Creditors' Committee for the Period November 28, 2005 Through May 31, 2006 (the "Interim Fee Order") [Docket No. 319].

22.    During the August 23 Hearing, the Court stated on the record that Arent Fox's Interim Fee Application comports with the Fifth Circuit's cases applicable to the review of fee applications. The Court further found that the time sheets were accurate and helpful in guiding the Court as to what services were rendered, and that the services that were rendered were necessary and benefited the estate and particularly the unsecured creditors. As such, the Court approved the Interim Fee Application.

23.     On September 21, 2006, the Committee filed the Final Fee Application [Docket
No. 335] as supplemented by the First and Second Supplements to the Final Fee Application
[Docket Nos. 373 and 386].

**Response**

**A.      Did the December 5, 2005 Affidavit, the Initial Disclosure, Satisfy the Requirements Pursuant to Bankruptcy Rule 2014?**

24.     The Debtor significantly mischaracterizes Committee Counsel's relationship with
Mr. Myers and Mr. Myer's role in this case as well as other cases in an effort to mislead this
Court and have the Court expand the requirements of Bankruptcy Rule 2014. Mr. Myers was not
appointed to the Committee, was not a Committee member, was not a creditor, was not a party-
in-interest and was not an attorney or accountant of any of the foregoing. In fact, the Notice of
Appointment of Creditors' Committee filed by United States Trustee on November 23, 2005
[Docket No. 49] appoints David Barr, director of Olympic, as Committee member. There is no
mention of Mr. Myers in this notice. Mr. Myers was simply a U.S. representative for Olympic
by proxy. Bankruptcy Rule 9010 clearly provides for creditors, among others, to appear and act
through agents and proxies. *See* Fed. R. Bankr. P. 9010(a). Representatives, agents and proxies,
however, do not fall within the scope of Bankruptcy Rule 2014's requirements if they are not
acting in a legal or accounting capacity. The actual creditor and Committee member who voted
was David Barr, not Mr. Myers. Mr. Barr, with whom Committee Counsel has no prior
relationship, was very active as chairperson in these proceedings, attended meetings and
conference calls, reviewed pleadings, voted at meetings and made his own determinations on
crucial matters and served as Committee chairperson entirely independent of Mr. Myers, and
frequently was in contact with Committee Counsel by both telephone and electronic mail. Mr.
Myers was simply a representative of a Committee member that was located overseas by proxy,

Case 05-48509   Document 416   Filed in TXSB on 04/09/2007   Page 13 of 22

which arrangement enabled Olympic to properly participate in this case. As set forth above, both the Debtor and the United States Trustee were aware that Mr. Myers was serving as Olympic's proxy and made no objection during the case.

25.     Bankruptcy Rule 2014 requires that retention applications disclose the professional's connections with _only_ the debtor, creditors and any other party in interest and their respective attorneys and accountants. Again, at the time of the filing of Arent Fox's Retention Application, Mr. Myers was not a creditor, as defined in Section 101(10) of the Bankruptcy Code, or party in interest, as defined in Fifth Circuit case law as "any creditor of the debtor and any person with a sufficient stake in the outcome of a proceeding so as to require representation." _In re Allison_, 2006 WL 2620480, at *2 (Bankr. S.D. Tex. Sept. 12, 2006) (citing _Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana_, S.A. de C. V., 347 F.3d 589, 595 (5th Cir. 2003)). As such, Rule Bankruptcy Rule 2014 was not triggered and the December 5, 2005 Affidavit was adequate and proper. As the case proceeded and the Plan process was at the forefront where the concept of a Creditor Representative was proposed and Mr. Myers was considered a candidate, Arent Fox filed the Second Supplemental Affidavit.

26.     The Debtor's reliance in the Supplemental Objection on _In re Dow Corning Corp._, 194 B.R. 121, 137 (Bankr. D. Mich. 1996) is misplaced. In _In re Dow Corning Corp._, the issue before the court was whether a tort claimants' committee, which was comprised of eight attorneys who themselves were not creditors of the estate, was properly constituted. The court found the committee was not properly constituted pursuant to Section 1102 of the Bankruptcy Code. The court in _Dow Corning_ had an issue, not with the notion of attorneys serving on committees in a representative capacity, which it found to be common, but rather, with the fact that the attorneys were actual members of the committee. Here, Mr. Myers was not a committee

Case 05-48509   Document 416   Filed in TXSB on 04/09/2007   Page 14 of 22

member -- and according to *Dow Corning* he could not be as he was not a creditor of the Debtor.

Nor was Mr. Myers an attorney -- he simply served as representative for Committee member

Olympic.[4]

27.     Contrary to the Debtor's assertions that there was a "business plan" of a back-end

engagement with Mr. Myers to serve as creditor trustee, there was no such plan. Arent Fox and

Mr. Myer's had no agreement or arrangement, and in fact, the topic was never discussed at the

time of Arent Fox's retention or during the onset of this proceeding. Again, at the start of this

case it was clear from the Debtor that its goal was to restructure and emerge from Chapter 11.

Here, a liquidating or creditor trust would be created under any plan of reorganization or

liquidation was never contemplated or discussed. Only upon the negotiation and culmination of

the Plan was the concept of a creditor agent or representative raised. The Committee then

considered three (3) candidates: Jeffrey Sutton of Mahoney Cohen & Company, CPA, P.C., the

Committee's accountants and financial advisors, Barnet Skelton, the Committee's local counsel

and Mr. Myers. The Committee declined to interview other candidates not associated or

involved in the case and ultimately selected Mr. Myers to serve as the Creditor Representative,

which selection was provided for in the Plan and approved in the Confirmation Order.

Committee Counsel took no position and made no recommendations to the Committee. The

Committee selected Mr. Myers on its own without Committee Counsel's comment or

---

[4] As set forth in the Initial Fee Response, the Debtor's reliance on *In re W. Delta Oil* is similarly misplaced as the attorneys there represented the debtor and had significant connections with parties in interest who became secret investors in an entity attempting to purchase the Debtor's assets. Contrary to the facts here, the attorneys in *In re W. Delta Oil* were in a position that created a clear conflict of interest that required proper disclosures.

*Gaither v. Moody*, 528 S.W.2d 875, 877 (Tex. Civ.App. 1975) similarly has no relevance here as it involved an action where the plaintiff alleged false and misleading statements were contained in a proxy statement sent to shareholders by the defendant in connection with a merger. The defendant was an insider, officer, director and majority shareholder that owed fiduciary duties to both corporations involved in the merger and was obligated to disclose material information in the proxy statement. Here, Mr. Myers was not an estate fiduciary and in any event any duties would be owed to the party he was representing – Olympic.

recommendation after making its own informed decision, which was then approved as part of the confirmation process and by the Confirmation Order.

28.     Based on the foregoing the Committee submits that the December 5, 2005 Affidavit was adequate and satisfies Bankruptcy Rule 2014.

**B.     Was the Second Supplemental Affidavit, Disclosing the Connections Between Arent Fox and CTG and Mr. Myers, Timely and Did It Satisfy the Requirements Pursuant to Bankruptcy Rule 2014?**

29.     While the December 5, 2005 Affidavit was both timely and adequate, as set forth above, as this case proceeded and the parties were involved with the Plan process, Arent Fox filed a supplemental disclosure setting forth its connections with Mr. Myers when a creditor fiduciary was being contemplated and Mr. Myers was considered as a candidate to serve as Creditor Representative. Thus, the Committee believes the Second Supplemental Affidavit was both timely and adequate and satisfies Bankruptcy Rule 2014. As disclosed in the Second Supplemental Affidavit, Arent Fox represents creditor trusts and liquidating trust which are administered by Mr. Myers in cases unrelated to the Debtor and represents Mr. Myers in his capacity as liquidating or creditor trustee of those trusts. Also disclosed in the Second Supplemental Affidavit is the fact that Mr. Myers and CTG have acted as agent or representative for certain creditors in matters unrelated to the Debtor, which creditors are members of creditors' committees who engaged Arent Fox as counsel. Arent Fox believes these disclosures are sufficient, adequate and satisfy Bankruptcy Rule 2014. Contrary to the Debtor's misleading statements, Arent Fox does not represent Mr. Myers or CTG individually in this case or in any other proceedings or matter. Furthermore, no partner or associate of Arent Fox has a personal or social relationship with Mr. Myers.

30.     Again, it is noteworthy that no party, including the Debtor, requested more

information with respect to these disclosures subsequent to their filing. Only after the Plan gets

confirmed, goes effective and after this case comes to end does the Debtor first raise the issue in

its objections to the Final Fee Application -- over a month after the Plan gets confirmed and over

seven (7) months after Committee Counsel filed the Second Supplemental Affidavit.

31.     Based on the foregoing the Committee submits that the Second Supplemental

Affidavit was both timely and adequate and satisfies Bankruptcy Rule 2014.[5]

## C.     If the Court Finds that Committee Counsel's Disclosures Were Not Timely and/or Not Adequate Should Arent Fox Be Punished, Notwithstanding Mitigating Circumstances?

32.     Should the Court nonetheless determine that Committee Counsel's disclosures

were not timely and/or not adequate, this Court has the discretion to make a determination based

upon the facts of this case and corresponding value and benefit to the estate that was the direct

result of the Committee and Committee Counsel's efforts that no punishment is warranted.

Section 331 of the Bankruptcy Code permits professionals employed by the Bankruptcy Court to

apply for interim compensation under the standards set forth in Section 330. Committee Counsel

submits that pursuant to the criteria normally examined in bankruptcy cases, and based upon the

factors considered in accordance with Sections 330 and 331 of the Bankruptcy Code, the results

achieved in this case provide more than sufficient justification for approval of the compensation

sought by Arent Fox. Moreover, even if the Court finds that the disclosures were not adequate,

---

[5] The Debtor concludes its Supplemental Objection by stating that Mr. Myers should be removed as Creditor
Representative. This matter is not pending before the Court at this time. Only the Committee has the authority to
select the Creditor Representative. Pursuant to the Plan and the Confirmation Order, Mr. Myers was selected as
Creditor Representative. There is no provision that he be removed at the request of the Debtor and the Debtor has
not moved before the Court to amend the Plan or the Confirmation Order. The Committee has also been advised
that Mr. Myers was not served with the Supplemental Objection purporting to seek such affirmative relief and as
such the Debtor's request should be denied on due process grounds as well as jurisdictional grounds.

they certainly do not give rise to a conflict of issue that should impact this Court's consideration

of the Final Fee Application.

33.    Finally, as set forth in the Initial Fee Response, the imposition of sanctions is

discretionary and this Court, in the exercise of its discretion and under the circumstances of this

case, should not further punish Arent Fox. Committee Counsel always acted in good faith, with

honesty and candor and any failure to make timely and proper disclosures under Bankruptcy

Rule 2014 was inadvertent due to the lack of clarity of Bankruptcy Rule 2014 and the case law

interpreting Bankruptcy Rule 2014. Committee Counsel made all disclosures throughout these

proceedings immediately upon a determination that such disclosures were or might be required,

and that the failure to disclose any such connection in no way resulted in a conflict of interest for

Committee Counsel. Moreover, given that there is no current or existing case law clearly

requiring such disclosure, the imposition of sanctions would not be warranted or appropriate.

**D.    Was the Disclosure of Committee Counsel's Periodic Review and Adjustment of its
        Rates Contained in the December 5, 2005 Affidavit and Subsequent Increase in
        Hourly Rates With Respect to Each Calendar Year Reasonable?**

34.    As set forth above, the December 5, 2005 Affidavit clearly disclosed that Arent

Fox's rates were subject to review and adjustment. Arent Fox filed its Retention Application on

December 5, 2005. It is common for firms to adjust rates at the beginning of a new year and this

is exactly what happened here -- in January 2006 Arent Fox adjusted its rates and the new rates

were then in effect for the remainder of the case. In fact, Debtor's counsel increased its rates as

well -- and did so without making any such disclosure that they would do so in their retention

papers. The Debtor's rate increases during this case have already been approved by the Court.

Moreover, Arent Fox provided copies of all monthly invoices, as well as drafts and the filed

Interim and Final Fee Applications and Supplements, to each Committee Member, for their

Case 05-48509   Document 416   Filed in TXSB on 04/09/2007   Page 18 of 22

review, approval and consent. From time to time Committee members would raise a question or issue and Arent Fox responded accordingly. After the Committee's review of the Arent Fox monthly invoices and as an accommodation to the Committee, Arent Fox voluntarily agreed to write off $58,505 in fees and $3,070 in expenses before formally submitting its legal invoices. The Final Fee Application reflects this voluntary reduction.

**E.     Was the Fact That Andrew I. Silfen Assumed the Role of Lead Attorney for this Case Unreasonable?**

35.     Finally, the Debtor has attempted to advance a notion that an attorney cannot replace another attorney to serve as lead counsel -- one that is preposterous and nonsensical. Here, the Committee requested that a more senior partner take the lead in this the case and as such, Mr. Silfen took on this role. The Debtor offers no basis to support that was somehow improper.

**F.     Debtor's counsel Has Failed to Fulfill its Obligations Under Bankruptcy Rule 9011(b)**

36.     Clearly, unable to ascertain any bona fide basis to object to the Final Fee Application, the Debtor and its counsel have now resorted to inflammatory and scandalous accusations and false statements. It is equally clear that the Debtor and its counsel's use of innuendos and lies is an attempt to embarrass, harass and bully the Committee and its members and professionals. The Supplemental Objection was filed in bad faith and only designed to place scandalous and inflammatory statements into the public record. Debtor's counsel's filing of the Supplemental Objection is simply irresponsible and not consistent with counsel's obligations under Bankruptcy Rule 9011(b). Such conduct should not be countenanced by the Court.

37.     An example of the Debtor's bad faith is the Withdrawal Stipulation that was only filed the day before the trial, seeking to "correct" the Debtor's material and deliberate

misrepresentation in the Supplemental Objection that stated Arent Fox agreed to the admission of

Mr. Myers's deposition with exhibits into evidence, which deposition and exhibits serve as the

cornerstone of the Supplemental Objection. Notwithstanding Arent Fox's clear and

unambiguous representation that it objected to the admission of Mr. Myer's deposition and

exhibits into evidence, the Debtor ignored Arent Fox, filed the Supplemental Objection based

upon improper evidence and then waited until the Motion to Strike was filed to then "correct" its

misrepresentation to the Court.[6]

### Conclusion

38.     For all of the reasons stated herein, the Committee asserts that the Final Fee

Application, as supplemented by the First and Second Supplements to the Final Fee Application,

should be approved as requested and requests that the Court enter an order overruling the

Objection and the Supplemental Objection and approving the Final Fee Application, as

supplemented by the First and Second Supplements to the Final Fee Application.[7]

WHEREFORE, the Committee respectfully requests that the Court enter an order

approving the Final Fee Application and the First and Second Supplements to the Final Fee

Application, overruling the Objection and Supplemental Objection and granting such other,

further and different relief as is just and proper.[8]

---

[6] At this point, only the Committee has served and filed its designation of transcript portions to be admitted into evidence. Despite repeated requests, the Debtor has not stated any objections to the Committee's designations nor has the Debtor served or filed its designations our counter-designations.

[7] The Committee reserves the right under Section 107 of the Bankruptcy Code to seek to have the Court seal the Supplemental Objection and any other pleadings filed by the Debtor in connection with this contested matter.

[8] The Committee also requests that the Court set a procedure to approve the fees and expenses of Arent Fox for the period of March 1, 2007 through the date of this hearing.

Dated: New York, New York
     April 9, 2007

**ARENT FOX LLP**
Attorneys for the Official Committee of
Unsecured Creditors

By:    */s/ Andrew I. Silfen*
       Andrew I. Silfen (AS-1264)
       Leah M. Eisenberg (LE-0096)
       Adrienne W. Blankley (AB-9412)
       1675 Broadway
       New York, New York 10019
       (212) 484-3900

-and-

Barnet B. Skelton, Jr. P.C.

By:    */s/ Barnet B. Skelton*
       Barnet B. Skelton
       1111 Bagby
       Houston, Texas 77002
       (713) 659-8761

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the *Response of Official Committee of Unsecured Creditors to the Debtor's Supplemental Objection to Final Fee Application of Arent Fox LLP [Doc. No. 406]* was served upon the parties on the attached service list on April 9, 2007 via Electronic Mail and Facsimile.

*/s/ Andrew I. Silfen*
Andrew I. Silfen

## SERVICE LIST

Edward L Rothberg
Hugh Massey Ray, III
Melissa Anne Haselden
Weycer Kaplan Pulaski & Zuber
11 Greenway Plz, Ste 1400
Houston, TX 77046
Email: erothberg@wkpz.com
Email: hray@wkpz.com
Email: mahaselden@wkpz.com
713-961-5341 (fax)
*Attorneys to the Debtor*

Stephen Douglas Statham
Office of the U.S. Trustee
515 Rusk, Ste 3516
Houston, TX 77002
Email: stephen.statham@usdoj.gov
713-718-4680 (fax)

Diana M. Woodman
Cara Clophus Wright
Thompson & Knight LLP
333 Clay Street, Suite 3300
Houston, TX 77002
Email: diana.woodman@tklaw.com
Email: cara.wright@tklaw.com
713-654-1871 (fax)
*Attorneys for Bank of Montreal*

Don F. Russell, Esq.
Russell & Madan
4265 San Felipe Street, Suite 1100
Houston, TX 77027
Email: russellcourt@dfrussell.com
713-850-7879 (fax)
*Attorneys for Bayou City Packaging Corporation*

Kevin M Lippman
Munsch Hardt Kopf & Harr, P.C.
3800 Lincoln Plaza
500 North Akard Street
Dallas, TX 75201-6659
Email: klippman@munsch.com
214-978-4335 (fax)
*Attorneys for TIAA Realty, Inc. and Teachers Insurance & Annuity Association of America*

Michael William Kerensky, Esq.
The Kerensky Law Firm
3730 Kirby Drive, Ste 1010
Houston, TX 77098
Email: mwk@kerenskylaw.com
713-522-6925 (fax)
*Attorneys for Tim Taylor*

Malhar S Pagay, Esq.
Pachulski Stang et al.
10100 Santa Monica Blvd, Suite 1100
Los Angeles, CA 90067
Email: mpagay@pszyjw.com
310-201-0760 (fax)
*Attorneys for China Export & Credit Insurance Co*