# Exhibit M

Westlaw.

ABA-AMRPC Rule 7.3                                                                                          Page 1
Ann. Mod. Rules Prof. Cond. Rule 7.3
(Cite as: ABA-AMRPC Rule 7.3)

American Bar Association
Annotated Model Rules of Professional Conduct, Sixth Edition
RULES
INFORMATION ABOUT LEGAL SERVICES
2007

Copyright © 2007 by the American Bar Association

Rule 7.3 Direct **Contact** with **Prospective Clients**

**(a) A lawyer shall not by in-person, live telephone or real-time electronic contact solicit professional employment from a prospective client when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, unless the person contacted:**

    **(1) is a lawyer; or**

    **(2) has a family, close personal, or prior professional relationship with the lawyer.**

**(b) A lawyer shall not solicit professional employment from a prospective client by written, recorded or electronic communication or by in-person, telephone or real-time electronic contact even when not otherwise prohibited by paragraph (a), if:**

    **(1) the prospective client has made known to the lawyer a desire not to be solicited by the lawyer; or**

    **(2) the solicitation involves coercion, duress or harassment.**

**(c) Every written, recorded or electronic communication from a lawyer soliciting professional employment from a prospective client known to be in need of legal services in a particular matter shall include the words "Advertising Material" on the outside envelope, if any, and at the beginning and ending of any recorded or electronic communication, unless the recipient of the communication is a person specified in paragraphs (a)(1) or (a)(2).**

**(d) Notwithstanding the prohibitions in paragraph (a), a lawyer may participate with a prepaid or group legal service plan operated by an organization not owned or directed by the lawyer that uses in-person or telephone contact to solicit memberships or subscriptions for the plan from persons who are not known to need legal services in a particular matter covered by the plan.**

**Comment**

[1] There is a potential for abuse inherent in direct in-person, live telephone or real-time electronic **contact** by a lawyer with a **prospective client** known to need legal services. These forms of **contact** between a lawyer and a **prospective client** subject the layperson to the private importuning of the trained advocate in a direct interpersonal encounter. The **prospective client**, who may already feel overwhelmed by the circumstances giving rise to the need for legal services, may find it difficult fully to evaluate all available alternatives with reasoned judgment and appropriate self-interest in the face of the lawyer's presence and insistence upon being retained immediately. The situation is fraught with the possibility of undue influence, intimidation, and over-reaching.

[2] This potential for abuse inherent in direct in-person, live telephone or real-time electronic solicitation of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

prospective clients justifies its prohibition, particularly since lawyer advertising and written and recorded communication permitted under Rule 7.2 offer alternative means of conveying necessary information to those who may be in need of legal services. Advertising and written and recorded communications which may be mailed or autodialed make it possible for a **prospective client** to be informed about the need for legal services, and about the qualifications of available lawyers and law firms, without subjecting the **prospective client** to direct in-person, telephone or real-time electronic persuasion that may overwhelm the **client's** judgment.

[3] The use of general advertising and written, recorded or electronic communications to transmit information from lawyer to **prospective client**, rather than direct in-person, live telephone or real-time electronic **contact**, will help to assure that the information flows cleanly as well as freely. The contents of advertisements and communications permitted under Rule 7.2 can be permanently recorded so that they cannot be disputed and may be shared with others who know the lawyer. This potential for informal review is itself likely to help guard against statements and claims that might constitute false and misleading communications, in violation of Rule 7.1. The contents of direct in-person, live telephone or real-time electronic conversations between a lawyer and a prospective client can be disputed and may not be subject to third-party scrutiny. Consequently, they are much more likely to approach (and occasionally cross) the dividing line between accurate representations and those that are false and misleading.

[4] There is far less likelihood that a lawyer would engage in abusive practices against an individual who is a former client, or with whom the lawyer has a close personal or family relationship, or in situations in which the lawyer is motivated by considerations other than the lawyer's pecuniary gain. Nor is there a serious potential for abuse when the person contacted is a lawyer. Consequently, the general prohibition in Rule 7.3(a) and the requirements of Rule 7.3(c) are not applicable in those situations. Also, paragraph (a) is not intended to prohibit a lawyer from participating in constitutionally protected activities of public or charitable legal-service organizations or bona fide political, social, civic, fraternal, employee or trade organizations whose purposes include providing or recommending legal services to its members or beneficiaries.

[5] But even permitted forms of solicitation can be abused. Thus, any solicitation which contains information which is false or misleading within the meaning of Rule 7.1, which involves coercion, duress or harassment within the meaning of Rule 7.3(b)(2), or which involves **contact** with a **prospective client** who has made known to the lawyer a desire not to be solicited by the lawyer within the meaning of Rule 7.3(b)(1) is prohibited. Moreover, if after sending a letter or other communication to a **client** as permitted by Rule 7.2 the lawyer receives no response, any further effort to communicate with the **prospective client** may violate the provisions of Rule 7.3(b).

[6] This Rule is not intended to prohibit a lawyer from **contacting** representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan for their members, insureds, beneficiaries or other third parties for the purpose of informing such entities of the availability of and details concerning the plan or arrangement which the lawyer or lawyer's firm is willing to offer. This form of communication is not directed to a prospective client. Rather, it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who may, if they choose, become prospective clients of the lawyer. Under these circumstances, the activity which the lawyer undertakes in communicating with such representatives and the type of information transmitted to the individual are functionally similar to and serve the same purpose as advertising permitted under Rule 7.2.

[7] The requirement in Rule 7.3(c) that certain communications be marked "Advertising Material" does not

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

apply to communications sent in response to requests of potential clients or their spokespersons or sponsors. General announcements by lawyers, including changes in personnel or office location, do not constitute communications soliciting professional employment from a client known to be in need of legal services within the meaning of this Rule.

[8] Paragraph (d) of this Rule permits a lawyer to participate with an organization which uses personal contact to solicit members for its group or prepaid legal service plan, provided that the personal contact is not undertaken by any lawyer who would be a provider of legal services through the plan. The organization must not be owned by or directed (whether as manager or otherwise) by any lawyer or law firm that participates in the plan. For example, paragraph (d) would not permit a lawyer to create an organization controlled directly or indirectly by the lawyer and use the organization for the in-person or telephone solicitation of legal employment of the lawyer through memberships in the plan or otherwise. The communication permitted by these organizations also must not be directed to a person known to need legal services in a particular matter, but is to be designed to inform potential plan members generally of another means of affordable legal services. Lawyers who participate in a legal service plan must reasonably assure that the plan sponsors are in compliance with Rules 7.1, 7.2 and 7.3(b). See 8.4(a).

## Annotation

### *Subsection (a): Prohibition of In-Person, Live Telephone, or Real-Time Electronic Solicitation*

### General Prohibition against "Live" Solicitation

Subsection (a) prohibits "live" solicitation of prospective clients for pecuniary gain, whether in-person, by telephone, or, as amended in February 2002, by "real-time electronic contact," such as chat rooms. The Rule recognizes that someone who needs a lawyer may feel overwhelmed by the "private importuning of the trained advocate in a direct interpersonal encounter." Model Rule 7.3, cmt. [1]. "Unlike a public advertisement, which simply provides information and leaves the recipient free to act upon it or not, in-person solicitation may exert pressure and often demands an immediate response, without providing an opportunity for comparison or reflection.... [T]here is no opportunity for intervention or counter-education by agencies of the Bar, supervisory authorities, or persons close to the solicited individual." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, *reh'g denied*, 439 U.S. 883 (1978).

Direct personal contact with prospective clients can be categorically prohibited without offending the Constitution. *Shapero v. Ky. Bar Ass'n*, 486 U.S. 466 (1988) (state may ban all in-person solicitation by lawyers for profit regardless of its contents). The state's interest in preventing "those aspects of solicitation that involve fraud, undue influence, intimidation, overreaching, and other forms of vexatious conduct" overrides the lawyer's interest in communication. *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, *reh'g denied*, 439 U.S. 883 (1978); *see Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985) ("possibilities for overreaching, invasion of privacy, the exercise of undue influence[,] outright fraud" and other "unique features of in-person solicitation by lawyers ... justify a prophylactic rule prohibiting lawyers from engaging in solicitation for pecuniary gain"); *Fla. Bar v. Weinstein*, 624 So. 2d 261 (Fla. 1993) (lawyer who lied to get past nurses to solicit brain-damaged patient reduced profession to caricature); *In re Gibson*, 856 So. 2d 1173 (La. 2003) (lawyer visited prisoners in jail to solicit representation); *Attorney Grievance Comm'n v. Gregory*, 536 A.2d 646 (Md. 1988) (lawyer approached criminal defendants leaving courtroom and handed them solicitation form letters); *In re Crouppen*, 731 S.W.2d 247 (Mo. 1987) (at hospital bedside, lawyer solicited individual who had been injured at work and was

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

about to undergo surgery; lawyer then sent card and balloons).

Solicitation "can be found in the totality of all the circumstances of the communication, including the background of the parties, the parties' previous relationship, the attorney's conduct, and of course the words spoken." *In re Charges of Unprof'l Conduct against 97-29*, 581 N.W.2d 347 (Minn. 1998); *see In re D'Amico*, 668 So. 2d 730 (La. 1996) (because person called did not believe she was being solicited, court declined to find any solicitation); *In re Blaylock*, 978 P.2d 381 (Or. 1999) (no violation; lawyer responded to telephone call from nurse that he interpreted to be invitation from family of hospitalized man to contact him); Ariz. Ethics Op. 02-08 (2002) (lawyer may sponsor information booth at trade show if lawyer does not initiate contact with other attendees); R.I. Ethics Op. 98-03 (1998) (lawyer may not solicit clients for free legal work that lawyer needs to gain experience if "significant motive for the solicitation is the personal gain of the inquiring attorney in qualifying for future employment and the eventual pecuniary benefit to be derived therefrom"); San Diego County Ethics Op. 2000-1 (2000) (lawyer who witnesses accident may give business card to person involved so that person may contact lawyer as witness; no solicitation involved). *See generally* Ronald Rotunda & John Dzienkowski, *Legal Ethics: The Lawyer's Deskbook on Professional Responsibility* § 7.3-2(a), at 1011 (ABA Center for Professional Responsibility 2005) ("[S]olicitation does not encompass all in person **contact** between a lawyer and a **prospective client**. It only encompasses such **contact** that is initiated by the lawyer for the purpose of seeking an attorney-**client** relationship for pecuniary gain."); Hill, *A Lawyer's Pecuniary Gain: The Enigma of Impermissible Solicitation*, 5 Geo. J. Legal Ethics 393 (1991).

Commentators have discussed the solicitation of a firm's **clients** by former associates and partners. *See generally* Hillman, *Law Firms and Their Partners: The Law and Ethics of Grabbing and Leaving*, 67 Tex. L. Rev. 1 (1988); Johnson, *Solicitation of Law Firm Clients by Departing Partners and Associates*, 50 U. Pitt. L. Rev. 1 (1988).

Courts differ concerning disciplinary responses to solicitation by out-of-state lawyers. *Compare In re Coale*, 775 N.E.2d 1079 (Ind. 2002) (court barred out-of-state lawyers from practicing law within state--including by pro hac vice admission--until further order, based upon improper solicitation of victims' families following airplane crash), *with Lawyer Disciplinary Bd. v. Allen, Coale & VanSusteren*, 479 S.E.2d 317 (W. Va. 1996) (lawyers who contacted potential personal injury clients through agents violated antisolicitation rule but were not subject to discipline because were not admitted to jurisdiction's bar and did not regularly practice there).

• *Internet Solicitation*

Even before Model Rule 7.3(a) was amended in 2002 to address "real-time electronic contact," it was construed to reach solicitation in Internet chat rooms. *See* Fla. Ethics Op. A-00-1 (2000) (lawyer may not solicit through real-time chat room); Utah Ethics Op. 97-10 (1997) (improper for lawyer to solicit in real-time chat room accessed through computer, while other forms of computer communications that are not real time, such as e-mail, would not be banned if lawyer complied with other applicable rules). *See generally* Hurld, *Untangling the Wicked Web: The Marketing of Legal Services on the Internet and the Model Rules*, 17 Geo. J. Legal Ethics 827 (2004); Rollins, *Examination of the Model Rules of Professional Conduct Pertaining to the Marketing of Legal Services in Cyberspace*, 22 J. Marshall J. Computer & Info. L. 113 (2003).

**Public-Interest Exception**

In a companion case decided the same day as *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, *reh'g denied*, 439 U.S. 883 (1978), the Supreme Court permitted solicitation by public interest and charitable organizations even if

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

their primary purpose is to generate business leading to statutory attorneys' fee awards. *In re Primus*, 436 U.S. 412 (1978) (lawyer wrote to woman who had been sterilized as condition of continuation of Medicaid benefits, offering her free legal representation by American Civil Liberties Union). Noting the "political or ideological" character of the representation, the Court held that the presence of associational rights, as well as the unlikelihood of overreaching, distinguished *Primus* from *Ohralik. Accord Rivera v. Brickman Group*, No. Civ. A. 05-1518, 2006 WL 680926 (E.D. Pa. Mar. 10, 2006) (allowing class counsel to contact potential opt-in plaintiffs directly because "[p]laintiffs' counsel are employed by a non-profit legal services organization. If, like most non-profit organizations, plaintiffs' counsel's employer uses income to fund more projects rather than supplement the salaries of its employees, one can expect plaintiffs' counsel to receive no pecuniary gain whatsoever from their efforts in this litigation.").

Thus, lawyers affiliated with a group formed to further a group right or interest may claim greater constitutional protection for political expression than is accorded under the commercial-speech analysis to lawyers soliciting primarily for personal gain. *See, e.g., Great W. Cities, Inc. v. Binstein*, 476 F. Supp. 827 (N.D. Ill.) (First Amendment associational rights protected solicitation by association of lot owners defrauded by real estate scam, as purpose in seeking additional members was to obtain legal relief), *aff'd*, 614 F.2d 775 (7th Cir. 1979); *In re Discipline of Appert*, 315 N.W.2d 204 (Minn. 1981) (lawyers who generated new cases by distributing brochures telling women they could recover for injuries from intrauterine contraceptive device, and by accepting referrals from nonlawyers, served "significant public interest" implicating associational rights); Ala. Ethics Op. 03-1 (2003) ("when attorneys provide, free of charge, their time, advice or other legal services for a charitable or eleemosynary purpose, the motive for offering those services is not one of 'pecuniary gain' within the meaning of [Rule 7.3(a)]"); Tex. Ethics Op. 519 (1997) (law firm representing foreign government that establishes legal aid office to provide services to its nationals residing in Texas qualifies as nonprofit organization, as does law firm, which may then solicit cases when it does not receive fees); *see also In re Teichner*, 387 N.E.2d 265 (Ill. 1979) (lawyer visited and solicited victims of train accident and their families; although his motives were predominantly pecuniary, his actions furthered community's interest in comprehensive relief program and so were "tinged" with associational values). *See generally* Busa, *Expanding the Market for Justice: Arguments for Extending In-Person Client Solicitation*, 34 Harv. C.R.-C.L. L. Rev. 487 (1999).

**Class Actions**

The advertising and solicitation rules do not prohibit "communications authorized by law, such as notice to members of a class in class action litigation." Model Rule 7.2, cmt. [4]; *see, e.g., Kittler v. Eckberg, Lammers, Briggs, Wolff & Vierling*, 535 N.W.2d 653 (Minn. Ct. App. 1995) (law firm representing shareholder sending solicitation letter to other shareholders seeking participants in class action protected under judicial action privilege); Mass. Ethics Op. 93-5 (1993) (lawyer contemplating class action may contact potential class members pursuant to applicable class action law notwithstanding disciplinary rules); N.Y. State Ethics Op. 676 (1995) (lawyer may publish advertisements and send letters to employees of corporation announcing that lawyer intends to bring class suit against corporation, and may accept employment from those contacts). *But see In re Broome*, 815 So. 2d 1 (La. 2002) (lawyer suspended for directly contacting class members soliciting intervention in Department of Justice case; lawyer was plaintiff's counsel in private class case whose membership overlapped class in concurrent case brought by Department of Justice). *See generally* Camisa, *The Constitutional Right to Solicit Potential Class Members in a Class Action*, 25 Gonz. L. Rev. 95 (1989/1990).

**Solicitation of Other Lawyers, Family Members, and Former Clients**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

ABA-AMRPC Rule 7.3
Ann. Mod. Rules Prof. Cond. Rule 7.3
(Cite as: ABA-AMRPC Rule 7.3)

Page 6

Subsection (a) does not apply if the person contacted is a lawyer, or has a family, close personal, or prior professional relationship with the lawyer on whose behalf the solicitation is made. There is presumably less potential for overreaching in these situations. *See, e.g., Goldthwaite v. Disciplinary Bd.*, 408 So. 2d 504 (Ala. 1982) (lawyer's close, long-standing family relationship with and previous representation of bank brought bank within "close friend, relative, [or] former client" exception of predecessor Model Code); *In re Appert*, 315 N.W.2d 204 (Minn. 1981) (lawyer's attempts to contact potential client referred to him by student researcher at law school with which lawyer had close relationship were not improper solicitation).

### Solicitation by Third Persons

Lawyers may not use other people to solicit for them, and Rule 7.3 is sometimes invoked along with either Rule 7.2(b) (prohibiting paid recommendations) or Rule 8.4 (prohibiting use of third persons to violate Rules) to prohibit the practice. *See, e.g., In re O'Keefe*, 877 So. 2d 79 (La. 2004) (lawyer disbarred for paying "runners" to find and refer personal injury cases); *Miss. Bar v. Turnage*, 919 So. 2d 36 (Miss. 2005) (lawyer suspended for hiring former insurance salesperson to solicit clients for potential class suit against insurer); Md. Ethics Op. 98-30 (1998) (lawyer may not have bail bondsman pass out bondsman's business cards with lawyer's contact information printed on back); *see also Cincinnati Bar Ass'n v. Rinderknecht*, 679 N.E.2d 669 (Ohio 1997) (lawyer indefinitely suspended for setting up direct marketing service to solicit accident victims as clients for himself and chiropractor; decided under Ohio Code); *cf. Crook v. State*, No. 08-02-00382-CR, 2005 WL 1539187 (Tex. App. June 30, 2005) (lawyer convicted of felony barratry for hiring chiropractor's assistant to solicit auto accident victims; court invokes Rules 7.3 and 8.4 in analyzing offense).

### *Subsection (b): Coercion, Duress, or Harassment*

Notwithstanding any other provisions of the Rule, subsection (b) prohibits any solicitation--even if only by mail--of someone who has let the lawyer know he or she does not want to be solicited, and any solicitation, again regardless of the medium, that involves coercion, duress, or harassment.

### Targeted-Mail Solicitation

In 1988, the Supreme Court held that the First Amendment does not allow states to impose blanket bans on lawyers' targeted-mail solicitation of prospective clients. *Shapero v. Ky. Bar Ass'n*, 486 U.S. 466 (1988). *Shapero* distinguished targeted direct-mail solicitation from in-person solicitation, in which the risk of improper lawyer conduct through coercive tactics is much greater. The Court cited *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985), which dealt with print advertising, for the proposition that written communication does not involve "the coercive force of the personal presence of a trained advocate" or the "pressure on the potential client for an immediate yes-or-no answer to the offer of representation." Any risk associated with a personalized letter, the Court concluded, can be minimized by requiring the lawyer to file the letter with a state agency having authority to supervise targeted mailings and penalize actual abuses. *See also Revo v. Disciplinary Bd. of Supreme Court*, 106 F.3d 929 (10th Cir. 1997) (ban on direct mail to personal injury victims violates First Amendment).

In 1995, however, the Court upheld a Florida rule prohibiting lawyers from sending targeted direct mail to accident victims or their relatives for thirty days following an accident or disaster. *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618 (1995). In *Went For It*, the Court focused not upon the lawyer's First Amendment rights, as it had in *Shapero*, but upon the public's negative perception of the profession. The Court said the state had a substantial interest in "protecting injured Floridians from invasive conduct by lawyers and in preventing the erosion of the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

confidence in the profession." *See* Note, *Six Years After* The Florida Bar v. Went For It, Inc.: *The Continued Erosion of First Amendment Rights*, 14 Geo. J. Legal Ethics 197 (2000).

### Subsection (c): Labeling Requirement

To ensure that potential clients are not misled or intimidated, subsection (c) requires that targeted communications be labeled, "Advertising Material." *See, e.g., Fla. Bar v. Herrick*, 571 So. 2d 1303 (Fla. 1990) (lawyer disciplined for mailing to prospective client unsolicited letter not marked as advertisement); *In re Huelskamp*, 740 N.E.2d 846 (Ind. 2000) (lawyer who mailed advertising materials to recently arrested individuals failed to include notation at top of first page that mailings were advertising materials); *Iowa Supreme Court Bd. of Prof'l Ethics & Conduct v. Beckman*, 557 N.W.2d 94 (Iowa 1996) (lawyer mailed marketing letter without required "advertisement only" language); *In re MDK*, 534 N.W.2d 271 (Minn. 1995) (lawyer admonished for failure to include "advertisement" at beginning of solicitation letter); Utah Ethics Op. 02-02 (2002) (newsletters, brochures, and e-mail messages used to attract new clients must be labeled, "Advertising Material," but website and promotional items that display firm's logo, without more, need not); *cf.* Idaho Ethics Op. 134 (1992) (lawyer may properly use words "advertising materials" within complete sentence, as long as context does not defeat purpose of Rule by causing less sophisticated readers to interpret letter as some form of official communication requiring response). *Compare* Ohio Sup. Ct. Ethics Op. 92-20 (1992) (lawyer may send newsletter and personalized cover letter to untargeted clients and nonclients without including "advertisement" disclaimer required by rules pertaining to targeted mail), *with* Ohio Sup. Ct. Ethics Op. 04-1 (2004) (unsolicited e-mail messages sent to targeted group of potential clients must be marked "Advertisement Only" in the text).

### Subsection (d): Solicitation by Legal Service Programs

Solicitation by legal service programs sponsored by organizations is constitutionally protected as the expression of an associational right. *See United Transp. Union v. Mich. State Bar*, 401 U.S. 576 (1971) (upholding right of union representatives to visit injured members and encourage them to retain union-selected private lawyers; courts cannot "deny associations of workers or others the means of enabling their members to meet the costs of legal representation").

Subsection (d) goes beyond associational rights protection. It authorizes lawyers to participate in prepaid and group legal service plans generally, as long as the plan (1) is not owned or directed by the lawyers providing the services, and (2) does not engage in solicitations targeted to persons known to be in need of the particular legal services covered by the plan. *See* Model Rule 7.3, cmt. [6] (noting that contact with representatives in their fiduciary capacities is functionally similar to advertising); *see also* Md. Ethics Op. 88-48 (1988) (lawyer may personally contact representatives of organizations in their fiduciary capacities to solicit business, but may not solicit individual members); Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 57-12, at 57-19 (3d ed. 2001) ("prepaid plans--even those operated for profit-- may aggressively market general 'memberships' in the nature of insurance policies against future needs for legal services, but may not use the same in-person solicitation techniques to sign up new members in order to handle their existing (known) legal problems").

ABA-AMRPC Rule 7.3

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.