# Exhibit N

Westlaw.
21-NOV AMBKRIJ 12　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1
21-NOV Am. Bankr. Inst. J. 12

American Bankruptcy Institute Journal
November, 2002

Column

Straight & Narrow

*12 SOLICITATION OF CLIENTS: ARE THERE ANY GUIDELINES?

Thomas E. Ray [FN1]

Wooden, Ray, Fulton & Scarborough P.C.

Chattanooga, Tenn.

thomasray@woodenlaw.com

Copyright © 2002 by American Bankruptcy Institute; Thomas E. Ray

The Model Rules of Professional Conduct, which have been adopted in 44 states, [FN2] provide as follows:

> (a) A lawyer shall not by in-person, live telephone or real-time electronic contact solicit professional employment from a prospective client when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, unless the person contacted:
> (1) is a lawyer, or
>
> (2) has a family, close personal or prior professional relationship with the lawyer. [FN3]

This non-solicitation rule follows the longstanding policy against lawyers directly soliciting clients. This is designed to prevent what is euphemistically called "ambulance-chasing," which gives visions of lawyers descending on accident victims by following the sounds of sirens.

The rule is further explained by the Comments to Model Rule 7.3 as follows: [FN4]

> [1] There is a potential for abuse inherent in direct in-person or live telephone contact by a lawyer with a perspective client known to need legal services. These forms of contact between a lawyer and a specifically targeted recipient subject the layperson to the private importuning of the trained advocate in a direct interpersonal encounter. The prospective client, who may already feel overwhelmed by the circumstances giving rise to the need for legal services, may find it difficult fully to evaluate all available alternatives with reasoned judgment and appropriate self-interest in the face of the lawyer's presence and insistence upon being retained immediately. The situation is fraught with the possibility of undue influence, intimidation and overreaching.
>
> [2] This potential for abuse inherent in direct in-person, live telephone or real-time electronic solicitation of prospective clients *justifies its prohibition, particularly since lawyer advertising and written and recorded communication permitted under this rule offer alternative means of conveying necessary information to those who may be in need of legal services.* Written and recorded communications that may be

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

21-NOV AMBKRIJ 12
21-NOV Am. Bankr. Inst. J. 12

Page 2

mailed or electronically transmitted make it possible for a prospective client to be informed about the need for legal services, and about the qualifications of available lawyers and law firms, without subjecting the prospective client to direct in-person, live telephone or real-time electronic persuasion that may overwhelm the client's judgment.

The non-solicitation Rule was sustained by the U.S. Supreme Court in the case of *Ohralik v. Ohio State Bar Association*. [FN5] In ruling that the states' compelling interest in preventing abuses of solicitation justifies a general prohibition of the practice, the Supreme Court stated the following:

> The solicitation of business by a lawyer through direct, in-person communication with the prospective client has long been viewed as inconsistent with the profession's ideal of the attorney-client relationship and as posing a significant potential for harm to the prospective client. It has been proscribed by the Organized Bar for many years. [FN6]

Under Model Rule 8.3(a), a lawyer that becomes aware of an ethical violation by another lawyer is also obligated to report such violation to the respective state governing body. [FN7]

It is universally viewed that it is an unethical solicitation of a non-client for a lawyer to contact by phone or in person an accident victim in hopes of representing the person in subsequent litigation for his injuries.

Direct-mail solicitation of potential clients who are in need of legal services has been long held to be protected freedom of speech under the First and Fourteenth Amendments. [FN8] Model Rule 7(c) sets forth the limited regulation of direct mail solicitation, which has been approved by the Supreme Court. This rule requires the communication to be sent to the state's disciplinary board and governs the format of the disclosures contained in the communication.

In the bankruptcy arena, variations of the following scenarios are commonplace:

> 1. Consumer debtors counsel make direct phone contact with, or send mail to, non-clients who are subjects of garnishments or foreclosure proceedings in order to solicit their representation in a chapter 7 or 13 proceeding.
> 2. Counsel, upon learning of the filing of a chapter 11, directly contact by phone or in person one or more of the creditors' committee soliciting representation of either the creditor or the committee itself.
> 3. Counsel, after reviewing bankruptcy schedules, contact one or more persons or entities listed as creditors or equity-holders by phone or mail soliciting their representation in the pending case.
> 4. Counsel review the dockets for adversary proceedings such as preferential transfer avoidance actions and then contact defendants by phone or mail soliciting their representation.

Of the foregoing examples, those that involve direct solicitation by phone or in person appear to violate the non-solicitation rule governing professional conduct and cause other lawyers to be ethically bound to report such incidents as possible ethical violations. The solicitations by mail are permissible as long as they otherwise *17 comply with the limitation contained in Model Rule 7.3(c).

Is a phone or an in-person contact by bankruptcy counsel soliciting a non-client to become his, her or its client in a yet-to-be-filed or in a pending bankruptcy proceeding any less unethical than a lawyer appearing at the door of the hospital room?

Lawyers, including "bankruptcy lawyers," have a duty to obtain clients by the highest ethical standards. It takes a professional to maintain professional standards. "Cold calls," requests to participate in "beauty contests" and other direct solicitation of potential clients appear to be violations of the non-solicitation rules. It is time that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

21-NOV AMBKRIJ 12                                                                                                    Page 3
21-NOV Am. Bankr. Inst. J. 12

these issues be discussed and that appropriate guidelines be established.

A second issue arises under various holdings that counsel employed by a committee or the estate can have his or her fees denied even if counsel was properly appointed by the court, provide valuable services and later are deemed to not be "disinterested." [FN9] The term "disinterested person" is defined in §101(14) of the Bankruptcy Code in pertinent part as follows:

> §101(14) "Disinterested person" means person that—
> (E) does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders ... for any ... reason.

An attorney who acquires representation of a client, whether it be a debtor, trustee, the creditor or a committee from an unethical solicitation would arguably hold an interest that is "materially adverse" to the estate or a class of creditors or equity holders. This would result in a denial of fees as well as possible sanctions.

It is time that the bankruptcy bar takes a hard look at its collective and individual ethical responsibilities to not only comply with the non-solicitation rules but also to report those who choose to ignore them.

[FN1]. Certified in business and consumer bankruptcy by the American Board of Certification and the state of Tennessee.

[FN2]. Petition of Tennessee Bar of the Adoption of Proposed Rules of Professional Conduct (www.tba.org/committees/conduct/tbrpcpet.html).

[FN3]. ABA Model Rules of Professional Conduct R. 7.3(a).

[FN4]. Model Rules of Professional Conduct R. 7.3(a) cmt. (emphasis added).

[FN5]. 336 U.S. 447; 98 S. Ct. 1912; 56 L.Ed 2d 444 (1978).

[FN6]. *See* 98 S. Ct. at 1917.

[FN7]. Comment [1] to Model Rule 8.3 states that "self-regulation of the legal profession *requires* that members of the profession initiate disciplinary investigation when they know of the violation of the Rules of Professional Conduct." Model Rules of Professional Conduct R. 8.3 cmt. (emphasis added).

[FN8]. *Shapero v. Kentucky Bar Assoc.*, 486 U.S. 466; 108 S. Ct. 1916; 100 L.Ed 2nd 475 (1988).

[FN9]. *Michel v. Fed. Dept. Stores Inc.*, 44 F. 3d 1310, 1319 (6th Cir. 1995); *In re Helena Corp.*, 63 F. 3d 877 (9th Cir 1995); and *In re Big Rivers Electric Corp.*, 2002 U.S. Dist. LEXIS 16174 (W.D. Ky. 2002).
21-NOV Am. Bankr. Inst. J. 12

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.