E.  NON-CONSENSUAL CONFIRMATION

The Bankruptcy Court may confirm the Plan over the dissent of any Impaired Class if the Plan satisfies all of the requirements for (i) consensual confirmation under section 1129(a), other than section 1129(a)(8), of the Bankruptcy Code and (ii) nonconsensual confirmation under section 1129(b) of the Bankruptcy Code.

To obtain nonconsensual confirmation of the Plan under a procedure commonly known as "cramdown," it must be demonstrated to the Bankruptcy Court that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each impaired, non-accepting class. A plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are substantially similar to those of the dissenting class and if no class receives more than it is entitled to for its claims or interests. The Debtors believe that the Plan satisfies this requirement.

The Bankruptcy Code provides a non-exclusive definition of the phrase "fair and equitable." The Bankruptcy Code establishes tests for determining what is "fair and equitable" for secured creditors, unsecured creditors and equity holders, as follows:

1.  **Secured Claims**

Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim, or (iii) the property securing the claim is sold free and clear of liens, with such liens to attach to the proceeds of the sale and the treatment of such liens with respect to such proceeds as provided in clause (i) or (ii).

2.  **Unsecured Claims**

Either (i) each impaired unsecured creditor receives or retains, under the plan, property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

3.  **Equity Interests**

Either (i) each holder of an equity interest will receive or retain, under the plan, property of value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled, or the value of the interest or (ii) the holder of an interest that is junior to the non-accepting class will not receive or retain any property under the plan.

The Debtors reserve the right to pursue confirmation of the Plan without having previously obtained sufficient acceptances of the Plan from all Classes of Impaired Claims and Equity Interests. In such case, the Debtors may request confirmation of the Plan under section 1129(b) of the Bankruptcy Code notwithstanding that such Class or Classes did not accept the Plan.

**THE DEBTORS BELIEVE THAT THE PLAN MAY BE CONFIRMED ON A NONCONSENSUAL BASIS (PROVIDED AT LEAST ONE IMPAIRED CLASS OF CLAIMS VOTES TO ACCEPT THE PLAN). ACCORDINGLY, THE DEBTORS WILL DEMONSTRATE AT THE CONFIRMATION HEARING THAT THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(b) OF THE BANKRUPTCY CODE AS TO ANY NON-ACCEPTING CLASS.**

# VIII.

# PLAN-RELATED RISK FACTORS AND

# ALTERNATIVES TO CONFIRMING AND CONSUMMATING THE PLAN

ALL IMPAIRED HOLDERS SHOULD READ AND CAREFULLY CONSIDER THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN.

### A. FINANCIAL INFORMATION; DISCLAIMER

Although the Debtors have used their best efforts to ensure the accuracy of the financial information provided in this Disclosure Statement, the financial information contained in this Disclosure Statement has not been audited and is based upon an analysis of data available at the time of the preparation of the Plan and Disclosure Statement. While the Debtors believe that such financial information fairly reflects the financial condition of the Debtors, the Debtors are unable to warrant or represent that the information contained herein and attached hereto is without inaccuracies.

### B. CERTAIN BANKRUPTCY CONSIDERATIONS

#### 1. Classification Risk

Under Section 1123(a)(4) of the Bankruptcy Code, a plan of reorganization must provide the same treatment for each claim or interest of a particular class, unless the holder of the particular claim or interest agrees to a less favorable treatment of such particular claim or interest. The Debtors can provide no assurance that the Bankruptcy Code will not disapprove of the classifications of Claims and Equity Interests contained in the Plan.

#### 2. The Debtors May be Unable to Expeditiously Transfer the Assets

The estimates of recoveries herein is dependent upon certain assumptions regarding the Debtors' exit of certain locations and the elimination of carrying costs related to such locations and the assets. If the Debtors and UBPA (or a different winning bidder) are unable to expeditiously transfer the assets such that the Debtors can eliminate administrative costs, such continuing administrative costs may decrease creditor recoveries.

#### 3. The Debtors May Not be Able to Secure Confirmation of the Plan.

There can be no assurance that the Debtors will receive the requisite acceptances to confirm the Plan. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting Holder of a Claim or Equity Interest of the Debtors might challenge the adequacy of this Disclosure Statement or contend that the balloting procedures and results are not in compliance with the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determined that the Disclosure Statement and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for confirmation had not been met, including that the terms of the Plan are fair and equitable to non-accepting Classes. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, a finding by the Bankruptcy Court that the Plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting Classes, confirmation of the Plan is not likely to be followed by a liquidation or a need for further financial reorganization, and the value of distributions to non-accepting Holders of claims and interests within a particular class under the Plan will not be less than the value of distributions such Holders would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. While there can be no assurance that these requirements will be met, the Debtors believe that the Plan will not be followed by a need for further liquidation and that non-accepting Holders within each Class under the Plan will receive distributions at least as great as they would receive following a liquidation under chapter 7 of the Bankruptcy Code when taking into consideration all administrative claims and costs

associated with any such chapter 7 case. The Debtors believe that Holders of unsecured claims would receive no distribution under a liquidation pursuant to chapter 7 of the Bankruptcy Code.

### 4. The Confirmation and Consummation of the Plan Are Also Subject to Certain Conditions as Described Herein.

If the Plan is not confirmed, it is unclear whether another liquidating plan could be implemented and what distributions Holders of Claims or Equity Interests ultimately would receive with respect to their Claims or Equity Interests. If an alternative liquidating plan could not be agreed to, it is possible that the Debtors would have to liquidate their assets under chapter 7 of the Bankruptcy Code, in which case it is likely Holders of Claims would receive substantially less favorable treatment than they would receive under the Plan.

### 5. The Debtors May Object to the Amount or Classification of a Claim.

The Debtors reserve the right to object to the amount or classification of any Claim or Equity Interest. The estimates set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim or Equity Interest whose Claim or Equity Interest is subject to an objection. Any such Claim or Equity Interest Holder may not receive its specified share of the estimated distributions described in this Disclosure Statement.

### 6. Nonconsensual Confirmation.

Pursuant to the "cramdown" provisions of section 1129(b) of the Bankruptcy Code, the Bankruptcy Court can confirm the Plan at the Debtors' request if at least one Impaired Class has accepted the Plan (with such acceptance being determined without including the acceptance of any "insider" in such Class) and, as to each Impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such Impaired Classes. See Article VII above. The Debtors believe that the Plan satisfies these requirements, and pursuant to the Plan, will request such nonconsensual confirmation in accordance with section 1129(b) of the Bankruptcy Code in the event Class 1 accepts the Plan.

### 7. Delays of Confirmation and/or the Effective Date

Any delays of either Confirmation or of the Effective Date could result in, among other things, increased Claims of Professionals. These or any other negative effects of delays of either Confirmation or the Effective Date could endanger the ultimate approval of the Plan by the Bankruptcy Court.

### C. PENDING LITIGATION

The Debtors are involved from time to time in routine litigation that is incidental to their businesses. The Debtors do not believe that the outcome of any such litigation will have a materially adverse effect upon the Debtors.

### D. LIQUIDATION UNDER CHAPTER 7

The Debtors believe that the Plan affords Holders of Claims and Equity Interests the potential for the greatest recovery and, therefore, is in the best interests of such Holders. If, however, the Plan is not confirmed in the Chapter 11 Cases, the Debtors may be forced to liquidate under chapter 7 of the Bankruptcy Code pursuant to which a trustee would be elected or appointed to liquidate the Debtors' assets for distribution to creditors in accordance with the priorities established by the Bankruptcy Code. It is impossible to predict precisely how the proceeds of the liquidation would be distributed to the respective holders of claims against or interests in the Debtors.

As described herein, however, the Debtors believe that in a liquidation under chapter 7 of the Bankruptcy Code, before creditors receive any distribution, additional administrative expenses involved in the appointment of a trustee or ~~trustees~~trustee and attorneys, accountants and other professionals to assist such ~~trustees~~trustee would cause a substantial diminution in the value of the Debtors' estates. The assets available for distribution to creditors would be reduced by such additional expenses and by claims, some of which would be entitled to priority, which would

arise by reason of the liquidation and from the rejection of leases and other executory contracts in connection with the cessation of operations and the failure to realize the greater going concern value of the Debtors' assets.

After consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors, including (a) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in a bankruptcy and professional advisors to such trustee, (b) the erosion in value of assets in a chapter 7 case in the context of the expeditious liquidation required under chapter 7 and the "forced sale" atmosphere that would prevail and (c) substantial increases in claims which would be satisfied on a priority basis, **THE DEBTORS HAVE DETERMINED, AS DISCUSSED ON <u>EXHIBIT B</u> OF THIS DISCLOSURE <s>STAETMENT</s>STATEMENT, THAT CONFIRMATION OF THE PLAN WILL PROVIDE EACH CREDITOR AND EQUITY INTEREST HOLDER WITH A RECOVERY THAT IS NOT LESS THAN IT WOULD RECEIVE PURSUANT TO A LIQUIDATION OF THE DEBTORS UNDER CHAPTER 7 OF THE BANKRUPTCY CODE.**

## IX.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

**TO COMPLY WITH INTERNAL REVENUE SERVICE CIRCULAR 230, TAXPAYERS ARE HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED BY ANY TAXPAYER, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A TAXPAYER UNDER THE INTERNAL REVENUE CODE, (B) ANY SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN, AND (C) TAXPAYERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

The following discussion is a summary of certain U.S. federal income tax consequences of the Plan to the Debtors and to Holders of Allowed Claims. This discussion is based on the Internal Revenue Code of 1986, Treasury Regulations promulgated and proposed thereunder, judicial decisions and published administrative rules and pronouncements of the IRS as in effect on the date hereof. Due to the complexity of certain aspects of the Plan, the lack of applicable legal precedent, the possibility of changes in the law, the differences in the nature of the Claims and Equity Interests, the Holders' status and method of accounting and the potential for disputes as to legal and factual matters with the IRS, the tax consequences described herein are subject to significant uncertainties. No legal opinions have been requested from counsel with respect to any of the tax aspects of the Plan and no rulings have been or will be requested from the IRS with respect to any of the issues discussed below. Furthermore, legislative, judicial or administrative changes may occur, perhaps with retroactive effect, which could affect the accuracy of the statements and conclusions set forth below as well as the tax consequences to the Debtors and the Holders of Allowed Claims.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtors or the Holders of Allowed Claims in light of their personal circumstances, nor does the discussion deal with tax issues with respect to taxpayers subject to special treatment under the U.S. federal income tax laws (including, for example, banks, governmental authorities or agencies, pass-through entities, brokers and dealers in securities, insurance companies, financial institutions, tax-exempt organizations, small business investment companies, regulated investment companies and foreign taxpayers). This discussion does not address the tax consequences to Holders of Claims who did not acquire such Claims at the issue price on original issue. No aspect of foreign, state, local or estate and gift taxation is addressed. The Debtors intend to treat the transfers of their assets to Holders of Allowed Claims as taxable transactions for federal income tax purposes, and the following discussion is based on the assumption that such treatment will be respected by the IRS.

**THE FOLLOWING SUMMARY IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE PERSONAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR EQUITY INTEREST. EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO**

CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

### A. CONSEQUENCES TO DEBTORS

Under the Plan and in connection with the sale of the Debtors' assets, the Debtors intend to transfer substantially all of their assets (the "*Transfers*") to Holders of Allowed Claims. The Transfers are intended to constitute taxable transactions resulting in the recognition of gain or loss by the Debtors for federal income tax purposes. Net operating losses ("NOLs") and other loss carryforwards of the Debtors may offset most, if not all, of any such gain. In the event that the NOLs and the capital loss carryforwards are not sufficient to offset potential gains arising from the liquidations, the Debtors will be jointly and severally liable for the resulting tax liability. The Debtors have not estimated the amount of tax liability, if any, that will arise with respect to the Plan and the transactions contemplated thereunder.

A corporation or a consolidated group of corporations may incur alternative minimum tax liability even where NOL carryovers and other tax attributes are sufficient to eliminate its taxable income as computed under the regular corporate income tax. It is possible that the Debtors may be liable for the alternative minimum tax.

### B. FEDERAL INCOME TAX TREATMENT OF LIQUIDATING TRUST

#### 1. Classification of Liquidating Trust

Pursuant to the Plan, the Debtors will transfer the Liquidating Trust Assets to the Liquidating Trust and the Liquidating Trust will become obligated to make Distributions in accordance with the Plan. The Plan provides, and this discussion assumes, that the Liquidating Trust will be treated for federal income tax purposes as a "liquidating trust," as defined in Treasury Regulation Section 301.7701-4(d), and will therefore be taxed as a grantor trust, of which the beneficiaries will be treated as the owners and grantors thereof (the "*Beneficiaries*"). Accordingly, because a grantor trust is treated as a pass-through entity for federal income tax purposes, no tax should be imposed on the Liquidating Trust itself with respect to the income earned or gain recognized by the Liquidating Trust. Instead, the Beneficiaries will be taxed on their allocable shares of such net income or gain in each taxable year (determined in accordance with the Liquidating Trust Agreement), whether or not they received any distributions from the Liquidating Trust in such taxable year.

Although the Liquidating Trust has been structured with the intention of complying with guidelines established by the IRS in Rev. Proc. 94-45, 1994-2 C.B. 684, for the formation of liquidating trusts, it is possible that the IRS could require a different characterization of the Liquidating Trust, which could result in different and possibly greater tax liability to the Liquidating Trust and/or the Holders of Allowed Claims. No ruling has been or will be requested from the IRS concerning the tax status of the Liquidating Trust and there can be no assurance the IRS will not require an alternative characterization of the Liquidating Trust.

#### 2. Tax Reporting

The Liquidating Trustee will file tax returns with the IRS for the Liquidating Trust as a grantor trust in accordance with Treasury Regulation Section 1.671-4(a). The Liquidating Trustee will also send to each Beneficiary a separate statement setting forth the Beneficiary's allocable share of items of income, gain, loss, deduction or credit and will instruct the Beneficiary to report such items on such Beneficiary's federal income tax return.

#### 3. Claim Reserve for Disputed Claims

The Liquidating Trust will pay taxes on the taxable net income or gain allocable to Holders of Disputed Claims on behalf of such Holders and, when such Disputed Claims are ultimately resolved, Holders whose Disputed Claims are determined to be Allowed Claims will receive distributions from the Liquidating Trust net of taxes which the Liquidating Trust had previously paid on their behalf.

## C. CONSEQUENCES TO HOLDERS OF CLAIMS

The federal income tax consequences of the Plan to a Holder of a Claim will depend upon several factors, including but not limited to: (1) the manner in which a Holder acquired a Claim; (2) the length of time the Claim has been held; (3) whether the Claim was acquired at a discount; (4) whether the Holder has taken a bad debt deduction with respect to the Claim (or any portion thereof) in the current or prior years; (5) whether the Holder has previously included accrued or unpaid interest with respect to the Claim; (6) the method of tax accounting of the Holder; and (7) whether the Holder receives distributions under the Plan in more than one taxable year. **HOLDERS ARE STRONGLY ADVISED TO CONSULT THEIR TAX ADVISORS WITH RESPECT TO THE TAX TREATMENT UNDER THE PLAN OF THEIR PARTICULAR CLAIMS.**

### 1. Holders of Allowed Claims

Generally, a Holder of an Allowed Claim will recognize gain or loss equal to the difference between the "amount realized" by such Holder and such Holder's adjusted tax basis in the Allowed Claim. The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under the Plan in respect of a Holder's Claim, including, to the extent such Holder is a Beneficiary of the Liquidating Trust, the fair market value of each such Holder's proportionate share of the assets transferred to the Liquidating Trust on behalf of and for the benefit of such Holder (but only to the extent that such cash or other property is not allocable to any portion of the Allowed Claim representing accrued but unpaid interest (*see* discussion below)).

It is possible that since a Holder's share of the assets held in the Liquidating Trust may change depending upon the resolution of Disputed Claims, the Holder may be prevented from recognizing any loss in connection with consummation of the Plan until the time that all such Disputed Claims have been resolved. **HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE RECOGNITION OF GAIN OR LOSS, FOR FEDERAL INCOME TAX PURPOSES, ON THE SATISFACTION OF THEIR ALLOWED CLAIMS.**

### 2. Distributions in Discharge of Accrued but Unpaid Interest

There is uncertainty regarding the extent to which the receipt of cash or other property should be treated as attributable to unpaid accrued interest. To the extent any property received pursuant to the Plan is considered attributable to unpaid accrued interest, a Holder will recognize ordinary income to the extent the fair market value of the property exceeds the amount of unpaid accrued interest previously included in gross income by the Holder. A Holder's tax basis in such property should be equal to the amount of interest income treated as satisfied by the receipt of the property and the holding period of such property should begin on the day following the receipt of such consideration. A Holder generally will be entitled to recognize a loss to the extent any accrued interest previously included in its gross income is not paid in full. **HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE ALLOCATION OF CONSIDERATION RECEIVED IN SATISFACTION OF THEIR ALLOWED CLAIMS AND THE FEDERAL INCOME TAX TREATMENT OF ACCRUED BUT UNPAID INTEREST.**

### 3. Character of Gain or Loss; Tax Basis; Holding Period

The character of any gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss recognized by a Holder of an Allowed Claim under the Plan will be determined by a number of factors, including, but not limited to, the status of the Holder, the nature of the Allowed Claim in such Holder's hands, the purpose and circumstances of its acquisition, the Holder's holding period of the Allowed Claim, and the extent to which the Holder previously claimed a deduction for the worthlessness of all or a portion of the Allowed Claim. The Holder's aggregate tax basis for any consideration received under the Plan will generally equal the amount realized in the exchange (less any amount allocable to interest as described in the preceding paragraph). The holding period for any consideration received under the Plan will generally begin on the day following the receipt of such consideration. Holders of Claims who recognize capital losses will be subject to limitation on the use of such capital losses.

## D. CONSEQUENCES TO HOLDERS OF EQUITY INTERESTS

55

Pursuant to the Plan, all Equity Interests in all of the Debtors are being extinguished. A Holder of any Equity Interest extinguished under the Plan should generally be allowed a "worthless stock deduction" in an amount equal to the Holder's adjusted basis in the Holder's Equity Interest. A "worthless stock deduction" is a deduction allowed to a Holder of a corporation's stock for the taxable year in which such stock becomes worthless. If the Holder held the Equity Interest as a capital asset, the loss will be treated as a loss from the sale or exchange of such capital asset. Capital gain or loss will be long-term if the Equity Interest was held by the Holder for more than one year and otherwise will be short-term. Any capital losses realized will generally be subject to limitation on the use of such losses.

### E. WITHHOLDING

All Distributions to Holders of Allowed Claims under the Plan are subject to any applicable withholding, including employment tax withholding. The Debtors and/or the Liquidating Trust will withhold appropriate employment taxes with respect to payments made to a Holder of an Allowed Claim which constitutes a payment for compensation. Payers of interest, dividends, and certain other reportable payments are generally required to backup withholding at a rate not in excess of 28% of such payments if the payee fails to furnish such payee's correct taxpayer identification number (social security number or employer identification number), to the payor. The Debtors and/or the Liquidating Trust may be required to withhold a portion of any payments made to a Holder of an Allowed Claim if the Holder (i) fails to furnish the correct social security number or other taxpayer identification number ("TIN") of such Holder, (ii) furnishes an incorrect TIN, (iii) has failed to properly report interest or dividends to the IRS in the past, or (iv) under certain circumstances, fails to provide a certified statement signed under penalty of perjury, that the TIN provided is the correct number and that such Holder is not subject to backup withholding. Backup withholding is not an additional tax. Amounts withheld under the backup withholding rules may be credited against a Holder of an Allowed Claim's United States federal income tax liability, and a Holder of an Allowed Claim may obtain a refund of any excess amounts withheld under the backup withholding rules by filing an appropriate claim for refund with the IRS. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

**AS INDICATED ABOVE, THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT SUCH HOLDER'S TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

# X.

## RECOMMENDATION

In the opinion of the Debtors, the Plan is preferable to the alternatives described herein because it provides for a larger distribution to the Holders of Claims than would otherwise result in a liquidation under chapter 7 of the Bankruptcy Code. In addition, any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller distributions to the Holders of Claims. *Accordingly, the Debtors recommend that Holders of Claims entitled to vote on the Plan support confirmation of the Plan and vote to accept the Plan.*

Dated: ~~August 31,~~September 30, 2010          Respectfully submitted,

Universal Building Products, Inc.
Accubrace, Inc.
Don De Cristo Concrete Accessories, Inc.
Form-Co, Inc.
Universal Form Clamp, Inc.

By: _____
Name: ~~Jeffrey~~Gregory ~~Church~~Waller
Title:   Authorized Officer Signatory of the Debtors

# EXHIBIT A

**Debtors' First Modified Joint Liquidating Plan of Reorganization**

**EXHIBIT B**

**Hypothetical Liquidation Analysis**

**[TO COME]**

Document comparison done by DeltaView on Thursday, September 30, 2010 4:13:14 PM

| Input: | |
|---|---|
| Document 1 | PowerDocs://BBLCH_E/484856/9 |
| Document 2 | PowerDocs://BBLCH_E/484856/13 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 447 |
| Deletions | 363 |
| Moved from | 18 |
| Moved to | 18 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 846 |