IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

In re:

UNIVERSAL BUILDING PRODUCTS,
INC., et al.,[1]

              Debtors.

---------------------------------------------------------- x

Case No. 10-12453 (MFW)

Chapter 11

(Jointly Administered)

Hearing Date: October 7, 2010
Objection Deadline: October 1, 2010 at noon
(extended by agreement of the parties)
Reply Deadline: October 5, 2010 at noon

Re: Docket No. 177, 178, 179, 214, 270, 271, 273

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (A) REPLY TO DEBTORS' OBJECTION TO THE EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER (I) APPOINTING A CHAPTER 11 TRUSTEE PURSUANT TO 11 U.S.C. §§ 105(A) AND 1104(A) AND BANKRUPTCY RULES 2007.1 AND 9014; OR IN THE ALTERNATIVE, (II) TERMINATING THE DEBTORS' EXCLUSIVITY PERIODS PURSUANT TO 11 U.S.C. §§ 105(A) AND 1121(D), (B) REQUEST FOR MEDIATION AND (C) SUPPLEMENT TO OBJECTION TO THE APPROVAL OF THE DISCLOSURE STATEMENT

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors in possession (the "Debtors"), by and through its proposed counsel, Arent Fox LLP and Elliott Greenleaf, respectfully submits this (A) reply ("Reply") to the Debtors' Objection [Docket No. 273] (the "Trustee Objection") to the Emergency Motion of the Official Committee of Unsecured Creditors for Entry of an Order (I) Appointing a Chapter 11 Trustee Pursuant to 11 U.S.C. §§ 105 (a) and 1104(a) and Bankruptcy Rules 2007.1 and 9014; or in the alternative, (II) Terminating the Debtors' Exclusive Periods Pursuant to 11 U.S.C.

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, if applicable, are: (i) Universal Building Products, Inc. (7884); (ii) Accubrace, Inc. (3418); (iii) Don De Cristo Concrete Accessories, Inc. (7547); (iv) Form-Co., Inc. (0079); and (v) Universal Form Clamp, Inc. (3003).

§§ 105(a) and 1121(d) [Docket No. 214] (the "Trustee Motion"), (B) request for mediation and (C) supplement to the Precautionary Objection and Reservation of Rights with respect to (i) the Debtors' Motion for Entry of an Order: (A) Approving the Disclosure Statement; (B) Approving Certain Dates Related to Confirmation of the Plan; and (C) Approving the Form of Certain Documents to be Distributed in Connection with Solicitation of the Plan and (ii) Disclosure Statement for the Joint Liquidating Plan of Universal Building Products, Inc. and Certain of Its Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code [Docket No. 270].[2] In this Reply, the Committee states as follows:

## PRELIMINARY STATEMENT

1. The overriding goal of these "no going concern" cases is to maximize the return for unsecured creditors through compromise and settlement and confirmation of a consensual plan of liquidation. Unfortunately, to achieve that goal, the unsecured creditors need this Court's intervention by way of either ordering that the parties participate in mediation or ordering the appointment of an independent fiduciary.

2. During the August 26th hearing, the Debtors, the Lenders, and the Committee agreed to a global resolution that would, in fact, maximize the return to unsecured creditors by, *inter alia*, preserving the Excluded Property[3] for the benefit of unsecured creditors and

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Trustee Motion.

[3] Paragraph (ii) of the Final Order (A) Authorizing and Approving Debtors' Post-Petition Financing; (B) Granting Liens and Superpriority Administrative Expense Status; (C) Authorizing Use of Cash Collateral and Affording Adequate Protection; and (D) Modifying Automatic Stay [Docket No. 167] (the "Final DIP Order") defines "Excluded Property" as:

> (i) any and all avoidance actions or other claims or causes of action under Chapter 5 of the Bankruptcy Code and products and proceeds thereof (the "Avoidance Actions") or (ii) other claims or causes of action, in each case of (i) and (ii), not related to or asserted against (y) NewCo (as hereinafter defined) or any affiliate, successor or assign thereof, including, without limitation, Dayton Superior Corporation, and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates, shareholders, financial advisors and representatives (each of the foregoing solely in their capacity as such), or . . . (iii) the difference of (A) the funds borrowed or available to be borrowed under the

establishing the framework for a plan of liquidation. The Committee hoped that the Debtors would, in good faith, work towards the formulation of such a plan and minimize the administrative costs of these estates. Regrettably, the short history of these cases demonstrates that the Committee was misled and that these cases are spiraling out of control, which is evidenced by, among other things, the Lenders' notifying the Debtors of an Event of Default under the Final DIP Order due to the Debtors' failure to timely request an extension of the Budget. This Court's intervention is now necessary.

3. The pleadings and papers filed in these cases speak for themselves as to the inability of the Committee to work with the Debtors' lead counsel, and the Debtors' lead counsel's inability to work with the Committee. The pleadings also reinforce the Committee's loss of trust and confidence in the Debtors and their professionals. The creditors should not be forced to bear the burden and expense of the decisions and personal animosity of Debtors' lead counsel. As set forth in the Trustee Motion and in this reply, the appointment of a Chapter 11 trustee is essential to an efficient and cost-effective resolution to these cases, and to a plan that will appropriately protect the interests of the real parties in interest in these cases – the unsecured creditors.

4. There is no longer a need for a debtor-in-possession, with a multitude of management officials, attorneys, and financial advisors. The only meaningful tasks left in these cases are the monetizing of the Excluded Property and the liquidation or return of the remainder of the Lenders' collateral – tasks that can be undertaken more efficiently and with far less administrative costs by an independent fiduciary. Instead of focusing on achieving a consensual mechanism to accomplish these tasks, the Debtors' professionals have chosen to embark on an

---

DIP Facility up to the Maximum Amount . . . less (B) any amounts borrowed under the DIP Facility and spent . . . .

expensive and defamatory campaign to render the Committee ineffective and damage the reputation of the Committee's professionals. These cases cannot afford the continued litigation. The Committee is extremely concerned that the Debtors' actions are reducing any possible recovery for unsecured creditors. The Debtors and their professionals should no longer be involved in these cases; rather, an independent third party should be responsible for liquidating the Excluded Property and otherwise dealing with the Lenders' collateral. Even if this means converting these cases to ones under Chapter 7 of the Bankruptcy Code.

5. Should the Court not appoint an independent fiduciary or believe that the parties can find common ground, the Committee suggests that the Court direct the parties to participate in mediation so that a consensual plan that is consistent with the orders entered in these proceedings, and fair and beneficial to unsecured creditors, can be developed.

## REPLY

6. The background of these cases and the actions taken by the Debtors and their lead counsel is set forth in detail in the Trustee Motion, which is fully incorporated herein by reference.

### A. The Plan Negotiations

7. Since the filing of the Trustee Motion, these cases have proceeded on two tracks. One track has been the negotiations over the terms of the plan between the Debtors, the Lenders, and the Committee. In order to make those sessions as effective as possible and in light of the so-called "personality conflicts" that developed in the early stages of these cases, the Committee's former lead counsel stepped back from the case and other attorneys assumed the lead in negotiating plan terms, including the Chair of the Arent Fox Bankruptcy and Financial Restructuring Group, Andrew I. Silfen. The Committee was hopeful that this change would

result in the cessation of hostilities so that the parties could work toward an effective resolution that would preserve value for unsecured creditors.

8. Thereafter, and in the wake of the Trustee Motion, the Debtors returned to negotiations, and the professionals for the Debtors (other than lead counsel), the Committee, and the Lenders had numerous drafting sessions over the next few weeks to narrow and resolve the outstanding issues.[4]

9. The Committee's hopes were being realized as the negotiating sessions were extremely productive and progress was being made toward the ultimate goal of crafting a plan of liquidation that would (a) preserve the Excluded Property for the benefit of unsecured creditors, (b) grant unsecured creditors a right to vote to accept or reject the plan, (c) limit the scope of involuntary, coerced third-party releases, (d) provide creditors an opportunity to opt-out of the third-party releases, (e) create a workable trust structure providing the true beneficiaries of that trust – the unsecured creditors and the Lenders – an adequate voice in the selection of the trustee and the effectuation of the trust, and (f) create a plan that is confirmable and consistent with the orders entered in these proceedings. In view of the progress that was made, the Committee believed that the issues it had raised in the Trustee Motion had been heard and that the parties were now dealing more productively with one another as Committee concerns with the proposed plan were being seriously considered and negotiated, instead of being dismissed out of hand.

10. Notably, at the same time plan negotiations were seemingly becoming more productive, Debtors' lead counsel was off on a litigation rampage making a singular focus on plan negotiations somewhat challenging. But even despite this challenge, all parties, other than

---

[4] Mr. Silfen and Debtors' lead counsel also had general discussions but generally were not participating in the drafting sessions.

Debtors' lead counsel (and his litigation team), continued to make progress on the resolution of the outstanding plan issues.

11. Plan negotiations were proceeding forward and several revised draft plans had been exchanged. Then, on September 29th, a conference call was held to finalize the terms of the proposed plan and review the draft plan that had been circulated, in which Debtors' lead counsel participated. This call, unlike the calls of the prior three weeks, almost immediately returned to the kind of tone that had plagued early negotiations and led to the Committee's filing of the Trustee Motion. Debtors' lead counsel flatly rejected certain of the Committee's requested changes, without any substantive reason or justification. When asked for a reason, Debtors' lead counsel began hurling invective at the Committee's attorneys and financial advisors, and, as might be expected, the call degenerated from there.

12. The next day, September 30th, counsel (other than Debtors' lead counsel) attempted to continue negotiations regarding the terms of a consensual plan. Lenders' counsel and Committee counsel held several conference calls and corresponded on different matters so as to try to resolve the outstanding issue between those parties. Debtors' counsel (other than Debtors' lead counsel) also continued to participate and even provided a revised mark-up of the proposed plan at 3:19 p.m. ET (the "3:19 Mark-Up"). The parties tried but were not able to reach Debtors' lead counsel to discuss the needed resolution of outstanding issues – reportedly, because he was consumed with drafting an objection to the Committee's applications to retain counsel.

13. With the goal of maintaining momentum and progress, the parties began to review the 3:19 Mark-Up. However, before any party had any meaningful opportunity to comment on that draft, the Debtors suddenly and without notice filed a revised version of the proposed plan

[Docket No. 269] (the "Revised Plan") and disclosure statement [Docket No. 271] (the "Revised Disclosure Statement"). The Revised Plan utilizes parts of the draft plan circulated as part of the negotiation process. These documents were filed shortly after 5:00 p.m. ET and do not match the revisions contained in the 3:19 Mark-Up. Indeed, the Revised Plan and Revised Disclosure Statement revert to several of the unacceptable terms that were in the original plan, such as the exclusion of the Committee and the general unsecured creditors from any meaningful voice in the liquidating trust that is established for their benefit and allows Excluded Property to be used to liquidate the Lenders' collateral. Neither the Lenders nor the Committee consented to the filing of these documents. Indeed, the Debtors' actions prompted the Lenders to file a reservation of rights expressly disavowing the Debtors' acts [Docket No. 276].[5]

### B. The Retention Dispute

14. As noted above, while plan negotiations were ongoing among some of the professionals, the cases were also proceeding along a second track where the Debtors' lead counsel (and his litigation team) was pulling out all the stops to object to and defeat the retention of Committee professionals. First, Debtors' counsel prematurely filed a motion to compel discovery from Committee counsel before even serving the actual discovery. Second, Debtors' counsel served multiple sets of discovery regarding the Committee's selection of its professionals, then withdrew some of the discovery, then re-served more harassing discovery on September 30th. Indeed, Debtors' counsel sent a notice of subpoena directed to Arent Fox on the very same day the Debtors filed an objection to the applications to retain counsel and at the same

---

[5] Notwithstanding the Debtors' actions, the Committee and the Lenders continue to discuss and negotiate the outstanding plan issues. The Committee is hopeful that the Lenders will support the appointment of a chapter 11 trustee or the mediation request as it appears to be the best, and most cost-effective, avenues for breaking the impasse that has developed. The Committee understands that the Lenders may have the right to call a default under the DIP Facility due to the appointment of an independent fiduciary, but would work with the Lenders in an effort to persuade the Lenders to continue funding notwithstanding the appointment of a trustee.

time that other members of the Debtors' professional team were purporting to negotiate with the Committee over the plan. Approximately 450 pages of documents have been produced, in addition to a sworn declaration of one of the Committee members completely controverting a "fact" that Debtors had "heard," which had prompted some of the discovery.

15. On September 17, Debtors' counsel also deposed Dr. Haishan Liu, the Committee's proposed translator, for more than nine hours. This deposition should have been dispositive, as Dr. Liu's testimony plainly demonstrated that the Committee's professionals adequately disclosed all connections and that no disqualifying ethical violations occurred. Debtors' counsel has nevertheless continued to press the matter, demanding more and more discovery, but the Committee still thought that an objection would not be filed given Dr. Liu's testimony.

16. Debtors' counsel then filed their 36-page Debtors' Combined Objection to Application for Orders Authorizing Employment and Retention of Arent Fox LLP and Elliot Greenleaf as Counsel for the Official Committee of Unsecured Creditors *Nunc Pro Tunc* to August 13, 2010 [Docket No. 268] (the "Retention Objection") on September 30, 2010.[6] This is the very same document that kept Debtors' lead counsel out of contact with respect to substantive issues at such a critical time. What is clear is that notwithstanding ongoing negotiations, Debtors' lead counsel had his own agenda to target the Committee and its professionals so that a plan of liquidation that benefits only his clients could be pushed through without meaningful opposition.

---

[6] Debtors' counsel attached as an exhibit to the Retention Objection privileged communications that were inadvertently produced and immediately clawed back during the discovery process. Debtors' counsel claimed the attachment of these documents was mistaken and excused the mistake by claiming that no partner at K&L Gates reviewed the exhibits prior to filing. While the mistake may have been rectified, given the conduct of lead counsel, the Committee and its professionals are skeptical that the attachment of privileged materials was inadvertent. In addition, the Committee and its professionals are concerned that the Debtors filed documents that were not reviewed by any partner overseeing these cases.

17. In the Trustee Objection, the Debtors make much of the fact that the Trustee Motion was filed after the Debtors filed a premature motion seeking to compel discovery from the Committee's professionals. However, the latter had nothing to do with the former. Rather, the Committee determined to file the motion and Committee's counsel began drafting the Trustee Motion before the discovery motion was served. Well before the filing of the discovery motion, it had become painfully obvious that Debtors' lead counsel could not effectively work with the other professionals in these cases and the Committee was concerned about the direction of this case. The Committee also had concerns that the Debtors were seeking to pursue a plan that did not comport with the global resolution between the parties. The original plan clearly deviated from the global settlement and even the Revised Plan filed without notice or consent also deviates by not providing creditors a voice in the trustee selection and transferring Excluded Property away from the unsecured creditors through the payment of liquidating trust expenses.

18. Since the Revised Plan does not comport with the agreements contained in the Final DIP Order and Sale Order, the Committee will oppose that plan as its obligations to support a plan only relate to a plan that complies with those orders. The Committee will also oppose the Revised Plan because doing so will preserve valuable estate causes of action against the Debtors' professionals. One such claim, included as part of the Excluded Property, is a claim against the Debtors' professionals for negligence and malpractice and a breach of fiduciary duty claim against the board of directors for failure to comply with WARN Act obligations prior to the Petition Date and related actions and inactions.

19. The Committee and its professionals are not seeking this relief to avoid the allegations contained in the Retention Objection. To the contrary, the Committee and its professionals welcome the opportunity to respond to the unfounded, unsupported, and

defamatory allegations made in that filing and have asked the Court for adequate time to ensure they can do so in a careful and comprehensive way. At the same time, the Committee professionals recognize the need to move forward on substantive plan issues so as to preserve the limited value available to unsecured creditors. Consequently, the Committee is compelled to pursue the Trustee Motion because the appointment of an independent fiduciary appears to be the only means to get this case on track, reduce professional fee costs, and ensure fair treatment and for unsecured creditors.

### C. The Need For An Independent Fiduciary

20. Given the Debtors' distractions,[7] its desire to render the Committee ineffective, and its disagreements with the Lenders, it is obvious that an independent fiduciary is needed. By continuing to engage in harsh litigation tactics, the Debtors have done nothing but diminish the estates' limited resources for the sole benefit of the Debtors' professionals.[8] It is time to put a stop to these actions and to re-prioritize the goals of these cases such that creditors' interests come first. The only way to do that is to displace the parties controlling these cases and to appoint an independent fiduciary.

21. The Debtors assert that the appointment of a Chapter 11 trustee will only increase the costs of these cases and diminish the return to creditors. The Committee does not believe

---

[7] Given the distractions of Debtors' lead counsel, the Debtors almost permitted the DIP Financing to expire. The DIP Budget attached to the Final DIP Order expired on October 1, 2010 and, as of the morning of October 1, 2010, the Debtors had not provided a formal written request for an extension or provided an extended draft budget to the Lenders or the Committee despite requests to do so – reportedly because the Debtors' lead counsel was focusing exclusively on the Arent Fox and Elliott Greenleaf retention objection.. Indeed, as a result of the failure to submit a timely request for an extension, on October 4, 2010, the Lenders informed the Debtors that an Event of Default existed under the Final DIP Order and related documents. This lack of care and attention to the substance of these cases is further evidence of the need for an independent fiduciary to step in and conduct an orderly wind-down of the Debtors' estates and monetize the Excluded Property for the benefit of unsecured creditors.

[8] The U.S. Trustee has questioned whether the Debtors' litigation efforts will, in fact, deplete estate assets available for creditors. However, even when asked directly, the Debtors' professionals have not indicated any intent not to seek compensation from the estate for what undoubtedly is hundreds of hours in time and thousands of dollars in costs devoted to fighting Arent Fox and Elliott Greenleaf's retention, including discovery efforts aimed at cases other than UBP.

that to be the case in light of the Debtors' continued harassing and salacious litigation. Indeed, the terms of a consensual plan are within reach and a Chapter 11 trustee could easily be appointed to resolve the final outstanding issues and maintain value for unsecured creditors. If a trustee is not appointed, the Committee is concerned that Debtors' professional fees will consume the recovery Debtors' counsel purports to protect. These cases simply cannot afford the continued litigation and must be pushed forward to a meaningful and prompt conclusion through the appointment of an independent fiduciary.

22. Finally, the Debtors also assert that appointment of a trustee will result in the Lenders pursuing their pending lift stay motion and foreclose on the collateral. The Lenders already have assumed control of a majority of the collateral through the consummation of the sale. The majority of the remaining estate property, *i.e.* the Excluded Property, is not subject to the Lenders' liens or claims and would not be subject to any foreclosure. The Lenders do retain a lien on certain collateral, but this collateral can either be distributed to the Lenders or administered for the Lenders' benefit and at the Lenders' expense by the liquidating trustee. Consequently, the Debtors' argument on this issue should be disregarded and the interest of creditors, which weigh heavily in favor of the appointment of an independent fiduciary, should be paramount.

## REQUEST FOR MEDIATION

23. Should the Court determine it is not appropriate to appoint an independent fiduciary such as a Chapter 11 trustee at this time, or even convert these proceedings, the Committee respectfully requests that the Court require the parties to attend a mediation conducted by a Bankruptcy Judge for the District of Delaware or the Southern District of New York, should one be available. The Committee believes that mediation could allow the parties to resolve the outstanding issues promptly and propose a confirmable plan of liquidation that

preserves value for unsecured creditors and minimizes the ever-growing administrative costs of these cases.

## REQUEST FOR SOLICIATION LETTER

24. The Committee opposes the approval of the Disclosure Statement because the Revised Plan (a) does not comport with the orders entered in these proceedings, (b) is not confirmable and (c) is not in the best interest or fair to unsecured creditors. Thus, approval of the Disclosure Statement should be withheld.

25. If the Court should determine that an independent fiduciary is unnecessary and that the Debtors should be permitted to solicit votes on the Revised Plan, the solicitation materials should include the Committee's views on the Revised Plan, which are essential to permit the unsecured creditors to make an informed decision as to whether to accept or reject that plan. Accordingly, the Committee respectfully requests that the Court direct the Debtors to include in their solicitation materials a letter from the Committee expressing its views.

WHEREFORE, the Committee respectfully requests that the Court enter an Order (a) appointing a Chapter 11 trustee or convert these proceedings to ones under Chapter 7, (b) or in the alternative, directing the parties to participate in mediation, (c) allowing the Committee to include a letter as part of the solicitation materials should the Court allow the Revised Plan to go out for voting, and (d) granting such other and further relief as this Court deems just and appropriate.

Dated: October 4, 2010

ELLIOTT GREENLEAF

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Shelley A. Kinsella (DE Bar No. 4023)
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801

Telephone: (302) 384-9400
Facsimile: (302) 384-9399
Email: rxza@elliottgreenleaf.com
Email: sak@elliottgreenleaf.com

-and-

Henry F. Siedzikowski (*admitted pro hac vice*)
925 Harvest Drive
P.O. Box 3010
Blue Bell, PA 19422
Phone: (215) 977-1000
Fax: (215) 977-1099
Email: hfs@elliottgreenleaf.com

-and-

Arent Fox LLP
Andrew I. Silfen
James Sullivan
1675 Broadway
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Email: silfen.andrew@arentfox.com
Email: sullivan.james@arentfox.com

-and-

Carol Connor Cohen
Caroline Turner English
Jeffrey N. Rothleder
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: 202-828-3472
Facsimile: 202-857-6395
Email: cohen.carol@arentfox.com
Email: english.caroline@arentfox.com
Email: rothleder.jeffrey@arentfox.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*