IN THE UNITED STATES BANKRUPCTY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UNIVERSAL BUILDING PRODUCTS, INC., et al. | ) ) | Case No. 10-12453 (MFW) |
| | ) | Jointly Administered |
| Debtors. | ) ) | |
| | ) | Re: Docket Nos. 145 and 268 |

**ELLIOTT GREENLEAF'S RESPONSE TO DEBTORS' COMBINED OBJECTION TO APPLICATIONS FOR ORDERS AUTHORIZING EMPLOYMENT AND RETENTION OF ARENT FOX LLP AND ELLIOTT GREENLEAF AS COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS *NUNC PRO TUNC* TO AUGUST 13, 2010**

Elliott Greenleaf ("EG") files this response in opposition to Debtors' Combined Objection to Applications for Orders Authorizing Employment and Retention of Arent Fox LLP and Elliott Greenleaf as Counsel for the Official Committee of Unsecured Creditors *Nunc Pro Tunc* to August 13, 2010. Debtors' Objection, for which they lack standing, is frivolous and an obvious attempt to gain leverage in negotiations with the Creditors' Committee to obtain the maximum possible protection for Debtors' management.

In an obvious attempt to skirt Bankruptcy Rule 9011, Debtors base the objection on what they allege **"appears to be"** a *quid pro quo* arrangement with creditors with whom EG has no prior relationship. However, the facts, as opposed to Debtors' speculation and conclusory statements, demonstrate that EG committed no impropriety, meets even the higher standard applicable to Debtors' Counsel, the disinterested requirement, and has made appropriate disclosures.

When Debtors' Petition was filed, EG properly sent the list of the top thirty creditors to a list of professionals with whom it had a prior relationship and who consented to receive such

communications from EG. One such professional was Dr. Haishan Liu, who received similar communications from a number of law firms. EG requested his support for its application to become counsel to the Official Committee of Unsecured Creditors (the "Committee"), if he represented anyone on the list who was chosen to serve by the U.S. Trustee ("UST"). Because EG knew that most of Dr. Liu's contacts were in China and the Far East, they reminded him that if anyone needed proxies, the UST had rules that needed to be followed, and because of the speed of the process, any such creditor needed to move quickly. They offered to help find proxies if necessary. While EG was certainly hopeful that Dr. Liu or any creditor he represented would support their application, they never extracted any agreement to that effect, nor provided a *quid pro quo* for such non-existent agreement.

As it turned out, Dr. Liu held the proxy for one creditor chosen by the UST for a Creditors' Committee consisting of five creditors. Neither EG, nor AF had any prior connections to any of the other four Committee members, a fact Debtors self-servingly ignore. After interviewing many national and Delaware law firms, the Committee unanimously selected EG and AF.

Despite Debtors' unsupported assertions, nothing in this violates the Rules of Professional Conduct or the disinterested requirement of the Bankruptcy Code. EG fully disclosed its existing relationships with Dr. Liu, and although Debtors cite no rule that would make such disclosure necessary, EG filed supplemental disclosures providing the details of its indirect contact with two Asian creditors whom Dr. Liu represents (one of whom was chosen for the Committee). Debtors' Objection must be rejected and the Court should consider surcharging Debtors' counsel for the fees expended in this frivolous tactic.

In further support of EG's response to Debtors' Objection, EG states:

## The Debtors' Lack Standing

1. Preliminarily, EG questions the Debtors' standing to raise the instant objection. A party has standing in bankruptcy court if the order at issue "diminishes his property, increases his burdens, or impairs his rights." *In re: ANC Rental Corp.*, 2003 U.S.App. LEXIS 2159 *7 (3d Cir. Dec. 13, 2002); *Newspaper & Mail Deliverers' Union*, 1991 U.S. Dist. LEXIS 16337 (S.D.N.Y. Nov. 12, 1991). The debtor has the burden of demonstrating "a direct and adverse pecuniary interest" in the order. *In re Williams*, 181 B.R. 532, 535 (D. Kan. 1995) (quoting *In re Am. Ready Mix, Inc.*, 14 F.3d 1497, 1500 (10th Cir.)).

2. Here, the Debtors do not have a pecuniary interest in the Committee's selection of its counsel. An order approving EG will not diminish the Debtors' property, increase its burden or impair its rights. Of course, any compensation EG may receive for its services will be paid out of the Debtors' Estate. But the Debtors are not asserting that the Committee is not entitled to counsel in general. Instead they are tactically objecting to the counsel that the Committee selected. Whether Committee's counsel is EG or another firm that the Debtors like better will not diminish the Debtors' property, increase its burden or impair its rights. For this reason alone the Debtors' objection should be rejected.

## The Debtors' Speculations Lack Evidentiary Support

3. There is no actual evidence to support the Debtors' insinuation that EG attempted to take advantage of creditors or otherwise put their interests ahead of its client. EG is disinterested and satisfied all disclosure requirements in this case. As such, EG's representation of the Committee should be approved.

4. There was no solicitation agreement. On the contrary, the facts, as opposed to the Debtors' mischaracterizations, are that upon the filing of a Chapter 11 Petition, EG analyzes the

3

available material and conducts additional research to determine if it appears to be a case where EG can add value to the unsecured creditors through representation of a creditors committee.[1] If it appears to be such a case, EG sends information, including the list of thirty largest unsecured creditors, to professionals with whom it has a prior existing relationship and who have consented to receive the information. Among these professionals is Dr. Liu, whom EG has worked with on several matters and whom EG understands to have a substantial network of connections with Chinese and other Asian exporters. EG expects that if such professionals know a creditor on the list and can properly contact them, then they will pass the information along and determine their interest in serving on a creditors committee. Since the UST in Delaware does not permit creditors to participate in the organizational meeting by telephone, but requires in-person attendance by the creditor or a legal proxy, EG offers general guidance on the requirements for a proxy if a creditor wishes to have one. At no time does EG require a creditor to commit to vote for EG as counsel to the committee in the proxy or otherwise. As demonstrated by the creditor for whom EG arranged a proxy (Mr. Urbanchuk), but who was not selected to the Committee, EG does not intervene in the conversations between the proxy and his or her principal.[2] The Debtors have no evidence, nor does any such evidence exist, that EG took steps to "harvest votes." EG does not offer contact information beyond what is provided with the public filings. When asked for additional info, EG directs Dr. Liu to the Debtors and the UST, thereby disproving Debtors' allegation it was trying to conceal anything from the UST. While EG will help arrange a "suitable" proxy (*i.e.* one who knows the rules and understands the fiduciary duty

---

[1] Obviously, there are cases where the debtor is so insolvent that it is highly unlikely that any recovery can be created for unsecured creditors.

[2] When EG agrees to act as proxy in a case, it does not seek appointment in that case.

4

that attends being a proxy), it does not require a proxy agree to vote for EG.[3] Moreover, it is not clear that Dr. Liu needed a relationship with creditors merely to gauge their interest in possibly being on the Committee, or even encouraging them to do so. Debtors cite no law suggesting it is improper and EG is unaware of any. EG will provide a form of proxy that they believe to be acceptable to the UST. EG cannot change a creditors' claim, so it specifically denies "working with Dr. Liu to improve such creditors likelihood of being appointed." EG specifically denies concealing anything from the UST, and on the contrary, the evidence admittedly shows EG directed Dr. Liu to contact the UST.

5. The allegation of an "appearance" of a "*quid pro quo* arrangement" is directly undermined by the testimony of Dr. Liu. During his deposition, Dr. Liu repeatedly testified that his goal was to have the best firm for the job represent the Committee by having many law firms pitch the Committee. Dr. Liu specifically testified that:

> From my end I want more law firm show up at formation meeting. Why? You have a performance. We have more interviews. We can hear more proposal and more suggestions, more strategies how to handle this case. It's beneficial, in my personal eyes, beneficial to creditors, especially first-time creditors on the committee.

(N.T., H. Liu, 9/17/2010 at p. 237; *see also* pp. 57-58, 63, 69, 79).

6. Dr. Liu, possessing one of five votes (the Debtor concedes the other four votes were completely disinterested), specifically testified that he encourages all Committee members to "choose whose the best on that particular day" of formation. *Id.* at p. 286.

---

[3] Obviously, EG is hopeful that the people it knows and recommends as proxies will view EG favorably, but they are all professionals who have relationships with multiple law firms, and EG fully expects they will follow their clients' instructions. There is not one scintilla of evidence that EG has ever required a proxy agree to vote for EG before recommending that proxy.

5

7. Dr. Liu also testified that the Committee interviewed "more than ten law firms" and that his "personal decision was made at the last rounds of the committee selection." *Id.* at 311.

8. The Debtors ignore this testimony because it does not fit their story. Indeed, the Debtors do not even identify the *quo* in the made-up "arrangement" beyond "various consideration." Additionally, there is no evidence that "reliable" meant an agreement to vote for AF or EG. (*See* Debtors' Objection at ¶ 20). "Reliable" clearly has its normal meaning of a proxy who understands the rules of fiduciary duties involved. Indeed, Dr. Liu specifically testified that "reliable" means "somebody not from the street, somebody who should have knowledge about the formation meeting or about the – you know, the proxy holders." (N.T., H. Liu, 9/17/2010 at pp. 166-167).

9. Finally, each of the alleged benefits Dr. Liu receives is completely independent of whether a creditor is appointed who votes for EG. Debtor takes the existing relationship between EG (or AF) and Dr. Liu and twists that into a *quid pro quo* without a shred of evidence that any of it is tied to providing a vote in this bankruptcy.[4]

**Elliott Greenleaf is Disinterested**

A. **Elliott Greenleaf Satisfies the Standard for Retention.**

10. The retention of committee counsel is governed by 11 U.S.C. § 1103(a), which provides:

---

[4] Indeed, EG does not deny that it does and has done some business with Dr. Liu. That is the basis of their existing relationship which makes contact permissible under RPC 7.3. Indeed, the frivolous nature of Debtors' allegation is conclusively demonstrated by the fact that they point out that Dr. Liu compensates AF for representing his company.

6

> [A] committee appointed under section 1102 of this title with the court's approval ... may select and authorize the employment of such committee of one or more attorneys ... to represent or perform services for such committee.

The only statutory limitation on a committee's right to select counsel of its choice is Section 1103(b), which provides that an attorney employed to represent a committee "may not, while employed by the committee, represent any other entity having an adverse interest in connection with the case." 11 U.S.C. § 1103(b). Moreover, "[r]epresentation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest." *Id.* Thus, a firm is not disqualified from representing a committee as a result of any representation that predates its employment by the committee, nor is it automatically disqualified if it represents an individual creditor or committee member in addition to the committee. *See In re Enron Corp.*, 2003 WL 223455 (S.D.N.Y. Feb. 3, 2003) (Section 1103(b) is not violated if counsel represented an entity with an adverse interest in a matter that predates proposed committee representation); *In re Nat'l Century Fin. Enters., Inc.*, 298 B.R. 112, 117 (Bankr. S.D. Ohio 2003) (UST's objection to retention of counsel for committee overruled; neither prior representation of debtor nor continued representation of individual committee members were disqualifying conflicts).

11. The standard under Section 1103(b) for retention of committee counsel is different from the standard for the retention of debtors' counsel under Section 327(a). *See Halbert v. Yousif*, 225 B.R. 336, 346 n. 17 (E.D. Mich. 1998). As this Court noted in *In re ETOYS, Inc.*, :

> Committee counsel, retained under section 1103, need only show it does not represent an interest adverse to the estate; in fact, committee counsel is specifically authorized to represent a creditor in the case so long as its interests are not adverse to the committee's. 11 U.S.C. § 1103(b). In contrast, debtor's counsel, retained under section 327, must establish that it is disinterested, which is a higher standard. 11 U.S.C. § 101(14)(E).

7

331 B.R. 176, 192 n.5 (Bankr. D. Del. 2005); *see also United States v. Schilling (In re Big Rivers Elec. Corp.)*, 355 F.3d 415, 439 (6th Cir. 2004) (same); *In re Firstmark Corp.*, 132 F.3d 1179, 1183 (7th Cir. 1997) (same); *United Steelworkers of Am. v. Lampl (In re Mesta Mach. Co.)*, 67 B.R. 151, 157 (W.D. Pa. 1986) (same). The sole standard, as the statute clearly reflects, is that the professional not represent any other entity having an adverse interest in connection with the case.

12. As recently acknowledged by the Third Circuit:

> The Bankruptcy Code defines a "disinterested person" as a person who: (A) is not a creditor, an equity security holder, or an insider; (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.11 U.S.C. § 101(14) (emphasis added).

*In re Jade Mgmt. Servs.*, 2010 U.S. App. LEXIS 14125 (3d Cir. V.I. July 9, 2010). The Bankruptcy Code "mandates disqualification when there is an actual conflict of interest, allows for it when there is a potential conflict, and precludes it based solely on an appearance of conflict." *Id. quoting In re BH&P, Inc.*, 949 F.2d 1300, 1316-17 (3d Cir. 1991). "Distinguishing between potential and actual conflicts is a flexible enterprise, and necessarily is one that is governed by the factual niceties of each particular case." *Id.*

13. EG is "disinterested" and EG's fully disclosed relationship with Dr. Liu does not change that.

> Congress implicitly determined that the inherent tension between a committee and one of its creditors, standing alone, was immaterial and any conflict too theoretical to warrant being classified as an adverse interest. That is, merely the remote potential for dispute, strife, discord, or difference between a committee and one of its

8

> creditors does not give rise to any conflict of interest or appearance
> of impropriety that would bar an attorney from representing both
> parties.

*In re National Liquidators*, 182 B.R. 186, 192-193 (S.D. Ohio 1995). In *National Liquidators*, the court held that "section 1103(b)'s bar to attorney representation includes a requirement that there exist some allegation or evidence suggesting the likelihood of some actual dispute, strife, discord, or difference between the committee and its constituent or member." *Id.*[5] The Debtors have no evidence whatsoever to support that EG's representation of the Committee will be adversely impacted by its relationship with Dr. Liu. Indeed, the Debtors' utterly fail to explain why EG's fully-disclosed relationship with Dr. Liu will preclude them from remaining "disinterested." Moreover, EG is not even engaged in dual representation. Rather, it, along with many other law firms interested in becoming counsel to the Committee, made Dr. Liu aware of the bankruptcy, and assisted indirectly two creditors' effort to participate in the Committee. Those two creditors and the Committee "share[]the common goal of forming a reorganization plan that would maximize the chance for repayment to all unsecured creditors." *In re National Liquidators*, 182 B.R. at 193. The Debtor offers no evidence whatsoever to the contrary.

14. EG never gave individual advice to two Chinese creditors; this allegation applies only to AF.[6]

---

[5] In *National Liquidators*, the court held that the committee's counsel was disinterested even though it represented a former investor and friend of the debtor in an SEC investigation concurrently with its representation of the committee.

[6] The Debtors' counsel alternates between specifically identifying an allegation against EG or AF, and the vaguely lumping them as "Committee Counsel." This is obviously tactical on the Debtors part. In denying these types of vague allegations, EG is not suggesting that AF committed the alleged act, and assumes AF will address the allegation for itself without implying that EG committed the alleged act.

15. The Debtors' speculation that the Committee may not take a position adverse to the "Asian creditors" for fear that they might "upset Dr. Liu" is baseless. At the most, the Debtors' speculation is the type of "remote potential for dispute, strife, discord, or difference between a committee and one of its creditors" that the Court in *National Liquidators*, held "does not give rise to any conflict of interest or appearance of impropriety." *In re National Liquidators*, 182 B.R. 186, 192-193.

## There was No Solicitation Agreement

16. The only evidence in e-mails or Dr. Liu's testimony (or anywhere) is that EG, in a business context, told professionals with whom they had a prior relationship that they would like to become Committee counsel in this case, and asked for support.

17. This is permissible under Rule of Professional Conduct 7.3 and, is in fact, protected speech by the United States Constitution. *See Edenfeld v. Fane*, 507 U.S. 761 (1993). *See Generally,* Attorney *Solicitation* of Legal Work in Business Settings, Hon. Samuel L. Bufford, (County Bar Update, April 2006, Vol. 26 No. 4 (copy attached hereto as Exhibit A)).

18. As the e-mails show, Dr. Liu was communicating with five or six law firms, encouraging all of them. *See* HL 0407-0422.

19. Dr. Liu's testimony confirms that he had no agreement with any law firm and did not make his decision until late in the evaluation process where a number of firms competed.

20. Of course, there was not contacts, direct or indirect, between EG and the other four creditors chosen by the UST for the Committee, who also choose EG.

21. There is no evidence EG sought or obtained any agreement from any creditor or proxy to commit to vote for EG as counsel.

22. After obtaining his proxy from Eastern, Dr. Liu notified multiple law firms with essentially similar language suggesting that now that he held the proxy, they needed to show up and convince the other creditors. *See, e.g.* HL 0392, HL 0399, HL 0401-0402.

### Elliott Greenleaf Made all Necessary Disclosures

23. EG is aware of the disclosure requirements that apply to committee professionals. EG fully disclosed its relationships with Dr. Liu, and although Debtors cite no authority rule that connections with proxies at the committee formation meeting need to be disclosed, in light of Debtors' threats, EG filed supplemental disclosures providing the details of its indirect contact with two Asian creditors whom Dr. Liu represents (one of whom chosen for the Committee). Indeed, because there are no rules governing the level of detail expected to be disclosed, and in light of the pending objection to AF's Application, EG contacted the UST's office for guidance on what they believed needed to be disclosed. EG was advised that the law firm must decide. In order to try and resolve this without further draining the Estate's assets, EG made the Second Supplemental Disclosure.[7] Despite Debtors' conclusory statement (without authority) to the contrary, these disclosures are timely since they occurred before the hearing on retention. Thus the information is available to the Court in making a decision. The Debtors' effort to sully EG based on the timing of the disclosures must be rejected.

Dated: October 5, 2010       Respectfully Submitted,

ELLIOTT GREENLEAF

_____
Rafael X. Zahralddin-Aravena (DE Bar No. 4166)

---

[7] EG contends Debtors' objection is untimely since the deadline has passed and there is nothing in the Supplemental Declarations which form the basis if a legitimate objection.

11

Shelley A. Kinsella (DE Bar No. 4023)
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone: (302) 384-9400
Facsimile: (302) 384-9399
Email: rxza@elliottgreenleaf.com
Email: sak@elliottgreenleaf.com

-and-

Henry F. Siedzikowski (*admitted pro hac vice*)
925 Harvest Drive
P.O. Box 3010
Blue Bell, PA 19422
Phone: (215) 977-1000
Fax: (215) 977-1099
Email: hfs@elliottgreenleaf.com

-and-

Arent Fox LLP
Andrew I. Silfen
James Sullivan
1675 Broadway
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Email: silfen.andrew@arentfox.com
Email: sullivan.james@arentfox.com

-and-

Carol Connor Cohen
Caroline Turner English
Jeffrey N. Rothleder
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: 202-828-3472
Facsimile: 202-857-6395
Email: cohen.carol@arentfox.com
Email: english.caroline@arentfox.com
Email: rothleder.jeffrey@arentfox.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*