IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| UNIVERSAL BUILDING PRODUCTS, INC., *et al.*,[1] | ) Case No. 10-12453 (MFW) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) Re Docket Nos. 179, 271 & 276 |
| | ) |

**Hearing Date: October 22, 2010 at 2:00 p.m.**

### OBJECTION OF UBP ACQUISITION CORP. TO DEBTORS' MOTION FOR ENTRY OF AN ORDER: (A) APPROVING THE DISCLOSURE STATEMENT; (B) APPROVING CERTAIN DATES RELATED TO CONFIRMATION OF THE PLAN; AND (C) APPROVING THE FORM OF CERTAIN DOCUMENTS TO BE DISTRIBUTED IN CONNECTION WITH SOLICITATION OF THE PLAN

UBP Acquisition Corp. (the "Lender") hereby files this objection (the "Objection") to Debtors' motion (the "Motion") for entry of an order: (a) approving a disclosure statement (the "Disclosure Statement"); (b) approving certain dates related to confirmation of the plan of liquidation (the "Plan") of the above-captioned debtors and debtors in possession (the "Debtors"); and (c) approving the form of certain documents to be distributed in connection with solicitation of the Plan. In support of this Objection, the Lender respectfully states as follows:

### PRELIMINARY STATEMENT

1. As the Lender has communicated to all parties in these chapter 11 cases and the Court, the Lender has participated in these bankruptcy cases only reluctantly. After acquiring the Debtors' prepetition secured debt, the Lender agreed to support an expedited chapter 11 process, even providing a significant DIP Facility (as hereinafter defined) for an orderly wind-up of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Universal Building Products, Inc. (7884); (ii) Accubrace, Inc. (3418); (iii) Don De Cristo Concrete Accessories, Inc. (7547); (iv) Form-Co, Inc. (0079); and (v) Universal Form Clamp, Inc. (3003). The address of the Debtors' corporate headquarters is 15172 Goldenwest Circle, Westminster, California 92683.

Debtors' affairs. However, understandably, the Lender's willingness to fund the wind-up was not without limit, and the Lender required the Debtors to operate in chapter 11 in accordance with a budget (the "Budget").[2]

2. On October 1, 2010, the Budget expired. The Debtors are at least weeks, if not months, away from a potential confirmation hearing on their most recent proposed Plan, filed on September 30, 2010 [Docket No. 269]. Had the Debtors focused their efforts on formulating and negotiating a confirmable plan and devoted due time and energy to creating consensus in these chapter 11 cases, nothing would have prevented the Debtors from confirming a plan by October 1, 2010, as contemplated by the parties and approved by the Court in the Final DIP Order, the Budget, and the DIP Note (as hereinafter defined). *See, e.g.*, Final DIP Order ¶ H(e). Instead, the Debtors pursued other initiatives that prevented the Debtors from confirming a plan by October 1, 2010.

3. As a result of the Budget expiring, the DIP Facility and the Lender's obligations to support the Plan have terminated, and the Debtors' chances of confirming the Plan are nonexistent for (at least) the following reasons. *First*, the Debtors' Plan and related Disclosure Statement (as hereinafter defined) fail to disclose and account for the consequences of the lack of Lender support and termination of the DIP Facility. The Disclosure Statement states that the Lender will fund the unused balance of the DIP Facility into a liquidating trust (the "Liquidating Trust"), which is simply not going to happen, given the termination of the DIP Facility. As a result, the Disclosure Statement fails to provide adequate information. *Second*, from a practical perspective, the Debtors have no chance of confirming the Plan without the support of the Lender. It is futile and a further waste of resources for the Debtors to solicit votes and attempt to confirm the Plan without Lender support. For these reasons, the Lender

---

[2] The Budget is attached as Exhibit 2 to the Final DIP Order (as hereinafter defined).

2

DOCS_DE:164613.1

respectfully submits that the Court should not approve the Disclosure Statement and allow the Debtors to solicit votes on this unconfirmable Plan.

## BACKGROUND

4. On August 4, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for relief under title 11 of the United States Code, 11 U.S.C. ¶¶ 101-1532 (the "Bankruptcy Code"). Pursuant to this Court's Order dated August 5, 2010, the Debtors' bankruptcy cases are being jointly administered.

### A. The Debtors' Postpetition Financing and Sale of Assets.

5. On August 3, 2010, the Lender, certain of its affiliates, and the Debtors entered into that certain Senior Secured Super-Priority Debtor-In-Possession Promissory Note (the "DIP Note").

6. On September 7, 2010, the Court entered the *Final Order Approving Asset Purchase Agreement and Authorizing Sale of Debtor's Assets, (II) Authorizing Sale of Assets Free and Clear of Liens, Claims, and Interests and (III) Granting Related Relief* (the "Final Sale Order") [Docket No. 221]. In the Final Sale Order, the Lender agreed to support a plan of liquidation: "(a) *embodying the terms of the Final DIP Order, the Bid Procedures Order and this Final Order*; (b) providing for the waiver of the DIP Lender's and Prepetition Lender's deficiency claims upon the Excluded Property; and (c) providing broad releases to [certain of the Debtors' insiders and Scouler & Company, the Debtors' financial advisor retained in these chapter 11 cases]." *See* Final Sale Order, ¶ 21 (emphasis added).

7. On August 27, 2010, the Court entered the *Final Order Authorizing and Approving Debtors' Post-Petition Financing; (B) Granting Liens and Security Interests and Providing Superpriority Administrative Expense Status; (C) Authorizing Use of Cash Collateral and Affording Adequate Protection; and (D) Modifying Automatic Stay* [Docket No. 167] (the

3

"Final DIP Order").[3] Under Paragraph 27(c) of the Final DIP Order, "the occurrence and continuation of any 'Event of Default' as defined under the DIP Note" is an Event of Default under the Final DIP Order. In addition, Paragraph 27(l) of the Final DIP Order provides that, "the Debtors' failure to comply with the Budget . . . for any period of time without the consent of the DIP Lenders, or the expiration of the Budget" also constitutes an Event of Default under the Final DIP Order.

B. **The Debtors' Plan and Disclosure Statement.**

8. On August 31, 2010, the Debtors filed: (a) the Plan; (b) a disclosure statement related to that version of the Plan [Docket No. 177]; and (c) the *Debtors' Motion for Entry of an Order: (A) Approving the Disclosure Statement; (B) Approving Certain Dates Related to Confirmation of the Plan; and (C) Approving the Form of Certain Documents to be Distributed in Connection with Solicitation of the Plan* (the "Motion") [Docket No. 179]. The deadline to object to the Motion was initially set for September 22, 2010 at 4:00 p.m. prevailing Eastern Time. The deadline to object to the Motion for the Lender and the official committee of unsecured creditors appointed in these cases (the "Committee") was subsequently extended to September 30, 2010, at 5:00 p.m. prevailing Eastern Time, and again extended to October 1, 2010, at 12:00 p.m. prevailing Eastern Time (the "Deadline").

9. On September 30, 2010, the Debtors filed the *Disclosure Statement for the First Modified Joint Liquidating Plan of Universal Building Products, Inc. and Certain of its Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code* [Docket No. 271] (the "Disclosure Statement"). The Disclosure Statement incorporates the terms of the Plan, and states as follows, in relevant part:

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Final DIP Order.

> On or prior to the Effective Date, the DIP Lender shall fund to the Liquidating Trust from the DIP Facility the entire amount of credit provided for under the DIP Facility less amounts previously funded to the Debtors. In addition, on or prior to the Effective Date, the Debtors shall fund to the Liquidating Trust any amounts that have been previously funded pursuant to the DIP Facility and that have not been spent or disbursed by the Debtors . . . .

Disclosure Statement, Art. IV.D(1). The Debtors filed the September 30, 2010 version of the Disclosure Statement without providing advance notice to, or seeking the consent of, the Lender.

C.  **The Debtors' Defaults Under the DIP Facility and the Lender's Response.**

10. On October 1, 2010, an Event of Default occurred under the Final DIP Order and DIP Note by virtue of: (a) the expiration of the Budget on October 1, 2010; and (b) the Debtors' failure to comply with the Budget. The Debtors also continue to be in default: (x) under the Final DIP Order by incurring administrative expenses beyond the expiration of the Budget; and (y) by having improperly borrowed amounts under the DIP Facility in excess of the permitted variances provided under the DIP Note. As a result of these Events of Default under the Final DIP Order and DIP Note, the Lender's obligations to support the Plan, or any other plan of liquidation proposed by the Debtors, have terminated.

11. Out of an abundance of caution and to preserve its ability to object to the Plan, the Motion, and the related Disclosure Statement as a result of these Events of Default, the Lender filed a reservation of rights with respect to the Plan and the Disclosure Statement (the "Reservation of Rights") on October 1, 2010 [Docket No. 276], in advance of the Deadline.

12. On October 7, 2010, the date on which the Debtors had rescheduled the hearing to approve the Motion, the Court's time was instead occupied with testimony regarding the retention application of Arent Fox LLP, proposed counsel to the Committee. The Lender's counsel attended the October 7, 2010 hearing telephonically and had prepared to express its concerns with respect to the Disclosure Statement in that forum. Given the amount of time that

5

was required for the Debtors and Committee to put on their cases regarding the retention of Arent Fox, however, the Court adjourned the hearing to approve the Motion to October 22, 2010. Pursuant to the Reservation of Rights, the Lender has opted to present a written statement of the Events of Default under the Final DIP Order and DIP Note and express its concerns with the Disclosure Statement.

## OBJECTION

### A. The Disclosure Statement Does Not Contain "Adequate Information" and Should Not Be Approved.

13. Pursuant to Bankruptcy Code § 1125, the proponent of a proposed chapter 11 plan must provide holders of impaired claims and interests entitled to vote on the plan with "adequate information" regarding that plan. Bankruptcy Code § 1125(a)(1) of the Bankruptcy Code states, in relevant part, that "adequate information" means:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

14. Thus, a disclosure statement must, as a whole, provide information that is reasonably practicable to permit an informed judgment by creditors and interest holders, if applicable, to vote on a plan. *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 392–93 (Bankr. E.D. Pa. 2001) (*citing Century Glove, Inc. v. First American Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988), for the premise that "the general purpose of the disclosure statement is to provide 'adequate information' to enable . . . creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan"); *see also*

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 322 (3d Cir. 2003) ("The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of adequate information."). The most basic facet of "adequate information" required by Bankruptcy Code § 1125 is that a creditor understands what it will receive under the Plan, when it will receive it, and what contingencies exist before it receives its distribution. *See, e.g. In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) (stating "the statement should inform the reader what the undisputed claims are, what the disputed claims are, what effect, if any, there will be on the distribution if disputed claims are or are not allowed, and when will distribution be made.").

15. The Disclosure Statement does not contain adequate information because it fails to adequately describe many critical facts that impact the prospects of confirming the Plan and the potential distributions to creditor classes, including the following:

- an Event of Default has occurred under the Final DIP Order and the DIP Note (collectively, the "DIP Facility"), and the Lender has no obligation to continue to fund thereunder;

- the Disclosure Statement incorrectly states that the unfunded proceeds of the DIP Facility will be deposited into the Liquidating Trust for distribution to unsecured creditors; because the DIP Facility has terminated, no additional proceeds will be deposited into the Liquidating Trust;

- absent liquidity provided by the DIP Facility, the Debtors do not have access to funds to pay administrative expenses in these cases going forward, including expenses related to solicitation of votes, confirmation of the Plan, and fees due to the U.S. Trustee;

- the Lender does not support the Plan as currently proposed; and

- as a result of the Events of Default under the DIP Facility, the Lender has no obligation to support the Plan under the Final Sale Order or any other document.

7

DOCS_DE:164613.1

16. Absent the preceding information, it is incredible that the Debtors believe that the Disclosure Statement provides creditors and other parties in interest with adequate information to make an informed judgment about the Plan and whether to vote in favor or against the Plan. For one, as discussed in greater detail below, the Debtors have not disclosed that they cannot confirm the Plan without the support of the Lender. In addition, the Disclosure Statement would lead Holders of Class 4 Unsecured Claims, a class entitled to vote on the Plan, to believe that they will receive their *pro rata* share of the balance of the DIP Facility—approximately $1.9 million—that will never be funded. Class 4 Unsecured Creditors, as a result, have not received the most basic information for deciding whether to vote for or against the Plan: an accurate account of what they will receive under the Plan. The Debtors also have not disclosed that they lack funding to solicit votes on the Plan, let alone fund confirmation. The disclosure of this information may convince creditors and other parties in interest that, given the Debtors' inability to fund administrative expenses in these cases, their recoveries will be maximized by converting these chapter 11 cases to chapter 7 rather than voting in favor of the Plan.

17. Based on the foregoing, the Lender respectfully submits that the Court should not approve the Disclosure Statement because it fails to provide information that is reasonably practicable to permit an informed judgment by creditors to vote on a plan as required by Bankruptcy Code § 1125.

**B.      The Plan is Not Confirmable on Its Face.**

18. The Disclosure Statement should not be approved because the Plan is not capable of being confirmed. *See, e.g., In re Monroe Well Service, Inc.*, 80 B.R. 324 (Bankr. E.D. Pa. 1987) ("it may be appropriate to disapprove of a disclosure statement, even if it properly summarizes and provides adequate information about a proposed plan, when a court is convinced that the plan could not possibly be confirmed."). As a district court in this Circuit stated:

8

> [i]f the disclosure statement describes a plan that is so fatally flawed that confirmation is impossible, the court should exercise its discretion to refuse to consider the adequacy of disclosures. Such an exercise of discretion is appropriate because undertaking the burden and expense of plan distribution and vote solicitation is unwise and inappropriate if the proposed plan could never legally be confirmed.

*Phoenix Petroleum Co.*, 278 B.R. at 394 (internal citations omitted). A bankruptcy court refusing to approve a disclosure statement for a plan that is obviously not confirmable prevents debtors from "engaging in a wasteful and fruitless exercise of sending the disclosure statement to creditors and soliciting votes on the proposed Plan when the plan is unconfirmable on its face." *In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988); *see also In re Quigley Co., Inc.*, 377 B.R. 110 (Bankr. S.D.N.Y. 2007) (stating "[i]f the plan is patently unconfirmable on its face, the application to approve the disclosure statement must be denied, as solicitation of the vote would be futile.").

19. The Plan is not confirmable on its face, and the Court should not approve the Disclosure Statement, for the following reasons:

- the Debtors cannot satisfy the requirements of Bankruptcy Code § 1129(a)(8) because the Lender is an impaired creditor and does not support the Plan;

- the Debtors cannot satisfy the "cramdown" requirements of Bankruptcy Code § 1129(b)(2)(A);

- the Plan does not meet the requirements of Bankruptcy Code § 1129(a)(2), which requires that the proponent of a plan comply with the applicable provisions of the Bankruptcy Code;

- the Debtors cannot pay administrative costs, including the fees of the Lender, incurred during these chapter 11 cases, as required by Bankruptcy Code § 1129(a)(9)(A);

- the Debtors cannot pay fees required under 28 U.S.C. § 1930 to the U.S. Trustee, in violation of Bankruptcy Code § 1129(a)(12).

Each of these deficiencies is discussed in greater as follows:

### (i) The Plan Fails the Requirements of Bankruptcy Code § 1129(a)(8).

20. The Debtors cannot satisfy the requirements of Bankruptcy Code § 1129(a)(8) because the Lender is an impaired creditor and does not support the Plan. Section 1129(a)(8) requires that each impaired class of claims or interests must either accept a plan or be unimpaired under a plan. Pursuant to Bankruptcy Code § 1126(c), a class of impaired claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of the claims in that class actually vote to accept the plan. The Lender is impaired under the Plan and entitled to vote thereunder as the sole holder of Class 1 Senior Creditor Claims. *See* Plan Art. III.B(1). As the Lender has made clear in this Objection and other documents, the Lender will not vote in favor of the Plan, so it is impossible for the Debtors to satisfy the voting requirements for Class 1 Senior Creditor Claims. As a result, the Debtors cannot satisfy the requirements of Bankruptcy Code § 1129(a)(8).

### (ii) The Debtors Cannot Satisfy the "Cramdown" Requirements of Bankruptcy Code § 1129(b).

21. The Debtors cannot satisfy the "cramdown" requirements under Bankruptcy Code § 1129(b)(2)(A) as they relate to the Lender. Section 1129(b) provides that if all applicable requirements of Bankruptcy Code § 1129(a) are met other than Bankruptcy Code § 1129(a)(8), a plan may be confirmed so long as the requirements set forth in Bankruptcy Code § 1129(b) are met. To confirm a plan that has not been accepted by a secured, impaired class (thereby failing to satisfy Bankruptcy Code § 1129(a)(8)), the plan proponent must provide the holders of such claims with: (a) (i) replacement liens securing such claims to the extent of the allowed amount of such secured claims, and (ii) deferred cash payments totaling at least the allowed amount of such claims with a current value equal to the secured creditor's interest in such property; or (b) the indubitable equivalent of such claims. 11 U.S.C. § 1129(b)(2)(A). Here, the Debtors

10

DOCS_DE:164613.1

cannot satisfy the requirements of Bankruptcy Code § 1129(b) because (a) the Debtors have insufficient assets to which the Lender's liens may attach and no cash to make deferred payments pursuant to § 1129(b)(2)(A)(i); and (b) the Debtors have no means by which to provide the Lender with the indubitable equivalent of its claims.

      **(iii)    The Plan Fails the Requirements of Bankruptcy Code § 1129(a)(2).**

      22.    The Plan does not meet the requirements of Bankruptcy Code § 1129(a)(2), which requires that the proponent of a plan of reorganization comply with the applicable provisions of the Bankruptcy Code. Specifically, and as discussed more fully above: (a) the Plan fails to provide adequate information pursuant to Bankruptcy Code § 1125; and (b) the Debtors cannot satisfy the acceptance requirements of Bankruptcy Code § 1126, because the Lender will not vote in favor of the Plan.

      **(iv)    The Plan Fails the Requirements of Bankruptcy Code § 1129(a)(9).**

      23.    The Debtors cannot pay administrative costs, including the fees of the Lender, incurred during these chapter 11 cases, as required by Bankruptcy Code § 1129(a)(9)(A). Unless the holder of a particular claim agrees to a different treatment with respect to such claim (and, to the Lender's knowledge, the Debtors have reached no such agreements), Bankruptcy Code § 1129(a)(9) of the Bankruptcy Code requires the Plan to provide as follows:

> (A)    with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of [the Bankruptcy Code], on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim.

11 U.S.C. § 1129(a)(9)(A). Under Paragraph 8(c) of the Final DIP Order, the Lender reserved "the right to seek [as adequate protection] reimbursement from the Debtors of any reasonable and documented fees, costs, and expenses reasonably incurred by or payable to the [Lender] in accordance with the Prepetition Loan Documents: (i) upon termination of the DIP Note for any

11

reason; (ii) upon the Debtors' noncompliance with . . . [the Final DIP Order] or DIP Note; or (iii) as an obligation with the same priority as the Prepetition Obligations in accordance with the Debtors' plan of liquidation." The DIP Note has terminated as a result of the Events of Default under the DIP Note and Final DIP Order, and the Debtors have failed to comply with the terms of the Final DIP Order. As a result, the Lender is seeking payment of expenses incurred in accordance with the Prepetition Loan Documents (as such term is defined in the Final DIP Order), including legal and other professional fees, since the Petition Date. The Lender estimates it has incurred up to approximately $1.1 million on account of such expenses as of the filing of this Objection.

24. As stated above, § 1129(a)(9) requires that a plan provide for the payment of claims allowed under Bankruptcy Code § 507(a)(2), which provides priority treatment for the actual, necessary costs and expenses incurred preserving the estate in accordance with Bankruptcy Code § 503(b)(1)(A). The adequate protection payments the Lender seeks on account of its fees and expenses are actual, necessary costs of preserving the estate because, absent the adequate protection provided to the Lender under the Final DIP Order, the Lender would not have consented to the Debtors' use of cash collateral or provided the DIP Facility, without which the Debtors would have been unable to file and administer their chapter 11 cases to this point. Accordingly, the Debtors must pay the entire amount of the Lender's expenses, in cash, in an amount equal to the allowed amount pursuant to Bankruptcy Code § 1129(a)(9). As the Debtors do not have sufficient cash on hand to pay those expenses, and has no source of additional cash, the Plan is not confirmable.

(v) **The Plan Fails the Requirements of Bankruptcy Code § 1129(a)(12).**

25. The Debtors cannot pay fees required under 28 U.S.C. § 1930 to the U.S. Trustee, in violation of Bankruptcy Code § 1129(a)(12). As stated above, the Debtors do not have access

to sufficient cash to fund their chapter 11 cases through confirmation of the Plan, including payment of U.S. Trustee fees under 28 U.S.C. § 1930. The Debtors are not authorized to use any proceeds of the DIP Facility to pay expenses that accrued after October 1, 2010, the day on which the Budget terminated, and therefore are not authorized to use any cash on hand to pay any U.S. Trustee fees that may arise after October 1, 2010. As the Debtors do not have sufficient cash on hand to pay U.S. Trustee expenses as required by Bankruptcy Code § 1129(a)(12), the Plan is not confirmable.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Lender respectfully requests that the Court deny approval of the Disclosure Statement and all related relief sought by the Debtors in the Motion.

Dated: October 15, 2010

PACHULSKI, STANG, ZIEHL & JONES

/s/ James E. O'Neill
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
Bradford J. Sandler (Bar No. 4142)
919 North Market Street, 17th Floor
P.O. Box 8705
919 North Market Street
17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

-and-

KIRKLAND & ELLIS LLP
David L. Eaton (*pro hac vice*)
David A. Agay (*pro hac vice*)
Sarah Hiltz Seewer (*pro hac vice*)
300 N. LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Co-Counsel to UBP Acquisition Corp.*