# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| UNIVERSAL BUILDING PRODUCTS, | ) Case No. 10-12453 (MFW) |
| INC., et al.,[1] | ) |
|  | ) Jointly Administered |
| Debtors. | ) |
|  | ) |

## ~~FIRST~~THIRD MODIFIED JOINT LIQUIDATING PLAN OF UNIVERSAL BUILDING PRODUCTS, INC. AND CERTAIN OF ITS SUBSIDIARIES PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

K&L Gates LLP
Harley J. Goldstein
Sven T. Nylen
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
Telephone: (312) 372-1121
Facsimile: (312) 827-8000

Saul Ewing LLP
Mark Minuti
Teresa K.D. Currier
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, Delaware 19899
Telephone: (302) 421-6800
Facsimile: (302) 421-6813

Co-Counsel for the Debtors and Debtors in Possession

~~September 30, 2010~~
January 31, 2011

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Universal Building Products, Inc. (7884); (ii) Accubrace, Inc. (3418); (iii) Don De Cristo Concrete Accessories, Inc. (7547); (iv) Form-Co, Inc. (0079); and (v) Universal Form Clamp, Inc. (3003). The address of the Debtors' corporate headquarters is 15172 Goldenwest Circle, Westminster, California 92683.

# TABLE OF CONTENTS

Article I. Definitions, Rules of Interpretation, Computation of Time, and Governing Law ..........1
    A.    Rules of Interpretation, Computation of Time, and Governing Law .....................1
    B.    Defined Terms .........................................................................................................2

Article II. Administrative Claims; Priority Tax Claims .......................................................~~11~~10
    A.    Administrative Claims ..........................................................................................~~11~~10
    B.    DIP Facility Claim ................................................................................................11
    C.    Priority Tax Claims ..............................................................................................11

Article III. Classification and Treatment of Classified Claims and Equity Interests ...................12
    A.    Summary................................................................................................................12
    B.    Treatment of Claims and Equity Interests .........................................................~~12~~13

Article IV. Implementation of the Plan and the Liquidating Trust ...........................................14
    A.    Funding of the Plan Fund into the Liquidating Trust ..........................................14
    B.    Funding of the Liquidating Trust. ........................................................................15
    C.    Transfer of Liquidating Trust Assets to the Liquidating Trust.............................15
    D.    The Liquidating Trust ...........................................................................................15
    E.    Final Administration of Liquidating Trust. ..........................................................19
    F.    Corporate Action ..................................................................................................~~20~~19
    G.    Preservation of Rights ..........................................................................................~~20~~19
    H.    Cancellation of Notes, Instruments, Debentures, and Equity Interests ............~~21~~20
    I.    Dissolution of Committee(s) .................................................................................21
    J.    Accounting ...........................................................................................................~~22~~21

Article V. Treatment of Disputed Claims.........................................................................~~22~~21
    A.    Objections to Claims; Prosecution of Disputed Claims ...................................~~22~~21
    B.    Estimation of Claims ............................................................................................22
    C.    Payments and Distributions on Disputed Claims ..............................................~~23~~22

Article VI. Distributions ..................................................................................................~~23~~22
    A.    Means of Cash Payment ......................................................................................~~23~~22
    B.    Delivery of Distributions .....................................................................................~~23~~22
    C.    Undeliverable Distributions.................................................................................23
    D.    Withholding and Reporting Requirements .........................................................~~24~~23
    E.    Time Bar to Cash Payments .................................................................................24
    F.    Distributions After the Effective Date .................................................................~~25~~24
    G.    Interest .................................................................................................................~~25~~24
    H.    Fractional Dollars; De Minimis Distributions....................................................~~25~~24
    I.    Set-Offs................................................................................................................~~25~~24

NYC/527731.1

Article VII. Executory Contracts and Unexpired Leases ..................................................~~26~~25

    A.     Rejection of Executory Contracts and Unexpired Leases ...............................~~26~~25

    B.     Rejection Damages Claim ..............................................................................~~26~~25

    C.     Insurance Policies. ..........................................................................................~~26~~25

Article VIII. acceptance or rejection of the plan ....................................................................26

    A.     Acceptance by Impaired Classes .........................................................................26

    B.     Elimination of Classes ..................................................................................~~27~~26

    C.     Nonconsensual Confirmation .......................................................................~~27~~26

Article IX. Conditions Precedent to Confirmation and the Effective Date ............................~~27~~26

    A.     Conditions Precedent to the Confirmation Date of the Plan ...........................~~27~~26

    B.     Conditions Precedent to the Effective Date of the Plan .....................................27

    C.     Waiver of Conditions Precedent ...................................................................~~28~~27

    D.     The Confirmation Order ...............................................................................~~28~~27

Article X. Effect of Plan Confirmation ...............................................................................~~28~~27

    A.     No Discharge of Claims and Termination of Interests ...................................~~28~~27

    B.     Termination of Subordination Rights and Settlement of Related Claims ............28

    C.     Injunction .....................................................................................................~~29~~28

    D.     Terms of Existing Injunctions or Stays ........................................................~~29~~28

    E.     Exculpation ........................................................................................................29

    F.     Releases by the Debtors ......................................................................................30

    G.     Mutual Releases by Holders of Claims and Interests ..........................................31

Article XI. Miscellaneous ...................................................................................................32

    A.     Settlement of Claims and Controversies .............................................................32

    B.     Payment of Statutory Fees .................................................................................32

    C.     Exemption from Securities Laws ........................................................................32

    D.     Section 1146 Exemption.....................................................................................33

    E.     Books and Records .............................................................................................33

    F.     Privileges as to Certain Causes of Action ...........................................................34

    G.     Employee Agreements ........................................................................................34

    H.     Unclaimed Property............................................................................................34

    I.     Business Day ......................................................................................................34

    J.     Severability ........................................................................................................34

    K.     Conflicts ............................................................................................................34

    L.     Evidence ............................................................................................................35

    M.    Deemed Consent ...............................................................................................35

    N.     Further Assurances .............................................................................................35

    O.     Notices ..............................................................................................................35

P.     Filing of Additional Documents ............................................................... 36

Q.     Successors and Assigns ........................................................................ 36

R.     Governing Law ................................................................................... 36

S.     Closing of Cases ................................................................................ 37

T.     Section Headings ............................................................................... 37

U.     Further Information ............................................................................ 37

Article XII. Retention of Jurisdiction ............................................................ 37

Article XIII. Modification, Revocation, or Withdrawal of the Plan ........................... 38

A.     Modification of Plan ........................................................................... 38

B.     Revocation, Withdrawal, or Non-Consummation ........................................ 39

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

FIRST~~THIRD~~ MODIFIED JOINT LIQUIDATING PLAN OF UNIVERSAL
BUILDING PRODUCTS, INC. AND CERTAIN OF ITS SUBSIDIARIES
PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

Universal Building Products, Inc., Accubrace, Inc., Don De Cristo Concrete Accessories, Inc., Form-Co, Inc., and Universal Form Clamp, Inc. (collectively, the "*Debtors*"), hereby jointly propose the following joint liquidating plan pursuant to section 1121(a) of title 11 of the United States Code.

Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, results of operations, and properties, and for a summary and analysis of the Plan.

All holders of Claims and Equity Interests are encouraged to consult the Disclosure Statement and read the Plan carefully before voting to accept or reject the Plan.

## ARTICLE I.
## DEFINITIONS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

**A.      Rules of Interpretation, Computation of Time, and Governing Law**

1.   For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and neutral gender; (b) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (e) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.   Except as otherwise specifically provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.     Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State in which the Bankruptcy Court resides, without giving effect to the principles of conflict of laws thereof.

**B.     Defined Terms**

Unless the context otherwise requires, the following terms shall have the meanings ascribed to them below when used in capitalized form herein:

1.     *Administrative Agent* means the agent to the Prepetition Lenders under the Credit Agreement.

2.     *Administrative Claim* means a Claim for costs and expenses of administration of the Chapter 11 Cases Allowed under section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code incurred after the Petition Date, including, but not limited to:  (a) any actual and necessary costs and expenses of preserving the Debtors' Estates and operating the businesses of the Debtors (such as wages, salaries, commissions for services, and payments for inventories, leased equipment, and premises); (b) Professional Fee Claims; (c) all fees and charges assessed against the Debtors' Estates under section 1930, Chapter 123 of Title 28, United States Code; and (d) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court.

3.     *Allowed* means, with respect to any Claim or Equity Interest, except as otherwise provided herein, any of the following:  (a) the amount set forth on the Debtors' books and records, that is not otherwise the subject of a pending objection or dispute; (b) a Claim or Equity Interest that has been scheduled by the Debtors in their Schedules as other than disputed, contingent, or unliquidated and as to which (i) the Debtors or any other party in interest have not Filed an objection or (ii) no contrary proof of Claim has been Filed; (c) a Claim or Equity Interest that either is not a Disputed Claim or Equity Interest or has been Allowed by a Final Order; (d) a Claim or Equity Interest that is Allowed:  (i) in any stipulation with the Debtors of the amount and nature of such Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court; (ii) in any stipulation with the Debtors of the amount and nature of such Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court; or (iii) in any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that (i) is not a Disputed Claim or (ii) has been allowed by a Final Order; or (f) a Claim or Equity Interest that is Allowed pursuant to the terms of the Plan.

4.     *Asset Purchase Agreement* shall mean the asset purchase agreement attached to the Sale Motion as Exhibit A and interpreted in accordance with the Sale Order.

5.     *Avoidance Actions* means any and all rights to recover or avoid transfers under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, §§ 522, 541, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, to recover transfers pursuant

to § 550 of the Bankruptcy Code, to avoid any lien under § 506(d) of the Bankruptcy Code, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code; subject, however, to any releases provided in the DIP Order, the Sale Order, and herein.

6.  *Ballot* means each of the ballot forms distributed to each Holder of an Impaired Claim in which the Holder is to indicate acceptance or rejection of the Plan.

7.  *Bankruptcy Code* means title 11 of the United States Code, 11 U.S.C. § 101, et seq., as amended from time to time.

8.  *Bankruptcy Court* means the United States District Court having jurisdiction over the Chapter 11 Cases and, to the extent any reference is made pursuant to section 157 of Title 28 of the United States Code or the General Order of the District Court pursuant to section 151 of Title 28 of the United States Code, the bankruptcy unit of such District Court.

9.  *Bankruptcy Rules* are, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended from time to time, and the Federal Rules of Civil Procedure, as amended from time to time as applicable to the Chapter 11 Cases or proceedings therein.

10. *Bar Date* means ~~[October 29, 2010], the date for filing proofs of Claim relating to any Claim as set forth in the Bar Date Order.~~ the following deadlines for filing proofs of Claim as established by the Bankruptcy Court: (i) January 31, 2011, solely with respect to governmental units (as that term is defined in section 101(27) of the Bankruptcy Code), and (ii) October 29, 2010, with respect to all Entities that are not governmental units

~~11. *Bar Date Order* means that order of the Bankruptcy Court (A) Setting Bar Dates for Filing Proofs of Claim and (B) Approving the Form and Manner of Notice Thereof [Docket No. ___].~~

11. ~~12.~~ *Budget* means the budget attached as Exhibit 2 to the *Final Order (A) Authorizing and Approving Debtors' Post-Petition Financing; (B) Granting Liens and Security Interests and Providing Superpriority Administrative Expense Status; (C) Authorizing Use of Cash Collateral and Affording Adequate Protection; and (D) Modifying Automatic Stay* [Docket No. 167], entered by the Bankruptcy Court on August 27, 2010.

12. ~~13.~~ *Business Day* means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)).

13. ~~14.~~ *Cash* means legal tender of the United States of America or equivalents thereof.

14. ~~15.~~ *Causes of Action* means, other than Avoidance Actions, all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims that are or may be pending on the Effective Date or instituted by the Liquidating Trustee, on behalf of the Liquidating Trust, after the Effective Date against any Entity, based in law or equity, including,

but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order; provided, however, that Causes of Action shall not include any rights, claims, or causes of action of the Debtors that constitute "Acquired Assets" pursuant to the Asset Purchase Agreement; and subject, however, to any releases provided in the DIP Order, the Sale Order, and herein.

15. 16. *Chapter 11 Cases* means the cases commenced under chapter 11 of the Bankruptcy Code by the Debtors on the Petition Date currently pending before the Bankruptcy Court.

16. 17. *Claim* means a "Claim" (as defined in section 101(5) of the Bankruptcy Code) against one or more of the Debtors, including, but not limited to: (a) any right to payment from one or more of the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance by one or more of the Debtors, if such performance gives rise to a right of payment from one or more of the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

17. 18. *Class* means a category of Holders of Claims or Equity Interests as set forth in Article III of the Plan.

18. 19. *Committee* means any and all committees appointed in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code, as constituted from time to time, up to the Effective Date.

19. 20. *Confirmation* means the entry of the Confirmation Order, subject to all conditions specified in Article IX herein having been satisfied or waived pursuant to Article IX.C of the Plan.

20. 21. *Confirmation Date* means the date upon which the Confirmation Order is entered on the docket of the Bankruptcy Court.

21. 22. *Confirmation Hearing* means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, as the same may be adjourned from time to time.

22. 23. *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

23. 24. *Consummation* means the occurrence of the Effective Date.

24. 25. *Credit Agreement* means that certain Credit Agreement dated as of April 28, 2006 and providing for aggregate borrowings of up to $106 million, as amended from time to time, among Debtor Universal Building Products, Inc. as borrower, the remaining Debtors as Subsidiary Borrowers (as defined in the Credit Agreement), the several lenders from time to time party thereto, and the Administrative Agent.

25. 26. *Debtor Releasees* means, collectively: (a) Jeff Church (the Debtors' CEO and a member of the Debtors' board of directors); (b) Kerry Shiba (a member of the Debtors' board of directors); (c) Greg Waller (the Debtors' CFO); (d) Dan Scouler (the Debtors' CRO), Scouler & Company, and its professionals; (e) K&L Gates LLP; and (f) Saul Ewing LLP.

26. 27. *DIP Facility* means, pursuant to the terms and conditions set forth in the DIP Order, the debtor in possession financing arrangement and financial accommodations set forth in that certain Senior Secured Super-Priority Debtors In Possession Promissory Note dated August 3, 2010, in the amount of $6,002,673.

27. 28. *DIP Facility Claim* means a Claim arising under or as a result of the DIP Facility, in the Allowed amount of $6,002,673.

28. 29. *DIP Lender* means the lender under the DIP Facility.

29. 30. *DIP Lender Deficiency Claim* means any Claim arising from the DIP Facility to the extent such Claim is not a Secured Claim.

30. 31. *DIP Order* means the Bankruptcy Court orders entered on the *Debtors' Motion for Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(C)(2), 364(C)(1), 364(C)(2), 364(C)(3), 364(D)(1) and 364(E) (I) Authorizing and Approving Debtors' Post-Petition Financing; (II) Granting Liens and Security Interests and Providing Superpriority Administrative Expense Status; (III) Authorizing Use of Cash Collateral and Affording Adequate Protection; (IV) Modifying Automatic Stay; and (V) Scheduling Final Hearing* [Docket Nos. 66, and 167].

31. 32. *Disclosure Statement* means the written *Disclosure Statement for the Third Modified Joint Liquidating Plan of Universal Building Products, Inc. and Certain of Its Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code*, as amended, supplemented, or modified from time to time, and that is prepared and distributed in accordance with section 1125 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

32. 33. *Disputed Claims or Equity Interest* means a Claim or Equity Interest, or any portion thereof: (i) listed on the Schedules as unliquidated, disputed, or contingent; (ii) that is the subject of an objection or request for estimation Filed or is otherwise disputed by any of the Debtors or any other party in interest in accordance with applicable law and which objection has not been withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court; (iii) that is in excess of the amount scheduled as other than disputed, contingent, or unliquidated, or (iv) that is otherwise disputed by any of the Debtors or any other party in interest in accordance with applicable law, which dispute has not been withdrawn, resolved, or overruled by a Final Order.

33. 34. *Disputed Claim Reserve* shall have the meaning ascribed thereto in Article IV.D.1(eg) of the Plan.

34. 35. *Effective Date* means the date selected by the Debtors that is a Business Day after the Confirmation Date on which all conditions specified in Article IX.B herein have

been satisfied or waived pursuant to Article IX.C and no stay of the Confirmation Order is in effect.

35. 36. *Entity* means a Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an Estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, the United States Trustee, or any other entity.

36. 37. *Equity Interests* means any interest in any Debtor, including, without limitation, (i) a share in a corporation, whether or not denominated "stock," or similar security, and whether or not issued, unissued, authorized, or outstanding, (ii) an interest of a limited partner in a limited partnership, (iii) an interest of a general partner in a general partnership, or (iv) a warrant, option, contract, or right to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subsections (i), (ii), or (iii) of this definition.

37. 38. *Estate(s)* means individually, the Estate of each Debtor in the Chapter 11 Cases, and, collectively, the Estates of all Debtors in the Chapter 11 Cases, created pursuant to section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Cases.

38. 39. *File or Filed* means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

39. 40. *Final Decree* means the decree closing the last of the Chapter 11 Cases pursuant to Bankruptcy Rule 3022 .

40. 41. *Final Order* means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, with respect to the subject matter, that has not been reversed, stayed, modified, or amended, and is no longer subject to appeal, *certiorari* proceeding, or other proceeding for review, reargument, or rehearing, and as to which no appeal, *certiorari* proceeding, or other proceeding for review, reargument, or rehearing has been timely requested or is then pending and the time to file any such appeal, *certiorari* proceeding, or other proceeding for review, reargument, or rehearing has expired or as to which any right to appeal, petition for *certiorari*, reargue, or seek rehearing shall have been waived in writing in form and substance satisfactory to the Debtors.

41. 42. *Forfeited Distributions* means any undeliverable or unclaimed distributions on account of Administrative Claims, Priority Tax Claims, Other Priority Claims and Unsecured Claims that are deemed forfeited pursuant to Article VI.C.2 of the Plan.

42. 43. *Holder* means any Entity owning or holding a Claim or Equity Interest.

43. 44. *Impaired* means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

44. 45. *Intercompany Claim* means any Claim or Causes of Action held by any Debtor against any other Debtor accruing before or after the Petition Date, including, but not limited to, any claim for reimbursement, payment as guarantor or surety, any claim for

contribution and expenses that were allocable between multiple Debtors, which claim shall be disallowed and cancelled as provided in Article III.B.5 of the Plan.

45. ~~46.~~ *Lien* means any charge against or interest in property to secure payment of a debt or performance of an obligation.

46. ~~47.~~ *Liquidating Trust* means the ~~series~~grantor trust to be created on the Effective Date in accordance with the provisions of Article IV.D of the Plan and the Liquidating Trust Agreement.

47. ~~48.~~ *Liquidating Trust Agreement* means the ~~series~~ trust agreement that documents the powers, duties and responsibilities of the Liquidating Trustee, which agreement shall be in form and substance acceptable to the Debtors~~,~~ and the Committee~~, the DIP Lenders and the Prepetition Lenders~~ and filed with the Bankruptcy Court by the Plan Supplement Filing Date.

48. ~~49.~~ *Liquidating Trust Assets* means (i) the Preserved Collateral~~;~~ and (ii) the Transferred Property.

~~50. *Liquidating Trust Interests* means collectively the Senior Creditor Series and the Unsecured Creditor Series of the Liquidating Trust.~~

49. ~~51.~~ *Liquidating Trustee* ~~means the Person designated by the Debtors in the Plan Supplement, which Person shall be acceptable to the Prepetition Lenders and the DIP Lender~~shall be Myron Bloom.

50. ~~52.~~ *Non-Released Parties* means any Entity that is not a Debtor Releasee or a Third Party Releasee.

51. ~~53.~~ *Other Priority Claim* means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

52. ~~54.~~ *Other Secured Claim* means a Secured Claim other than the Prepetition Lender Secured Claims and the DIP Facility Claim.

53. ~~55.~~ *Person* means a "person" as defined in section 101(41) of the Bankruptcy Code.

54. ~~56.~~ *Petition Date* means August 4, 2010.

55. ~~57.~~ *Plan* means this ~~*First*~~*Third* Modified Joint Liquidating Plan of Universal Building Products, Inc. and Certain of Its Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code, including, without limitation, any exhibits, supplements, appendices, and schedules hereto, either in its present form or as it may be amended, modified, altered, or supplemented from time to time in accordance with the terms and provisions hereof.

56. 58. *Plan Fund* means the difference between (a) the maximum amount of the DIP Facility less (b) any amounts borrowed under the DIP Facility and spent or disbursed by the Debtors. For the avoidance of any doubt, and subject to the provisions of Article IV.A of the Plan, the funds advanced under the DIP Facility but not spent or disbursed (*i.e.*, any proceeds of the DIP Facility held by the Debtors) as of the Confirmation Date shall be transferred to the Liquidating Trust and be considered part of the Plan Fund.

57. 59. *Plan Supplement* means the supplement to the Plan that contains the form of the Liquidating Trust Agreement and the identification of the Liquidating Trustee and which will be filed on or before the Plan Supplement Filing Date.

58. 60. *Plan Supplement Filing Date* means the date by which the Plan Supplement and any Exhibitsexhibits or Plan Schedulesschedules not filed with the Plan, shall be filed with the Bankruptcy Court, which date shall be no less than five (5) business days prior to the deadline for submitting ballots to accept or reject the Plan.

59. 61. *Prepetition Lender* means the lender under the Credit Agreement.

60. 62. *Prepetition Lender Deficiency Claim* means any Claim arising from the Credit Agreement to the extent such Claim is not a Secured Claim.

61. 63. *Prepetition Lender Secured Claim* means any Claim arising from the Credit Agreement to the extent such Claim is a Secured Claim, which shall be deemed Allowed in the aggregate principal amount of $40,331,692.45, plus accrued and unpaid interest thereon and fees and expenses as provided in the Credit Agreement and related documents.

62. 64. *Preserved Collateral* means all property of the Debtors that is collateral pursuant to the Credit Agreement and related secured credit facility or the DIP Facility, including without limitation that certain real property owned by the Debtors in Centralia, Illinois, and the Debtors' interests in its Canadian subsidiary, Universal Form Clamp of Canada; *provided*, *however*, the Preserved Collateral shall not include Transferred Property.

63. 65. *Priority Tax Claim* means a Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

64. 66. *Privilege* means all attorney-client privileges, work product protections and other immunities or protections from disclosure held by the Debtors.

67. *Proceeds* means the funds realized by the applicable Estate from the sale, lease, settlement, adjudication, or other disposition of an asset, including any recovery from a Cause of Action or Transferred Property.

65. 68. *Professional* means any professional or other Entity that (a) has been retained in the Chapter 11 Cases by a Final Order of the Bankruptcy Court pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code or otherwise, including, but not limited to, K&L Gates LLP, Saul Ewing LLP, Scouler & Company, Arent Fox LLP, Elliot GreenleafBenesch, Friedlander, Coplan & Aronoff LLP, and NHB Advisors, or (b) seeks compensation or

reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

66. 69. *Professional Fee Claims* means (a) a claim under §§ 327, 328, 330, 331, 363, 503(b), ~~1103~~1103, or 1106 of the Bankruptcy Code for compensation for professional services rendered or expenses incurred prior to the Effective Date on the Estates' behalf by a Professional; or (b) a claim under § 503(b)(4) of the Bankruptcy Code for compensation for professional services rendered.

67. 70. *Pro Rata* means proportionately so that with respect to an Allowed Claim, the ratio of (a) (i) the amount of property distributed on account of a particular Allowed Claim to (ii) the amount of that particular Allowed Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims of the Class in which the particular Allowed Claim is included to (ii) the amount of all Allowed Claims in that Class.

68. 71. *Rejection Claim* means any Claim for amounts due as a result of the rejection of any executory contract or unexpired lease which is rejected by the Debtors pursuant to the Plan, which Claim must be filed by the Rejection Claim Bar Date.

69. 72. *Rejection Claim Bar Date* means the date that is thirty (30) days after the Effective Date; provided, however, if a motion seeking assumption or rejection is not heard and determined prior to the Effective Date, any Claim based thereon shall be filed within thirty (30) days of entry of an Order ruling on such a motion.

70. 73. *Released Parties* means any Entity granted a release by the Debtors in Article X.F of the Plan.

71. 74. *Releasing Parties* means, collectively, the DIP Lender, the Administrative Agent, the Prepetition Lenders, the Committee, and Holders of Claims or Equity Interests except any Holder of a Claim or Equity Interest: (a) that voted to reject the Plan; or (b) that elected to opt out of the releases provided in Article X.

72. 75. *Sale* means the sale of assets contemplated in the Sale Motion, as approved by the Sale Order.

73. 76. *Sale Motion* means the *Debtors' Motion for Order Under Sections 105(a), 363, and 1146(c) of the Bankruptcy Code (A) Authorizing the Sale(s) of Certain or All of the Debtors' Assets, Free and Clear of Liens, Claims, Encumbrances and Interests, (B) Approving Asset Purchase Agreement, and (C) Granting Related Relief*.

74. 77. *Sale Order* collectively means one or more orders of the Bankruptcy Court granting the Sale Motion [Docket Nos. 168 and 221].

75. 78. *Schedules* means the respective schedules of assets and liabilities and the statements of financial affairs Filed by the Debtors in accordance with section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended.

76. ~~79.~~ *Secured Claim* means: (a) a Claim (other than a Claim in any way arising from or relating to a Claim of a lessor for damages resulting from the termination of a lease of real property) that is secured by a Lien on a property in which any of the Estates has an interest, which lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in any of the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) a Claim Allowed under the Plan as a Secured Claim.

77. ~~80.~~ *Senior Creditor Claims* means, collectively: (a) the Prepetition Lender Secured Claims, (b) the DIP Facility Claims; (c) the DIP Lender Deficiency Claim; and (d) the Prepetition Lender Deficiency Claim.

~~81. *Senior Creditor Series* means the series of the Liquidating Trust created and maintained for the benefit of the Holders of Senior Creditor Claims on account of which holders of such interests will receive distributions of the Preserved Collateral (or the proceeds thereof) other than the Transferred Property.~~

78. ~~82.~~ *Tax Code* means the Internal Revenue Code of 1986, as amended from time to time.

79. ~~83.~~ *Third Party Releasees* means, collectively: (a) the Prepetition Lenders; (b) the Administrative Agent; (c) the DIP Lender; (d) UBP Acquisition Corp. and any affiliate, successor or assign thereof in any capacity; (d) Oaktree Capital Management, L.P.; (e) Solus Capital Partners, LLC; (f) Dayton Superior Corporation; (g) the Liquidating Trustee; (h) the Committee and all members thereof solely in their capacity as members of the Committee and not in any other capacity and (i) all attorneys, financial advisors, advisors, accountants, investment bankers, investment advisors, actuaries, professionals, officers, directors, employees, partners, and affiliates of each of the foregoing, in their respective capacities as such.

80. ~~84.~~ *Transferred Causes of Action* shall mean Causes of Action that (i) are not related to or asserted against the Purchaser (as defined in the Sale Order) or any affiliate, successor or assign thereof, including, without limitation, Dayton Superior Corporation, and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates, shareholders, financial advisors and representatives (each of the foregoing solely in their capacity as such); (ii) have not been released herein or pursuant to the DIP Order or the Sale Order and (iii) do not constitute assets acquired by the Purchaser and products and proceeds thereof.

81. ~~85.~~ *Transferred Property* shall mean (i) any and all Avoidance Actions and any products and proceeds thereof, (ii) the Transferred Causes of Action and any products or proceeds thereof; and (iii) the Plan Fund.

82. ~~86.~~ *Unimpaired* means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

83. ~~87.~~ *Unsecured Claim* means any Claim against any of the Debtors other than an Administrative Claim, a DIP Facility Claim, a Priority Tax Claim, a Prepetition Lender Secured Claim, a DIP Lender Deficiency Claim, a Prepetition Lender Deficiency Claim, an Other Secured Claim, an Other Priority Claim, an Intercompany Claim, or an Equity Interest.

~~88. *Unsecured Creditor Series* means the series of the Liquidating Trust created and maintained for the benefit of the Holders of Unsecured Claims on account of which holders of such interests will receive distributions of the Transferred Property (or the products or proceeds thereof).~~

# ARTICLE II.
## ADMINISTRATIVE CLAIMS; PRIORITY TAX CLAIMS

**A.    Administrative Claims**

(a)    <u>Non-Professional Fee Administrative Claims</u>.    Each Allowed Administrative Claim shall be, at the Liquidating Trustee's election, either (i) paid by the Debtors in full, in Cash <u>from the Transferred Property (or the proceeds thereof)</u>, in such amounts as such Administrative Claim is Allowed by the Bankruptcy Court upon the later of the Effective Date or the date upon which such Administrative Claim is Allowed or (ii) satisfied upon such other terms as may be agreed upon between the Holder of such Administrative Claim and the Liquidating Trustee.    Any application for the payment of any Administrative Claims ~~on account of any fees or reimbursement of expenses of any~~<u>(other than</u> Professional<u>_ Fee Claims)</u> shall be Filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date.

(b)    <u>Professional Fee Claims</u>.    Unless otherwise expressly provided in the Plan, a Professional Fee Claim will be Allowed only if:  (i) on or before forty-five (45) days after the Effective Date (the "*Professional Fee Bar Date*"), the entity holding such Professional Fee Claim files with the Court a final fee application and serves the application on counsel to the Debtors, counsel to the Committee<u>, the Liquidating Trustee,</u> and the U.S. Trustee; and (ii) the Court enters an order allowing the Claim.    <u>The Liquidating Trust shall pay any Allowed Professional Fee Claims within three (3) Business Days of entry of the respective Final Order allowing such Professional Fee Claim.</u>

<u>        One (1) Business Day after the Effective Date, each Professional shall provide the Liquidating Trustee with a non-binding estimate of its respective unpaid Professional Fee Claim.  Within three (3) Business Days after the Effective Date, the Liquidating Trustee shall establish a Professional fee escrow account and, using the Plan Fund, fund such escrow account in an amount equal to the aggregate unpaid Professional Fee Claims based on the estimates provided by the Professionals.  The amounts in the Professional fee escrow account shall not be used to pay any other amounts under this Plan until Allowed Professional Fee Claims have been satisfied in accordance with the preceding paragraph.</u>

Any party in interest may file an objection to such application within the time provided by the Bankruptcy Rules or within any other period that the Bankruptcy Court establishes. Entities holding Professional Fee Claims that do not timely file and serve a fee application <u>by the Professional Fee Bar Date</u> will be forever barred from asserting such Professional Fee Claim

against the Debtors, the Estates, the Liquidating Trust, or their respective property. Notwithstanding any releases provided in this Plan, all Professional Fee Claims shall be subject to potential objections at the hearing on the respective Professional Fee Claim in accordance herewith on grounds that a Professional Fee Claim is not allowable under section 330 of the Bankruptcy Code.

**B.** **DIP Facility Claim**

Notwithstanding anything to the contrary herein, in full and final satisfaction, settlement, release and discharge of and in exchange for release of the DIP Facility Claim, in accordance with section 1129(a)(9) of the Bankruptcy Code, the DIP Lender has agreed that the DIP Facility Claim shall receive the treatment afforded in Article III.B.1.

**C.** **Priority Tax Claims**

On, or as soon as reasonably practicable after, the latest of the Effective Date or the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (i) Cash from the Transferred Property (or the proceeds thereof) equal to the unpaid portion of such Allowed Priority Tax Claim or (ii) such other treatment as to which the Liquidating Trustee and such Holder have agreed upon in writing.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT**
**OF CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**A.** **Summary**

1. The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation, and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified, but the treatment for such unclassified claims is set forth in Article II.

2. Subject to the occurrence of the Effective Date, the Debtors and their Estates will be deemed substantively consolidated for voting and distribution purposes only. No distributions will be made under the Plan on account of Intercompany Claims. The assets and liabilities of the Debtors shall be pooled and all Claims shall be satisfied from the assets of a single consolidated estate. Any Claims against one or more of the Debtors (including Claims based upon a guaranty, indemnity, co-signature, surety or otherwise, of Claims against another

Debtor) shall be treated as a single Claim against the consolidated estate of the Debtors and shall be entitled to distributions under the Plan only with respect to such single Claim.

3. The classification of Claims against and Equity Interests in the Debtors pursuant to the Plan is as follows:

| Class | Claim | Status | Voting Right |
|---|---|---|---|
| 1 | Senior Creditor Claims | Impaired | Entitled to vote[2] |
| 2 | Other Secured Claims | ~~Unimpaired~~Impaired | ~~Not entitled~~Entitled to vote~~ – deemed to accept~~ |
| 3 | Other Priority Claims | ~~Unimpaired~~Impaired | ~~Not entitled~~Entitled to vote~~ – deemed to accept~~ |
| 4 | Unsecured Claims | Impaired | Entitled to vote |
| 5 | Intercompany Claims | Impaired | Not entitled to vote – deemed to reject |
| 6 | Equity Interests | Impaired | Not entitled to vote – deemed to reject |

**B.    Treatment of Claims and Equity Interests**

1. Class 1 – Senior Creditor Claims

(a)    Classification:  Class 1 consists of all Senior Creditor Claims.

(b)    Treatment:  Holders of Allowed Senior Creditor Claims shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Senior Creditor Claims, ~~the Senior Creditor Series of the Liquidating Trust as provided for in~~distributions of the Preserved Collateral (or the proceeds thereof) from the Liquidating Trust~~ Agreement~~.

(c)    Voting:  Class 1 is impaired.  Subject to the respective reservations of rights set forth in the Disclosure Statement and this Plan, Holders of Senior Creditor Claims in Class 1 are entitled to vote to accept or reject the Plan.

2. Class 2 – Other Secured Claims

(a)    Classification:  Class 2 consists of all Other Secured Claims.

---

[2]    The Debtors are reserving the right to argue at the Confirmation Hearing that any vote of the Holders of Senior Creditor Claims shall only count if the Debtors have not previously abandoned the Preserved Collateral because such Holders waived the DIP Lender Deficiency Claim and the Prepetition Lender Deficiency Claim under prior agreements and, thus, the abandonment of the Preserved Collateral will eliminate such Holders' Secured Claims, leaving such Holders without any Claims against the Debtors or their Estates.  The DIP Lender and Prepetition Lender opposes this conclusion and is reserving all rights in connection therewith.

(b)     Treatment:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, on, or as soon as reasonably practicable after, the later of the Effective Date or the date such Claim becomes an Allowed Other Secured Claim, each Holder of such Allowed Other Secured Claim shall receive (i) the property securing such Allowed Other Secured Claim, or (ii) such other treatment as to which the Debtors or the Liquidating Trustee and such Holder have agreed upon in writing~~, upon consultation with the Prepetition Lenders and the DIP Lender~~.

(c)     Voting:  Class 2 is ~~unimpaired~~impaired.  Holders of Other Secured Claims in Class 2 are ~~deemed to accept the Plan and are therefore not~~ entitled to vote to accept or reject the Plan.

3.     Class 3 – Other Priority Claims

(a)     Classification:  Class 3 consists of all Other Priority Claims.

(b)     Treatment:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, on, or as soon as reasonably practicable after, the later of the Effective Date or the date such Other Priority Claim becomes an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Other Priority Claim, (i) Cash from the Transferred Property (or the proceeds thereof) equal to the unpaid portion of such Allowed Other Priority Claim, or (ii) such other treatment as to which the Debtors or the Liquidating Trustee and such Holder have agreed upon in writing ~~upon consultation with the Prepetition Lenders and the DIP Lender~~.

(c)     Voting:  Class 3 is ~~unimpaired~~impaired.  Holders of Other Priority Claims in Class 3 are ~~deemed to accept the Plan and are not therefore~~ entitled to vote to accept or reject the Plan.

4.     Class 4 – Unsecured Claims

(a)     Classification:  Class 4 consists of all Unsecured Claims.

(b)     Treatment:  Holders of Allowed Unsecured Claims in Class 4 shall receive a Pro Rata share of the ~~Unsecured Creditor Series of the Liquidating Trust.  On the Effective Date, or as soon thereafter as is practicable, the Liquidating Trustee shall make a distribution of the Unsecured Creditor Series of the Liquidating Trust to each Holder of an Allowed Class 4 Claim in an amount equal to such Holder's Pro Rata share of the balance in the Transferred Property transferred to the Liquidating Trust remaining after creation of the Disputed Claim Reserve~~Transferred Property (or the proceeds thereof) remaining after payment of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Other Priority Claims.

~~In the event of entry of a Final Order determining a Disputed Claim to be an Allowed Claim, the Liquidating Trustee, in his sole discretion, may make an interim distribution to the Holder of such Allowed Claim from the Disputed Claim Reserve to such Holder.  The Holders of~~

14

~~Class 4 Allowed Claims shall thereafter receive their Pro Rata share of any subsequent distributions from the Liquidating Trust.~~

         (c)    Voting: Class 4 is impaired. Holders of Allowed Unsecured Claims in Class 4 are entitled to vote to accept or reject the Plan.

     5.  Class 5 – Intercompany Claims

         (a)    Classification: Class 5 consists of all Intercompany Claims.

         (b)    Treatment: On the Effective Date, all Intercompany Claims shall be deemed waived and cancelled and Holders of Intercompany Claims shall not receive any distribution on account of such Intercompany Claim under the Plan.

         (c)    Voting: Class 5 is impaired. Because Holders of Intercompany Claims will receive no distributions under the Plan, Class 5 will be deemed to have voted to reject the Plan.

     6.  Class 6 – Equity Interests

         (a)    Classification: Class 6 consists of all Equity Interests.

         (b)    Treatment: On the Effective Date, all Equity Interests shall be cancelled and the Holders of Equity Interests shall not receive or retain any distribution or property on account of such Equity Interests.

         (c)    Voting: Class 6 is impaired. Because Holders of Equity Interests will receive no distribution under the Plan, Class 6 will be deemed to have voted to reject the Plan.

**ARTICLE IV.**
**IMPLEMENTATION OF THE PLAN AND THE LIQUIDATING TRUST**

**A.**    **Funding of the Plan Fund into the Liquidating Trust**

       On or prior to the Effective Date, the DIP Lender shall fund to the Liquidating Trust from the DIP Facility the entire amount of credit provided for under the DIP Facility less amounts previously funded to the Debtors. In addition, on or prior to the Effective Date, the Debtors shall fund to the Liquidating Trust any amounts that have been previously funded pursuant to the DIP Facility and that have not been spent or disbursed by the Debtors; provided, however, that the Debtors' and DIP Lenders' funding of these amounts into the Liquidating Trust shall be expressly conditioned on the Debtors having remitted to the DIP Lenders and/or Prepetition Lenders (as applicable) any cash collateral other than amounts funded pursuant to the DIP Facility that were not disbursed or expected to be disbursed in accordance with the Budget. ~~The estimated amount of the Plan Fund as of the projected Effective Date shall be set forth in the Plan Supplement~~<u>For the avoidance of doubt, neither the DIP Lenders nor the Prepetition Lenders shall be entitled to receive any amount of the $427,301 that constituted the initial Cash held by</u>

15

the Debtors on the Petition Date since such amount was disbursed or expected to be disbursed in accordance with the Budget.

**B.      Funding of the Liquidating Trust.**

The Liquidating Trust will be funded initially by the Liquidating Trust Assets, which include, (i) the Preserved Collateral and (ii) the Transferred Property.

**C.      Transfer of Liquidating Trust Assets to the Liquidating Trust.**

On the Effective Date, the Debtors shall transfer and shall be deemed to have irrevocably transferred to the Liquidating Trust, for and on behalf of the beneficiaries of the Liquidating Trust, with no reversionary interest in the Debtors, the Liquidating Trust Assets.

**D.      The Liquidating Trust**

1.      Creation of the Liquidating Trust

(a)      On the Effective Date or immediately prior thereto, (i) the Liquidating Trust shall be created and established by the execution and delivery of the Liquidating Trust Agreement and any other necessary action, subject to the provisions of the Plan, (ii) all Transferred Property shall be transferred to the Liquidating Trust free of all Claims, Liens and interests for the benefit of ~~the holders of the Unsecured~~Holders of Claims other than Senior Creditor ~~Series~~Claims, and (iii) all Preserved Collateral shall be transferred to the Liquidating Trust, free of all Claims, Liens and interests for the benefit of ~~holders~~Holders of ~~the~~ Senior Creditor ~~Series~~Claims.  The Liquidating Trust shall reduce to Cash or otherwise liquidate the Liquidating Trust Assets and distribute such liquidated assets in accordance with and subject to the terms and provisions of the Plan and the Liquidating Trust Agreement.  As provided in Article IV.E of the Plan, upon entry of the Final Decree, the Liquidating Trust shall be dissolved without further action by the Liquidating Trustee.

(b)      As of the Effective Date, the Liquidating Trust shall be responsible for (i) the winding up of the Debtors' Estates, (ii) liquidating or otherwise reducing to Cash the Transferred Property or the Preserved Collateral, as applicable and in accordance with the Liquidating Trust Agreement, (iii) filing, prosecuting and settling Causes of Action, Avoidance Actions, Transferred Causes of Action (iv) making distributions to Holders of Allowed Claims, (v) overseeing the continued liquidation to Cash of all other Liquidating Trust Assets, and (vi) settling, resolving and objecting to Claims.

(c)      All costs and expenses associated with the administration of the Liquidating Trust shall be the responsibility of and paid by the Liquidating Trust ~~from~~in accordance with the Liquidating Trust ~~Assets~~Agreement.  The costs and expenses incurred by the Liquidating Trustee in administering, maintaining or liquidating the Preserved Collateral, including the fees and expenses of the Liquidating Trustee's professionals, consultants and agents incurred in connection with the Preserved Collateral and taxes, levies and assessments related to the Preserved Collateral, shall be paid from the Liquidating Trust Assets, and shall be reimbursed to the Liquidating Trust from the proceeds or products of the Preserved Collateral before any distribution of such products or proceeds to the Holders of the Senior Creditor ~~Series.~~Claims.

(d)     The Liquidating Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators, appraiser, auctioneers, translators, or other professionals as it may deem necessary (collectively, the "*Liquidating Trustee Professionals*"), in its discretion, and at the sole expense of the Liquidating Trust, to aid in the performance of its responsibilities pursuant to the terms of this Plan including, without limitation, the liquidation and distribution of Liquidating Trust Assets.  In no event shall Haishan Liu or any individual or Entity affiliated with Dr. Liu act as a Liquidating Trustee Professional.  The Liquidating Trustee shall maintain an accounting of such costs and expenses.

(e)     Notwithstanding anything herein to the contrary, the Liquidating Trust Agreement shall provide that the aggregate compensation and expenses of the Liquidating Trustee and any Liquidating Trustee Professionals (for all services other than those related to the Preserved Collateral which may be reimbursed or otherwise paid from the proceeds of the Preserved Collateral as set forth in Article IV.D.1(c)) shall be limited to $150,000; provided, however, that to the extent that the Liquidating Trustee pursues any Cause of Action or Avoidance Action, the Liquidating Trustee may engage counsel to be compensated on a contingency basis to the extent such counsel is not compensated from the $150,000 amount referred to herein; provided, further, such that the proceeds of each individual Cause of Action or Avoidance Action (each referred to as an "Individual Action") may only be distributed as follows:

(1)     not more than (a) thirty-three percent (33%) of the proceeds of each Individual Action may be used for payment of the professionals fees on account of the prosecution of such Individual Action by the individual contingency counsel handling such prosecution, *plus* (b) an amount necessary to reimburse expenses incurred in connection with the prosecution of such Individual Action; and

(2)     the remaining proceeds of each Individual Action shall be distributed solely to Holders of Claims against the Estates which arose prior to the Effective Date in accordance with the priorities established under the Plan.

Accordingly, no proceeds of any Individual Action may be in any way distributed to, used as funding by, or treated as compensation for either the Liquidating Trustee or Liquidating Trustee Professionals; other than payment of amounts described in subparagraph (i) above to the specific contingency counsel prosecuting the particular Individual Action which generated such proceeds and no proceeds of any particular Individual Action may be used or paid in conjunction with any different Individual Action.

(f)     The Liquidating Trust Agreement shall provide for the establishment of a Liquidating Trust oversight committee (the "*Oversight Committee*") consisting of Gene Laster (Millennium Metals), Bill Lieberman (Jade Sterling), and Don Johnson (King Steel).  The Oversight Committee shall have the powers and authority as to be set forth in the Liquidating Trust Agreement, including authority over the assertion of Avoidance Actions and Transferred Causes of Action as set forth in the Liquidating Trust Agreement.

(g) (e) Distribution of Liquidating Trust Assets: The Liquidating Trustee is required to distribute to the holders of Allowed Claims on account of their interests in the Liquidating Trust, on a quarterly basis, all unrestricted Cash on hand (including any Cash received from the applicable Debtors on the Effective Date, and treating any permissible investment as Cash for purposes of this provision), except such amounts (i) as have been reserved on account of Disputed Claims, or are otherwise part of the claims reserve established by the Liquidating Trustee (the "Disputed Claim Reserve"), (ii) as are reasonably necessary to maintain the value of the Liquidating Trust Assets during liquidation, (iii) as are necessary to pay reasonable incurred or anticipated expenses (including, but not limited to, any taxes imposed on or payable by the Debtors or the Liquidating Trust or in respect of the Liquidating Trust Assets), or (iv) as are necessary to satisfy other liabilities incurred or anticipated by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement; provided, however, that the Liquidating Trustee shall not be required to make a distribution pursuant to this Article IV.D.1(eg) if the aggregate, net amount of unrestricted Cash available for distribution (taking into account the above listed exclusions) is such as would make the distribution impracticable as reasonably determined by the Liquidating Trustee, in accordance with applicable law, but only so long as such aggregate amount is less than ten thousand dollars and zero cents ($10,000.00); and provided, further, that the Liquidating Trustee may decide to forego the first periodic distribution to those holders of Liquidating Trust Interests with respect to which the Liquidating Trustee, in theirits reasonable judgment, is not administratively prepared to make such distribution, in which case, such distribution shall be made to such holders as soon as practicable after the Liquidating Trustee is administratively prepared to do so.

(h) (f) For federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under Treasury Regulation section 301.7701-4 and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in the Liquidating Trust Assets that are attributable to that series of the Liquidating Trust in which they have an interest and then contributed such interests to the Liquidating Trust. The Liquidating Trust Agreement shall (i) state that the primary purpose of the Liquidating Trust is to liquidate the Liquidating Trust Assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, its liquidating purpose and (ii) contain a fixed or determinable termination date that is not more than five (5) years from the date of creation of the Liquidating Trust, which termination date may be extended for one or more finite terms subject to the approval of the Bankruptcy Court upon a finding that the extension is necessary to its liquidating purpose. Each such extension must be approved by the Bankruptcy Court within six (6) months before the beginning of the extended term.

(i) (g) The Liquidating Trustee shall be responsible for filing all federal, state and local tax returns for the Liquidating Trust. The Liquidating Trustee shall file all federal tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4. The Liquidating Trustee also will annually send to each holderbeneficiary of athe Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns. The Liquidating Trustee shall

also file (or cause to be filed) any other statement, return or disclosure relating to the Liquidating Trust that is required by any governmental unit.

(h)     Tax Reporting for Liquidating Trust:

(1)     On or before the Effective Date, the Debtors shall provide the Liquidating Trustee with a good-faith valuation of the Liquidating Trust Assets as of the Effective Date based on the information available to the Debtors at such time and without performing any additional analysis as to Causes of Action, Transferred Causes of Action or Avoidance Actions.  As soon as practicable after the Effective Date, the Liquidating Trustee shall determine the fair market value, as of the Effective Date, of the Liquidating Trust Assets in good faith, and shall make all such values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee, and the holders of the Liquidating Trust Interests (the "Beneficiaries")) for all United States federal income tax purposes.

(2)     Allocations of Liquidating Trust taxable income among the Beneficiaries shall be determined by reference to the manner in which an amount of cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value) to the holders of the Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust.  Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets.  The tax book value of the Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(3)     Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall (A) timely elect to treat any Disputed Claim Reserve as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  All parties (including the Liquidating Trustee, the Debtors, and the Liquidating Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(4)    The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any taxes imposed on the trust or its assets, including the Disputed Claim Reserve.  In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claim Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (A) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (B) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Liquidating Trustee as a result of the resolution of such Disputed Claims.

(i)    (i) The Debtors shall cause the beneficial interests of the Liquidating Trust Interest to be non-transferrable and any such transfer shall be disregarded by the Liquidating Trustee except with respect to a transfer by will or under laws of descent and distribution; provided, however, such transfer will not be effective until and unless the Liquidating Trustee receives written notice of such transfer under the law of descent and distribution.

2.    The Liquidating Trustee

(a)    On the Effective Date, the proposed Liquidating Trustee shall execute the Liquidating Trust Agreement and any other documents necessary to be appointed the Liquidating Trustee.  The Liquidating Trustee, once appointed, shall act as trustee on behalf of the Liquidating Trust to carry out its obligations and exercise its rights in accordance with, and subject to, this Plan and the Confirmation Order.  The Liquidating Trustee and the Liquidating Trustee Professionals shall be compensated as set forth in the Plan and the Liquidating Trust Agreement and shall not be required to file a fee application to receive compensation.  Any objection to the designation of the Liquidating Trustee shall be raised at the Confirmation Hearing.  The Confirmation Order shall state that without the permission of the Bankruptcy Court, no judicial, administrative, arbitration or other action or proceeding shall be commenced against the Liquidating Trustee in its official capacity, with respect to its status, duties, powers, acts or omissions as Liquidating Trustee in any forum other than the Bankruptcy Court.  The Liquidating Trustee shall be vested with the rights, powers and benefits set forth in the Liquidating Trust Agreement, which shall include, without limitation, all rights, powers, and benefits afforded to a "trustee" under sections 704 and 1106 of the Bankruptcy Code.  Subject to the provisions of the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall be entitled to hire such professionals as it deems necessary to assist it in carrying out its duties, with the fees and expenses of such professionals to be borne by the Liquidating Trust Assets subject to the provisions of Article IV.D.1(e) of the Plan.

(b)    On, or as soon as practicable after, the Effective Date, the Plan Fund shall be deposited in a segregated, interest-bearing account of the Liquidating Trust in order to fund the fees and expenses of the Liquidating Trust in accordance with Article IV.D.1(e) of this Plan (including, without limitation, compensation of the Liquidating Trustee and fees and expenses incurred in connection with the duties and actions of such Liquidating Trustee, such as fees and expenses of legal counsel and accountants) and to pay insurance, taxes and other expenses arising in the ordinary course of business in maintaining and disposing of any of the Liquidating Trust Assets.  The Subject to Article IV.D.1(e) of this Plan, the Liquidating Trust may pay all

such fees and expenses without Bankruptcy Court approval but after satisfaction of all obligations in the Plan. The investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the Liquidating Trust, are limited to investing in demand and time deposits.

(c) Upon any determination by the Liquidating Trustee that it is holding any amount not constituting the Transferred Property or the products or proceeds of Transferred Property, the Liquidating Trustee shall promptly transfer such property so that it is classified as Preserved Collateral or pay such amount to the Holders of Allowed Class 1 Claims.

(d) ~~In accordance with this Plan~~Subject to the provisions of the Liquidating Trust Agreement and powers of the Oversight Committee, the Liquidating Trustee shall be authorized and empowered to pursue and prosecute, to settle, or to decline to pursue, all Transferred Causes of Action and Avoidance Actions, whether or not such causes of action have been commenced prior to the Effective Date, and shall be substituted as the real party in interest in any such action, commenced by or against the Debtors, the Debtors' Estates or the Committee. The Liquidating Trustee may pursue or decline to pursue all Transferred Causes of Action and Avoidance Actions, and may settle, release, sell, assign, otherwise transfer or compromise such Transferred Causes of Action and Avoidance Actions in the Liquidating Trustee's business judgment without Bankruptcy Court approval, subject to the provisions of the Liquidating Trust Agreement and the powers of the Oversight Committee.

(e) The Liquidating Trustee may be removed and replaced ~~for good cause or~~ as provided under the Liquidating Trust Agreement~~, subject to Bankruptcy Court approval~~.

(f) Upon the Effective Date and execution of the Liquidating Trust Agreement, the Liquidating Trustee as trustee of the Liquidating Trust, and not personally, shall be vested in all right, title and interest in all Liquidating Trust Assets, and all rights to enforce orders of the Bankruptcy Court entered in this Bankruptcy Proceeding. The Liquidating Trustee shall liquidate the Liquidating Trust Assets and distribute the proceeds thereof in accordance with this Plan and the Liquidating Trust Agreement.

## E.     Final Administration of Liquidating Trust.

Upon full administration of the Liquidating Trust Assets vested in the Liquidating Trust, and the satisfaction as far as possible of all remaining liabilities of the Liquidating Trust, in accordance with the Plan, the Liquidating Trustee shall file a motion seeking entry of a Final Decree with respect to the remaining Chapter 11 Cases in compliance with Rule 5009-1 of the Local Rules of the Bankruptcy Court. Upon entry of such Final Decree, the Liquidating Trust shall be deemed terminated without further notice, and the Liquidating Trustee shall thereupon be forever discharged of and released from all power, duties and responsibilities under the Liquidating Trust Agreement and the Plan. Every effort shall be made to effectuate such termination no later than the time reasonably necessary to accomplish the Liquidating Trust's purpose of liquidating the Liquidating Trust Assets and distributing the proceeds thereof to the beneficiaries in accordance with the Liquidating Trust Agreement and the Plan, and in no event

shall the Liquidating Trust continue for more than five (5) years after the Effective Date without further order of the Bankruptcy Court.

**F.  Corporate Action**

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan involving the corporate structure of the Debtors shall be deemed authorized and approved without any requirement of further action by the Debtors, the Debtors' shareholders or the Debtors' boards of directors.  The Debtors (and their boards of directors) shall dissolve or otherwise terminate their existence upon the Effective Date.  Notwithstanding the foregoing, Kerry Shiba shall continue to act as the representative of the Debtors for purposes of being heard on issues such as the prosecution of Professional Fee Claim applications and the selection of a successor Liquidating Trustee or Oversight Committee members in accordance with the terms of the Liquidating Trust Agreement.

**G.  Preservation of Rights**

The Debtors are currently investigating whether to pursue potential Transferred Causes of Action and Avoidance Actions against other parties or Entities.  Under the Plan, the Liquidating Trustee retain all rights of and on behalf of the Debtors and the Liquidating Trust to commence and pursue any and all Transferred Causes of Action (under any theory of law, including, without limitation, the Bankruptcy Code, and in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Debtors' Chapter 11 Cases) and Avoidance Actions discovered in such investigation to the extent the Liquidating Trustee deems appropriate. Potential Transferred Causes of Action and Avoidance Actions may but need not (if at all) be pursued by the Debtors prior to the Effective Date and by the Liquidating Trustee after the Effective Date, to the extent warranted.

Except as provided in Article X of the Plan, potential Transferred Causes of Action and Avoidance Actions that may be pursued by the Debtors prior to the Effective Date and by the Liquidating Trust and the Liquidating Trustee after the Effective Date (subject to the rights of the Oversight Committee related thereto), also include, without limitation, any other Transferred Causes of Action, whether legal, equitable, or statutory in nature, arising out of, or in connection with, the Debtors' businesses or operations, including, without limitation, the following: possible claims against vendors, landlords, sublessees, assignees, customers, or suppliers for warranty, indemnity, back charge/set-off issues, overpayment, or duplicate payment issues, and collections/accounts receivable matters; deposits or other amounts owed by any creditor, lessor, utility, supplier, vendor, landlord, sublessee, assignee, or other Entity; claims against landlords, sublessees and assignees arising from the various leases, subleases, and assignment agreement relating thereto, including, without limitation, claims for overcharges relating to taxes, common area maintenance, and other similar charges; financial reporting; environmental and product liability matters; actions against insurance carriers relating to coverage, indemnity, or other matters; counterclaims and defenses relating to any Claims or other obligations; contract or tort claims which may exist or subsequently arise; and any and all Avoidance Actions pursuant to any applicable section of the Bankruptcy Code arising from any transaction involving or concerning the Debtors; provided, however, that neither the Debtors nor the Liquidating Trustee may pursue any Causes of Action that were acquired by the Purchaser pursuant to the Asset

Purchase Agreement or that have been released pursuant to this Plan, the DIP Order or the Sale Order.

Unless a claim against a Creditor or other Entity or Transferred Cause of Action or Avoidance Action is expressly waived, relinquished, released, compromised or settled in this Plan, or any Final Order, the Debtors expressly reserve such claim or Transferred Cause of Action or Avoidance Action for later enforcement by the Liquidating Trust (including, without limitation, claims and Transferred Causes of Action or Avoidance Actions that may be set forth in the Plan Supplement or not specifically identified or which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those which the Debtors no believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Transferred Causes of Action or Avoidance Action upon or after the confirmation or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except where such claims or Transferred Causes of Action or Avoidance Action have been expressly released in this Plan or other Final Order. In addition, the Liquidating Trust expressly reserves the right to pursue or adopt any claim, crossclaim or counterclaims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any person or entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions of this Plan or any Final Order.

The Debtors and the Liquidating Trustee do not intend, and it should not be assumed that because any existing or potential Transferred Causes of Action or Avoidance Actions have not yet been pursued by the Debtors or are not set forth herein, that any such Transferred Causes of Action or Avoidance Actions have been waived.

## H.    Cancellation of Notes, Instruments, Debentures, and Equity Interests

On the Effective Date, except to the extent provided otherwise in the Plan, all notes, instruments, debentures, certificates, and other documents evidencing Claims and all Equity Interests in any of the Debtors shall be cancelled and deemed terminated and surrendered (regardless of whether such notes, instruments, debentures, certificates, or other documents are in fact surrendered for cancellation to the appropriate indenture trustee or other such Person). On the Effective Date, any indentures to which any Debtor is a party shall be deemed cancelled as permitted by section 1123(a)(5) of the Bankruptcy Code.

## I.    Dissolution of Committee(s)

On the first (1st) Business Date following the Effective Date, and provided the Liquidating Trust has become effective as provided under the Plan, the Committee shall be dissolved and the Committee and its members shall be released and discharged from the rights and duties arising from or related to the Case and the retention or employment of the Committee professionals shall terminate, except with respect to final applications for professionals' compensation. The professionals retained by the Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses

incurred after the first (1st) Business Day following the Effective Date, except for services rendered and expenses incurred in connection with the applications by such professionals or Committee members for allowance of compensation and reimbursement of expenses pending on the Effective Date or timely filed after the Effective Date as provided in this Plan.

**J.    Accounting**

Any and all reserves maintained by the Debtors or the Liquidating Trustee, as the case may be, in connection with the distribution of funds on account of the Allowed Claims, may be maintained by bookkeeping entries alone; the Debtors or the Liquidating Trustee, as the case may be, need not (but may) establish separate bank accounts for such purposes.

**ARTICLE V.**
**TREATMENT OF DISPUTED CLAIMS**

**A.    Objections to Claims; Prosecution of Disputed Claims**

1.     After the Effective Date, the Liquidating Trustee may object (and shall take over, and continue prosecuting and settling or otherwise resolving, any outstanding objections by the Debtors) to the allowance of Disputed Claims filed with the Bankruptcy Court.  All objections shall be litigated to Final Order; provided, however, that, as set forth above in Article IV.D of the Plan and in the Liquidating Trust Agreement, the Liquidating Trustee shall have the authority and sole discretion to file, settle, compromise, or withdraw any objections to Claims, without approval of the Bankruptcy Court; provided further, however, that the Liquidating Trustee shall not have the authority or discretion to object to the Senior Creditor Claims or any other Claims that have been Allowed by ~~an order~~a Final Order of the Bankruptcy Court before the Effective Date.

2.     ~~There~~Except as otherwise provided herein, there shall be no deadline to object to or investigate and review Claims, and any objections to Claims and settlement thereof shall be dealt with as the Debtors or the Liquidating Trustee, as the case may be, in their sole discretion, deem to be appropriate.  Further, the Liquidating Trustee shall have the sole and complete discretion to decide not to review and/or object to proofs of Claim to the extent such review and/or objection would be uneconomical.

3.     Unless otherwise provided by the Plan or the Liquidating Trust Agreement, no Bankruptcy Court approval shall be required in order for the Liquidating Trustee to settle and/or compromise any Claim, objection to Claim, cause of action, or right to payment of or against the Debtors, their Estates, or the Liquidating Trust.

**B.    Estimation of Claims**

The Debtors or the Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trustee previously have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any

appeal relating to any such objection. Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or Disputed Claim, the amount so estimated shall constitute the maximum allowable amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

## C. Payments and Distributions on Disputed Claims

No interest shall be paid on Disputed Claims that later become Allowed Claims or with respect to any distribution to such Holder. No distribution shall be made with respect to all or any portion of any Claim, a portion of which or all of which is a Disputed Claim, pending the entire resolution thereof.

## ARTICLE VI.
## DISTRIBUTIONS

## A. Means of Cash Payment

Cash Payments, made pursuant to the Plan, shall be in U.S. dollars and, at the option and in the sole discretion of the Debtors or the Liquidating Trustee, be made by (a) checks drawn on or (b) wire transfers from a domestic bank selected by the Debtors or the Liquidating Trustee. Cash payments to foreign creditors may be made, at the option of the Debtors or the Liquidating Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

## B. Delivery of Distributions

Subject to the provisions of Bankruptcy Rule 2002(g), and except as otherwise provided herein, distributions and deliveries to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the Schedules filed with the Bankruptcy Court, unless superseded by the address set forth on timely filed proof(s) of claim or some other writing Filed with the Bankruptcy Court and served upon the Liquidating Trustee.

## C. Undeliverable Distributions

1. <u>Holding of Undeliverable Distributions</u>

If any distribution pursuant to this Plan to any Holder is returned to the Liquidating Trustee as undeliverable, no further distributions shall be made to such Holder unless and until the Liquidating Trustee is notified by such Holder, in writing, of such Holder's then-current address. Upon such an occurrence, the appropriate distribution shall be made as soon as reasonably practicable after such distribution has become deliverable. All Entities ultimately receiving previously undeliverable Cash shall not be entitled to any interest or other accruals of any kind. Nothing contained in the Plan shall require the Debtors or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

    2.    <u>Failure to Claim Undeliverable Distributions</u>

Any Holder of an Allowed Claim entitled to an undeliverable or unclaimed distribution that does not provide notice of such Holder's correct address to the Debtors and the Liquidating Trustee within the later of six (6) months after (i) the Effective Date or (ii) the date of the initial distribution made by the Debtors or the Liquidating Trustee to such Holder, shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed distribution against any of the Debtors, their Estates or the Liquidating Trust. In such cases, the Forfeited Distributions shall be distributed in accordance with the terms of the Plan. Nothing contained in the Plan shall require the Debtors or the Liquidating Trustee to attempt to locate any holder of an Allowed Claim.

**D.     Withholding and Reporting Requirements**

In connection with the Plan and all distributions thereunder, the Debtors and the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed by any U.S. federal, state, or local, or non-U.S. taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Debtors and the Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.  Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution, and (b) the Debtors and the Liquidating Trustee reserve the option, in their discretion, to not make a distribution to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Debtors or the Liquidating Trustee for the payment and satisfaction of such tax obligations or has, to the Debtors' or Liquidating Trustee's satisfaction, established an exemption therefrom.  Any distributions to be made pursuant to the Plan shall, pending the implementation of such withholding and reporting requirements, be treated as undeliverable pursuant to Article VI.C.2 of the Plan.  The Liquidating Trustee shall request (in writing) from each beneficiary a properly completed IRS Form W-9 or substitute Form W-9.  Any beneficiary that does not provide a completed Form W-9 within forty-five (45) days of the date of such written request sent by the Liquidating Trustee shall have its Claim disallowed, and such response deadline shall be included in the written request.

**E.     Time Bar to Cash Payments**

Checks issued by the Liquidating Trustee on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Liquidating Trustee by the Holder of the Allowed Claim.  Any claim relating to such voided check shall be made on or before the later of:  (i) six months after the Effective Date; or (ii) one hundred and eighty (180) days after the date of issuance of such check.  After such date, all claims relating to such voided checks shall be discharged and forever barred, and the Liquidating Trustee shall treat all such moneys as Forfeited Distributions.

**F.     Distributions After the Effective Date**

Distributions made after the Effective Date to Holders of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made on the Effective Date.

**G.     Interest**

Unless otherwise required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim, provided, however, that the DIP Lender is entitled to interest at the rates set forth in the DIP Facility on the terms set forth in the DIP Order.

**H.     Fractional Dollars; De Minimis Distributions**

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.  The Liquidating Trustee will not make any payment of less than twenty dollars ($20) on account of any Allowed Claim, unless a specific request therefor is made in writing to the Liquidating Trustee on or before ninety (90) days after the Effective Date.

**I.     Set-Offs**

Consistent with applicable law, the Liquidating Trustee may, but shall not be required to, set-off against any Allowed Claim and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim), the claims, rights, and causes of action of any nature that the Debtors, their Estates, or the Liquidating Trust may hold against the Holder of such Allowed Claim (unless such claims, rights, and causes of action have been released by the Debtors pursuant the Releases or Mutual Releases contained herein); provided, however, that neither the failure to effect such a set-off nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, their Estates, the Liquidating Trustee, or the Liquidating Trust of any such claims, rights, and Causes of Action that the Debtors, their Estates, or the Liquidating Trust may possess against such Holder.

**ARTICLE VII.**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.     Rejection of Executory Contracts and Unexpired Leases**

Any executory contracts or unexpired leases which have not (i) expired by their own terms on or prior to the Effective Date, or (ii) been assumed, assumed and assigned, or rejected with the approval of the Bankruptcy Court in connection with the Sale or otherwise, shall be deemed rejected by the Debtors as of the Confirmation Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections of such executory contracts and unexpired leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**B.     Rejection Damages Claim**

Each entity that is a party to an executory contract or unexpired lease that is rejected as of the Confirmation Date pursuant to this Plan and the Confirmation Order will be entitled to file, not later than Rejection Claim Bar Date, a proof of Claim for damages alleged to have been suffered due to such rejection; provided, however, that the opportunity afforded an Entity whose executory contract or unexpired lease is rejected as of the Confirmation Date pursuant to this Plan and the Confirmation Order to file a proof of Claim shall in no way apply to Entities that may assert a claim on account of an executory contract or unexpired lease that was previously rejected by the Debtors for which a prior ~~Bar Date~~bar date was established.  Any Entity that has a Claim for damages as a result of the rejection of an executory contract or unexpired lease pursuant to this paragraph of the Plan that does not file a proof of claim in accordance with the terms and provisions of the Plan with the Bankruptcy Court (and serve such proof of Claim upon

the Liquidating Trustee) will be forever barred from asserting that Claim against, and such Claim shall be unenforceable against, the Debtors or the Liquidating Trust and the Debtors and Liquidating Trust shall have no obligation to pay the same.

**C.     Insurance Policies.**

To the extent that any and all insurance policies including any directors and officers liability insurance policies are executory contracts, then notwithstanding anything contained in the Plan to the contrary, such insurance policies shall be deemed assumed and assigned to the respective Liquidating Trust.  Unless otherwise determined by the Bankruptcy Court, pursuant to a Final Order, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such policy.  For the avoidance of any doubt, all of the Debtors' rights under any insurance policy to which the Debtors may be beneficiaries, including any directors and officers liability insurance policy, that is not an executory contract, shall vest with the Liquidating Trust; provided, however, that the Liquidating Trustee shall not take any action that would impair the coverage currently enjoyed by the Debtors' directors and officers under such directors and officers liability insurance policy.

**ARTICLE VIII.**
**ACCEPTANCE OR REJECTION OF THE PLAN**

**A.     Acceptance by Impaired Classes**

An Impaired Class of Claims will have accepted the Plan if the Holders of at least two-thirds in amount and more than one-half in number of the Allowed Claims in the Class actually voting have voted to accept the Plan, in each case not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code.

**B.     Elimination of Classes**

Any Class that does not contain any Allowed Claims or Equity Interests or any Claims or Equity Interests temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, will be deemed not included in the Plan for purposes of (i) voting to accept or reject the Plan and (ii) determining whether such Class has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

**C.     Nonconsensual Confirmation**

The Bankruptcy Court may confirm the Plan over the dissent of any Impaired Class if all of the requirements for consensual confirmation under subsection 1129(a), other than subsection 1129(a)(8), of the Bankruptcy Code and for nonconsensual confirmation under subsection 1129(b) of the Bankruptcy Code have been satisfied.  In the event that any impaired Class of Claims or Equity Interests shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtors reserve the right to (i) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code or (ii) amend the Plan.

# ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND THE EFFECTIVE DATE

**A.      Conditions Precedent to the Confirmation Date of the Plan**

The occurrence of the Confirmation Date shall be subject to satisfaction of the following conditions precedent:

1.    The Confirmation Order is entered in form and substance reasonably satisfactory to the Debtors~~, the Committee, the Prepetition Lenders and the DIP Lender~~ and the Committee; provided, however, that the Debtors shall File the proposed Confirmation Order with the Bankruptcy Court no later than five (5) Business Days prior to the Confirmation Hearing such that UBP Acquisition Corp. has the opportunity to review and comment on the proposed Confirmation Order and present any objections thereto at the Confirmation Hearing.

2.    All provisions, terms, and conditions hereof are approved in the Confirmation Order or in another Final Order of the Bankruptcy Court.

3.    The Debtors obtain authority to take all actions necessary or appropriate to enter into, implement, and consummate the Plan and other agreements or documents created in connection with the Plan.

4.    The provisions of the Confirmation Order are nonseverable and mutually independent.

**B.      Conditions Precedent to the Effective Date of the Plan**

The occurrence of the Effective Date and the Consummation of the Plan are subject to satisfaction of the following conditions precedent:

1.    Confirmation Order.  The Confirmation Order as entered by the Bankruptcy Court shall be a Final Order in full force and effect, in form and substance reasonably satisfactory to the Debtors~~, the Committee, the Prepetition Lenders and the DIP Lender~~ and the Committee; provided, however, that the Debtors shall File the proposed Confirmation Order with the Bankruptcy Court no later than five (5) Business Days prior to the Confirmation Hearing such that UBP Acquisition Corp. has the opportunity to review and comment on the proposed Confirmation Order and present any objections thereto at the Confirmation Hearing.

2.    Execution of Documents; Other Actions.    All actions, documents, and agreements necessary to implement the Plan shall have been effected or executed, including the Liquidating Trust Agreement, and the appointment of the Liquidating Trustee shall be approved by the Bankruptcy Court.

~~3.    Liquidating Trust Budget.  The Liquidating Trustee shall provide an estimated quarterly budget to the Committee, the DIP Lenders and the Prepetition Lenders, and such parties have consented to such budget, which consent shall not be unreasonably withheld.~~

## C.     Waiver of Conditions Precedent

To the extent legally permissible, each of the conditions precedent in ~~this~~ Article ~~X~~IX of the Plan may be waived, in whole or in part, by the Debtors with the consent of the Committee~~, the DIP Lender and the Prepetition Lenders~~, which consent shall not be unreasonably withheld. Any such waiver of a condition precedent may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action other than proceeding as if such condition did not exist.  The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights.  Upon the waiver of any conditions to the Effective Date set forth in Article ~~X~~IX of the Plan, and subject to the satisfaction in full of each of the remaining conditions set forth in such Article, the Plan shall become effective in accordance with its terms without notice to third parties or any other formal action.

## D.     The Confirmation Order

If the Confirmation Order is vacated for whatever reason, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, any of the Debtors; (ii) prejudice in any manner the rights of the Debtors or the Estates; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors or the Estates in any respect.

## ARTICLE X.
## EFFECT OF PLAN CONFIRMATION

## A.     No Discharge of Claims and Termination of Interests

Pursuant to § 1141(d)(3) of the Bankruptcy Code, confirmation of this Plan will not discharge the Debtors.  Other than as set forth in this Article X, no non-Debtors shall receive a discharge under the Plan or the Confirmation Order.

## B.     Termination of Subordination Rights and Settlement of Related Claims

The classification and manner of satisfying all Claims and Equity Interests and the respective distributions and treatments hereunder take into account and/or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise, and any and all such rights are settled, compromised, and released pursuant to the Plan.  **The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Persons from enforcing or attempting to enforce any such contractual, legal, and equitable subordination rights satisfied, compromised, and settled in this manner.**

## C.     Injunction

**Except as otherwise expressly provided in the Plan, all Entities that have held, hold, or may hold Claims against or Equity Interests in the Debtors are permanently enjoined, from and after the Effective Date, from taking any of the following actions against any of the Debtors, their Estates, the Committee or its members solely in their capacities as**

members of the Committee and not in any other capacity, the Liquidating Trust, the Liquidating Trustee, the Administrative Agent, UBP Acquisition Corp. and any of its affiliates, successors or assigns, including but not limited to Oaktree Capital Management, L.P., Solus Capital Partners, LLC and Dayton Superior Corporation, the Prepetition Lenders and the DIP Lender, or any of their property on account of any Claims or causes of action arising from events prior to the Effective Date including, without limitation, (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enforcing, attaching, collecting, or recovering by any manner or in any place or means any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; and (iv) asserting any defense or right of setoff, subrogation, or recoupment of any kind against any obligation, debt, or liability due to the Debtors. Notwithstanding the foregoing, nothing herein shall enjoin or otherwise be construed to limit any action or argument against UBP Acquisition Corp. and any of its affiliates, successors or assigns, including but not limited to Oaktree Capital Management, L.P., Solus Capital Partners, LLC, Dayton Superior Corporation, the Prepetition Lenders and the DIP Lender, or any of their property on account of (i) any Administrative Claim asserted by such parties; or (ii) any assertion by such parties that they are entitled to recover any portion of the $427,301 in Cash held by the Debtors as of the Petition Date.

### D. Terms of Existing Injunctions or Stays

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105, 362, or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. The Confirmation Order will permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively, or otherwise, of any Claims, Equity Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities released pursuant to the Plan.

### E. Exculpation

NEITHER THE DEBTORS, THEIR ESTATES, THE LIQUIDATING TRUST, THE LIQUIDATING TRUSTEE, THE COMMITTEE AND ITS MEMBERS SOLELY IN THEIR CAPACITIES AS MEMBERS OF THE COMMITTEE AND NOT IN ANY OTHER CAPACITY, THE ADMINISTRATIVE AGENT, THE PREPETITION LENDERS, THE DIP LENDER, UBP ACQUISITION CORP., OAKTREE CAPITAL MANAGEMENT, L.P., SOLUS CAPITAL PARTNERS, LLC, DAYTON SUPERIOR CORPORATION, NOR ANY OF THEIR RESPECTIVE PRESENT OR FORMER OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS, EMPLOYEES, ADVISORS, ATTORNEYS, OR AGENTS ACTING IN SUCH CAPACITY OR THEIR RESPECTIVE AFFILIATES, SHALL HAVE OR INCUR ANY LIABILITY TO, OR BE SUBJECT TO ANY RIGHT OF ACTION BY, THE DEBTORS OR ANY HOLDER OF A CLAIM OR AN EQUITY INTEREST, OR ANY OTHER PARTY IN INTEREST, OR ANY OF THEIR RESPECTIVE AGENTS, SHAREHOLDERS, EMPLOYEES, REPRESENTATIVES, FINANCIAL ADVISORS, ATTORNEYS, OR AFFILIATES, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, (A) ANY ACT TAKEN

OR OMITTED TO BE TAKEN ON OR AFTER THE PETITION DATE IN
CONNECTION WITH THE CHAPTER 11 CASES, (B) THE DISCLOSURE
STATEMENT, THE PLAN, AND THE DOCUMENTS NECESSARY TO EFFECTUATE
THE PLAN, (C) THE SOLICITATION OF ACCEPTANCES AND REJECTIONS OF
THE PLAN, (D) THE RELEASES HEREIN OR THE SOLICITATION THEREOF, (E)
THE CHAPTER 11 CASES, (F) THE IMPLEMENTATION, NEGOTIATION,
FORMULATION AND ADMINISTRATION OF THE PLAN, (G) THE DISTRIBUTION
OF PROPERTY UNDER THE PLAN, (H) ANY CONTRACT, INSTRUMENT,
RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED
INTO IN CONNECTION WITH THE PLAN OR THE CHAPTER 11 CASES, OR (I)
THE SALE, AND IN ALL RESPECTS SHALL BE ENTITLED TO RELY
REASONABLY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR
DUTIES AND RESPONSIBILITIES UNDER THE PLAN, EXCEPT FOR LIABILITY
ARISING FROM CONDUCT CONSTITUTING WILLFUL MISCONDUCT OR GROSS
NEGLIGENCE PURSUANT TO A FINAL ORDER.  THE FOREGOING PARTIES
WILL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL IN ALL
RESPECTS REGARDING THEIR DUTIES AND RESPONSIBILITIES UNDER THE
PLAN.  NOTWITHSTANDING THE FOREGOING, NOTHING HEREIN SHALL
EXCULPATE OR OTHERWISE BE CONSTRUED TO LIMIT ANY ACTION OR
ARGUMENT AGAINST THE ADMINISTRATIVE AGENT, THE PREPETITION
LENDERS, THE DIP LENDER, UBP ACQUISITION CORP., OAKTREE CAPITAL
MANAGEMENT, L.P., SOLUS CAPITAL PARTNERS, LLC, OR DAYTON SUPERIOR
CORPORATION ON ACCOUNT OF (I) ANY ADMINISTRATIVE CLAIM ASSERTED
BY SUCH PARTIES; OR (II) ANY ASSERTION BY SUCH PARTIES THAT THEY
ARE ENTITLED TO RECOVER ANY PORTION OF THE $427,301 IN CASH HELD BY
THE DEBTORS AS OF THE PETITION DATE.

F.      **Releases by the Debtors**

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE
CONTRARY, ON THE EFFECTIVE DATE AND EFFECTIVE AS OF THE
EFFECTIVE DATE (SUCH THAT THE LIQUIDATING TRUSTEE WILL NOT
RECEIVE ANY CLAIM OR CAUSE OF ACTION RELEASED HEREUNDER), FOR
THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE
DEBTOR RELEASEES AND THE THIRD PARTY RELEASEES, THE ADEQUACY OF
WHICH IS HEREBY CONFIRMED, INCLUDING: (1) THE DISCHARGE OF DEBT
AND ALL OTHER GOOD AND VALUABLE CONSIDERATION PAID PURSUANT
HERETO; AND (2) THE SERVICES OF THE DEBTORS' PRESENT AND FORMER
OFFICERS, DIRECTORS, MANAGERS, AND ADVISORS IN FACILITATING THE
EXPEDITIOUS IMPLEMENTATION OF THE LIQUIDATION AND ASSOCIATED
TRANSACTIONS CONTEMPLATED HEREBY, EACH OF THE DEBTORS, IN THEIR
INDIVIDUAL CAPACITIES AND AS DEBTORS IN POSSESSION, DISCHARGE AND
RELEASE AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE
AND RELEASE TO EACH DEBTOR RELEASEE AND TO EACH THIRD PARTY
RELEASEE (AND EACH SUCH DEBTOR RELEASEE AND THIRD PARTY
RELEASEE SO RELEASED SHALL BE DEEMED FULLY RELEASED AND
DISCHARGED BY THE DEBTORS) AND THEIR RESPECTIVE PROPERTY FROM

ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF THE EFFECTIVE DATE IN LAW, AT EQUITY, WHETHER FOR TORT, ~~FRAUD,~~ CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS, INCLUDING THOSE THAT ANY OF THE DEBTORS WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR AN EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF ANY OF THE DEBTORS OR ANY OF THEIR ESTATES: PROVIDED THAT NOTHING HEREIN SHALL RELEASE JEFF CHURCH, KERRY SHIBA, GREG WALLER, OR DAN SCOULER FROM ANY CLAIMS OR CAUSES OF ACTION FOR FRAUD OR INTENTIONAL MISCONDUCT. NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, THE PLAN DOES NOT RELEASE ANY AVOIDANCE ACTIONS, TRANSFERRED CAUSES OF ACTION OR CAUSES OF ACTION THAT THE DEBTORS' ESTATES OR THE LIQUIDATING TRUSTEE, WHETHER DIRECT, DERIVATIVE OR OTHERWISE, HAVE OR MAY HAVE NOW OR IN THE FUTURE AGAINST THE NON-RELEASED PARTIES. ANY CLAIM OR CAUSE OF ACTION AGAINST JEFF CHURCH, KERRY SHIBA, GREG WALLER, OR DAN SCOULER FOR FRAUD OR INTENTIONAL MISCONDUCT MUST BE ASSERTED BY NO LATER THAN ONE HUNDRED THIRTY-FIVE (135) DAYS AFTER THE EFFECTIVE DATE, OR SHALL OTHERWISE BE DEEMED WAIVED. ADDITIONALLY, ANY CLAIM OR CAUSE OF ACTION AGAINST FORMER DIRECTORS ROBERT CHARTENER, PETER GUDWIN, MICHAEL STONE, AND/OR RANSOM LANGFORD MUST BE ASSERTED BY NO LATER THAN ONE HUNDRED THIRTY-FIVE (135) DAYS AFTER THE EFFECTIVE DATE, OR SHALL OTHERWISE BE DEEMED WAIVED. FURTHERMORE, NOTHING HEREIN SHALL BE CONSTRUED TO LIMIT ANY ACTION OR ARGUMENT AGAINST THE ADMINISTRATIVE AGENT, THE PREPETITION LENDERS, THE DIP LENDER, UBP ACQUISITION CORP., OAKTREE CAPITAL MANAGEMENT, L.P., SOLUS CAPITAL PARTNERS, LLC, OR DAYTON SUPERIOR CORPORATION ON ACCOUNT OF (I) ANY ADMINISTRATIVE CLAIM ASSERTED BY SUCH PARTIES; OR (II) ANY ASSERTION BY SUCH PARTIES THAT THEY ARE ENTITLED TO RECOVER ANY PORTION OF THE $427,301 IN CASH HELD BY THE DEBTORS AS OF THE PETITION DATE.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR RELEASEES AND THE THIRD PARTY RELEASEES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (3) IN THE BEST

INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY OF THE DEBTORS OR THE LIQUIDATING TRUSTEE ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

**G.     Mutual Releases by Holders of Claims and Interests**

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE RELEASING PARTIES (REGARDLESS OF WHETHER A RELEASING PARTY IS A THIRD PARTY RELEASEE) SHALL PROVIDE A FULL DISCHARGE AND RELEASE (AND EACH ENTITY SO RELEASED SHALL BE DEEMED RELEASED BY THE RELEASING PARTIES) TO THE THIRD PARTY RELEASEES AND THE DEBTOR RELEASEES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF THE EFFECTIVE DATE IN LAW, AT EQUITY, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS, INCLUDING THOSE IN ANY WAY RELATED TO THE CHAPTER 11 CASES OR THE PLAN.   NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE PLAN DOES NOT RELEASE ANY CLAIMS, AVOIDANCE ACTIONS, TRANSFERRED CAUSES OF ACTION OR CAUSES OF ACTION THAT THE RELEASING PARTIES, THE DEBTORS, OR THE LIQUIDATING TRUSTEE, WHETHER DIRECT, DERIVATIVE OR OTHERWISE, MAY HAVE NOW OR IN THE FUTURE AGAINST NON-RELEASED PARTIES.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR RELEASEES AND THE THIRD PARTY RELEASEES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD PARTY RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM RELEASED PURSUANT TO THE THIRD PARTY RELEASE.

# ARTICLE XI.
## MISCELLANEOUS

### A.    Settlement of Claims and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims or controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim with respect thereto, or any distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims or controversies, and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and is fair, equitable, and reasonable.

### B.    Payment of Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date to the extent required by applicable law, or, if not required to be paid on or prior to the Effective Date, by the Liquidating Trustee as soon as practicable following the Effective Date.

### C.    Exemption from Securities Laws

To the maximum extent provided by § 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of the beneficial interests in the Liquidating Trust will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

### D.    Section 1146 Exemption

Pursuant to section 1146(c) of the Bankruptcy Code, (a) the creation, modification, consolidation, or recording of any mortgage, deed of trust, lien, pledge, or other security interest; (b) the making, recording, or assignment of any lease or sublease; or (c) the making, recording, or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan and the Sale, including, without limitation, any merger agreements; agreements of consolidation, restructuring, disposition, liquidation, or dissolution; deeds; bills of sale; and transfers of tangible property, will not be subject to any stamp tax, recording tax, personal property tax, real estate transfer tax, sales or use tax, or other similar tax. Any transfers from the Debtors to the Liquidating Trust or by the Liquidating Trust to a creditor or other Entity or otherwise pursuant to the Plan shall not be subject to any such taxes, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Unless the Bankruptcy Court orders otherwise, any of the foregoing transactions taken on or prior to the Effective Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

### E.   Books and Records

On the Effective Date, the Debtors' books and records (excluding any electronic mail correspondence among the Debtors and K&L Gates LLP subject to Privilege other than those referred to in Article XI.F. herein) in any form, including all electronic records (the "*Books and Records*"), shall be transferred to the Liquidating Trust, to the extent such Books and Records were not transferred to the Purchaser under the Asset Purchase Agreement.  If the Books and Records were transferred to the Purchaser under the Asset Purchase Agreement, the Purchaser shall provide the Liquidating Trustee reasonable access to the Books and Records upon ten (10) business days notice to the Purchaser requesting such access so as to permit the Liquidating Trustee to carry out his duties under the Liquidating Trust Agreement; provided, however, that (i) such access shall be limited to those Books and Records relating to time period prior to the closing of the transaction contemplated and approved in the Sale Order, and (ii) the Liquidating Trustee shall not have access to any customer-related information that may be included in the Books and Records; provided, further, however, to the extent the Liquidating Trustee in furtherance of its duties under the Liquidating Trust Agreement requires access to the Books and Records relating to the time period after the closing of the transaction contemplated and approved in the Sale Order or to any customer-related information, the Liquidating Trustee may request such reasonable access from the Purchaser.

To the extent the Debtors retained Books and Records and such were transferred to the Liquidating Trust, the Liquidating Trustee shall be free, in his or her discretion to abandon, destroy, or otherwise dispose of the Books and Records in compliance with applicable non-bankruptcy law; provided, however, that in the Liquidating Trustee's discretion, these Books and Records may be destroyed or disposed of beginning two (2) years after the Effective Date notwithstanding any applicable laws, rules, or regulations that would have required the Debtors to retain such Books and Records.

### F.   Privileges as to Certain Causes of Action

Privileges relating solely to any existing Transferred Causes of Action or Avoidance Actions pursued, investigated or considered by the Debtors prior to the Confirmation Date (not otherwise resolved by a Final Order) shall be transferred, assigned, and delivered to the Liquidating Trust, without waiver or release, and shall vest with the Liquidating Trust.  The Liquidating Trustee shall hold and be the beneficiary of all such Privileges and entitled to assert such Privileges.  No such Privilege shall be waived by disclosures to the Liquidating Trustee of the Debtors' documents, information or communications subject to attorney-client privileges, work product protections or immunities or protections from disclosure held by the Debtors.  The Liquidating Trustee shall reserve the right to request other materials that maybe subject to Privilege for appropriate reasons, but representatives of the Debtors and the Debtors' Professionals shall maintain the ability to oppose any such request on any grounds or to seek compensation in connection with such production.

**G.      Employee Agreements**

On or before the Plan Supplement Filing Date, the Debtors will negotiate employment or consulting contracts with any current employees necessary to wind down the Debtors' Estates, such contracts to be reasonably acceptable to the Committee.

**H.      Unclaimed Property**

Notwithstanding any local, state, federal, or other laws or regulations regarding unclaimed property or escheatment of property, all funds or other property possessed by the Debtors on the Effective Date that is unclaimed, subject to escheatment, or potentially subject to escheatment shall be treated as property of such Debtors under this Plan, and shall accordingly be transferred to, vested with, and become the property of the Liquidating Trustee to be held and distributed pursuant to the terms of this Plan free and clear of all such laws or regulations.

**I.      Business Day**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**J.      Severability**

The provisions of this Plan shall not be severable unless such severance is agreed to by the Debtors and such severance would constitute a permissible modification of the Plan pursuant to section 1127 of the Bankruptcy Code.

**K.      Conflicts**

Except as set forth below, to the extent that any provision of the Disclosure Statement, the Liquidating Trust Agreement, or the Confirmation Order (or any exhibits, schedules, appendices, supplements, or amendments to the foregoing) or any other order referenced in the Plan, conflict with or are in any way inconsistent with the terms of the Plan, the Plan shall govern and control.

**L.      Evidence**

In the event this Plan shall not take effect for whatever reason, nothing here shall constitute an admission or denial with respect to whether any of the Claims or Interests held by the Debtors, Creditors or holders of Interests are (a) entitled to allowance or disallowance, (b) secured or unsecured, (c) entitled to priority treatment under the Bankruptcy Code, (d) liable to subordination, or (e) liable for any claims or causes of action, including but not limited to claims under §§ 506, 510, 522, 542, 543, 544, 545, 547, 548, 549 and/or 550 of the Bankruptcy Code.

**M.  Deemed Consent**

By submitting a Ballot or receiving a distribution under or any benefit pursuant to the Plan and not electing to withhold consent as provided under the Plan prior to the Confirmation Date, each Holder of a Claim or Interest shall be deemed to have specifically consented to the terms of the Plan, including the releases contained herein.

**N.  Further Assurances**

The Debtors, the Liquidating Trustee, all Holders of Claims receiving distributions under the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver agreements or documents and take other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**O.  Notices**

All notices, requests, and demands required by the Plan or otherwise, to be effective, shall be in writing, including by facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered to all of the following, or in the case of notice by facsimile transmission, when received by all of the following, addressed as follows or to such other addresses as Filed with the Bankruptcy Court:

| **To the Debtors:** | **To the Prepetition Lenders and DIP Lender**: |
|---|---|
| K&L Gates LLP | Kirkland & Ellis LLP |
| c/o Sven T. Nylen | c/o Christopher Greeno, P.C. |
| 70 West Madison Street, Suite 3100 | c/o David A. Agay |
| Chicago, Illinois 60602 | 300 North LaSalle |
| Telephone: (312) 372-1121 | Chicago, Illinois 60654 |
| Facsimile: (312) 827-8000 | Telephone: (312) 862-2342 |
| | Facsimile: (312) 862-2200 |
| and | |
| Saul Ewing LLP | |
| c/o Mark Minuti | |
| 222 Delaware Avenue, Suite 1200 | |
| P.O. Box 1266 | |
| Wilmington, DE 19899 | |
| Telephone: (302) 421-6800 | |
| Facsimile: (302) 421-6813 | |

**To Counsel for the Official Committee of Unsecured Creditors:**

Arent Fox LLP
c/o Andrew I. Silfen

1675 Broadway
New York, New York  10019-5820
Benesch, Friedlander, Coplan & Aronoff LLP
c/o Raymond H. Lemisch
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
Telephone: (212302) 484-3900442-7005
Facsimile: (212302) 484-3900442-7012

**P.      Filing of Additional Documents**

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**Q.      Successors and Assigns**

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

**R.      Governing Law**

Expect Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent any document entered into in connection with the Plan so provides, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of Delaware, without giving effect to the principles of conflicts of law.

**S.      Closing of Cases**

The Liquidating Trustee shall, promptly upon the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

**T.      Section Headings**

The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

**U.      Further Information**

Requests for further information regarding the Debtors should be directed to counsel to the Debtors as set forth on the cover page hereof.

# ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction after the Effective Date over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases or the Plan, or that relates to the following, in each case to the greatest extent permitted by applicable law:

     1.  to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

     2.  to determine any and all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Liquidating Trustee or the Liquidating Trust after the Effective Date; provided, however, that the Liquidating Trustee and the Liquidating Trust shall reserve the right to commence collection actions, actions to recover receivables, and other similar actions in all appropriate jurisdictions;

     3.  to ensure that distributions to Holders of Allowed Claims are accomplished as provided herein;

     4.  to hear and determine any timely objections to Administrative Claims, Priority Claims and Unsecured Claims or to proofs of Claim and Equity Interests Filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Equity Interest, and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

     5.  to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

     6.  to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

     7.  to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

     8.  to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

     9.  to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any Entity's obligations incurred in connection with or released or exculpated under the Plan;

10. to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

11. to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Liquidating Trust Agreement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement to be executed in connection with the Plan;

12. to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

13. to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

14. to enter a Final Decree closing the Chapter 11 Cases.

## ARTICLE XIII.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.  Modification of Plan

The Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan at any time prior to the entry of the Confirmation Order with the consent of the Committee, the Prepetition Lenders and the DIP Lender, which consent shall not be unreasonably withheld; provided, however, that the Debtors must provide notice of any proposed pre-Confirmation Hearing amendments or modifications to UBP Acquisition Corp. at the same time that the Debtors request the Committee's consent to such proposed amendments or modifications.  Upon entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court and with the consent of the Committee, the Prepetition Lenders and the DIP Lender, which consent shall not be unreasonably withheldor Liquidating Trustee may, after notice and a hearing, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such Holder and the votes of each Class for or against the Plan shall be counted and used in connection with the modified plan.

### B.  Revocation, Withdrawal, or Non-Consummation

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization with the consent of the Committee, the Prepetition Lenders and the DIP Lender, which consent shall not be unreasonably withheld.  If the Debtors revoke or withdraw the Plan, or if the Confirmation Order confirming the Plan shall not be entered or become a Final Order, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of Claims or Equity Interests), assumption

or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (1) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity, (2) prejudice in any manner the rights of the Debtors, (3) constitute an admission of any sort by the Debtors, or (4) constitute a release of any Causes of Action possessed or maintained by the Debtors.

*Remainder of Page Left Blank Intentionally*

Dated: ~~September 30, 2010~~January 31, 2011  Respectfully submitted,


          Universal Building Products, Inc.
          Accubrace, Inc.
          Don De Cristo Concrete Accessories, Inc.
          Form-Co, Inc.
          Universal Form Clamp, Inc.

          By: /s/ Gregory Waller
          Name: Gregory Waller
          Title: Authorized Officer Signatory of the Debtors

Document comparison done by DeltaView on Monday, January 31, 2011 8:27:03 AM

| Input: | |
|---|---|
| Document 1 | PowerDocs://BBLCH_E/484339/15 |
| Document 2 | PowerDocs://BBLCH_E/484339/29 |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | | |
|---|---|---|
| | Count | |
| Insertions | 146 | |
| Deletions | 203 | |
| Moved from | 0 | |
| Moved to | 0 | |
| Style change | 0 | |
| Format changed | 0 | |
| Total changes | 349 | |