**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UNIVERSAL BUILDING PRODUCTS, | ) | |
| et al., | ) | Case No. 10-12453 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |

**OPINION**[1]

Before the Court is the Application of UBP Acquisition Corp. ("UBPAC") for payment of an administrative claim and the Debtors' objection thereto.  For the following reasons, the Court will sustain the Debtors' objection and deny UBPAC's application.

I.   BACKGROUND

On August 4, 2010, Universal Building Products, Inc., and several of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  At the same time the Debtors filed a motion to approve a sale of substantially all of their assets to UBPAC (their pre-petition lender) and a motion for approval of DIP financing to allow for the sale process to continue with a projected sale hearing date in early September.

---

[1]  This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to contested matters by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

On August 19, 2010, the Committee filed preliminary objections to the motions for approval of the sale procedures and the final DIP financing.  At the August 23 hearing on those motions, a global settlement among the Debtors, the Committee, and UBPAC was announced pursuant to which the Committee withdrew its objections and the parties agreed to schedule the sale hearing for September 7, 2010.  In exchange, UBPAC agreed to allow any excess funds from the DIP budget and the avoidance actions to be transferred to a liquidating trust for the benefit of the unsecured creditors pursuant to an agreed plan of reorganization.  After additional notice and hearing, the Court approved the proposed procedure and ultimately the sale to UBPAC was approved on September 7, 2010.  (D.I. # 221.)

On October 6 and 13, 2010, the Court entered orders that, taken together, rejected all of the Debtors' real estate leases. (D.I. ## 303, 304 & 323.)  The Budget attached to the Final DIP Order included the Debtors' costs required to clean the facilities upon termination of the leases in accordance with the applicable lease terms.  The total line item allocated to clean-up costs for all facilities was $635,000.

After the sale was approved, UBPAC (through its affiliate, Dayton Superior Corp. ("Dayton")), paid certain vendors and service providers directly for clean-up and exit costs related to the Debtors' vacating the leased facilities and UBPAC taking

possession of the acquired assets.  At the time of Dayton's actions, the Debtors had not commenced any clean-up of their own. Following Dayton's clean-up and exit, UBPAC filed an application for payment of an administrative expense claim for such costs in the amount of $674,964.00.

II.  JURISDICTION

This Court had jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) & (B).

III. DISCUSSION

To qualify as an administrative expense, which has first priority treatment under section 507 of the Bankruptcy Code, an expense must satisfy the requirements of section 503(b).  Section 503(b) provides that:

> After notice and a hearing, there shall be allowed, administrative expenses . . . including
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate . . . .

11 U.S.C. § 503(b)(1)(A).

Determining whether a creditor has an administrative claim is a two-prong test: the expense must have arisen from a post-petition transaction between the creditor and the debtor, and the transaction must have been "actual and necessary" to preserve the estate.  Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re

O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 532-33 (3d Cir. 1999); Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950, 954 (1st Cir. 1976); In re Mid-Am. Waste Sys., Inc., 228 B.R. 816, 821 (Bankr. D. Del. 1999).

The Court finds that the Asset Purchase Agreement (the"APA") between the Debtors and UBPAC which was approved by the Court satisfies the first prong of the test because it is evidence of a post-petition transaction between the parties. With regard to the second prong, UBPAC argues that its efforts to leave the Debtors' sites in "broom-swept" condition benefitted the estate by preventing the Debtors from having to pay the clean-up costs required under their respective leases.

The Court disagrees for two reasons. First, the actions taken by UBPAC to clean up the Debtors' facilities were not "actual and necessary" but were purely voluntary. The APA did not contain any obligation of UBPAC to do the clean-up, and there is no evidence that the Debtors requested that UBPAC do so. See, e.g., In re Interstate Grocery Distrib. Sys., Inc., 267 B.R. 907, 914 (Bankr. D.N.J. 2001) (finding that a purchaser was not entitled to an administrative expense claim when improvements made to debtor's property were done voluntarily and without any agreement in place allowing them to be performed); In re Economy Lodging Sys., Inc., 226 B.R. 840, 847 (Bankr. N.D. Ohio 1998) (post-petition services performed by consultant disallowed as

4

administrative expense where debtor did not urge or induce consultant to continue its services).  In fact, the line item allocated to clean-up costs in the DIP budget evidences that the parties expected the Debtors (not UBPAC) to perform the clean-up.

Second, UBPAC's actions did not preserve the estate but could have actually harmed the estates.  The Debtors are the ones obligated under the leases to leave the premises in broom-swept condition, but they made a determination not to perform the clean-up because the leases were being rejected.  As a result, the respective landlords' claims for the clean-up costs would have been part of their rejection damages which are treated as pre-petition claims.[2]  See, e.g., In re Unidigital, Inc., 262 B.R. 283, 289 (Bankr. D. Del. 2001) (finding that no administrative claim is allowable for the costs of cleaning the premises of a rejected lease, absent evidence that it benefitted the estate).

In fact, rather than benefit the estate, UBPAC's administrative claim would actually drain it.  By performing the

---

[2] The rejection of the leases creates a pre-petition breach by operation of section 502(g), which provides:

A claim arising from the rejection, under 365 of this title . . . of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed . . . or disallowed . . . the same as if such claim had arisen before the date of the filing of the petition.

11 U.S.C. § 502(g).

clean-up, UBPAC seeks to elevate the costs of clean-up from a pre-petition claim to an administrative expense claim.  It is the landlords that are receiving a benefit, not the estate.  As a result, the Court finds that UBPAC has failed to show that its clean-up expense was "actual and necessary" to preserve the estate.

UBPAC complains that it is in effect being required to pay for the clean-up costs twice: once by having lent the Debtors the money to do the clean-up and again by actually paying the vendors who did the cleaning.  Normally a DIP budget provides that if the debtor does not actually use the money budgeted for a line item, the lender does not have to lend that money.  Here, however, the parties struck a different deal: UBPAC agreed to lend all the money in the budget, whether actually used or not, in exchange for the waiver of the Committee's objections to the sale process (and particularly the speed of the sale process).  Thus, UBPAC cannot complain that it has to fund the budgeted line item for clean-up costs whether they are expended or not.  In addition, it should have been aware that the Debtors (with the encouragement of the Committee) could elect not to spend those monies but to save them to fund the plan's distributions to unsecured creditors.  UBPAC is only "paying twice" because it elected to pay the clean-up costs even though it was not obligated to do so.  Because there was no benefit to the estate, the Court must

disallow any administrative claim that UBPAC asserts for the clean-up costs.

IV.    <u>CONCLUSION</u>

For the reasons set forth above, the Court will deny UBPAC's application for payment of an administrative expense claim.

An appropriate Order is attached.

BY THE COURT:

Dated: March 7, 2011

Mary F. Walrath
United States Bankruptcy Judge